# Exhibit C

FORM B10 (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT OF PENNSYLVANIA | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor<br>Le-Nature's, Inc., et al. | Case Number<br>06-25454 (MBM) | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Wachovia Bank, National Association, individually and as agent for a syndicate of lenders | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | |
|---|---|---|
| Name and address where notices should be sent:<br>Katherine A. Harkness, Director<br>Wachovia Bank, National Association<br>One Wachovia Center<br>301 South College Street, NC 0537<br>Charlotte, North Carolina 28288<br>Telephone number: 704-383-0707 | | THIS SPACE IS FOR COURT USE ONLY |
| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces   a previously filed claim, dated:_____<br>if this claim ☐ amends | |

**1. Basis for Claim.**
- ☐ Goods sold
- ☐ Services performed
- X Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
     (date)          (date)

**2. Date debt was incurred:** September 1, 2006

**3. If court judgment, date obtained:**

**4. Classification of Claim:** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case was filed. See reverse side for important explanations.

**Secured Claim.**
X Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other: See Attachment to Proof of Claim

Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**Unsecured Nonpriority Claim $ See Attachment to Proof of Claim**
X Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim.**
X Check this box if you have an unsecured priority claim, all or part of which is entitled to priority.
Amount entitled to priority $ See Attachment to Proof of Claim
Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).
☐ Wages, Salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other: Specify applicable paragraph of 11 U.S.C. § 507(a)( ).

*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**5. Total Amount of Claim at Time Case Filed:** $ See Attachment to Proof of Claim                                           $282,054,085.84
                                                          (unsecured)         (secured)         (priority)         (total)
X Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.
**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If documents are not available, explain. If the documents are voluminous, attach a summary.
**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

Mail to:
U.S. Bankruptcy Court
c/o Claims Clerk
P.O. Box 165
Pittsburgh, PA 15230

| Date<br><br>March ___, 2007 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): By _/s/ Katherine A. Harkness_<br>Katherine A. Harkness, Director of Wachovia Bank, N.A. |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

1-NY/2150961.1

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | ) Case No. 06-25454 (MBM) |
| | ) |
| LE-NATURE'S, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ATTACHMENT TO PROOF OF SECURED, ADMINISTRATIVE AND
UNSECURED CLAIM OF WACHOVIA BANK, N.A. AS AGENT,
AND THE LENDERS AGAINST THE DEBTORS**

1.  Katherine A. Harkness is a Director of Wachovia Bank, National Association ("Wachovia"), a bank with its principal place of business in the State of North Carolina, whose business and mailing address is One Wachovia Center, 301 South College Street, Charlotte, North Carolina, 28288, and is authorized to make this proof of claim on behalf of (A) Wachovia, individually and as agent (the "Agent") for each of the financial institutions listed on the annexed Schedule I and any of their respective successors or assigns (collectively, the "Lenders", and together with the Agent, the "Claimants") and (B) the Lenders.

2.  At the time of the filing of the involuntary petition initiating this case under Chapter 7 of the Bankruptcy Code (the "Code") on November 1, 2006 (the "Filing Date"),[1] Le-Nature's, Inc. ("Le-Nature's" or the "Borrower") and Tea Systems International, LLC ("Tea Systems" and, together with Le-Nature's, the "Debtors")[2] were

---

[1] On November 3, 2006, Le-Nature's consented to the Chapter 7 petition and converted its case to a case under Chapter 11 of the Code.

[2] On November 5, 2006, Tea Systems and Le-Nature's Holdings, Inc. ("Holdco") commenced cases under Chapter 11 under the Code and, together with the Le-Nature's case, the three cases are being jointly administered for procedural purposes. On December 20, 2006, an order was entered approving the appointment of a Chapter 11 trustee for Holdco and Debtors. On January 8, 2007, R. Todd Neilson was appointed the Chapter 11 trustee (the "Trustee").

indebted to the Claimants for certain amounts and obligations under or in connection with the Credit Agreement (as defined below).

