# Exhibit F

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION


IN RE:                          )
                                )   CASE NO: 06-25454-MBM
                                )   Chapter 11
                                )
LE-NATURE'S, INC.,              )
                                )   Pittsburgh, Pennsylvania
                                )
        Debtor.                 )   Tuesday, August 21, 2007
                                )   (3:29 p.m. to 4:50 p.m.)
_____)


1) Doc. # 1282 and #1328 – CON'T RULE TO SHOW
CAUSE WHY CASE SHOULD NOT BE DISMISSED AND
CON'T MOTION TO CONVERT BY WACHOVIA BANK;

2) DOC # 1016 – CON'T MOTION FOR PAYMENT OF
ADMISTRATIVE EXPENSES CLAIM BY BISCHOF
AND KLEIN GmbH AND COMPANY


BEFORE THE HONORABLE M. BRUCE MCCULLOUGH,
UNITED STATES BANKRUPTCY JUDGE


Court Recorder:          Janet Heller

Transcribed By:          Exceptional Reporting Services, Inc.
                         14493 South Padre Island Drive
                         Suite A-400
                         Corpus Christi, TX 78418-5940
                         361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

<u>APPEARANCES FOR</u>:

| | |
|---|---|
| R. Todd Neilson: | RICHARD M. PACHULSKI, ESQ.<br>Pachulski et al, LLP<br>10100 Santa Monica Boulevard<br>11th Floor<br>Los Angeles, CA 90067 |

R. Todd Neilson:          RICHARD M. PACHULSKI, ESQ.
                          Pachulski et al, LLP
                          10100 Santa Monica Boulevard
                          11th Floor
                          Los Angeles, CA 90067

                          JAMES HELTON JOSEPH, ESQ.
                          Spilman Thomas and Battle, PLLC
                          One Oxford Centre
                          Suite 3440
                          301 Grant Street
                          Pittsburg, PA 15219

Wachovia Bank, NA:        MARK E. FREELANDER, ESQ.
                          BILL PRICE, ESQ
                          McGuire Woods, LLP
                          Dominion Tower
                          23rd Floor
                          625 Liberty Avenue
                          Pittsburgh, PA 15222

                          RICHARD TODER, ESQ
                          MENACHEM ZELMANOOVITZ, ESQ.
                          Morgan Lewis

Official Committee of     SHARON LEVIN, ESQ
Unsecured Creditors:      THOMAS PITTA, ESQ.
                          Lowenstein Sandler
                          65 Livingston Avenue
                          Roseland, NJ 07068

                          DAVID RUDOV, ESQ
                          Rudov & Stein
                          First And Market Bldg.
                          100 First Avenue, Suite 500
                          Pittsburgh, PA 15222

Ad Hoc Committee:         TOM MAYER, ESQ.
                          Kramer Levin Naftalis & Frankel
                          1177 Avenue of the Americas
                          New York, NY 10036

                          MATTHEW WILLIAMS, ESQ

                          ED WEISFELNER, ESQ.
                          BOB STARK, ESQ.

3

APPEARANCES FOR:   (Cont'd)


Merrill Lynch, et al.:   JEFFREY W. SPEAR, ESQ.
                         Duane Morris
                         600 Grant Street
                         Suite 5010
                         Pittsburgh, PA 15219


Harbinger Capital:       FRANK MERRILL, ESQ.


SCHEDULED TELEPHONIC
APPEARANCES FOR:

Ad Hoc Committee:        KRISTINA M. WESCH, ESQ
                         Kramer Levin

                         MITCHELL SUSSMAN, ESQ (Listen only)
                         Bear Stearns Investment Products

Ad Hoc Committee:        JAMES TECCE, ESQ
                         Quinn Emanuel, et al.

Wachovia Bank:           MATT OLSEN, ESQ
                         Morgan Lewis & Bockius

                         DOUG MUNDEL

Merrill Lynch Capital:   CAROLINE RECKLER, ESQ
                         Latham & Watkins

                         WILLIAM KATCHEN, ESQ
                         MARC KIRSCHNER, ESQ (Listen only)
                         Duane Morris

Minority Shareholders:   ROBERT A WEBER (Listen only)
                         TONY CLARK, ESQ
                         Skadden Arps Slate, et al.

Chapter 11 Trustee:      ILAN D. SCHARF, ESQ
                         BRUCE GROHSGAL, ESQ
                         DEBRA GRASSGREEN, ESQ
                         STAN GOLDICH, ESQ (Listen only)
                         Pachulski Stang Ziehl, et al.


CIT Group/Equipment      ANDREW ECKSTEIN, ESQ
Financing, Inc.

