# Exhibit G, Part I

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>Le-Nature's, Inc., *et al.*,<br><br><br><br>Debtors. | Chapter 11<br>Case No. 06-25454 (MBM)<br><br>Jointly Administered |

SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
THE *AD HOC* COMMITTEE OF SECURED LENDERS, AND THE
*AD HOC* COMMITTEE OF SENIOR SUBORDINATED NOTEHOLDERS

Dated June 18, 2007

**RUDOV & STEIN, P.C.**
David K. Rudov
100 First Avenue, Suite 500
Pittsburgh, PA 15222
(412) 281-7300


-and-

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen
John K. Sherwood
Sharon L. Levine
65 Livingston Avenue
Roseland, NJ 07068
(973) 597-2500

Co-Counsel to the Official
Committee of Unsecured Creditors

**MANION MCDONOUGH
& LUCAS P.C.**
James G. McLean
600 Grant Street, Suite 1414
Pittsburgh, PA 15219
(412) 232-0200


-and-

**BROWN RUDNICK BERLACK
ISRAELS LLP**
Edward S. Weisfelner
Robert J. Stark
Daniel J. Saval
7 Times Square
New York, NY 10036
(212) 209-4800

Co-Counsel to the *Ad Hoc*
Committee of Secured Lenders

**DUANE MORRIS LLP**
Joel Walker
Jeffrey Spear
600 Grant Street, Suite 5010
Pittsburgh, PA 15219-2811
(412) 497-1000


-and-

**KRAMER LEVIN NAFTALIS &
FRANKEL LLP**
Thomas Moers Mayer
Matthew J. Williams
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Co-Counsel to the *Ad Hoc* Committee
of Senior Subordinated Noteholders

## THIS PLAN OF LIQUIDATION IS BEING SUBMITTED TOGETHER WITH A PROPOSED DISCLOSURE STATEMENT FOR APPROVAL BUT HAS NOT YET BEEN APPROVED FOR DISSEMINATION BY THE COURT

# TABLE OF CONTENTS

**Page**

| | | | |
|---|---|---|---|
| Article I | DEFINITIONS; RULES OF INTERPRETATION; AND COMPUTATION OF TIME | | 1 |
| | Section 1.01 | Definitions. | 1 |
| | Section 1.02 | Rules of Interpretation. | 14 |
| | Section 1.03 | Computation of Time. | 15 |
| Article II | METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS; GENERAL PROVISIONS | | 15 |
| | Section 2.01 | General Rules of Classification. | 15 |
| | Section 2.02 | Holder of Claims Entitled to Vote. | 15 |
| | Section 2.03 | Acceptances by Impaired Classes. | 15 |
| | Section 2.04 | Non-Consensual Confirmation. | 15 |
| | Section 2.05 | Administrative Claims, Priority Tax Claims, and Fee Claims. | 16 |
| Article III | TREATMENT OF UNCLASSIFIED CLAIMS | | 16 |
| | Section 3.01 | Administrative Claims. | 16 |
| | | (a) Administrative Claims Bar Date | 16 |
| | | (b) Treatment. | 16 |
| | Section 3.02 | Priority Tax Claims. | 16 |
| | | (a) Governmental Unit Claims Bar Date | 16 |
| | | (b) Treatment. | 17 |
| | Section 3.03 | Fee Claims. | 17 |
| | | (a) Fee Claims Bar Date | 17 |
| | | (b) Treatment. | 17 |
| Article IV | DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS | | 18 |
| | Section 4.01 | Summary. | 18 |
| Article V | TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS | | 18 |
| | Section 5.01 | Class 1: Lenders Secured Claims. | 18 |
| | | (a) Classification. | 18 |
| | | (b) Allowance. | 18 |
| | | (c) Treatment. | 19 |
| | Section 5.02 | Class 2: Other Secured Claims. | 19 |
| | | (a) Classification. | 19 |
| | | (b) Treatment. | 19 |
| | Section 5.03 | Class 3: Priority Non-Tax Claims. | 19 |
| | | (a) Classification. | 19 |
| | | (b) Treatment. | 19 |
| | Section 5.04 | Class 4A: Lenders Unsecured Claims. | 20 |
| | | (a) Classification. | 20 |
| | | (b) Allowance. | 20 |
| | | (c) Treatment. | 20 |
| | Section 5.05 | Class 4B: General Unsecured Claims. | 20 |

|  |  | (a) | Classification | 20 |
|  |  | (b) | Treatment | 20 |
|  | Section 5.06 | Class 4C: Unsecured Senior Subordinated Notes Claims. | | 21 |
|  |  | (a) | Classification | 21 |
|  |  | (b) | Allowance | 21 |
|  |  | (c) | Treatment | 21 |
|  | Section 5.07 | Class 5: Subordinated Litigation Claims. | | 23 |
|  |  | (a) | Classification | 23 |
|  |  | (b) | Treatment | 23 |
|  | Section 5.08 | Class 6: Interests. | | 23 |
|  |  | (a) | Classification | 23 |
|  |  | (b) | Treatment | 23 |

Article VI    CONDITIONS PRECEDENT ................................................................................23

    Section 6.01    Conditions to Confirmation. ...........................................................23

    Section 6.02    Conditions to the Effective Date. ....................................................25

    Section 6.03    Waiver of Conditions. .....................................................................26

    Section 6.04    Effect of Nonoccurrence of the Conditions to the Effective Date. ......26

Article VII    MEANS FOR IMPLEMENTATION ....................................................................27

    Section 7.01    Substantive Consolidation. ..............................................................27
        (a)    Effect of Substantive Consolidation ...........................................27
        (b)    Plan as Motion for Approval of Substantive Consolidation ........27

    Section 7.02    The Liquidation Trust. .....................................................................27
        (a)    Creation of Liquidation Trust .....................................................27
        (b)    Federal Income Tax Treatment of the
               Liquidation Trust for the Liquidation Trust Assets ....................28
               (i)    Liquidation Trust Assets Treated as
                      Owned by Holders of Allowed Claims ............................29
               (ii)   Tax Reporting ...............................................................29
               (iii)  Dissolution ....................................................................30
        (c)    Vesting and Transfer of Assets to the Liquidation Trust ............30
        (d)    Appointment of the Liquidation Trustee. ....................................31
        (e)    The Liquidation Trust Oversight Board. ......................................31
               (i)    Appointment of the Liquidation Trust Oversight Board ........31
               (ii)   Authority of the Liquidation Trust Oversight Board ..............31

    Section 7.03    Approval of Exit Financing. .............................................................31

    Section 7.04    Investigations Aiding Administration of the Estates. .......................31
        (a)    Continuation of Rights Under Bankruptcy Rule 2004 ...............31
        (b)    Approval of "Joint Interest" Agreement .....................................32

    Section 7.05    Prosecution and Resolution of Estate Causes of Action. .................32
        (a)    The Liquidation Trust's Exclusive Authority
               To Pursue, Settle, or Abandon Estate Causes of Action ............32
        (b)    Settlement of Estate Causes of Action. .......................................32
        (c)    Authority of Members of the Liquidation Trust
               Oversight Committee to Retain Attorneys in Certain Circumstances....................32
        (d)    Reservation of Rights Regarding Prosecution of Causes of Action........................33

    Section 7.06    Delivery of the Lenders Distribution Agreement...............................33

Section 7.07    Release of Liens and Perfection of Liens...........................................................33

Section 7.08    Cancellation of Documents.....................................................................................34

Section 7.09    Termination of Official Creditors' Committee and Chapter 11 Trustee. ...............34

Article VIII    PROVISIONS GOVERNING DISTRIBUTIONS .................................................................35

Section 8.01    Distributions to Holders of Lenders Claims and Senior Subordinated Notes. ....................35
    (a)    Distributions Through the Lenders Distribution Agent
        And the Senior Subordinated Notes Indenture Trustee ...........................35
    (b)    Satisfaction of Charging Liens ...............................................................35
    (b)    Distribution of the Proceeds of TSI/Holdings Property..........................36

Section 8.02    Provisions Concerning Distributions to
    Holders of Allowed Class 1 and Class 4A Claims. .................................................36

Section 8.03    Provisions Concerning Disputed Claims Reserves. ................................................36
    (a)    Establishment of Disputed Claims Reserves ..........................................36
    (b)    Amounts to Be Reserved .........................................................................37
    (c)    Distributions ............................................................................................37
    (d)    Termination of Disputed Claim Reserve .................................................37
    (e)    Limitation of Liability for Funding the Disputed Claim Reserve............38

Section 8.04    Transmittal of Distributions and Notices. ..............................................................38

Section 8.05    Setoffs.......................................................................................................................38

Section 8.06    Withholding Taxes and Expenses of Distribution. .................................................38

Section 8.07    Allocation of Plan Distributions between Principal and Interest. ...........................38

Section 8.08    Disputed Identity of Holder. ...................................................................................38

Section 8.09    Transfers of Claims..................................................................................................39

Section 8.10    Method of Cash Distributions..................................................................................39

Section 8.11    De Minimis Distributions. .......................................................................................39

Section 8.12    No Distribution in Excess of Allowed Amount of Claim. .......................................39

Section 8.13    Exemption from Certain Transfer Taxes. ................................................................39

Article IX    EXECUTORY CONTRACTS AND LEASES .............................................................40

Section 9.01    Rejection of Contracts and Leases. .........................................................................40

Section 9.02    Bar Date For Rejection Damages. ...........................................................................40

Article X    DISPUTED, CONTINGENT AND  UNLIQUIDATED CLAIMS AND INTERESTS ...............40

Section 10.01    Allowance of Certain Lenders Claims. ..................................................................40

Section 10.02    Objections to Other Claims and Interests. ..............................................................40

Section 10.03    Estimation of Claims or Interests............................................................................41

Section 10.04    Alleged Equipment Leases. ....................................................................................42

Section 10.05    Amendments to Claims or Interests. .......................................................................42

Section 10.06    Authority To Settle Disputed Claims or Interests. .................................................42

Section 10.07    No Recourse..............................................................................................................42

Article XI    EFFECTS OF CONFIRMATION .................................................................................43