3. As of the Filing Date:

(a) The Borrower, was and still is indebted to the Lenders pursuant to that certain Amended and Restated Credit Agreement, dated as of September 1, 2006 (as the same has been amended, modified, supplemented or waived, the "Credit Agreement"),[3] among Le-Nature's as the Borrower, Tea Systems as the Guarantor, the Lenders and the Agent in the aggregate principal amount of not less than $278,000,000 as well as (A) interest, as described in paragraph 5(b) below; (B) the Commitment and Non-Use Fees as defined and described in paragraph 5(c) below; (C) reimbursement of Costs and Expenses, as defined in paragraph 5(d) below, which continue to be incurred; and (D) the Indemnification Obligations as described in paragraph 5(e) below (collectively, the "Indebtedness"). Each Lender's pro-rata share of the Indebtedness, as of March 7, 2007 is set forth opposite its name on the annexed Schedule I;

(b) Pursuant to the Credit Agreement, Tea Systems, as guarantor, was and still is indebted to the Claimants for all of the Indebtedness; and

(c) In addition, the Debtors are liable to the Agent for Letter of Credit, Issuing Lender and Agent's Fees described in paragraph 5(c) below.

4. This claim is: (a) a secured claim for which the Agent, for the benefit of the Claimants, has been granted security interests in and liens upon substantially all of the

---

[3] Unless otherwise defined herein, capitalized terms shall have the meaning set forth in the Credit Agreement.

property of the Debtors pursuant to (i) the Pledge Agreement, (ii) the Security Agreement, (iii) the Mortgage Instruments, and the (iv) assignments of insurance (each as more fully described in paragraph 6 below) which security interests and liens were properly perfected and duly recorded (all as more fully described in paragraph 7 below); (b) pursuant to those certain stipulations and orders (the "Cash Collateral Stipulations and Orders") among the Debtors or the Trustee, the Agent and other parties, an administrative expense claim pursuant to Code § 507(b); and (c) a general unsecured claim to the extent that the Indebtedness exceeds the value of the Collateral (as defined herein) (other than as a result of the adequate protection described in clause (b) above proving to be inadequate) and, except for interest due for November 1 and November 2, 2006, for which a priority under Code §507(a)(3) is claimed.

5.     The consideration for the Indebtedness owing to Claimants is as follows:

(a)     Loans. Pursuant to the Credit Agreement, each of the Lenders severally made its pro rata share of the revolving credit loans and/or term loans, as applicable, to the Borrower.

(b)     Interest. Pursuant to Sections 2.1(d), 2.2(c), 2.4(c), 2.9 and 2.11 of the Credit Agreement, the Borrower was obligated to pay interest on the aggregate unpaid principal balance owed to the Lenders on the Loans: (i) to the extent not overdue, at a rate per annum equal to the rates as provided in and determined pursuant to the Credit Agreement (each, a "Pre-Default Rate"); and (ii) to the extent overdue or outstanding upon the occurrence and during the continuation of an Event of Default, at a rate per annum equal to the rates as provided in and determined pursuant to the Credit Agreement (the "Default Rate").

(c) <u>Fees</u>. Pursuant to Section 2.5 of the Credit Agreement, the Borrower agreed to pay (i) to each Lender through the Agent a commitment fee (the "<u>Commitment Fee</u>") at the rates set forth in the Credit Agreement; (ii) to the Issuing Lender for the ratable benefit of the Lenders a fee (the "<u>Letter of Credit Fees</u>") at the rates set forth in the Credit Agreement; (iii) to the Issuing Lender for its own account a fee (the "<u>Issuing Lender Fees</u>") at the rates set forth in the Credit Agreement; and (iv) to the Agent for its own account an annual fee (the "<u>Agent's Fee</u>") in the amount set forth in the Fee Letter.

(d) <u>Costs and Expenses</u>. Pursuant to Sections 9.5(a) and (b) of the Credit Agreement, the Borrower agreed to pay, <u>inter alia</u>, all reasonable out-of-pocket expenses (including attorneys' fees and legal expenses) incurred by (i) the Agent in connection with the preparation and administration of the Credit Agreement and the other Loan Documents, or in connection with amendments, modifications or waivers of the provisions thereof and (ii) the Agent and each Lender in connection with the enforcement or preservation of any of their rights under the Credit Agreement or the other Credit Documents (including reasonable allocated costs of in-house counsel) (collectively, "<u>Costs and Expenses</u>"). Unreimbursed Costs and Expenses due to the Agent and the Lenders have been incurred and continue to be incurred and are an obligation of the Borrower in an amount to be specified.