4

<u>SCHEDULED TELEPHONIC</u>
<u>APPEARANCES FOR:</u>


Ameritech Credit:          MICHAEL C. MOODY, ESQ
                           O'Rourke Katten & Moody

BDO Seidman:               THOMAS R. CALIFANO, ESQ
                           CARY B. SAMOWITZ, ESQ
                           DLA Piper, U.S. LLP

Bischof & Klein:           VICTORIA WATSON COUNIFIAN, ESQ
                           Greenberg Traurig

National City and          SHERRY D. LOWE, ESQ
People's Capital:          Lamm Rubenstone, et al.

Dow Jones Newswires:       PEG BRICKLEY (Listen only)

Official Committee of      JACK SHERWOOD, ESQ
Unsecured Creditors:       Lowenstein Sandler

5

1    **Pittsburgh, Pennsylvania; Tuesday, August 21, 2007; 3:29 p.m.**

2                        **(Call to Court)**

3            THE COURT:  Okay.  We have bankruptcy Number 06-25454

4    Le-Nature's, Inc.  We have some people on the phone.  We're

5    familiar with that.  But we don't need to get their appearance.

6    We'll assume what we've got -- received before, and then we

7    have appearances in the courtroom, and we'll take those

8    appearances.  I'm not going to write them down, we rely on the

9    record for those appearances.

10           MR. PACHULSKI:  Thank you, your Honor.  Richard

11   Pachulski, Pachulski, Stang, Ziehl, Young, Jones and Weintraub.

12   I'm also here with Jim Joseph of the Spilman firm on behalf of

13   the Chapter 11 trustee.

14           THE COURT:  Okay.

15           MS. LEVIN:  Good afternoon, your Honor, Sharon Levin

16   and Tom Pitta from Lowenstein, Sandler, along with David Rudov

17   for the unsecured creditors committee.

18           THE COURT:  Okay.

19           MR. MAYER:  Good afternoon, your Honor.  Tom Mayer

20   from Kramer, Levin.  With me is my colleague Matthew Williams

21   and our local counsel, Jeff Spear of Duane Morris for the ad

22   hoc subordinating note holder's committee.

23           MR. MERRELL:  Good afternoon, your Honor.  Frank

24   Merrell, a member of Stettman, Treaster and Glad (phonetic),

25   Professional Corporation on behalf of Harbinger Capital.

6

1          **MR. WEISFELNER:** Judge, good afternoon, Ed

2  Weisfelner, of Brown, Rudnick, Burlach, Israel (phonetic), on

3  behalf of the ad hoc committee of secured lenders, here with

4  our local counsel and my colleague Bob Stark, as well.

5          **MR. FREEDLANDER:** Your Honor, good afternoon.  Mark

6  Freedlander, Bill Price and McGuire Woods, co-counsel to

7  Wachovia.  With me is Richard Toder, Mandy Zelmanovitz

8  (phonetic) of Morgan Lewis as counsel to Wachovia Bank.

9          **THE COURT:** Okay.  This gentleman here?

10          **MR. FREEDLANDER:** Bill Price.

11          **MR. PRICE:** Bill Price.

12          **THE COURT:** Oh.

13          **MR. PACHULSKI:** Your Honor, I didn't know whether you

14  preferred a particular order.  We were prepared to go forward

15  with the order to show cause in the motion to convert.  There

16  are some issues that people had asked for, I believe, Mr.

17  Toder, an update on the sales status, but I thought that that

18  should be toward the end of the hearing.  Actually, we prefer

19  that be in closed session if possible.

20          **THE COURT:** Well, let's get the motion for payment

21  administrative expenses claim out of the way.

22          **MR. PACHULSKI:** That's easy, your Honor.  We have a

23  stipulation that I would hand up to you if that's possible.

24          **THE COURT:** Okay.

25          **MR. TODER:** Your Honor, would you be prepared to

7

1  entertain a brief remark on scheduling as a thought process?

2          THE COURT:  Let me -- a stipulation.  Is this --

3          MR. TODER:  I'm --

4          THE COURT:  -- signed?

5          MR. PACHULSKI:  My understanding, your Honor, is

6  Wachovia has no objection to these.

7          MR. FREEDLANDER:  Oh, oh no.  I apologize, no

8  objection.

9          MR. PACHULSKI:  No, I just -- I didn't think so.

10          THE COURT:  Okay.  We'll enter the stipulated order.

11          MR. PACHULSKI:  Thank you, your Honor.  That was the

12  one non-controversial issue.