Section 11.01   Retention of Estate Causes of Action/Reservation of Rights...................43

Section 11.02   Direct Causes of Action.............................................................43

Section 11.03   Compromise of Controversies. ....................................................43

Section 11.04   Preservation of Insurance ..........................................................43

Section 11.05   Term of Injunctions or Stays......................................................43

Section 11.06   Exculpation. ............................................................................44

Section 11.07   Injunction. ...............................................................................44

Section 11.08   No Releases for Specified Parties. ..............................................44

Article XII     RETENTION OF JURISDICTION ...............................................45

Section 12.01   Retention of Exclusive Jurisdiction by the Bankruptcy Court. ..........45

Section 12.02   Retention of Non-Exclusive Jurisdiction by the Bankruptcy Court. ...47

Article XIII    MISCELLANEOUS PROVISIONS................................................47

Section 13.01   Amendments. ...........................................................................47
    (a)         Pre-Confirmation Amendments ..........................................47
    (b)         Postconfirmation/Preconsummation Amendment Not Requiring Resolicitation ....47
    (c)         Postconfirmation/Preconsummation Amendment Requiring Resolicitation ..........47

Section 13.02   Subrogation..............................................................................47

Section 13.03   Severability. ............................................................................48

Section 13.04   Successors and Assigns. .............................................................48

Section 13.05   Governing Law. ........................................................................48

Section 13.06   Effectuating Documents and Further Transactions. .........................48

Section 13.07   Intentionally omitted..................................................................48

Section 13.08   Confirmation Order and Plan Control............................................48

Section 13.09   Payment of Statutory Fees. ........................................................48

Section 13.10   Withdrawal of Plan. ..................................................................49

Section 13.11   Payment Dates. ........................................................................49

Section 13.12   Notices....................................................................................49

Article XIV     CONFIRMATION REQUEST .....................................................51

## PLAN INTRODUCTION AND SUMMARY

The Official Creditors' Committee, the Ad Hoc Lenders' Committee, and the Ad Hoc Noteholders' Committee jointly propose this Plan. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, the Chapter 11 cases, risk factors, summary and analysis of the Plan, and certain other related matters. All parties entitled to vote on the Plan should review the Disclosure Statement and the terms of the Plan before voting to accept or reject the Plan. In addition, there are other agreements and documents that are attached to the Disclosure Statement in substantially final form that are referenced in the Plan and/or Disclosure Statement, and that will be available for review. No solicitation materials, other than the Disclosure Statement and related materials transmitted herewith and approved by the Bankruptcy Court, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

The Plan provides for the liquidation of Assets of the Estates, including the investigation and prosecution of Estate Causes of Action, by a Liquidation Trust to be formed pursuant to the Plan and a Liquidation Trust Agreement. The Liquidation Trust is to be managed by a Liquidation Trustee, as well as by a Liquidation Trust Oversight Board selected by the Official Creditors' Committee, the Ad Hoc Lenders' Committee, and the Ad Hoc Noteholders' Committee. The Liquidation Trust shall be responsible for making distributions to holders of Claims and Interests, as well as all other administrative tasks necessary for ultimate resolution of the Chapter 11 cases, per the terms of the Plan and the Liquidation Trust Agreement. Distributions otherwise allocable on account of Disputed Claims shall be placed in Disputed Claims Reserves pending adjudication of the Claims.

At the heart of the Plan are compromises regarding, among other things: (a) the Allowed amount and priority of the Lenders Secured Claims; (b) the extent to which holders of Lenders Secured Claims may successfully assert that they hold Liens on Assets of the Estates or the proceeds thereof, including Estate Causes of Action; and (c) the extent to which Claims held by holders of Senior Subordinated Notes are structurally and/or contractually subordinated to the Claims held by Lenders. As part of this compromise, the Allowed amount, as well as seniority (both structural and contractual), of Lenders Claims is fixed by the Plan and, after the Effective Date, shall be not be subject to objection, defense, avoidance, offset, subordination, or reduction of any kind (subject to Wachovia Claims being deemed Disputed Claims as provided herein). The Plan also contemplates a sharing of distributions allocable to holders of Senior Subordinated Notes with the Lenders, on account of their unsecured deficiency Claims, if any.

The Plan constitutes a motion for approval of all such settlements pursuant to Bankruptcy Rule 9019, which motion is a critical component of the Plan.

## ARTICLE I

## DEFINITIONS; RULES OF INTERPRETATION;
## AND COMPUTATION OF TIME

Section 1.01  **Definitions**.  Capitalized terms used herein shall have the following meanings:

"**Acceptance**" or "**Accept**" means acceptance of the Plan by a Class of holders of Claims or Interests pursuant to Bankruptcy Code Section 1126(c) or (d).

"**Ad Hoc Lenders' Committee**" means the unofficial committee appearing in these Chapter 11 Cases comprised of Lenders, represented by the law firms Marion McDonough & Lucas P.C. and Brown Rudnick Berlack Israels LLP.

"**Ad Hoc Noteholders' Committee**" means the unofficial committee appearing in these Chapter 11 Cases comprised of Entities and/or Persons holding Senior Subordinated Notes, represented by the law firms Duane Morris LLP and Kramer Levin Naftalis & Frankel LLP.

"**Administrative Claims Bar Date**" means 4:00 p.m. (Eastern) on the date that is the first Business Day after the date that is twenty (20) days after the Effective Date.

"**Administrative Claim**" means a Claim against a Debtor for costs and expenses of administration under Bankruptcy Code Section 503(b) entitled to priority in payment under Bankruptcy Code Section 507(a), or under Bankruptcy Code Section 502(f), including but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date for preserving the Estates and/or operating the Debtors' businesses; (b) cure costs associated with the assumption or assumption and assignment of executory contracts and unexpired leases pursuant to Bankruptcy Code Section 365; and (c) all fees and charges assessed against an Estate under Section 1930 of title 28 of the United States Code.  The term "Administrative Claim" herein shall exclude Fee Claims.

"**Allowed Claim**" or "**Allowed Interest**" means a Claim or Interest that is Allowed under the Plan and, therefore, is not subject to disallowance, defense, reduction, avoidance, setoff, or subordination of any kind.  The term "Allowed Claim" or "Allowed Interest" also means any Claim or Interest to the extent: (a) such Claim or Interest is scheduled by a Debtor pursuant to the Bankruptcy Code and Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, zero, undetermined or disputed; or (b) a proof of such Claim or Interest was timely filed, or deemed timely filed, with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable Final Order, or late filed with leave of the Bankruptcy Court; and, in either case, (i) is not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Bankruptcy Court or (ii) has otherwise been allowed by a Final Order.  An "Allowed Claim" or "Allowed Interest": (y) includes a previously Disputed Claim or Interest to the extent such Disputed Claim or Interest becomes Allowed when the context so requires; and (z) shall be net of any valid setoff or recoupment amount based on a valid offset or recoupment right.  Except as otherwise expressly provided herein, the term "Allowed Claim" or "Allowed Interest" shall not, for the purposes of computation of distributions under the Plan, include (i) any non-compensatory penalties, fines, punitive damages, exemplary damages, multiple damages, treble damages or any other claims or obligations that do not compensate for actual losses incurred, (ii) any other amounts not allowable under the Bankruptcy Code or applicable law.

"**Assets**" means (a) all assets and properties of every kind, nature, character and description (whether real, personal, or mixed, whether tangible and intangible (including contract rights), wherever situated and by whomever possessed), including the goodwill related thereto,

operated, owned or leased by the Debtors that constitute property of the Estates within the purview of Bankruptcy Code Section 541, including without limitation and any all claims, Estate Causes of Action or rights of the Debtors under federal, state, or foreign law, letters of credit issued for or on behalf of the Debtors and the monies deposited to secured the performance of any contract or lease by the Debtors or any affiliate thereof; and (b) the proceeds, products, rents and profits of any of the foregoing.

"**Available Cash**" means Cash held by the Liquidation Trust, available from time to time, for operating purposes and/or for distribution to holders of Allowed Claims or Allowed Interests in accordance with the Plan and the Liquidation Trust Agreement.

"**Avoidance Actions**" means any claims, rights, defenses, or other Causes of Action arising under any Section of Chapter 5 of the Bankruptcy Code, including without limitation, Bankruptcy Code Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553, or under similar or related state or federal statutes and common law, including state fraudulent transfer laws, whether or not prosecution of such actions has commenced as of the Confirmation Date or the Effective Date, and whether or not standing to bring such claims is held by the Chapter 11 Trustee, any other representative of the Estates, any party-in-interest, or any other Entity or Person.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101 - 1130, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of Pennsylvania, or such other court having jurisdiction over these Chapter 11 Cases or any proceeding within, or appeal of an order entered in, the Chapter 11 Cases.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms and the local rules and general orders of the Bankruptcy Court, and as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

"**BDO Seidman**" means BDO Seidman, LLP and any affiliated Entities or Persons, in any capacity.

"**Business Day**" means any day, other than a Saturday, Sunday or a "legal holiday" (as such term is defined by Bankruptcy Rule 9006(a)).

"**Cash**" means money that is legal tender of the United States of America or the indubitable equivalent thereof.

"**Cash Collateral**" means all Cash or other money proceeds of any Lenders Collateral.

"**Causes of Action**" means any and all claims, rights, defenses, offsets, recoupments, actions in law or equity or otherwise, causes of action, choses in action, suits, damages, rights to legal or equitable remedies, judgments, third-party claims, counterclaims and cross-claims against any Entity or Person, whether arising under the Bankruptcy Code or federal, state,

common, or other law, regardless of whether the subject of pending litigation or proceedings on the Confirmation Date, the Effective Date, or thereafter, including but not limited to: (a) all Avoidance Actions; (b) all other claims in avoidance, recovery, subordination; and (c) all other actions described in the Disclosure Statement, the Schedules, and the Plan.

"**Chapter 11 Cases**" means the jointly administered Chapter 11 cases of the Debtors pending before the Bankruptcy Court and bearing case number 06-25454 (MBM).

"**Chapter 11 Trustee**" means R. Todd Neilson, or any successor thereto.