(e) <u>Indemnification</u>. Pursuant to (i) Sections 9.5(c) and (d) of the Credit Agreement, the Borrower agreed to indemnify and hold each Lender and the Agent harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever arising out of, or as a result of, or in any way related to, the matters set

forth in Sections 9.5(c) and (d) of the Credit Agreement, including without limitation, (w) the payment of any and all recording and filing fees and any and all liabilities with respect to, or resulting from any delay in paying stamp, excise and other similar taxes, if any, which may be payable or determined to be payable in connection with the execution and delivery of, or consummation or administration of any of the transactions contemplated by, or any amendment, supplement or modification of, or any waiver or consent under or in respect of, the Credit Documents and such other documents, (x) the execution, delivery and performance of the Credit Documents by the Credit Parties, (y) the enforcement and administration of the Credit Documents in accordance with the terms thereof (including in connection with any suit or other legal action initiated by Holdco or any of its Subsidiaries), and (z) the use of the proceeds of the Loans (collectively, the "Section 9.5 Indemnifications"); and (ii) Section 2.17 of the Credit Agreement, the Borrower agreed to indemnify and to hold each Lender harmless from any funding loss or reasonable expense which such Lender may sustain or incur as a consequence of (w) default by the Borrower in payment of the principal amount of or interest on any Loan by such Lender in accordance with the terms of the Credit Agreement, (x) default by the Borrower in accepting a borrowing after the Borrower has given a notice in accordance with the terms of the Credit Agreement, (y) default by the Borrower in making any prepayment after the Borrower has given a notice in accordance with the terms of the Credit Agreement, and (z) the making by the Borrower of a prepayment of a Loan, or the conversion thereof, on a day which is not the last day of the Interest Period with respect thereto, in each case including, but not limited to, any such loss or expense arising from interest or fees payable by such Lender to lenders of funds obtained by it in order to maintain its Loans under the Credit Agreement (the "Additional

Indemnifications" and together with the Section 9.5 Indemnifications, the "Indemnification Obligations"). As of the date hereof, the Borrower's Indemnification Obligations are in an as yet undetermined amount.

6.  Security Interests. The Borrower's obligations to pay all of the Indebtedness are secured by, inter alia, properly perfected security interests in and liens upon substantially all of the Debtors' property, including as described in Article 2 of that certain Amended and Restated Security Agreement dated as of September 1, 2006 (the "Security Agreement") by and among Borrower, Tea Systems and the Agent, the collateral described in that certain Amended and Restated Pledge Agreement, dated as of September 1, 2006 (the "Pledge Agreement"), by and among the Borrower, Tea Systems and the Agent, and certain other personal property and fixtures, real estate and leasehold interests and the proceeds and products of all of the foregoing pursuant to (i) the Security Agreement; (ii) the Pledge Agreement; (iii) the assignments of insurance; (iv) certain Mortgage Instruments granted to the Agent for the benefit of the Claimants prior to the Filing Date; and (v) as adequate protection for the use by the Debtors or the Trustee of the Collateral, including Cash Collateral, pursuant to the Cash Collateral Stipulations and Orders, a perfected security interest in all of the Debtors' property. All of the property described in this paragraph 6, together with any additions thereto or replacements or proceeds thereof, are hereinafter referred to collectively as the "Collateral".

7.  The Agent, for the ratable benefit of the Lenders, holds properly perfected security interests in and liens upon the Collateral based upon the Agent's having filed or recorded, inter alia, the Mortgage Instruments and appropriate Uniform Commercial Code financing statements or pursuant to Court orders (collectively, the "Perfection Documents").

8. <u>Section 507(b) Claim</u>. Pursuant to the Cash Collateral Stipulations and Orders, the Claimants were granted a superpriority administrative claim under Code §507(b).