13          THE COURT:  Okay.  Got that out of the way.

14          MR. PACHULSKI:  Your Honor, that leaves the order to

15  show cause and the motion to convert as one matter and any

16  status, your Honor, we'd like on the sale, which I had stated

17  would prefer to be at the end of the calendar in closed

18  session.  Mr. Toder or anybody else may have a different view

19  on that, but that would be my recommendation on behalf of the

20  Trustee.

21          THE COURT:  I'm not going to do it in closed session.

22          MR. TODER:  Might I be heard on the order, your

23  Honor?

24          MR. PACHULSKI:  Your Honor, if I could make one point

25  then.  If it was -- just so it's fully on the record.  If it

8

1   won't be in closed session, I clearly understand that.  It

2   would be my request on behalf of the Trustee, that since it's

3   not on today's calendar, that it wait for a date that we set up

4   a specific status conference on the matter, when additional

5   work has been done, vis a vis the purchase and sale

6   transaction.

7           THE COURT:  But going forward?

8           MR. PACHULSKI:  Excuse me?

9           THE COURT:  Purchase and sale transaction is going

10  forward?

11          MR. PACHULSKI:  That's a possibility, but not quite

12  finalized at this point, your Honor.

13          THE COURT:  Well, it seems to me that we have to

14  determine the status of that, given what I've been advised of

15  the issue.

16          MR. PACHULSKI:  Well, at this moment, your Honor,

17  we're doing an investigation.  That's the problem we've -- I

18  believe your Honor was advised as of Thursday, we have taken --

19  we have sent out discovery.  We have taken some discovery

20  actually on Monday, but it's very preliminary, and we're asking

21  all the parties to cooperate.

22          So we have very preliminary views on it, your Honor,

23  but have not done even close to a complete investigation, and

24  I'm not sure it would be appropriate to do a piecemeal and

25  state pieces of it until we had actually more information.

9

1          **THE COURT:**  I know that, but if this involves the

2     sale, where's the sale?

3          **MR. PACHULSKI:**  Well, your Honor, the sale issue is -

4     - our understanding is that the successful bidder is prepared

5     to close, and there is going to be an issue as to whether that

6     successful bidder -- we have asked the bidder whether they

7     would close without a good faith finding, and we have not

8     received a response, as of yet.

9          And if the bidder is not prepared --

10         **THE COURT:**  Given what I understand the issue to be,

11    why would we even bother with the closing until we get done

12    with the investigation?

13         **MR. PACHULSKI:**  Well, your Honor, if the bidder was

14    prepared to go forward without a good faith finding, we would

15    be able to obtain all of our rights, and at least get money

16    into the estate.

17         **THE COURT:**  Yeah, and then we just unravel it all and

18    then we have more litigation.  Give me a break.  I wasn't just

19    born yesterday.

20         **MR. PACHULSKI:**  Well, your Honor, we're not looking

21    to unravel the transaction necessarily.  We're looking to

22    retain all rights to damages that may be related to the

23    transaction.  But if your Honor's view is it should not close

24    until the transaction's complete, we will deal with that, but

25    there's also an issue of the back-up bidder, where we may have

1    no choice but to close or we lose the back-up bidder by August

2    31st.

3         **THE COURT:**  I understand.  And that's a decision

4    you're going to have to make.

5         **MR. PACHULSKI:**  Correct, your Honor.  And the issue

6    is, and what we would propose to do when we know the position

7    of both the primary bidder and the back-up bidder, is to file a

8    formal pleading advising your Honor and having your Honor make

9    the determination.  Because the Trustee's view may be a

10   willingness to close without a -- if the successful purchaser

11   is willing to go without a good faith finding, but if your

12   Honor is unprepared to do that, then frankly, we would go with

13   a second bidder.

14        But we're trying to unravel it, your Honor.  We've

15   known about this for less than a week, and we're doing the best

16   we can.

17        **THE COURT:**  I understand, and I'm not any happier

18   than you are to be put in this position.  But we've got to deal

19   with what --

20        **MR. PACHULSKI:**  I -- your Honor, I --

21        **THE COURT:**  -- was flung at us.

22        **MR. PACHULSKI:**  -- I could not agree with you more.

23   We're doing it as quickly as we can.  We have had at least one

24   of the bidders who did immediately cooperate and gave us some

25   discovery.  We have to do it with the other party.  There may

1   be some other third parties --

2           THE COURT:  31st is the deadline?

3           MR. PACHULSKI:  Yes, your Honor.  31st if we -- we

4   will -- we have requested from the back-up bidder an extension.

5   We have stated the reason for the extension and they have --

6   they have to get back to us whether they are willing to extend

7   the August 31st date.

8           We tried to get that answer prior to the hearing, but

9   they were not able to go up the management flagpole to make

10  that final determination.

11          THE COURT:  Well then, let's just set a hearing right

12  here and now for August 30th at 2:00 o'clock.