"**Claim**" has the meaning ascribed to such term in Bankruptcy Code Section 101(5).

"**Claims/Interest Objection Deadline**" means the last day for filing objections to Claims, including but not limited to Administrative Claims, and Interests as provided in Article X of the Plan.

"**Class**" means a category of holders of Claims or Interests, as described in Article III of this Plan.

"**Confirmation**" means confirmation of the Plan pursuant to the Bankruptcy Code Section 1129.

"**Confirmation Date**" means the date upon which the Confirmation Order is entered on the docket maintained by the Bankruptcy Court pursuant to Bankruptcy Rule 5003.

"**Confirmation Hearing**" means the hearing before the Bankruptcy Court at which the Plan is confirmed.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code Section 1129.

"**Creditor**" has the meaning ascribed to such term in Bankruptcy Code Section 101(10).

"**Debtor(s)**" means, in singular form, Le-Nature's, Le-Nature's Holdings or TSI and, in plural form, all of Le-Nature's, Le-Nature's Holdings and TSI.

"**Disallowed**" means a Claim or Interest or any portion thereof that: (a) has been disallowed or expunged by a Final Order; (b) has been withdrawn, in whole or in part, by the holder thereof or by agreement with the Debtors, Chapter 11 Trustee, or Liquidation Trust; (c) is scheduled at zero or as contingent, disputed or unliquidated and as to which no proof of Claim has been filed by the applicable bar date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order; or (d) is not scheduled in the Schedules and as to which no proof of Claim has been timely filed by the applicable bar date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order.

"**Disclosure Statement**" means the disclosure statement with respect to the Plan, including all exhibits, appendices, schedules and annexes attached thereto, prepared and

submitted approved by the Bankruptcy Court pursuant to Bankruptcy Code Section 1125, as it may be altered, amended, supplemented or modified from time to time, and distributed in accordance with Bankruptcy Code Sections 1125 and 1126 and Bankruptcy Rule 3018.

"**Disputed Amount**" means an amount equal to the total of that portion (including, when appropriate, the whole) of a Claim or Interest that is a Disputed Claim or Disputed Interest.

"**Disputed Claim**" or "**Disputed Interest**" means any Claim or Interest (other than a Claim or Interest Allowed under the Plan) that: (a) is listed in the Schedules as disputed, contingent or unliquidated and for which a proof of Claim or Interest has been timely filed pursuant to the Plan, the Bankruptcy Code, or any Final Order; (b) is objected to in whole or in part on or before any applicable deadline or for which a request for estimation has been timely filed in accordance with the Plan, Bankruptcy Code, Bankruptcy Rules, or any Final Order and as to which no Final Order Allowing such Claim has been entered; or (c) is held by an Entity or Person that is adverse to any Estate in any litigation or contested matter pending or which the Liquidation Trust believes in good faith is reasonably likely to be asserted at the time of a distribution and as to which no Final Order resolving such litigation or contested matter has been entered.  To the extent an objection relates to the Allowance of only part of a Claim or Interest, such Claim or Interest shall be a Disputed Claim or Disputed Interest only to the extent of the objection.

"**Disputed Claims Reserve**" shall have the meaning ascribed to such term in Section 7.02(b)(ii) of the Plan.

"**Distribution Address**" means: (a) the address indicated on any notice of appearance filed by an Entity or Person, or its/his authorized agent prior to the Effective Date; or (b) if no notice of appearance has been filed, the address indicated on a properly filed proof of Claim or Interest or, absent such a proof of Claim or Interest, the address set forth in the Schedules or register maintained for registered securities; provided, however, that any Entity or Person may, after the Effective Date, select an alternative Distribution Address by filing a notice with the Bankruptcy Court (copy served on the Liquidation Trustee) identifying such alternative Distribution Address.

"**Distribution Date(s)**" means the date or dates on which the Liquidation Trust makes a distribution pursuant to this Plan.

"**E&Y**" means Ernst & Young and any affiliated Entities or Persons, in any capacity.

"**Effective Date**" means: (a) if no stay of the Confirmation Order is in effect, the first Business Day after the date all of the conditions set forth in Section 6.02 of the Plan have been satisfied or waived in accordance with that Section, or such later date as may be reasonably agreed to by the Proponents; or (b) if a stay of the Confirmation Order is in effect, on the first Business Day (or such later day as may be reasonably agreed to by the Proponents) after the later of: (i) the date such stay is vacated; and (ii) the date each condition set forth in the Plan has been satisfied or waived as set forth in the Plan.

"**Entity**" has the meaning ascribed to such term in Bankruptcy Code Section 101(15) of the Bankruptcy Code.

- 5 -

"**Estate(s)**" means, in the singular, the Chapter 11 estate of each Debtor created by Bankruptcy Code Section 541 and, in the plural, the jointly administered Chapter 11 estates of all three Debtors.

"**Estate Causes of Action**" means all Causes of Action that belong to the Estates.

"**Estimation Order**" means a Final Order, which may be the Confirmation Order, estimating for voting, distribution or any other proper purposes under the Bankruptcy Code the aggregate (and if applicable, individual) amount of any Claims, whether classified or unclassified under this Plan.

"**Exit Facility**" means the financing or financings for the Liquidation Trust pursuant to the Exit Facility Agreement.

"**Exit Facility Agreement**" means that certain financing agreement enabling Exit Facility borrowings by the Liquidation Trust, substantially in the form attached to the Disclosure Statement as Exhibit J.

"**Exit Facility Lenders**" means the Entities or Persons providing the Exit Facility.

"**Face Amount**" means the amount of any Claim as listed on a timely filed proof of Claim or the Schedules if no proof of Claim has been timely filed.

"**Fee Claim**" means a Claim: (a) of the Chapter 11 Trustee for compensation and/or reimbursement of expenses pursuant to Bankruptcy Code Sections 326 and 330; (b) of a professional person retained by order of the Bankruptcy Court for compensation and/or reimbursement of expenses pursuant to Bankruptcy Code Sections 327, 328, 330, or 331; and (c) of any Entity or Person seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to Bankruptcy Code Section 503(b), including the Lenders Contribution Claim and the Noteholders Contribution Claim.

"**Fee Claims Bar Date**" means 4:00 p.m. (Eastern) on the date that is the first Business Day after the date that is sixty (60) days after the Effective Date.

"**Final Order**" means an order or judgment of the Bankruptcy Court (or other court with jurisdiction), as entered on the docket of the Bankruptcy Court (or other court with jurisdiction), that has not been reversed, stayed, modified or amended, and as to which: (a) the time to appeal or seek review has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for review, rehearing, remand or certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under Bankruptcy Code Section 502(j), Rules 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules or law governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

"**General Claims Bar Date**" means March 21, 2007, the date set by the Bankruptcy Court as the last day for filing proofs of Claim in the Chapter 11 Cases, except for Administrative Claims, Fee Claims, and Claims asserted by Governmental Units.

"**General Unsecured Claim**" means a Claim that is not an Administrative Claim, a Priority Claim, a Secured Claim, or a Subordinated Litigation Claim.

"**Governmental Unit**" has the meaning ascribed to such term in Bankruptcy Code Section 101(27).

"**Governmental Unit Claims Bar Date**" means May 5, 2007, the date set by the Bankruptcy Court as the last day for Governmental Units to file proofs of Claim in the Chapter 11 Cases.

"**Impaired**" has the meaning ascribed to such term in Bankruptcy Code Section 1124.

"**Initial Distribution Date**" means, with respect to each Claim or Class of Claims, the date as soon as reasonably practicable after the Effective Date or the date such Claims become Allowed Claims.

"**Initial Trust Funding**" means that amount of Cash vested in the Liquidation Trust on the Effective Date from (i) Available Cash, (ii) the liquidation of Lenders Collateral, (iii) Assets from any of the Estates that are not encumbered by Liens, and/or (iv) advances under the Exit Facility to (a) make initial distributions as required by the Plan and (b) establish the Liquidation Trust Reserve in accordance with Section 6.02(g) of the Plan and the Liquidation Trust Agreement; provided, however, that the Initial Trust Funding shall not be funded by Lenders Collateral or the proceeds of any TSI/Holdings Property that, in either case, are allocated to Wachovia Claims, which allocation shall be vested in Disputed Claims Reserves pursuant to Section 8.03(b) of the Plan. The amount of Initial Trust Funding shall be $15 million or such other amount agreed to by the Plan Proponents and approved by the Bankruptcy Court in the Confirmation Order.

"**Insider**" has the meaning ascribed to such term in Bankruptcy Code Section 101(31).

"**Insider Claim**" means a Claim asserted by any Insider of a Debtor.

"**Insider Interest**" means an Interest asserted by any Insider of a Debtor.

"**Interest**" means any equity security, within the meaning of Bankruptcy Code Section 101(16), issued by a Debtor. The term "Interest" shall also include a Claim, subordinated pursuant to Bankruptcy Code Section 510(b), arising from the rescission of a purchase or sale of an Interest in the Debtor, for damages arising from the purchase or sale of such an Interest, or for reimbursement or contribution on account thereof.

"**Joint Interest Agreement**" means that certain agreement providing for the sharing of information, without impairing or otherwise compromising any or all applicable privileges or immunities, under the "joint interest" doctrine, substantially in the form attached to the Disclosure Statement as Exhibit I.

"**Jointly Represented Initial/Par Purchasers**" means the entities identified on the Supplemental Verified Statement of Quinn Emanuel Urquhart Oliver & Hedges LLP and Tucker Arensberg, P.C pursuant to Bankruptcy Rule 2019(a), as the same may be amended from time to time.

"**Le-Nature's**" means Le Nature's, Inc., a Delaware corporation and a Chapter 11 Debtor.

"**Le-Nature's Holdings**" means Le-Nature's Holdings, Inc., a Delaware corporation and a Chapter 11 Debtor.

"**Lenders**" means, collectively, all Entities or Persons holding Claims for sums borrowed by the Debtors under the Pre-Petition Secured Credit Agreement.