9. The writings on which this claim is founded include, <u>inter alia</u>, the following documents:

  (a) the Credit Agreement;

  (b) the Cash Collateral Stipulations and Orders;

  (c) the Fee Letter;

  (d) the Security Agreement;

  (e) the Pledge Agreement;

  (f) the Mortgage Instruments;

  (g) the assignment of insurance;

  (h) the Perfection Documents.

10. Copies of the documents described in paragraph 9 hereof are voluminous and, pursuant to a certain Stipulation between the Trustee and the Agent (the "<u>Stipulation</u>") entered by the Court, on March 1, 2007, need not be filed with the proof of claims. Upon request, copies of such documents will be made available to parties in interest for inspection and copying (at the requesting party's expense).

11. These claims are not founded on an open account.

12. No judgment has been rendered on these claims.

13. The amount of all payments on these claims have been credited and deducted for the purpose of making this proof of claim.

14. Pursuant to Article X of that certain Indenture, dated as of June 23, 2003 (the "Indenture"), each holder of a note under the Indenture agreed to subordinate its

claim to the prior payment in full of all of the Claimants' obligations arising under the Credit Agreement. Claimants claim, assert, and seek to enforce all security interests, liens and rights of subordination under the Indenture.

15. This proof of claim is filed under compulsion of that certain order entered by the Court dated November 28, 2006 (the "Bar Order") and pursuant to the Stipulation permitting the Agent to file one consolidated proof of claim on behalf of all Claimants and against the Debtors. In executing and filing this proof of claim, the Agent does not submit itself or any of the other Claimants to the jurisdiction of this Court for any purpose other than with respect to this claim and does not waive (i) any of the Agent's or any Claimant's rights and remedies against any other person or entity who may be liable for all or part of the claims set forth herein, whether an affiliate of the Debtors, an assignee, guarantor or otherwise, (ii) any obligation owed to any of the Claimants, or any right to any security that may be determined to be held by the Agent or the other Lenders for Claimants' benefit, or (iii) any past, present or future defaults (or events of default) by the Debtors in connection with the Credit Agreement, the Cash Collateral Stipulations and Orders or otherwise. The filing of this proof of claim is not an election of remedies.

16. Claimants expressly reserve their right to amend or supplement this proof of claim in any respect or to file additional proofs of claim at any time.

17. All notices with respect to this proof of claim should be sent to the Agent at the address set forth in paragraph 1 hereof, with copy to Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, New York 10178-0060, Attention: Richard S. Toder, Esq. (rtoder@morganlewis.com) and (ii) to such other persons at such other addresses as the Agent may designate.

Dated: Charlotte, North Carolina
       March __, 2007

                                              **Wachovia Bank, National Association**

                                              By: _____
                                              Name: Katherine A. Harkness
                                              Title:  Director

**PENALTY FOR PRESENTING FRAUDULENT CLAIMS -- Fine of up to $500,000 or imprisonment of up to five years or both--Title 18, U.S.C. §§ 152 and 3571.**