13          MR. PACHULSKI:  That'll be fine, your Honor.

14          THE COURT:  Does that give you time so we --

15          MR. PACHULSKI:  That gives us -- in all, your Honor,

16  we are pushing it as hard as possible.  I would be surprised --

17          THE COURT:  I mean, if we decide to take the back-up

18  bidder, we can deal with the back-up bidder on August 30th?

19          MR. PACHULSKI:  I believe we can.  We will tell them

20  they better be prepared to close by August 31st, so we will

21  tell them to be prepared to do that, and we will have your

22  Honor make the final determination on August 30th.  I think

23  that's fair, your Honor.

24          THE COURT:  Okay.

25          MR. TODER:  Under those -- Richard Toder, your Honor,

12

1    for Wachovia.  Under those circumstances, I think we've sort of

2    completed the item, with respect for today at least, regarding

3    the Latrobe sale and that was all I wanted.  I thought it was

4    important to be done first, quite frankly, not last, because of

5    the obvious importance to the other issues.

6              **THE COURT:**  Okay.

7              **MR. WEISFELNER:**  Your Honor, I think it's important

8    just to add one other thing with regard to Latrobe, and I know

9    your Honor's going to hear more about this from the parties

10   that are most directly affected, and those are the unsecured

11   creditors, but.

12             So that everyone's crystal clear, in terms of the

13   mechanics of the plan; the plan works and is confirmable,

14   whether or not Latrobe closes.  The proceeds that would

15   otherwise have been available from the Latrobe sale, that would

16   have funded the trust, will otherwise be supplied by virtue of

17   exit financing that the lenders are committed to.  Now, it'd be

18   nice to have Latrobe proceeds, it'd be nice not to have had

19   this controversy arise.  But frankly, it doesn't, and shouldn't

20   affect the timing of the plan process or the mechanics of

21   closing on the plan.  I just want your Honor to be clear that

22   the plan doesn't depend on Latrobe closing.

23             **THE COURT:**  You really think ten days makes a

24   difference one way or another with the plan?

25             **MR. WEISFELNER:**  Of course not.

13

1          **THE COURT:**  Then sit down.

2          **MR. PACHULSKI:**  Your Honor, on the -- I assume we're

3     moving now to the order show cause and the motion to convert?

4          **THE COURT:**  Sure.

5          **MR. PACHULSKI:**  Your Honor, I think Counsel for the

6     committee, you had asked a very direct and specific question at

7     the last hearing regarding why it's in the estate's best

8     interests, particularly the unsecured creditors, to pursue a

9     plan, and I think actually committee Counsel who represents the

10    interests of the unsecured creditors should go first.  I think

11    Mr. Mayer, on behalf of another group of unsecured creditors

12    wants to speak, and then I would go after them.

13         **THE COURT:**  Okay.

14         **MS. LEVIN:**  Thank you, your Honor.  Your Honor raised

15    the concern at the last hearing --

16         **THE COURT:**  Your name?

17         **MS. LEVIN:**  I'm sorry, Sharon Levin, Lowenstein

18    Sandler for the unsecured creditor's committee.

19         Your Honor raised a concern at the last hearing with

20    regard to how the unsecured creditors benefit under a plan of

21    reorganization, under a plan of liquidation and a Chapter 11,

22    completing the Chapter 11 process, as opposed to, for example,

23    dismissal or conversion.

24         We would respectfully submit, your Honor, that a

25    Chapter 11 plan process is really the only way that unsecured

14

1   creditors have a realistic hope of obtaining a recovery in this

2   particular case.

3          While we're glad to see the Latrobe sale process move

4   forward and we're cautiously optimistic that these issues which

5   are currently obstructing that sale will get resolved on or

6   before the August 30th hearing, our hope for recovery lies

7   exclusively within the tort claims and the other estate causes

8   of action, which we believe have values in excess of several

9   hundred millions, if not a billion dollars.  And we're looking

10  to start that process.

11         **THE COURT:**  We have a billion dollars of damages

12  here.  Give me a break.

13         **MS. LEVIN:**  Well, our understanding, your -- all

14  right, fine.  Then let's see we go with 300 million, 400

15  million, 500 million --

16         **THE COURT:**  I just don't want to talk big numbers if

17  we don't have to.

18         **MS. LEVIN:**  That's fine.  Tort claims of as of now,

19  your Honor, unliquidated damage claims.  What's clear is that

20  we get no recovery in a Chapter -- in a dismissal.  And, in

21  fact, we lose the right to the estate causes of action, because

22  they disappear.

23         In a conversion, your Honor, while there are other

24  constituents in this case who are represented by ad hoc

25  committees, have pooled resources, and pooled assets, the