"**Lenders Claims**" means, collectively, the Lenders Secured Claims and the Lenders Unsecured Claims, in an aggregate amount not to exceed $278 million plus interest and costs to the extent provided for herein.

"**Lenders Collateral**" means all Assets of the Estates subject to a Lien of the Lenders under the Pre-Petition Secured Credit Agreement, except as modified by the definition of Lenders Secured Causes of Action in the Plan.

"**Lenders Collateral Stipulation**" means the *Stipulation and Order (I) Extending the Time to Challenge the Validity, Extent, Enforceability and Perfection of Certain Liens, Security Interests and Pledges Granted to and Held by the Agent for the Benefit of the Pre-Petition Secured Lenders and (II) Memorializing Stipulation as to Perfection of Liens and Security Interests as to Certain Assets*, entered by the Bankruptcy Court on or about March 13, 2007 (Docket Number 993).

"**Lenders Contribution Claim**" means the Claim asserted by the Ad Hoc Lenders' Committee for the reimbursement of reasonable professional fees and expenses of Manion McDonough and Lucas P.C. and Brown Rudnick Berlack Israels LLP.

"**Lenders Distribution Agreement**" means that certain agency agreement, substantially in the form attached to the Disclosure Statement as Exhibit K, that shall, among other things provide for the retention of the Lenders Distribution Agent, as the Liquidation Trust's agent for delivery of Plan distributions to holders of Allowed Claims in Class 1 and Class 4A.

"**Lenders Distribution Agent**" means _____, and any successor appointed under the Lenders Distribution Agreement. By signing the Lenders Distribution Agreement, the Lenders Distribution Agent shall, after the Effective Date, serve as the Liquidation Trust's agent for delivery of Plan distributions to holders of Allowed Claims in Class 1 and Class 4A. The Lenders Distribution Agent shall not bear any liability or obligation arising from any of Wachovia's acts or omissions or from occurrences arising prior to the Effective Date.

"**Lenders Pre-Petition Secured Claims**" means the Claims belonging to the Lenders secured by the Lenders Collateral.

"**Lenders Replacement Lien Claims**" means Claims Allowed in amounts set forth in Section 5.01(b) of the Plan belonging to the Lenders that, by order of the Bankruptcy Court pursuant to Bankruptcy Code Sections 361 and 363, are secured by replacement Liens on all Assets of the Estates, including Avoidance Actions.

"**Lenders Secured Causes of Action**" means all Estate Causes of Action constituting Lenders Collateral; provided, however, that the Lenders Secured Causes of Action shall not be deemed to include any Estate Causes of Action against BDO Siedman, E&Y, any Insider, Wachovia, any Other Debtor Pre-Petition Professional, or any other Person or Entity (or the proceeds or awards thereof), except that the Lenders expressly retain their right to argue (and all parties in interest retain their right to oppose) that:

(a)     the Lenders Liens attach to traceable recoveries of Lenders Collateral (for the avoidance of doubt, the Lenders do not retain the argument that their Liens attach to proceeds from settlements, judgments, or awards of tort or other damages because awards of damages are not traceable recoveries of Lenders Collateral; however, Lenders do retain the right to argue that their Liens attach to the traceable recoveries of Lenders Collateral that were, for example, converted or fraudulently conveyed to third parties); and/or

(b)     the Lenders Liens attach to any Estate Cause of Action which constitutes "Accounts" or "General Intangibles" (within the meaning of the Uniform Commercial Code), except that Lenders may not argue or assert that "Accounts" or "General Intangibles" include any Estate Cause of Action arising in: (x) tort (including but not limited to malpractice; misappropriation; conversion; fraud; negligence; misrepresentation; deceit; concealment; nondisclosure; bad faith; breach of fiduciary duty/special relationship; duress; breach of good faith and fair dealing (to the extent the allegations mirror tort actions); civil conspiracy; embezzlement; lender liability; negligence; negligent, intentional, or fraudulent interference with contract; deepening insolvency; or aiding and abetting any of the foregoing) (or any products or proceeds thereof); or (y) contract or any other theory, if such Cause of Action is based on facts or circumstances common to any claim or Cause of Action arising in tort.

"**Lenders Secured Claims**" means, collectively, the Lenders Pre-Petition Secured Claims and the Lenders Replacement Lien Claims.

"**Lenders Unsecured Claims**" means the Claims belonging to the Lenders that are not Lenders Pre-Petition Secured Claims or Lenders Replacement Lien Claims.

"**Lien**" shall have the meaning ascribed to such term in Bankruptcy Code Section 101(37).

"**Liquidation Trust Reserve**" means a reserve established by the Liquidation Trust to satisfy its anticipated future administrative expenses in accordance with a budget substantially in the form attached to the Disclosure Statement as Exhibit N, which may be modified in the Confirmation Order and, after the Effective Date, from time-to-time by the Liquidation Trust in accordance with the Liquidation Trust Agreement. The Liquidation Trust Reserve shall not be funded by Lenders Collateral or the proceeds of any TSI/Holdings Property that, in either case,

- 9 -

are allocated to Wachovia Claims, which allocation shall be vested in Disputed Claims Reserves pursuant to Section 8.03(b) of the Plan.

"**Liquidation Trust**" means the trust established pursuant to the Plan and in accordance with the Liquidation Trust Agreement.

"**Liquidation Trust Agreement**" means that certain trust agreement that establishes and governs the Liquidation Trust, substantially in the form attached to the Disclosure Statement as Exhibit F.

"**Liquidation Trustee**" means the Person appointed as the trustee of the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement. The initial Liquidation Trustee is identified in the Disclosure Statement at Exhibit G.

"**Liquidation Trust Oversight Board**" has the meaning ascribed to such term in Section 7.02(c) of the Plan. The initial members of the Liquidation Trust Oversight Board are identified in the Liquidation Trust Agreement.

"**Noteholders Contribution Claim**" means the Claim asserted by the Ad Hoc Noteholders' Committee for the reimbursement of reasonable professional fees and expenses of Duane Morris LLP and Kramer Levin Naftalis & Frankel LLP.

"**Official Creditors' Committee**" means the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases, as such committee may be reconfigured from time to time until the Effective Date.

"**Other Debtor Pre-Petition Professionals**" means any and all Entities and Persons that provided any form of professional services, work product, or advice to one or more of the Debtors, any Entity or Person affiliated with the Debtors, or any of their employees, officers, directors, or boards of directors prior to the Petition Date, including without limitation legal, financial, accounting or consulting services, work product, or advice.

"**Other Secured Claims**" means Secured Claims other than Lender Secured Claims.

"**Person**" has the meaning ascribed to such term in Bankruptcy Code Section 101(41).

"**Petition Date**" means, and shall be the collective reference to, November 1, 2006 as to Le Nature's and November 5, 2006 as to Le-Nature's Holdings and TSI.

"**Plan**" means this Joint Chapter 11 Plan of Liquidation, dated as of the date set forth on the first page hereof, together with any amendments or modifications hereto as the Proponents may file hereafter in accordance with the terms of the Plan.

"**Pre-Petition Secured Credit Agreement**" means that certain Amended and Restated Credit Agreement among Le-Nature's, Inc., certain of its subsidiaries, Wachovia and the Lenders, dated as of September 1, 2006, and all related agreements and documents, including without limitation all security agreements and documents of perfection.

"**Priority Claims**" means, collectively, Priority Non-Tax Claims and Priority Tax Claims.

"**Priority Non-Tax Claim**" means a Claim or a portion of a Claim for which priority is asserted under Bankruptcy Code Sections 507(a)(3), (4), (5), (6) or (7).

"**Priority Tax Claim**" means a Claim or a portion of a Claim for which priority is asserted under Bankruptcy Code Section 507(a)(8).

"**Proponents**" means, collectively, the Official Creditors' Committee, the Ad Hoc Lenders' Committee, and the Ad Hoc Noteholders' Committee.

"**Quarterly Distribution Date**" means the first Business Day after the end of each quarterly calendar period (i.e., March 31, June 30, September 30, and December 31 of each calendar year), or as soon thereafter as practicable, following the Effective Date.

"**Ratable, Ratably or Pro Rata**" means the proportion that the Allowed Claim in a particular Class bears to the aggregate amount of (a) Allowed Claims in such Class (or, in the case of Class 4, Classes) as of the date of determination, plus (b) Disputed Claims (in their aggregate face amounts or such other amounts as may be estimated) in such Class (or, in the case of Class 4, Classes) as of the date of determination.

"**Rejection Claim**" means any Claim for amounts due as a result of the rejection of an executory contract or unexpired lease in accordance with Bankruptcy Code Section 365.

"**Schedules**" means, collectively, the (a) schedules of assets, liabilities and executory contracts and (b) statements of financial affairs, as each has been or may be amended and supplemented from time to time, filed by the Debtors pursuant to Bankruptcy Code Section 521.

"**Secured Claim**" means: (a) that portion of a Claim that is secured by a valid, perfected and enforceable security interest, Lien, mortgage or other encumbrance, in or upon any right, title or interest of any of the Debtors in and to property of the Estates, to the extent of the value of the holder's interest in such property as of the relevant determination date or (b) any Claim that is subject to an offset right pursuant to Bankruptcy Code Section 553, to the extent of the amount subject to a valid setoff, in the case of each of (a) and (b) as determined by the Bankruptcy Court pursuant to Bankruptcy Code Section 506(a).

"**Senior Subordinated Notes**" means the 9% Senior Subordinated Notes in the aggregate principal amount of $150 million due 2013 issued pursuant to the Senior Subordinated Notes Indenture.

"**Senior Subordinated Noteholder(s)**" means, in the singular, any Entity or Person and, in the plural, all Entities or Persons, that hold Senior Subordinated Notes.

"**Senior Subordinated Notes Indenture**" means that certain Indenture, dated as of June 23, 2003, among the Debtors and the Senior Subordinated Notes Indenture Trustee, as the same may have been amended or supplemented.

- 11 -

"**Senior Subordinated Notes Indenture Trustee**" means Manufacturers and Traders Trust Company, in its capacity as Indenture Trustee for the Senior Subordinated Notes, and/or any successor Indenture Trustee for the Senior Subordinated Notes.