## Schedule I

| Beneficial Owner | Bank / Investor | Revolver Loan | Revolver Interest | Term Loan | Term Loan Interest | Letter of Credit Fees | Issuing Lender Fee | Commitment Fee | Total Claim |
|---|---|---|---|---|---|---|---|---|---|
| AIG GLOBAL INVESTMENT CORP | SUNAMERICA INCOME FUNDS - SUNA | - | - | 1,200,000.00 | 17,841.24 | - | - | - | 1,217,841.24 |
| AIG GLOBAL INVESTMENT CORP | SUNAMERICA SERIES TRUST - SUNA | - | - | 1,200,000.00 | 17,841.24 | - | - | - | 1,217,841.24 |
| AIG GLOBAL INVESTMENT CORP | VALIC COMPANY II - HIGH YIELD | - | - | 600,000.00 | 8,920.62 | - | - | - | 608,920.62 |
| APS CLEARING CORPORATION | APS CLEARING INC | - | - | 3,000,000.00 | 44,603.09 | - | - | - | 3,044,603.09 |
| AURELIUS CAPITAL MASTER LTD | AURELIUS CAPITAL MASTER LTD | - | - | 8,929,000.00 | 132,753.67 | - | - | - | 9,061,753.67 |
| AURELIUS CAPITAL PARTNERS LP | AURELIUS CAPITAL PARTNERS LP | - | - | 11,571,000.00 | 172,034.13 | - | - | - | 11,743,034.13 |
| BANK OF AMERICA | BANK OF AMERICA | - | - | 3,500,000.00 | 52,036.94 | - | - | - | 3,552,036.94 |
| BEAR STEARNS & CO. | BEAR STEARNS INVESTMENT | - | - | 2,000,000.00 | 29,735.40 | - | - | - | 2,029,735.40 |
| BLACK DIAMOND CAPITAL MGMT LLC | GRAND CENTRAL ASSET TRUST, BDC | - | - | 1,000,000.00 | 14,867.70 | - | - | - | 1,014,867.70 |
| BLACK ROCK FINANCIAL MGMT | BLACK ROCK LTD DURATION INC TR | - | - | 1,000,000.00 | 14,867.70 | - | - | - | 1,014,867.70 |
| BLACK ROCK FINANCIAL MGMT | BLACK ROCK SENIOR INC SERIES | - | - | 1,200,000.00 | 17,841.24 | - | - | - | 1,217,841.24 |
| BLACK ROCK FINANCIAL MGMT | BLACKROCK GLOBAL FLOATING RATE | - | - | 1,000,000.00 | 14,867.70 | - | - | - | 1,014,867.70 |
| BLACK ROCK FINANCIAL MGMT | BLACKROCK SEN INCOME SER III | - | - | 1,175,000.00 | 17,469.55 | - | - | - | 1,192,469.55 |
| BLACK ROCK FINANCIAL MGMT | BLACKROCK SENIOR INCOME SER II | - | - | 1,100,000.00 | 16,354.47 | - | - | - | 1,116,354.47 |
| BLACK ROCK FINANCIAL MGMT | MAGNETITE V CLO LTD | - | - | 1,050,000.00 | 15,611.08 | - | - | - | 1,065,611.08 |
| BLACK ROCK FINANCIAL MGMT | MISSOURI STATE EMPLOYEE RETIRE | - | - | 975,000.00 | 14,496.01 | - | - | - | 989,496.01 |
| BLACK ROCK FINANCIAL MGMT | SENIOR LOAN PORTFOLIO | - | - | 300,000.00 | 4,460.31 | - | - | - | 304,460.31 |
| BOND STREET CAPITAL | UBS WILLOW FUND LLC | - | - | 10,000,000.00 | 148,676.98 | - | - | - | 10,148,676.98 |
| CARGILL FINANCIAL SERVICES INT | CARGILL FINANCIAL SERVICES INT | - | - | 3,000,000.00 | 44,603.09 | - | - | - | 3,044,603.09 |
| CARLYLE GROUP | CARLYLE HIGH YIELD PART IX LTD | - | - | 614,000.00 | 9,128.77 | - | - | - | 623,128.77 |
| CARLYLE GROUP | CARLYLE HIGH YIELD PART VII | - | - | 477,000.00 | 7,091.89 | - | - | - | 484,091.89 |
| CARLYLE GROUP | CARLYLE HIGH YIELD PARTNERS VI | - | - | 614,000.00 | 9,128.77 | - | - | - | 623,128.77 |
| CARLYLE GROUP | CARLYLE HY PARTNERS IV LTD | - | - | 477,000.00 | 7,091.89 | - | - | - | 484,091.89 |
| CARLYLE GROUP | CARLYLE HY PARTNERS VIII | - | - | 658,000.00 | 9,782.95 | - | - | - | 667,782.95 |
| CARLYLE GROUP | CARLYLE LOAN INVESTMENT LTD | - | - | 1,159,544.30 | 17,239.75 | - | - | - | 1,176,784.05 |
| DEUTSCHE BANK AND TRUST CO | DEUTSCHE BANK AG, NEW YORK BRA | - | - | 3,999,999.99 | 59,470.79 | - | - | - | 4,059,470.78 |
| DK ACQUISITION PARTNERS L.P | DK ACQUISITION PARTNERS L.P | - | - | 999,999.99 | 14,867.70 | - | - | - | 1,014,867.69 |
| GOLDENTREE ASSET MANAGEMENT | GOLDENTREE 2004 TRUST | - | - | 10,000,000.00 | 148,676.98 | - | - | - | 10,148,676.98 |
| GOLDMAN SACHS | GOLDMAN SACHS | - | - | 14,600,455.70 | 217,075.16 | - | - | - | 14,817,530.85 |
| HARBINGER CAP PART MASTER I | HARBINGER CAP PART MASTER I | 650,000.00 | 4,962.33 | 87,000,000.00 | 1,293,489.72 | 550.00 | - | 177.78 | 88,949,179.83 |