"**Solicitation Procedures Order**" means the order entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

"**Subordinated Litigation Claims**" means any Claim subject to subordination pursuant to Bankruptcy Code Section 510(b) arising from the rescission of a purchase or sale of any Claim against a Debtor, for damages arising from the purchase or sale of such a Claim, or for reimbursement or contribution on account of such Claim. The term "Subordinated Litigation Claims" does not include Claims that are (i) subject to subordination pursuant to Bankruptcy Code Section 510(b) and (ii) included in the definition of "Interest" contained in the Plan.

"**Tax**" or "**Taxes**" means all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise or other similar taxes, estimated import duties, fees, stamp taxes and duties, value added taxes, assessments or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

"**Tax Code**" means the United States Internal Revenue Code of 1986, as amended, modified or supplemented from time to time, and the rules and regulations promulgated thereunder.

"**Tier One Trust Beneficial Interests**" means, as set forth in the Liquidation Trust Agreement, beneficial interests in the Liquidation Trust with a priority senior to Tier Two Trust Beneficial Interests, Tier Three Trust Beneficial Interests, and Tier Four Trust Beneficial Interests, entitling holders to distributions of Available Cash held by the Liquidation Trust: (a) after full satisfaction of Allowed Administrative Claims, Allowed Fee Claims, and Allowed Priority Claims, and after funding of the Liquidation Trust Reserve; (b) equal to the amount of Cash proceeds of the Lenders Collateral, to the extent that such proceeds exceed the amount vested in the Liquidation Trust as Initial Trust Funding; (c) equal to the Allowed Lenders Replacement Lien Claims before any distributions may be made by the Liquidation Trust to holders of Tier Two Trust Beneficial Interests (except as otherwise provided in Plan Section 8.02), Tier Three Trust Beneficial Interests, or Tier Four Trust Beneficial Interests; and (d) for payment of interest accrued on Lenders Secured Claims after the Petition Date, at the contract rate, (x) to the extent Allowable under Bankruptcy Code Section 506(b) or (y) before any distributions may be made by the Liquidation Trust to holders of Tier Four Trust Beneficial Interests.

"**Tier Two Trust Beneficial Interests**" means, as set forth in the Liquidation Trust Agreement, beneficial interests in the Liquidation Trust with a priority subordinate to Tier One Trust Beneficial Interests but senior to Tier Three Trust Beneficial Interests and Tier Four Trust Beneficial Interests, entitling holders to distributions of Available Cash held by the Liquidation Trust: (a) after full satisfaction of Allowed Administrative Claims, Allowed Fee Claims,

Allowed Priority Claims, Allowed Lenders Secured Claims (except as otherwise provided in Plan Section 8.02) (including interest after the Petition Date, at the contract rate, to the extent Allowable under Bankruptcy Code Section 506(b)), and after funding of the Liquidation Trust Reserve; (b) equal to the Allowed Claims in Class 4A, Class 4B and Class 4C before any distributions may be made by the Liquidation Trust to holders of Tier Three Trust Beneficial Interests or Tier Four Trust Beneficial Interests; and (c) for payment of interest accrued on Allowed Claims in Class 4A, Class 4B, and Class 4C after the Petition Date, at the contract rate, before any distributions may be made by the Liquidation Trust to holders of Tier Four Trust Beneficial Interests.

"**Tier Three Trust Beneficial Interests**" means, as set forth in the Liquidation Trust Agreement, beneficial interests in the Liquidation Trust with a priority subordinate to Tier One Trust Beneficial Interests and Tier Two Trust Beneficial Interests but senior to Tier Four Trust Beneficial Interests, entitling holders to distributions of Available Cash held by the Liquidation Trust: (a) after full satisfaction of Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Claims, Allowed Lenders Secured Claims (including interest after the Petition Date, at the contract rate, to the extent Allowable under Bankruptcy Code Section 506(b)), Allowed Claims in Class 4A, Class 4B and Class 4C, and after funding of the Liquidation Trust Reserve; and (b) equal to (x) Allowed Claims in Class 5 and (y) interest accrued on such Claims after the Petition Date, at the contract rate, in either case, before any distributions may be made by the Liquidation Trust to holders of Tier Four Trust Beneficial Interests.

"**Tier Four Trust Beneficial Interests**" means, as set forth in the Liquidation Trust Agreement, beneficial interests in the Liquidation Trust with a priority subordinate to Tier One Trust Beneficial Interests, Tier Two Trust Beneficial Interests, and Tier Three Trust Beneficial Interests, entitling holders to distributions of Available Cash held by the Liquidation Trust, after full satisfaction of Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Claims, Allowed Lenders Secured Claims (including interest accrued after the Petition Date, at the contract rate), Allowed Claims in Class 4A (including interest accrued after the Petition Date, at the contract rate), Allowed Claims in Class 4B (including interest accrued after the Petition Date, at the contract rate), Allowed Claims in Class 4C (including interest accrued after the Petition Date, at the contract rate), Allowed Claims in Class 5 (including interest accrued after the Petition Date, at the contract rate), and after funding the Liquidation Trust Reserve (to the extent necessary, as determined by the Liquidation Trust).

"**TSI/Holdings Property**" means any and all Assets belonging to TSI and Le-Nature's Holdings that are not encumbered by Liens, including that certain parcel of real property owned by TSI identified as Lot 1 of The Monsour Plan of Lots, County of Westmoreland, PA, Tax Map Number 65-0201976.

"**Trade Placement**" means a legally binding commitment to purchase or sell a Lender Claim, including without limitation pursuant to a trade confirmation, internal trade blotter, email correspondence, irrespective of whether a trade confirmation was executed and irrespective of whether the transaction to purchase or sell the Lender Claim has closed or settled.

"**TSI**" means Tea Systems International, LLC, a Delaware limited liability company and a Chapter 11 Debtor.

"**Turnover Enforcement**" has the meaning ascribed to such term in Section 5.06(c) of this Plan.

"**Unclaimed Property**" means any Cash or other distributable property unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto in respect of such holder's Allowed Claim. Unclaimed Property shall, without limitation, include: (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available, notwithstanding efforts by the Liquidation Trust to locate such address which were commercially reasonable under the circumstances. Distributions of Cash that otherwise would be payable under the Plan to a holder that never, collectively, exceed fifty dollars ($50.00) as described in Section 8.11 and for which a request is not made within one (1) year after the Effective Date, as set forth in Section 8.11, shall become Unclaimed Property.

"**Unimpaired**" has the meaning ascribed to such term in Bankruptcy Code Section 1124.

"**Unsecured Claims**" means any Claim, arising prior to the Petition Date, that is not: (a) an Administrative Claim; (b) a Fee Claim; (c) a Priority Claim; or (c) a Secured Claim.

"**Unsecured Senior Subordinated Notes Claims**" means the unsecured Claim of the Senior Subordinated Notes Indenture Trustee or the Claim of any Senior Subordinated Noteholder for the payment of any principal, premium, if any, and interest owing and unpaid as of the Petition Date (and post-petition interest, to the extent provided for in the definition of Tier Three Trust Beneficial Interests) in respect of the Senior Subordinated Notes.

"**Unsecured Senior Subordinated Notes Direct Causes of Action**" means any Causes of Action which the current or former holders of Senior Subordinated Notes may assert directly on their own behalf against any Entity or Person; provided, however, that Unsecured Senior Subordinated Notes Direct Causes of Action shall not include any Estate Causes of Action.

"**Used Cash Collateral**" means: (a) the actual amount of the Cash Collateral and/or proceeds of other Lenders Collateral used by the Debtors, the Chapter 11 Trustee, or the Estates, or to pay any professionals retained by order of the Bankruptcy Court, from the Petition Date through the Effective Date; and (b) the actual amount of Cash vested in the Liquidation Trust as Initial Trust Funding and/or the Liquidation Trust Reserve, to the extent comprised of Cash Collateral and/or the proceeds of other Lenders Collateral.

"**Wachovia**" means, collectively, Wachovia Bank, National Association, Wachovia Capital Markets LLC, Wachovia Securities LLC, and any affiliated Entities or Persons.

"**Wachovia Claims**" has the meaning ascribed to such term in Section 10.01 of this Plan.

Section 1.02    **Rules of Interpretation**. For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter genders; (c) any reference in the Plan to a

- 14 -

contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (d) any reference in the Plan to an existing document or an exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (e) unless otherwise specified, all references in the Plan to articles, sections, clauses and exhibits are references to articles, sections, clauses and exhibits of or to the Plan; (f) the words "herein" and "hereto," and other words of similar import, refer to this Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) any reference to an Entity or Person as a holder of a Claim or Interest includes that Entity or Person's successors, assigns and affiliates; (i) the rules of construction set forth in Bankruptcy Code Section 102 shall apply to the extent such rules are not inconsistent with any other provision in this Section; (j) any term used herein that is not defined herein shall have the meaning ascribed thereto in the Bankruptcy Code and/or the Bankruptcy Rules, if used therein; and (k) any reference to the "Liquidation Trustee" shall be deemed to include a reference to the "Liquidation Trust" and any reference to the "Liquidation Trust" shall be deemed to include a reference to the "Liquidation Trustee" unless the context otherwise requires.

Section 1.03    **Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## METHOD OF CLASSIFICATION OF
## CLAIMS AND INTERESTS; GENERAL PROVISIONS

Section 2.01    **General Rules of Classification**.  A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

Section 2.02    **Holder of Claims Entitled to Vote**.  Each holder of an Allowed Claim and each holder of a Claim that has been temporarily allowed for voting purposes by order under Bankruptcy Rule 3018(a), which Claim is in an Impaired Class of Claims, shall be entitled to vote separately to accept or reject the Plan as provided by the Solicitation Procedures Order.  Any Unimpaired Class of Claims shall be deemed to have accepted the Plan.

Section 2.03    **Acceptances by Impaired Classes.**  An Impaired Class of Claims shall have Accepted the Plan if all of the necessary conditions of the Bankruptcy Code and the Bankruptcy Rules have been satisfied.