I-NY2/150952.1

| | | | | | | |
|---|---|---|---|---|---|---|
| HARCH CAPITAL MGMT INC | HARCH CLO II LIMITED | - | - | 3,500,000.00 | 52,036.94 | - | - | 3,552,036.94 |
| JPMORGAN CHASE | JPMORGAN CHASE | 2,275,000.00 | 17,368.15 | 9,511,788.90 | 141,418.40 | 1,925.00 | 622.22 | 11,948,122.66 |
| LATIGO PARTNERS | LATIGO MASTER FUND LTD | 5,525,000.00 | 42,179.80 | 13,964,850.00 | 207,625.17 | 4,675.00 | 1,511.11 | 19,745,841.08 |
| LEHMAN BROTHERS | LEHMAN COMMERCIAL PAPER | | | 1,000,000.00 | 14,867.70 | | | 1,014,867.70 |
| MJX ASSET MANAGEMENT | VENTURE CDO 2002 LTD | | | 325,000.00 | 4,832.00 | | | 329,832.00 |
| MJX ASSET MANAGEMENT | VENTURE II CDO 2002 LTD | | | 325,000.00 | 4,832.00 | | | 329,832.00 |
| MJX ASSET MANAGEMENT | VENTURE III CDO, LIMITED | | | 675,000.00 | 10,035.70 | | | 685,035.70 |
| MJX ASSET MANAGEMENT | VENTURE IV CDO LIMITED | | | 1,000,000.00 | 14,867.70 | | | 1,014,867.70 |
| MJX ASSET MANAGEMENT | VENTURE V CDO LIMITED | | | 675,000.00 | 10,035.70 | | | 685,035.70 |
| MJX ASSET MANAGEMENT | VENTURE VI CDO LIMITED | | | 675,000.00 | 10,035.70 | | | 685,035.70 |
| MJX ASSET MANAGEMENT | VISTA LEVERAGED INCOME FUND | | | 325,000.00 | 4,832.00 | | | 329,832.00 |
| MORGAN STANLEY AND CO INC | MORGAN STANLEY SENIOR | | | 500,000.00 | 7,433.85 | | | 507,433.85 |
| MORGAN STANLEY INVESTMENT ADV | CONFLUENT 3 LIMITED | | | 1,048,861.70 | 15,594.16 | | | 1,064,455.86 |
| MORGAN STANLEY INVESTMENT ADV | MORGAN STANLEY PRIME INCOME | | | 3,436,145.40 | 51,087.57 | | | 3,487,232.97 |
| MORGAN STANLEY INVESTMENT ADV | MSIM CROTON, LTD. | | | 1,048,861.70 | 15,594.16 | | | 1,064,455.86 |
| MORGAN STANLEY INVESTMENT ADV | QUALCOMM GLOBAL TRADING INC. | | | 883,467.20 | 13,135.12 | | | 896,602.32 |
| MORGAN STANLEY INVESTMENT ADV | ZODIAC FUND MORGAN STAN US SEN | | | 82,664.01 | 1,229.02 | | | 83,893.03 |
| ORE HILL PARTNERS LLC | ORE HILL HUB FUND LTD | | | 500,000.00 | 7,433.85 | | | 507,433.85 |
| ROBECO INVESTMENT MGMT | ROBECO WPG DISTRESSED/SPECIAL | | | 500,000.00 | 7,433.85 | | | 507,433.85 |
| RZB FINANCE LLC | RZB FINANCE LLC | 650,000.00 | 4,962.33 | 1,000,000.00 | 14,867.70 | 550.00 | 177.78 | 1,670,557.80 |
| SCHULTZE ASSET MGMT | ARROW DISTRESSED SECURITIESFD | | | 200,000.00 | 2,973.54 | | | 202,973.54 |
| SCHULTZE ASSET MGMT | SCHULTZE MASTER FUND LTD | | | 2,800,000.00 | 41,629.55 | | | 2,841,629.55 |
| SILVER POINT CAPITAL | SPCP GROUP LLC | | | 1,000,000.00 | 14,867.70 | | | 1,014,867.70 |
| TACONIC CAPITAL ADVISORS | TACONIC OPPORTUNITY FUND LP | | | 6,500,000.00 | 96,640.04 | | | 6,596,640.04 |
| VAN KAMPEN INVESTMENTS | VAN KAMPEN SENIOR INCOME TRUST | | | 9,543,126.05 | 141,884.32 | | | 9,685,010.37 |
| VAN KAMPEN INVESTMENTS | VAN KAMPEN SENIOR LOAN FUND | | | 7,080,235.06 | 105,266.80 | | | 7,185,501.86 |
| WACHOVIA STRUCTURED CREDIT PRO | WACHOVIA STRUCTURED CREDIT PRO | | | 7,500,000.00 | 111,507.73 | | | 7,611,507.73 |
| WBNA | WACHOVIA PAR TRADING | | | 11,500,000.00 | 170,978.53 | | | 11,670,978.53 |
| WBNA | WBNA | 3,900,000.00 | 29,773.97 | | | 3,300.00 | 1,066.67 | 3,934,484.31 |
| WHITEHORSE CAPITAL PARTNERS | WHITEHORSE I, LTD | | | 1,000,000.00 | 14,867.70 | | | 1,014,867.70 |
| WHITEHORSE CAPITAL PARTNERS | WHITEHORSE II LTD | | | 1,000,000.00 | 14,867.70 | | | 1,014,867.70 |
| WHITEHORSE CAPITAL PARTNERS | WHITEHORSE III LTD | | | 1,500,000.00 | 22,301.55 | | | 1,522,301.55 |
| Total | | $ 13,000,000.00 | $ 99,246.58 | $ 265,000,000.00 | $ 3,939,939.95 | $ 11,000.00 | $ 3,555.56 | $ 282,054,085.84 |