Section 2.04    **Non-Consensual Confirmation**.  To the extent necessary, the Proponents hereby request that the Bankruptcy Court confirm the Plan in accordance with Bankruptcy Code Section 1129(b).  Subject to Bankruptcy Code Section 1127, the Proponents reserve the right to

modify the Plan to the extent that confirmation pursuant to Bankruptcy Code Section 1129(b) requires modification, provided such modifications are consistent with Section 13.01 of the Plan.

Section 2.05    **Administrative Claims, Priority Tax Claims, and Fee Claims.** Administrative Claims, Priority Tax Claims, and Fee Claims have not been classified and are excluded from the Classes set forth in Article IV in accordance with Bankruptcy Code Section 1123(a)(1).

## ARTICLE III

## TREATMENT OF UNCLASSIFIED CLAIMS

Section 3.01    **Administrative Claims**.

(a)    **Administrative Claims Bar Date**.  To be eligible to receive distributions under the Plan on account of an Administrative Claim that is not otherwise Allowed by the Plan, a proof of Administrative Claim must be filed with the Bankruptcy Court so as to be received on or before the Administrative Claims Bar Date, or such other date as may be agreed to by the Liquidation Trust.  Any holder of an Administrative Claim that does not assert such Claim in accordance with this Section 3.01(a) shall have its Claim be deemed Disallowed under this Plan and be forever barred from asserting such Claim against any of the Estates, the Liquidation Trust, or any of their Assets or property.  Any such Claim shall be Disallowed and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.  A proof of Administrative Claim does not need to be filed in accordance with this Section 3.01(a) respecting any Administrative Claim incurred in the ordinary course of business by the Chapter 11 Trustee or any other Debtor representative after the Petition Date and before the Effective Date.

(b)    **Treatment**.  Subject to the terms herein, and unless the holder of an Allowed Administrative Claim agrees to receive other less favorable treatment, each holder of an Allowed Administrative Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) the Effective Date, (ii) the date such Claims become Allowed Claims or otherwise become payable under the Plan, and (iii) as soon thereafter as is reasonably practicable; provided, however, that Allowed Administrative Claims of the United States Trustee for fees pursuant to Section 1930(a)(6) of title 28 of the United States Code shall be paid on the Effective Date (and thereafter, as such fees may thereafter accrue and be due and payable) in accordance with the applicable schedule for payment of such fees. The Liquidation Trust may satisfy, in the ordinary course of business, any Administrative Claim incurred in the ordinary course of business by the Chapter 11 Trustee or any other Debtor representative after the Petition Date and before the Effective Date.

Section 3.02    **Priority Tax Claims**.

(a)    **Governmental Unit Claims Bar Date**.  To be eligible to receive distributions under the Plan on account of a Priority Tax Claim, a proof of Claim must be filed with the Bankruptcy Court so as to be received on or before the Governmental Unit Claims Bar Date, or such other date as may be agreed to by the Liquidation Trust.  Any holder of a Priority Tax

Claim that does not assert such Claim in accordance with this Section 3.02(a) shall have its Claim be deemed Disallowed under this Plan and be forever barred from asserting such Claim against any of the Estates, the Liquidation Trust, or any of their Assets or property. Any such Claim shall be Disallowed and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(b)    **Treatment**. Subject to the terms herein, and unless the holder of an Allowed Priority Tax Claim agrees to receive other less favorable treatment, each holder of an Allowed Priority Tax Claim shall be entitled to receive, at the option of the Liquidation Trust: (1) 100% of the unpaid amount of such Claim in Cash on the date that is the latest of (i) the Effective Date, (ii) the date such Claim becomes an Allowed Claim or otherwise becomes payable under the Plan, and (iii) as soon thereafter as is reasonably practicable; or (ii) deferred Cash payments in an aggregate principal amount equal to the amount of the Allowed Claim plus interest on the unpaid portion thereof at the rate of 6% per annum from the Effective Date through the date of payment thereof, which payments (i) shall be made in equal annual installments through the date that is the fifth anniversary of the Petition Date, but (ii) shall become accelerated and immediately due and payment on the date all Allowed Claims in Class 4A are fully satisfied. Any Claim or demand for penalty relating to any Priority Tax Claim (other than a penalty of the type specified in Bankruptcy Code Section 507(a)(8)(G)) shall be Disallowed, and the holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Estates, the Liquidation Trust, or any of their respecting Assets or property.

Section 3.03    **Fee Claims**.

(a)    **Fee Claims Bar Date**.    All final applications for payment of Fee Claims (including the Lenders Contribution Claim and the Noteholders Contribution Claim, should the holders thereof determine to seek payment of such Claims pursuant to Bankruptcy Code Section 503(b)(3)(D)) shall be filed with the Bankruptcy Court and served on or before the Fee Claims Bar Date, or such other date as may be agreed to by the Liquidation Trust. Any holder of a Fee Claim that does not assert such Claim in accordance with this Section 3.03(a) shall have its Claim be deemed Disallowed under this Plan and be forever barred from asserting such Claim against any of the Estates, the Liquidation Trust, or any of their Assets or property. Any such Claim shall be Disallowed and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(b)    **Treatment**. Subject to the terms herein, and unless the holder of an Allowed Fee Claim agrees to receive other less favorable treatment, each holder of an Allowed Fee Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date, or as soon thereafter as is reasonably practicable, that such Claim is Allowed by Final Order (or by approval of the Bankruptcy Court, if such approval has not been stayed pending appeal) after the Effective Date.

# ARTICLE IV

## DESIGNATION OF CLASSES OF
## CLAIMS AND EQUITY INTERESTS

Section 4.01  **Summary**.  The classification of Claims and Interests for purposes of the Plan are as follows:

| **Class** | **Claim** | **Status** | **Voting Rights** |
| --- | --- | --- | --- |
| Class 1 | Lenders Secured Claims | Impaired | Entitled to Vote |
| Class 2 | Other Secured Claims | Impaired | Entitled to Vote |
| Class 3 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 4A | Lenders Unsecured Claims | Impaired | Entitled to Vote |
| Class 4B | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4C | Unsecured Senior Subordinated Notes Claims | Impaired | Entitled to Vote |
| Class 5 | Subordinated Litigation Claims | Impaired | Entitled to Vote |
| Class 6 | Interests | Impaired | Entitled to Vote |

# ARTICLE V

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

Section 5.01  **Class 1: Lenders Secured Claims**.

(a)  **Classification**.  Class 1 shall consist of all Lenders Secured Claims.  Class 1 is impaired by the Plan and solicitation of acceptances of the Plan with respect to holders of Claims in this Class is required.

(b)  **Allowance**.  The Lenders Pre-Petition Secured Claims shall be deemed Allowed Claims (except as otherwise provided in Section 10.01 of the Plan) in an aggregate amount equal to the ultimately liquidated value of the Lenders Collateral (excluding Used Cash Collateral), up to $278 million plus accrued interest (to the extent provided for in the definition of Tier One Trust Beneficial Interests) and costs (to the extent provided for in Section 8.01(b) of the Plan).[1] The Lenders Replacement Lien Claims shall be deemed Allowed Claims (except as otherwise provided in Section 10.01 of the Plan) in an aggregate amount equal to the sum of: (a)

---

[1]      As such amounts shall be Ratably reduced to the extent Disputed Claims referenced in Section 10.01 of the Plan are equitably subordinated, reduced, Disallowed, invalidated or expunged by Final Order.

$7,500,000 (seven million five hundred thousand dollars), representing a stipulated value for the diminution in value of Lenders Collateral during the Chapter 11 Cases; and (b) Used Cash Collateral.[2] Notwithstanding anything else in this Section 5.01(b), upon receipt of payment in full of the Lenders Claims (including interest accruing after the Petition Date, to the extent provided for by the Plan) from any source, including but not limited to payments arising from the Causes of Action belonging to the Lenders against third-parties or Turnover Enforcement, the Lenders shall not receive any further distributions under the Plan; provided, however, that nothing herein shall be deemed to impair or limit rights of Senior Subordinated Noteholders to subrogation as set forth in Section 13.02 of the Plan.

(c)    **Treatment**.    Subject to the terms herein and unless a holder of an Allowed Lenders Secured Claim agrees to receive other less favorable treatment, such holder of an Allowed Claim in this Class shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Claim: (a) Tier One Trust Beneficial Interests in a percentage Ratable to other holders of Allowed Claims in Class 1; (b) additional Tier One Trust Beneficial Interests in a percentage Ratable to other Allowed Claims in Class 1, as a result of the Disallowance of any Disputed Claim in this Class; and (c) all proceeds thereof distributed pursuant to the terms of the Plan and the Liquidation Trust Agreement.

Section 5.02    **Class 2: Other Secured Claims**.

(a)    **Classification**.    Class 2 shall consist of all Other Secured Claims. Class 2 is impaired by the Plan and solicitation of acceptances of the Plan with respect to holders of Claims in this Class is required.

(b)    **Treatment**.    Subject to the terms herein and unless a holder of an Allowed Other Secured Claim agrees to receive other less favorable treatment, such holder of Allowed Claim in this Class shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Claim, at the option of the Liquidation Trust, one or a combination of the following (net of any applicable rights to surcharge, including rights arising under Bankruptcy Code Section 506(c)): (i) payment in Cash from proceeds from the sale or disposition of the collateral securing the Allowed Other Secured Claims, to the extent of the value of any holder's Lien on such property; (ii) surrender of the collateral securing the Allowed Secured Other Claims; or (iii) such other distributions as shall satisfy the requirements of Bankruptcy Code Section 1129.

Section 5.03    **Class 3:  Priority Non-Tax Claims**.

(a)    **Classification**.    Class 3 shall consist of Allowed Claims entitled to priority under Bankruptcy Code Sections 507(a)(3), (4), (5), (6) or (7). Class 3 Claims are Unimpaired by the Plan and the Holders of Allowed Class 3 Claims are deemed to accept the Plan and therefore are not entitled to vote.