1-NY/2150952.1

## U.S. Bankruptcy Court

## Western District of Pennsylvania

Notice of Electronic Claims Filing

The following transaction was received from Freedlander, Mark on 3/16/2007 at 12:33 PM EDT

**Case Name:** Le-Nature's
**Case Number:** 06-25454-MBM
**Creditor Name:** Wachovia Bank, National Association as Administrative Agent
Charlotte Plaza, CP.8
201 South College Street
Charlotte, NC 28288-0680
**Claim Number:** 196   Claims Register
**Total Amount Claimed:** $282054084.80

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** U:\E-Filings\06-25454 - Wachovia Proof of Claim.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1000342144 [Date=3/16/2007] [FileNumber=7040200-0
] [636fb94085ecab0f3ab7cbba9f05aebc96f68a827c5e91c23bf56c1d4e1ecc87587
804255ca172c149ee50b87aa11bcd53a2ec293996c8e391840cd0f0c40295]]
**Document description:** Attachment to Proof of Secured, Administrative and Unsecured Claim of Wachovia Bank, N.A. as Agent, and the Lenders Against the Debtors
**Original filename:** U:\E-Filings\06-25454 - Wachovia Proof of Claim.1.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1000342144 [Date=3/16/2007] [FileNumber=7040200-1
] [67fff348d4d3ebaa1c7e9fc96468388cd7c4ce5db8b3087228b0df25b5a6bc41acb
d4cc1a38c1afbc792549c7cfe8b90b621552faa54721b2560ad6724b8a60e]]

File another claim