(b)    **Treatment**.    Subject to the terms herein and unless the holder of an Allowed Priority Non-Tax Claim agrees to receive other less favorable treatment, each holder of an Allowed Priority Non-Tax Claim shall be paid 100% of the unpaid amount of such Claim in

---

[2]    As such amount shall be Ratably reduced to the extent Disputed Claims referenced in Section 10.01 of the Plan are equitably subordinated, reduced, Disallowed, invalidated or expunged by Final Order.

Cash on the date that is the later of (i) the Effective Date, (ii) the date such Claim becomes an Allowed Claim or otherwise becomes payable under the Plan, and (iii) as soon thereafter as is reasonably practicable.

Section 5.04   **Class 4A: Lenders Unsecured Claims.**

(a)   **Classification**.  Class 4A shall consist of all Lenders Unsecured Claims.  Class 4A is impaired by the Plan and solicitation of acceptances of the Plan with respect to holders of Claims in this Class is required.

(b)   **Allowance**.  The Lenders Unsecured Claims shall be deemed Allowed Claims (except as otherwise provided in Section 10.01 of the Plan) in an aggregate amount equal to $278 million plus accrued interest (to the extent provided for in the definition of Tier Two  Trust Beneficial Interests) and costs (to the extent provided for in Section 8.01(b) of the Plan), less the aggregate amount of Class 1 distributions.[3]  Notwithstanding anything else in this Section 5.04(b), upon receipt of payment in full of the Lenders Claims (including interest accruing after the Petition Date, to the extent provided for by the Plan) from any source, including but not limited to payments arising from the Causes of Action belonging to the Lenders against third-parties or Turnover Enforcement, the Lenders shall not receive any further distributions under the Plan; provided, however, that nothing herein shall be deemed to impair or limit rights of Senior Subordinated Noteholders to subrogation as set forth in Section 13.02 of the Plan.

(c)   **Treatment**.  Subject to the terms herein and unless the holder of an Allowed Lenders Unsecured Claim agrees to receive other less favorable treatment, each holder of an Allowed Lenders Unsecured Claim shall be entitled to receive: (a) Tier Two Trust Beneficial Interests in a percentage Ratable to other holders of Allowed Claims in Class 4A, Class 4B, and Class 4C; (b) additional Tier Two Trust Beneficial Interests in a percentage Ratable to other holders of Allowed Claims in Class 4A, Class 4B and Class 4C, as a result of the Disallowance of any Disputed Claim in Class 4A, Class 4B or Class 4C; (c) additional Tier Two Trust Beneficial Interests in a percentage Ratable to other Allowed Claims in Class 4A, as a result of Turnover Enforcement of Class 4C distributions; (d) all proceeds of the foregoing distributed pursuant to the terms of the Plan and the Liquidation Trust Agreement; and (e) a percentage of the proceeds of the TSI/Holdings Property to other holders of Allowed Claims in Class 4A and Class 4C, subject to the (i) use of such proceeds to fund the Initial Trust Funding and/or the Liquidation Trust Reserve and (ii) reallocation of such proceeds to holders of Allowed Claims in Class 4A, Class 4B, and Class 4C pursuant to Section 8.01(c) of the Plan.

Section 5.05   **Class 4B: General Unsecured Claims**.

(a)   **Classification**.  Class 4B shall consist of all General Unsecured Claims.  Class 4B is impaired by the Plan and solicitation of acceptances of the Plan with respect to holders of Claims in this Class is required.

(b)   **Treatment**.  Subject to the terms herein, and unless the holder of an Allowed General Unsecured Claims agrees to receive other less favorable treatment, each holder of an

---

[3]     As such amounts shall be Ratably reduced to the extent Disputed Claims referenced in Section 10.01 of the Plan are equitably subordinated, reduced, Disallowed, invalidated or expunged by Final Order.

Allowed General Unsecured Claims shall be entitled to receive: (a) Tier Two Trust Beneficial Interests in a percentage Ratable to other holders of Allowed Claims in Class 4A, Class 4B, and Class 4C; (b) additional Tier Two Trust Beneficial Interests in a percentage Ratable to other holders of Allowed Claims in Class 4A, Class 4B and Class 4C, as a result of the Disallowance of any Disputed Claim in Class 4A, Class 4B or Class 4C; (c) all proceeds thereof distributed pursuant to the terms of the Plan and the Liquidation Trust Agreement; and (d) a percentage of the proceeds of the TSI/Holdings Property Ratable to other holders of Allowed Claims in Class 4A, Class 4B, and Class 4C, but only to the extent (i) such proceeds are not used to fund the Initial Trust Funding and/or the Liquidation Trust Reserve and (ii) such proceeds are reallocated to holders of Allowed Claims in Class 4A, Class 4B, and Class 4C pursuant to Section 8.01(c) of the Plan.

Section 5.06    **Class 4C: Unsecured Senior Subordinated Notes Claims.**

(a)    **Classification**.    Class 4C shall consist of all Unsecured Senior Subordinated Notes Claims.  Class 4C is impaired by the Plan and solicitation of acceptances of the Plan with respect to holders of Claims in this Class is required.

(b)    **Allowance**.    The Unsecured Senior Subordinated Notes Claims shall be deemed Allowed Claims in an aggregate amount equal to $150 million plus accrued and unpaid interest as of the Petition Date.

(c)    **Treatment**.    Subject to the terms herein, each holder of an Allowed Unsecured Senior Subordinated Notes Claim shall be entitled to receive: (a) Tier Two Trust Beneficial Interests in a percentage Ratable to other holders of Allowed Claims in Class 4A, Class 4B, and Class 4C; (b) additional Tier Two Trust Beneficial Interests in a percentage Ratable to other holders of Allowed Claims in Class 4A, Class 4B and Class 4C, as a result of the Disallowance of any Disputed Claim in Class 4A, Class 4B or Class 4C; (c) all proceeds thereof distributed pursuant to the terms of the Plan and the Liquidation Trust Agreement; and (d) a percentage of the proceeds of the TSI/Holdings Property Ratable to other holders of Allowed Claims in Class 4A and Class 4C, subject to the (i) use of such proceeds to fund the Initial Trust Funding and/or the Liquidation Trust Reserve and (ii) reallocation of such proceeds to holders of Allowed Claims in Class 4A, Class 4B, and Class 4C pursuant to Section 8.01(c) of the Plan; provided, however, that such distributions shall be deemed reallocated and distributed on account of Claims in Class 4A, as a settlement of potential claims by Lenders for enforcement of contractual subordination provisions in the Senior Subordinated Notes Indenture, in accordance with the following ("Turnover Enforcement"):

(i)    Until such time distributions totaling $110 million (or, to the extent applicable, $110 million less any Ratable portion of the Lenders Claims that are Disputed Claims and that are equitably subordinated, reduced, Disallowed, invalidated or expunged by Final Order) has been distributed on account of Lenders Claims (whether to Lenders on account of Allowed Lenders Claims (including but not limited to distributions on account of Allowed Lenders Pre-Petition Secured Claims, Allowed Lenders Replacement Lien Claims, distributions to Lenders of proceeds of Lenders Collateral, on account of Turnover Enforcement, or Allowed Lenders Unsecured Claims) or into Disputed Claims Reserves), 100% of all distributions on

account of Class 4C Claims shall be reallocated and distributed as Turnover Enforcement to holders of Claims in Class 4A.

(ii)    After distributions totaling $110 million (or, to the extent applicable, $110 million less any Ratable portion of the Lenders Claims that are Disputed Claims and that are equitably subordinated, reduced, Disallowed, invalidated or expunged by Final Order) have been distributed from the Estate or the Liquidation Trust on account of Lenders Claims (whether to Lenders on account of Allowed Lenders Claims (including but not limited to distributions on account of Allowed Lenders Pre-Petition Secured Claims, Allowed Lenders Replacement Lien Claims, distributions to Lenders of proceeds of Lenders Collateral, on account of Turnover Enforcement, or Allowed Lenders Unsecured Claims) or into Disputed Claims Reserves), the next $15 million in Cash distributions on account of Class 4C Claims shall be distributed to holders of Allowed Claims in Class 4C, and shall not be subject to Turnover Enforcement.

(iii)    Thereafter, distributions on account of Class 4C Claims shall be reallocated and distributed as Turnover Enforcement to holders of Claims in Class 4A as follows (until all Lenders Claims are paid in full, plus post-petition interest thereon):

| Aggregate Payments On Account Of Lenders Claims[4] | Percentage Turnover Enforcement To Class 4A | Percentage Retained By Class 4C |
|---|---|---|
| Less than $175 million | 50% | 50% |
| $175 million to $200 million | 45% | 55% |
| $200 million to $225 million | 40% | 60% |
| $225 million to $250 million | 35% | 65% |
| $250 million to $280 million | 30% | 70% |
| Greater than $280 million[5] | 25% | 75% |

(iv)    To the extent that (a) holders of Claims in Class 4A have received Cash distributions as a result of Turnover Enforcement, (b) thereafter, the Liquidation Trust has received proceeds in respect of Lenders Collateral, and (c) had such proceeds been distributed to holders of Allowed Claims in Class 1 on a prior Distribution Date, the Lenders would not have received certain Cash distributions as a result of Turnover Enforcement, then the Liquidation Trust shall distribute the proceeds referenced in (b) and (c) of this sentence to the extent necessary to reimburse holders of Senior Subordinated Notes for Turnover Enforcement that

---

[4]    As such amounts shall be Ratably reduced to the extent the aggregate amount of Lenders Claims are Disputed Claims that are equitably subordinated, reduced, disallowed, invalidated or expunged by Final Order.

[5]    As provided for in Section 13.02 of the Plan, after Lenders have received full payment, Senior Subordinated Noteholders shall subrogate to Lenders Claims to the extent of Turnover Enforcement, and Turnover Enforcement shall thereafter continue (based upon the full Allowed amount of the Class 4C Claims plus the subrogated amount of Lenders Claims) until the Lenders have been fully paid post-petition interest, at the contract rate.

would not have occurred if such proceeds were available for distribution to the Lenders at an earlier time.

Section 5.07    **Class 5: Subordinated Litigation Claims**.

(a)    **Classification**. Class 5 shall consist of all Subordinated Litigation Claims. Class 5 is impaired by the Plan and solicitation of acceptances of the Plan with respect to holders of Claims in this Class is required.

(b)    **Treatment**. Each holder of an Allowed Subordinated Litigation Claim shall be entitled to receive: (a) Tier Three Trust Beneficial Interests in a percentage Ratable to other Allowed Claims in Class 5; (b) additional Tier Three Trust Beneficial Interests in a percentage Ratable to other Allowed Claims in Class 5, as a result of the disallowance of any Disputed Claim in this Class; and (c) all proceeds thereof distributed pursuant to the terms of the Plan and the Liquidation Trust Agreement.

Section 5.08    **Class 6: Interests**.

(a)    **Classification**. Class 6 shall consist of all Interests in Le-Nature's. Class 6 is impaired by the Plan and solicitation of acceptances of the Plan with respect to holders of Claims in this Class is required.

(b)    **Treatment**. Each holder of an Allowed Interest shall be entitled to receive: (a) Tier Four Trust Beneficial Interests in a percentage Ratable to other Allowed Interests in Class 6; (b) additional Tier Four Trust Beneficial Interests in a percentage Ratable to other Allowed Interests in Class 6, as a result of the Disallowance of any Disputed Interest in this Class; and (c) all proceeds thereof distributed pursuant to the terms of the Plan and the Liquidation Trust Agreement. To the extent Class 6 includes Claims subordinated pursuant to Bankruptcy Code Section 510(b), the Bankruptcy Court shall, upon motion by the Liquidation Trust or any holder of Class 6 Claims or Interests, determine an appropriate Ratable allocation of distributions to holders of Interests and holders of such Claims.

## ARTICLE VI

## CONDITIONS PRECEDENT

Section 6.01    **Conditions to Confirmation**. The following conditions are conditions precedent to Confirmation of the Plan, unless waived by the Proponents in accordance with the Plan: (i) the Initial Trust Funding shall be sufficient to render the Plan feasible; (ii) the Confirmation Order must be in a form and substance reasonably acceptable to each of the Proponents; and (iii) the Confirmation Order shall:

(a)    order, find and decree that the Confirmation Order supersedes any order of the Court issued prior to the Confirmation Date to the extent that such order is inconsistent with the Confirmation Order;

(b)    order and decree that the Estates shall be substantively consolidated but only to the extent set forth in the Plan;

(c)    authorize implementation of the Plan in accordance with its terms;

(d)    authorize the appointment of all parties appointed under the Plan and the documents substantially in the form attached to the Disclosure Statement, including without limitation the Liquidation Trustee, the members of the Liquidation Trust Oversight Board, and the Lenders Distribution Agent, and direct such parties to perform their obligations under such documents;

(e)    provide that any transfers effected or mortgages or other security documents entered into or to be effected or entered into under the Plan shall be and are exempt from any state, city, or other municipality transfer taxes, mortgage recording taxes, and any other stamp or similar taxes pursuant to Bankruptcy Code Section 1146(c);

(f)    order, find, and decree that the Plan contains settlements of complex matters, which settlements meet the applicable standards for approval under Bankruptcy Code Section 1123 and Bankruptcy Rule 9019, and are approved in their entirety;

(g)    approve in all respects the other transactions, agreements, and documents to be effected pursuant to the Plan, including the Liquidation Trust Agreement, the Exit Facility Agreement, and the other documents substantially in the form attached to the Disclosure Statement;

(h)    authorize the establishment of the Liquidation Trust consistent with the terms of the Plan and the Liquidation Trust Agreement, and authorize the Liquidation Trustee and the Liquidation Trust Oversight Board to assume the rights and responsibilities provided thereto in the Plan and the Liquidation Trust Agreement;

(i)    order, find, and decree that the transfers of Assets to the Liquidation Trust: (a) are or shall be legal, valid, and effective transfers of property; (b) vest or shall vest the transferee with good title to such property free and clear of all Liens, Claims, encumbrances, and Interests of any Entity or Person, except as expressly provided in the Plan or the Confirmation Order; (c) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable bankruptcy or non-bankruptcy law; and (d) do not and shall not subject the Liquidation Trust or any holder of a Claim or Interest to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including any laws affecting successor or transferee liability or fraudulent conveyance or transfer laws;

(j)    order, find, and decree that the Liquidation Trust shall have been automatically substituted for the Chapter 11 Trustee, the Official Creditors' Committee or any other Estate representative as a party to all pending contested matters, adversary proceedings, claims, administrative proceedings and lawsuits, both within and outside of the Bankruptcy Court, involving the Assets, Claims against the Estate or matters relating to the Liquidation Trust, including Estate Causes of Action and the resolution of Disputed Claims;

(k)    order, find, and decree that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud;

(l)    order, find, and decree that the provisions of Bankruptcy Code Sections 1145 and 1146(c) apply to the transactions contemplated hereunder, if applicable;

(m)    order, find, and decree that nothing herein or in any stipulation filed in the Bankruptcy Court or any order of the Bankruptcy Court (including paragraph 6 of the Lenders Collateral Stipulation) operates as a discharge, release, exculpation, or waiver of, or establishes any defense or limitation of damages to: (a) any objection to Wachovia Claims belonging to the Estates or to any other Entity or Person; or (b) any Claim or Cause of Action belonging to the Estates or to any other Entity or Person against any Insider, Wachovia (in its individual capacity), BDO Seidman, E&Y, or any Other Debtor Pre-Petition Professional;

(n)    order, find, and decree that all rights to examination under Bankruptcy Rule 2004 or otherwise that exist prior to the Confirmation Date shall continue to the fullest extent after the Confirmation Date and after the Effective Date, as if neither had occurred;

(o)    order, find, and decree that privileged communications may be shared among the Liquidation Trust, the Ad Hoc Lenders' Committee, the Ad Hoc Noteholders' Committee, and the Jointly Represented Initial/Par Purchasers without compromising the privileged nature of such communications, in accordance with the "joint interest" doctrine to the extent provided for in the Joint Interest Agreement;

(p)    order, find, and decree that all privileges with respect to any Assets of the Estates, including the attorney/client privilege, to which the Debtors and/or the Chapter 11 Trustee are entitled shall have been automatically vested in, and available for assertion by or waiver on behalf of the Liquidation Trust;

(q)    order, find, and decree that, except as otherwise provided for in Section 10.01, the Lenders Secured Claims shall be Allowed Secured Claims, and the Lenders Unsecured Claims and the Claims of holders of the Senior Subordinated Notes shall be Allowed Unsecured Claims, all as set forth in the Plan; and

(r)    if necessary, order, find, and decree that the Exit Facility is approved, and the Liquidation Trust is authorized to enter into same.

Section 6.02    **Conditions to the Effective Date**.  The Proponents reserve the right to request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry and shall be a Final Order.  Notwithstanding the foregoing, the Plan may not be consummated, and the Effective Date shall not occur, unless and until each of the conditions set forth below is satisfied or waived (if and to the extent permitted by the Plan) by the Proponents, such waivers not to be withheld unreasonably:

(a)    the Confirmation Date shall have occurred and the Confirmation Order, in a form consistent with Section 6.01, shall have been signed by the judge presiding over the Chapter 11 Cases and shall have become a Final Order;

(b)    after the entry of the Confirmation Order, no modifications shall have been made to the Plan except in accordance with its provisions with respect to modification;

(c)     the conditions precedent to the confirmation of the Plan in Section 6.01 shall have been satisfied and shall continue to be satisfied;

(d)     the Liquidation Trust shall have been established and all Assets of the Estates, including but not limited to all Lenders Collateral and Estate Causes of Action, shall have been transferred to and vested in the Liquidation Trust free and clear of all Claims and Interests, except as specifically provided in the Plan and the Liquidation Trust Agreement;

(e)     the Liquidation Trustee, the Liquidation Trust Oversight Board, and the Lenders Distribution Agent shall have been appointed and assumed their rights and responsibilities under the Plan and the documents substantially in the form attached to the Disclosure Statement;

(f)     all actions, documents, and agreements necessary to implement the provisions of the Plan to be effectuated on or prior to the Effective Date shall be reasonably satisfactory to the Proponents, and such actions, documents, and agreements shall have been effected or executed and delivered. All documents to be contained in the Plan Supplement shall be completed and in final form and, as applicable, executed by the parties thereto and all conditions precedent contained in any of the foregoing shall have been satisfied or waived; and

(g)     the Liquidation Trust shall have sufficient Available Cash to make distributions of Cash and to establish the Liquidation Trust Reserve as required by the Plan and the Liquidation Trust Agreement, whether such funding derives from the liquidation of Assets of any of the Estates unencumbered by Liens (excluding Ratable proportions of the TSI/Holdings Property based on the Face Amount of Disputed Claims in Class 4A or Class 4C, which shall be entirely vested in Disputed Claims Reserves pursuant to Section 8.03(b) of the Plan) or the Lenders Collateral (excluding Ratable proportions of Lenders Collateral based on the Face Amount of Disputed Claims in Class 1, which shall be entirely vested in Disputed Claims Reserves pursuant to Section 8.03(b) of the Plan), settlement of Estate Causes of Action, advances under the Exit Facility, or otherwise.

Section 6.03     **Waiver of Conditions**.   The waiver of any condition set forth in this Article VI may be made by the Proponents in accordance with the Plan without further notice or order of the Bankruptcy Court. The failure to satisfy or waive a condition to the Effective Date may be asserted by any Proponent regardless of the circumstances giving rise to the failure of such condition to be satisfied (except for and expressly excluding any action or inaction by any Proponent). The failure of the Proponents to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each right shall be deemed an ongoing right that may be asserted at any time.

Section 6.04     **Effect of Nonoccurrence of the Conditions to the Effective Date**.   If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived in accordance with the Plan on or before the first Business Day that is more than ninety (90) days after the Confirmation Date, or such later date as shall be agreed to by the Proponents, any of the Proponents may schedule a status hearing with the Bankruptcy Court.  If the Confirmation Order is ultimately vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute an admission, a waiver, or release of any Claims against or Interests in any of the Estates.