# Exhibit G, Part II

**ARTICLE VII**

**MEANS FOR IMPLEMENTATION**

Section 7.01    **Substantive Consolidation**.

(a)    **Effect of Substantive Consolidation**.  Subject to Section 8.01(c) of the Plan, on the Effective Date, the Estates shall be substantively consolidated for all purposes related to the Plan.  The substantive consolidation of the Estates shall have the following effects: (i) all assets and liabilities of the Estates shall be treated as though they were merged for purposes of distribution; (ii) all pre-petition and post-petition cross-corporate guarantees of the Debtors shall be eliminated; (iii) all Claims based upon guarantees of collection, payment or performance made by one or more Debtors as to the obligations of another Debtor or of any other Entity or Person shall be discharged, released and of no further force or effect; (iv) any obligation of any Debtor and all guarantees thereof executed by one or more of the Debtors shall be deemed to be one obligation of the Estate; (v) any Claims filed or to be filed in connection with any such obligation and such guarantees shall be deemed one Claim against the Estate; and (vi) each and every Claim filed in the individual Chapter 11 Case of any of the Debtors shall be deemed filed against the consolidated Estate in the consolidated Chapter 11 Case and shall be deemed a single obligation of the consolidated Estate under the Plan on and after the Effective Date.

The substantive consolidation provided for herein shall not, other than for purposes related to the Plan and distributions to be made hereunder, affect the legal and corporate structures of the Debtors or the rights and defenses of the Liquidation Trust pertaining to the Causes of Action.

(b)    **Plan as Motion for Approval of Substantive Consolidation**.  The Plan shall serve as a motion seeking entry of an order substantively consolidating the Estates as provided herein.

Section 7.02    **The Liquidation Trust**.

(a)    **Creation of Liquidation Trust**.  On the Effective Date, the Liquidation Trustee shall sign the Liquidation Trust Agreement and accept all Assets of the Estates on behalf of the beneficiaries thereof, and be authorized to obtain, liquidate, and collect all of the Assets of the Estates not in its possession and pursue all of the Estate Causes of Action.  The Liquidation Trust will then be deemed created and effective without any further action by the Bankruptcy Court or any party.  The Liquidation Trust shall be established for the sole purpose of liquidating its assets, with no objective to continue or engage in the conduct of a trade or business.  The beneficiaries of the Liquidation Trust shall be bound by the Liquidation Trust Agreement.  The Liquidation Trust Agreement shall provide for the establishment of four classes of beneficial interests and shall make distributions to holders thereof in accordance with the Plan and the Liquidation Trust Agreement: Tier One Trust Beneficial Interests; Tier Two Trust Beneficial Interests; Tier Three Trust Beneficial Interests; and Tier Four Trust Beneficial Interests.  Interests in the Liquidation Trust shall be uncertificated and shall be nontransferable except upon death of the interest holder or by operation of law.  The Liquidation Trust shall have a term of

- 27 -

five (5) years from the Effective Date, without prejudice to the rights of the Liquidation Trust to extend such terms as applicable law shall allow.

The Liquidation Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by Bankruptcy Code Section 345 or in other prudent investments, as authorized by the Liquidation Trust Oversight Board; provided, however, that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

The Liquidation Trustee shall be the exclusive trustee of the assets of the Liquidation Trust for purposes of 31 U.S.C. Section 3713(b) and 26 U.S.C. Section 6012(b)(3). The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement and, under the supervision of the Liquidation Trust Oversight Board, shall include the authority and responsibility to: (a) receive, manage, invest, supervise, and protect trust assets; (b) pay taxes or other obligations incurred by the Liquidation Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants to advise and assist in the administration, prosecution and distribution of trust assets; (d) calculate and implement distributions of trust assets; (e) prosecute, compromise, and settle, in accordance with the specific terms of that agreement, all Claims and Causes of Action vested in the Liquidation Trust; (f) resolve issues involving Claims and Interests pursuant to Article X of this Plan; and (g) undertake all administrative functions of the Chapter 11 Cases, including the ultimate closing of the Chapter 11 Cases.

All costs and expenses associated with the administration of the Liquidation Trust, including reasonable professional costs related to the prosecution of Estate Causes of Action, objecting to Disputed Claims or Interests, and reasonable compensation for the Liquidation Trustee and, as set forth in the Liquidation Trust Agreement, the Liquidation Trust Oversight Board, shall be the responsibility of and paid by the Liquidation Trust from the Initial Trust Funding and/or the Liquidation Trust Reserve in accordance with the Liquidation Trust Agreement. The Liquidation Trust is the successor to the Debtors, the Estates, and the Chapter 11 Trustee's rights to books and records.

The Liquidation Trust shall be responsible for filing all federal, state, and local tax returns for the Liquidation Trust. The Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions made by the Liquidation Trust shall be subject to any such withholding and reporting requirements. The Liquidation Trust shall provide reasonably detailed reports to holders of beneficial interests in the Liquidation Trust, as the Liquidation Trust Oversight Board deems appropriate, but not less than annually.

(b)    **Federal Income Tax Treatment of the Liquidation Trust for the Liquidation Trust Assets.**  For federal income tax purposes, it is intended that the Liquidation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury regulations and that such trust be owned by its beneficiaries (i.e., holders of Allowed Claims in Class 1, Class 4A, Class 4B, Class 4C, Class 5, and Class 6). Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution from the Estates of

- 28 -

an undivided interest in each of the assets of the Liquidation Trust and then contributed such interests to the Liquidation Trust.

(i) **Liquidation Trust Assets Treated as Owned by Holders of Allowed Claims.** For all federal income tax purposes, all parties shall treat the transfer of Assets to the Liquidation Trust for the benefit of the holders of Allowed Claims or Interests in Class 1, Class 4A, Class 4B, Class 4C, Class 5, and Class 6, as (a) a transfer of the assets of the Liquidation Trust directly to the holders of Allowed Claims or Interests in Class 1, Class 4A, Class 4B, Class 4C, Class 5, and Class 6, followed by (b) the transfer by such holders to the Liquidation Trust of the Assets of the Liquidation Trust in exchange for the beneficial interests in the Liquidation Trust. Accordingly, the holders of such Allowed Claims or Interests in Class 1, Class 4A, Class 4B, Class 4C, Class 5, and Class 6 shall be treated for federal income tax purposes as the grantors and owners of their respective share of the Assets of the Liquidation Trust.

(ii) **Tax Reporting**. The Liquidation Trust shall file returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Section 7.02. The Liquidation Trust also shall annually send to each holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their federal income tax returns. The Liquidation Trust's taxable income, gain, loss, deduction or credit will be allocated to holders of Allowed Claims or Interests in Class 1, Class 4A, Class 4B, Class 4C, Class 5, and Class 6 in accordance with their relative beneficial interests in the Liquidation Trust.

As soon as possible after the Effective Date, the Liquidation Trust shall make a good faith valuation of assets of the Liquidation Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidation Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidation Trust that are required by any Governmental Unit for taxing purposes.

Notwithstanding anything else in the Plan, subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Liquidation Trust shall (i) treat any assets allocable to, or retained on account of, Disputed Claims as held by one or more discrete trusts for federal income tax purposes (the "Disputed Claims Reserve"), consisting of separate and independent shares to be established in respect of each Disputed Claim, in accordance with the trust provisions of the Tax Code (Sections 641 et seq.), (ii) treat as taxable income or loss of the Disputed Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the Liquidation Trust that would have been allocated to the holders of Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (iii) treat as a distribution from the Disputed Claims Reserve any increased amounts distributed by the Liquidation Trust as a result of any Disputed Claims resolved earlier in the taxable year, to the extent such distributions relate to taxable income or loss of the Disputed Claims Reserve determined in accordance with the provisions hereof, and (iv) to the extent permitted by applicable law, shall report consistent with the foregoing for state and local income tax purposes. All holders of Allowed Claims or Interests in Class 1, Class 4A, Class 4B, Class 4C, Class 5, and Class 6 shall report, for tax purposes, consistent with the foregoing.

The Liquidation Trust shall be responsible for payments of any taxes imposed on the trust or its Assets, including the Disputed Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidation Trust as a result of the resolutions of such Disputed Claims.

The Liquidation Trust may request an expedited determination of Taxes of the Debtors or of the Liquidation Trust, including the Disputed Claims Reserve, under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Debtors and the Liquidation Trust for all taxable periods through the dissolution of the Liquidation Trust.

(iii)    **Dissolution**.    The Liquidation Trustee shall be discharged and the Liquidation Trust shall be terminated, at such time as (a) all Disputed Claims have been resolved, (b) all of the Assets of the Liquidation Trust have been liquidated, and (c) all distributions required to be made by the Liquidation Trust under the Plan and the Liquidation Trust Agreement have been made, but in no event shall the Liquidation Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the assets of the Liquidation Trust.

(c)    **Vesting and Transfer of Assets to the Liquidation Trust**.    Pursuant to Bankruptcy Code Section 1141(b), the Assets of the Estates shall vest in the Liquidation Trust; provided, however, that the Liquidation Trust, with the consent of the Liquidation Trustee, may abandon or otherwise not accept any Assets that the Liquidation Trust believes, in good faith, have no value to the Liquidation Trust. Any Assets the Liquidation Trust so abandons or otherwise does not accept shall not vest in the Liquidation Trust and shall revest in the Debtors.

On the Effective Date, the Liquidation Trust shall: (i) take possession of all books, records, and files of the Debtors and their Estates; (ii) provide for the retention and storage of such books, records, and files until such time as the Liquidation Trust determines, in accordance with the Liquidation Trust Agreement, that retention of same is no longer necessary or required; and (iii) file a notice with the Bankruptcy Court identifying the location at which such books, records, and files are stored.

As of the Effective Date, all Assets vested in the Liquidation Trust and all Assets dealt with in the Plan, shall be free and clear of all Claims, Liens, and interests except as otherwise specifically provided in the Plan or in the Confirmation Order. The Liquidation Trust shall make distributions in accordance with the Plan and the Liquidation Trust Agreement.

(d)    **Appointment of the Liquidation Trustee**.  The Liquidation Trustee for the Liquidation Trust shall be an independent and disinterested Person.  The Liquidation Trustee shall be the successor to all of the privileges of the Estates, the Debtors and the Chapter 11 Trustee.

(e)    **The Liquidation Trust Oversight Board**.

(i)    **Appointment of the Liquidation Trust Oversight Board.**  On the Effective Date, the Liquidation Trust Oversight Board shall be formed pursuant to the Liquidation Trust Agreement.  The Liquidation Trust Oversight Board shall be comprised of seven (7) members, four (4) of whom shall be selected by the Ad Hoc Lenders' Committee, two (2) of whom shall be selected by the Official Creditors' Committee, and one (1) of whom shall be selected by the Ad Hoc Noteholders' Committee.  The terms of the four members selected by the Ad Hoc Lenders' Committee shall expire, and the three remaining members shall continue as a reconstituted Liquidation Trust Oversight Board, when the Lenders Claims have been paid in full, with interest.

(ii)    **Authority of the Liquidation Trust Oversight Board**.  The Liquidation Trustee shall report all material matters to and seek approval for all material decisions from the Liquidation Trust Oversight Board.  The Liquidation Trust Oversight Board may, by majority vote, authorize the Liquidation Trust to invest its corpus in prudent investments other than those described in Bankruptcy Code Section 345.  The Liquidation Trust Oversight Board may, at its discretion, require a fidelity bond from the Liquidation Trustee in such reasonable amount as may be determined by the Liquidation Trust Oversight Board.

Section 7.03    **Approval of Exit Financing**.  Entry of the Confirmation Order shall, to the extent necessary (because sufficient Cash is not otherwise available consistent with the terms of the Plan), authorize and approve, without further action by the Chapter 11 Trustee, the Liquidation Trust, or the Proponents, the Exit Facility Agreement and the transactions to be entered into, and actions to be taken thereunder, pursuant to the Bankruptcy Code.  All obligations of the Liquidation Trust under the Exit Facility Agreement shall be payable as a cost of administering the Liquidation Trust, payable in advance of distributions on account of Claims or Interests, in accordance with the terms of the Exit Facility Agreement.  Notwithstanding the foregoing, the Liquidation Trust may, in its good faith business judgment, determine not to enter into the Exit Facility Agreement on the Effective Date, provided: (a) sufficient Cash is available to the Liquidation Trust to make initial distributions as required by the Plan; (b) thereafter, the Liquidation Trust Reserve shall equal at least $2.5 million; and (c) the Liquidation Trust then has reason to believe, in its good faith business judgment, it will have sufficient Cash to satisfy its future administrative obligations under the Plan and Liquidation Trust Agreement.

Section 7.04    **Investigations Aiding Administration of the Estates**.

(a)    **Continuation of Rights Under Bankruptcy Rule 2004**.  The Plan is predicated on the understanding, and constitutes an acknowledgment by all Entities and Persons, that it is being proposed well in advance of a full and complete investigation of all of the facts and circumstances surrounding the Debtors' activities and the activities of Insiders and other Entities and Persons (including Wachovia, BDO Seidman, E&Y, and the Other Debtor Professionals)

prior to the Petition Date. The Plan also is predicated on the understanding, and constitutes an acknowledgment by all Entities and Persons, that the preservation for the Liquidation Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the Chapter 11 Cases. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtors and/or the Chapter 11 Trustee prior to the Effective Date shall vest with the Liquidation Trust and shall continue until dissolution of the Liquidation Trust, as if neither the Confirmation Date nor the Effective Date had occurred.

(b)    **Approval of "Joint Interest" Agreement**.    On the Effective Date, the Liquidation Trustee, the Liquidation Trust Oversight Board, and, to the extent each in its sole discretion elects, the Ad Hoc Lenders' Committee, the Ad Hoc Notcholders' Committee, and/or the Jointly Represented Initial/Par Purchasers shall enter into the Joint Interest Agreement.

Section 7.05    **Prosecution and Resolution of Estate Causes of Action**.

(a)    **The Liquidation Trust's Exclusive Authority to Pursue, Settle, or Abandon Estate Causes of Action**.    Prosecution and settlement of all Estate Causes of Action, including Avoidance Actions, shall be the sole responsibility of the Liquidation Trust, pursuant to this Plan and the Confirmation Order. The Liquidation Trust shall have exclusive rights, powers, and interests of the Estates to pursue, settle or abandon such Causes of Action as the sole representative of the Estates pursuant to Bankruptcy Code Section 1123(b)(3). All Causes of Action, including Avoidance Actions, are reserved and preserved to the extent set forth in the Plan and shall not be impacted or affected in any way by the substantive consolidation of the Estates. For the avoidance of doubt, any and all rights vested in any Entity or Person under the Lenders Collateral Stipulation to pursue or prosecute any Estate Cause of Action against Wachovia (in its individual capacity) shall be vested exclusively in the Liquidation Trust, and to the extent Paragraph 6 of the Lenders Collateral Stipulation established a deadline for bringing such action against Wachovia, the deadline shall be extended through the date established in the first proviso of Section 10.02 of the Plan.

(b)    **Settlement of Estate Causes of Action**.    Settlement by the Liquidation Trust of any Estate Cause of Action shall require: (i) approval only of the Liquidation Trustee, if the amount claimed by the Liquidation Trust against a defendant is less than $1 million; (ii) approval only of the Liquidation Trustee and the Liquidation Trust Oversight Board, if the amount claimed by the Liquidation Trust against a defendant is more than $1 million but less than $5 million; and (iii) approval of the Liquidation Trustee, the Liquidation Trust Oversight Board, and the Bankruptcy Court, if the amount claimed by the Liquidation Trust against a defendant is unliquidated or equals to or exceeds $5 million.

(c)    **Authority of Members of the Liquidation Trust Oversight Board to Retain Attorneys in Certain Circumstances**.    If (i) any three (3) members of the Liquidation Trust Oversight Board have a reasonable good faith basis to disagree with the terms of any settlement requiring Bankruptcy Court approval pursuant to Section 7.05(b) of the Plan (including without limitation disagreement over a proposed allocation of settlement proceeds among the Liquidation Trust, on the one hand, and private litigants, on the other hand), or (ii) any two (2) members have a reasonable good faith basis to (w) object to the entry by the Liquidation Trust into any agreement pursuant to Section 7.05(d) of the Plan, (x) disagree with a proposed allocation of

litigation or settlement proceeds between Secured Claims, on the one hand, and Unsecured Claims, on the other hand, (y) disagree with a proposed allocation of litigation or settlement proceeds to Lenders because they have fully recovered on Lender Claims from another source, or (z) argue that, pursuant to Section 8.01(c) of the Plan, any of the TSI/Holdings Property should be reallocated to the Le-Nature's Estate and, as a result, shared among holders of Allowed Claims in Class 4A, Class 4B, and Class 4C, then such members may together retain one law firm to oppose approval of such settlement, oppose such proposed allocation, or seek an order reallocating the TSI/Holdings Property, and the Liquidation Trust shall satisfy such professional costs (provided they are reasonable) on the same basis and priority as provided in Section 7.02 of the Plan. In connection with any such action, the members may seek reasonable discovery. If a contested matter arises in connection with any such action, the Liquidation Trust shall not consummate such settlement, distribute settlement such proceeds, or distribute the proceeds of the TSI/Holdings Property, as applicable, pending Bankruptcy Court resolution of such contested matter.

(d)    **Reservation of Rights Regarding Prosecution of Causes of Action**.  Nothing herein shall prohibit holders of Claims or Interests from contributing Causes of Action in their possession into a separate liquidation trust or other Entity for the prosecution of such Causes of Action.  The Liquidation Trust Agreement shall enable the Liquidation Trust to enter into agreements, to the extent not inconsistent with Section 7.05 of the Plan, with any such Entity and/or with holders of Claims and Interests for the prosecution of Estate Causes of Action and Causes of Action belonging to holders of Claims or Interests; provided that, if any two (2) members of the Liquidation Trust Oversight Board object to any such agreement, such members shall have the rights and remedies set forth in Section 7.05(c)(ii) of the Plan.

Section 7.06    **Delivery of the Lenders Distribution Agreement**.    On the Effective Date, the Liquidation Trustee shall execute and deliver to the Lenders Distribution Agent the Lenders Distribution Agreement, and all documents and instruments attendant thereto.    The Lenders Distribution Agent shall maintain the register of holders of Lenders Claims and collect and distribute to the Lenders all distributions deliverable to the Lenders in accordance with the Plan.

Section 7.07    **Release of Liens and Perfection of Liens**.    Except as otherwise specifically provided in the Plan or in any agreement, instrument or document created in connection with the Plan: (a) each holder of (i) a Secured Claim, (ii) a Claim that is purportedly secured and/or (iii) a judgment, personal property or ad valorem tax, mechanics' or similar Secured Claim, in each case regardless of whether such Claim is an Allowed Claim, shall, on or immediately before the Effective Date and regardless of whether such Claim has been scheduled or proof of such Claim has been filed: (1) turn over and release to the Estates and the Liquidation Trust any and all property of the Estates that secures or purportedly secures such Claim, or such Lien and/or Claim which shall automatically, and without further action by the Estates or the Liquidation Trust, be deemed released; and (2) execute such documents and instruments as the Liquidation Trust require(s) to evidence such Claim holder's release of such property or Lien, and if such holder violates the Confirmation Order and this Plan by refusing to execute appropriate documents or instruments, the Liquidation Trust may, in its discretion, file a copy of the Confirmation Order which shall serve to release any Claim holder's rights in such property; and (b) on the Effective Date, all right, title and interest in such property shall revert, vest or

revest in accordance with this Plan, free and clear of all Claims and Interests, including, without limitation, Liens, escrows, charges, pledges, encumbrances and/or security interests of any kind; provided, however, that the physical turnover of property described in (1) above, is necessary and required only to the extent the holder is in possession or control of the property that secures or purportedly secures such Claim.

Without limiting the automatic release provisions of the immediately preceding paragraph: (a) no distribution hereunder shall be made to or on behalf of any Claim holder unless and until such holder executes and delivers to the Estates or the Liquidation Trust such release of Liens or otherwise turns over and releases such Cash, pledge or other possessory Liens; (b) such holder that fails to execute and deliver such release of Liens within ninety (90) days after the Effective Date (or such other date as may be determined by the Liquidation Trust and a holder of an Other Secured Claim) shall be subject to whatever sanction is deemed appropriate by the Bankruptcy Court; and (c) the Liquidation Trust, which shall be deemed to be appointed as attorney-in-fact for all such holders of Secured Claims for the purpose of releasing such Liens, shall be authorized to use, and all authorities shall be required to accept, the Confirmation Order and the notice of Effective Date as satisfaction of all Liens.

Notwithstanding the foregoing two Paragraphs, any Lien securing a Claim of a holder, to the extent that it is valid, perfected and unavoidable, or otherwise Allowed under the Plan, attaches to the proceeds of such Asset; provided, however, that such Liens are immediately released in accordance with the foregoing two Paragraphs when the Claim of such a holder becomes (y) a Disallowed Claim or (z) an Allowed Claim and payment on the Allowed Claim is made.

Section 7.08   **Cancellation of Documents**.  On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, debentures, certificates and other documents evidencing Claims and Interests in a Debtor or the Debtors shall, with respect to the Debtors, be canceled and deemed rejected and terminated.  Notwithstanding anything to the contrary in the Plan, the Pre-Petition Secured Credit Agreement and the Senior Subordinated Notes Indenture shall, respecting parties other than the Debtors and the Liquidation Trust (and their successors and assigns), continue in full force and effect (to the extent of and consistent with their terms) notwithstanding the occurrence of the Effective Date and any and all rights, obligations, claims and defenses arising thereunder and related thereto, respecting parties other than the Debtors and the Liquidation Trust (and their successors and assigns), shall remain in full force and effect without waiver; provided, however, that liability of any of the Estates thereunder and the Turnover Enforcement provisions of the Senior Subordinated Notes Indenture shall be treated in accordance with the terms of the Plan.

Section 7.09   **Termination of Official Creditors' Committee and Chapter 11 Trustee**.  The appointments of the Official Creditors' Committee and the Chapter 11 Trustee shall terminate on the Effective Date, and the members of the Official Creditors' Committee (solely in their capacities as such) and the Chapter 11 Trustee thereafter shall be released and discharged from all further rights and duties arising from or related to such roles in the Chapter 11 Cases.  On the Effective Date, the rights of any Entity or Person under the Lenders Collateral Stipulation to object to Lender Claims (excluding Wachovia Claims) and/or challenge the

validity, enforceability, or perfection of Liens securing Lender Secured Claims (excluding Wachovia Claims) shall expire.

**ARTICLE VIII**

**PROVISIONS GOVERNING DISTRIBUTIONS**

Section 8.01  **Distributions to Holders of Lenders Claims and Senior Subordinated Notes.**

(a)  **Distributions Through the Lenders Distribution Agent and the Senior Subordinated Notes Indenture Trustee.**  Distributions for the benefit of beneficial holders of Lenders Claims shall be made to the Lenders Distribution Agent.  Distributions for the benefit of beneficial holders of Senior Subordinated Notes shall be made to the Senior Subordinated Notes Indenture Trustee.  The Lenders Distribution Agent and the Senior Subordinated Notes Indenture Trustee shall, in turn, promptly administer the distributions to the beneficial holders of Allowed Claims in Classes 1, 4A, and 4C, as applicable, in accordance with the Plan and applicable transaction documents.  Neither the Lenders Distribution Agent nor the Senior Subordinated Notes Indenture Trustee shall be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court; in the event that such parties are so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be paid from the distributions to the beneficial holders of Lenders Claims and Senior Subordinated Notes, as applicable.

(b)  **Satisfaction of Charging Liens**.  On the Effective Date, the Liquidation Trust shall distribute Cash to Wachovia in an amount sufficient to satisfy all obligations under Section 2.12(b) "FIRST" and "SECOND" of the Pre-Petition Secured Credit Agreement (but only to the extent Wachovia is entitled to be paid under those provisions of the Pre-Petition Secured Credit Agreement), which distribution shall be an advance on future distributions to Wachovia (presuming its Claims are ultimately deemed Allowed Claims) and stand in place of a commensurate distribution into the Disputed Claims Reserve for Wachovia Claims in Class 1; provided, however, that such distribution to Wachovia shall not be deemed to render any Claim held by Wachovia an Allowed Claim, shall not be deemed a waiver or admission of any fact or law, and shall be subject to disgorgement should any Wachovia Claim ultimately be Disallowed; provided further, however, that any Person or Entity shall, on the Effective Date, fully subrogate to Wachovia's right to receive the distribution provided for in this sentence to the extent that such Person or Entity satisfied such payment obligation to Wachovia prior to the Effective Date (which subrogation right shall not be subject to disgorgement, regardless of whether all Wachovia Claims are ultimately Disallowed) (for the avoidance of doubt, the Liquidation Trust shall be entitled to seek disgorgement of such payments from Wachovia, but not the Person or Entity subrogating to Wachovia's payment right under this proviso).  On the Effective Date or as soon thereafter as is reasonably practicable, to the extent payment of the Lenders Contribution Claim has not occurred pursuant to Bankruptcy Code Section 503(b)(3)(D) and to the extent there are sufficient Cash proceeds of Lenders Collateral, the Liquidation Trust shall distribute Cash to the members of the Ad Hoc Lenders' Committee in an amount sufficient to satisfy all obligations owed to them under Section 2.12(b) "THIRD" of the Pre-Petition Secured Credit Agreement (but only to the extent such Lenders are so entitled to be paid under that provision of

the Pre-Petition Secured Credit Agreement). To the extent necessary to satisfy the reasonable fees and expenses and to satisfy the charging lien of the Senior Subordinated Notes Indenture Trustee, up to $75,000.00 in Cash will be paid on the Effective Date or as soon thereafter as practicable to the holders of Senior Subordinated Notes, in order to pay the fees and expenses of the Senior Subordinated Notes Indenture Trustee, which shall be an advance against future distributions payable under the Plan to holders of Senior Subordinated Notes (but not distributions subject to Turnover Enforcement).

(c)    **Distribution of the Proceeds of TSI/Holdings Property.**    Notwithstanding anything contrary contained in Section 7.02, the rights of all Entities and Persons to seek a determination from the Bankruptcy Court that all or any portion of the TSI/Holdings Property should be reallocated to the Le-Nature's Estate is hereby preserved through the first date upon which the Liquidation Trust makes a distribution to holders of Allowed Claims in Class 4. Should the Bankruptcy Court order the reallocation of any TSI/Holdings Property to the Le-Nature's Estate, the proceeds thereof shall be distributed to holders of Allowed Claims in Class 4A, Class 4B, and Class 4C in accordance with Section 5.04(c), Section 5.05(b), and Section 5.06(c) of the Plan.

Section 8.02    **Provisions Concerning Distributions to Holders of Allowed Class 1 and Class 4A Claims.**  If, at any time prior to a determination that all Lenders Secured Claims have been paid in full (because, for example, a dispute exists over whether an Estate Asset does or does not constitute Lenders Collateral) and the Liquidation Trust then holds Available Cash for distribution to holders of Allowed Claims in Class 4A, Class 4B, and Class 4C, the aggregate amount of Allowed Claims in Class 4A shall be deemed to equal the difference between (a) $278 million plus accrued interest (to the extent provided for in the definition of Tier One Trust Beneficial Interests) and costs (to the extent provided for in Section 8.01(b) of the Plan)[6] and (b) the aggregate amount of Cash distributed as of that date to holders of Tier One Trust Beneficial Interests and into Disputed Claims Reserves for Disputed Claims in Class 1. If, thereafter, it is determined that additional Cash distributions are due to holders of Tier One Trust Beneficial Interests (because, for example, an Estate Asset is thereafter determined to constitute Lenders Collateral), the Liquidation Trust shall apportion such Cash to holders of Allowed Claims in Class 1, Class 4A, Class 4B, and Class 4C, as necessary to ensure that Lenders did not receive an excessive distribution on account of the pre-determined amount of their Class 4A Claims.

Section 8.03    **Provisions Concerning Disputed Claims Reserves**.

(a)    **Establishment of Disputed Claims Reserves**.  On the Initial Distribution Date (or on any other date on which distributions for any particular Class of Claims are made pursuant to the Plan by the Liquidation Trust), and in connection with making all distributions required to be made on any such date under the Plan, the Liquidation Trust shall establish a separate Disputed Claim Reserve for Cash distributions pertaining to each Disputed Claim in each relevant Class, as necessary pursuant to the Plan.

---

[6]    As such amounts shall be Ratably reduced to the extent Disputed Claims referenced in Section 10.01 of the Plan are equitably subordinated, reduced, Disallowed, invalidated or expunged by Final Order.

(b)  **Amounts to Be Reserved**.  The Liquidation Trust shall reserve a Ratable proportion of all Cash allocated for distribution on account of each Disputed Claim based upon the Face Amount of each such Disputed Claim, or such lesser amount as may be agreed to by the holder of the Claim on one hand and the Liquidation Trust on the other hand.  Respecting any Disputed Claim in Class 1, the Liquidation Trust shall reserve a Ratable proportion of the proceeds of Lenders Collateral based on the Face Amount of Disputed Claims in such Class, or such lesser amount as may be agreed to by the holder of the Claim on one hand and the Liquidation Trust on the other hand.  Respecting any Disputed Claim in Class 4A or Class 4C, the Liquidation Trust shall reserve a Ratable proportion of the proceeds of TSI/Holdings Property based on the Face Amount of Disputed Claims in such Class, or such lesser amount as may be agreed to by the holder of the Claim on one hand and the Liquidation Trust on the other hand; provided, however, that, if any TSI/Holdings Property is reallocated to the Le-Nature's Estate pursuant to Section 8.01(c) of the Plan, the Liquidation Trust shall only reserve a proportion of the proceeds of such TRI/Holdings Property Ratable to holders of Claims in Class 4A, Class 4B, and Class 4C.  All Cash and other property allocable to the relevant Class hereunder shall be distributed by the Liquidation Trust to the relevant Disputed Claim Reserve on the Initial Distribution Date (or such other date on which distributions for any particular Class of Claims are made pursuant to the Plan).  All Cash distributed into a Disputed Claim Reserve shall be deposited in an interest-bearing account at a qualified institution, consistent with the Liquidation Trust Agreement.

(c)  **Distributions**.  Payments on any Disputed Claim that becomes an Allowed Claim shall be distributed on the first Quarterly Distribution Date after the Claim is Allowed.  Distributions shall be made only to the extent of the aggregate distributions that the holder of any such Allowed Claim would have received had such Claim been Allowed as of the Effective Date (less any taxes paid with respect to amounts held in the Disputed Claims Reserves).  Interest earned on such Disputed Claims Reserve shall be paid to the Claim holder with other Cash in such Disputed Claims Reserve.  Distributions to each holder of a Disputed Claim that has become an Allowed Claim (and to the extent that the holder of the Disputed Claim has not received prior distributions on account of that Claim) shall be made in accordance with the provisions of the Plan governing the Class of Claims in which the Claim is classified; provided, however, that, to the extent a Disputed Claim in Class 1 ultimately becomes an Allowed Claim in such Class, the holder of such Claim shall only be entitled to receive distributions only in an amount equal to the Allowed amount of its Lenders Secured Claim, plus interest earned on the Disputed Claims Reserve established on account of such Claim.

(d)  **Termination of Disputed Claim Reserve**.  Each Disputed Claim Reserve shall be closed and extinguished by the Liquidation Trust when all distributions and other dispositions of Cash or other property required to be made therefrom under the Plan and the Liquidation Trust Agreement have been made.  Upon closure of a Disputed Claim Reserve, all Cash and other property held in that Disputed Claim Reserve shall revest in the Liquidation Trust and such Cash and property shall be Ratably distributed to the other holders of Allowed Claims in the Class in respect of which such Disputed Claims Reserve was created, except as otherwise provided in Article V of the Plan.

(e)    **Limitation of Liability for Funding the Disputed Claim Reserve**.  Except as expressly set forth in the Plan, the Liquidation Trust shall have no duty to fund the Disputed Claims Reserves.

Section 8.04    **Transmittal of Distributions and Notices**.  Any property or notice that an Entity or Person is or becomes entitled to receive pursuant to the Plan may be delivered by regular mail, postage prepaid, in an envelope addressed to that Entity or Person's Distribution Address.  Property distributed in accordance with this Section shall be deemed delivered to such Entity or Person regardless of whether such property is actually received by that Entity or Person.  A holder of a Claim or Interest may designate a different Distribution Address by notifying, after the Effective Date, the Liquidation Trust of that address in writing.  Any change of Distribution Address must be provided to the Liquidation Trust by registered mail in order to be effective.  Such notification shall be effective only upon receipt.  The address of the Liquidation Trust shall be as identified in the Disclosure Statement and may be changed by the Liquidation Trust upon filing a notice of such address change with the Bankruptcy Court, which notice shall be delivered to all parties entitled to notice under Bankruptcy Rule 2002.

Section 8.05    **Setoffs**.  The Liquidation Trust  may, but shall not be required to, setoff against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Estates or the Liquidation Trust may have against the Claim holder, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidation Trust of any such claim it may have against such Claim holder.  Holders of Allowed Claims retain whatever rights to setoff they are otherwise entitled to assert under Bankruptcy Code Section 553.

Section 8.06    **Withholding Taxes and Expenses of Distribution**.  Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder.  All holders of Claims or Interests shall be required to provide any information necessary to effect the withholding of such taxes.  In addition, all distributions under the Plan shall be net of the actual and reasonable costs of making such distributions.

Section 8.07    **Allocation of Plan Distributions between Principal and Interest**.  To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

Section 8.08    **Disputed Identity of Holder**.  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any distribution, the Liquidation Trust may, in lieu of making such distribution to such Entity or Person, make such distribution into an escrow account until the disposition thereof shall be determined by the Bankruptcy Court or by written agreement among the interested parties to such dispute; provided, however, that if the dispute remains unresolved by Final Order for an unreasonable period of time, the Liquidation Trust may request that the Bankruptcy Court order that the property that is the subject of the dispute shall irrevocably become Unclaimed Property.

Section 8.09 **Transfers of Claims**. As of the Effective Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, the Chapter 11 Trustee, or their respective agents, shall be deemed closed, and there shall be no further changes in the holders of record of any of the Claims or Interests. No party, including but not limited to the Liquidation Trust, shall have any obligation to recognize any transfer of the Claims or Interests occurring after the Effective Date unless (a) recognition of such transfer is available under the Liquidation Trust Agreement and (b) notice of the transfer of such Claim or Interest, in form and substance satisfactory to the Liquidation Trust shall have been received by the Liquidation Trust, as appropriate, prior thereto. Subject to the immediately preceding sentence, only those holders of record stated on the transfer ledgers as of the close of business on the Effective Date, to the extent applicable, shall be entitled to be recognized for all purposes hereunder.

Section 8.10 **Method of Cash Distributions**. Any Cash payment to be made by the Liquidation Trust pursuant to the Plan may be made, at the sole discretion of the Liquidation Trust, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law. Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

Section 8.11 **De Minimis Distributions**. No Cash payment in an amount less than fifty dollars ($50.00) shall be made by the Liquidation Trust to any holder of a Claim or Interest unless a request therefor is made in writing to the Liquidation Trust prior to one (1) year after the Effective Date. Cash that otherwise would be payable under the Plan but for this Section 8.11 shall be reserved and distributed with future distributions, if any, that, collectively, exceed fifty dollars ($50.00). Distributions of Cash that otherwise would be payable under the Plan to a holder but for this Section 8.11 that never, collectively, exceed fifty dollars ($50.00) as described in the foregoing sentence and for which a request is not made within the one (1) year deadline shall become Unclaimed Property, which shall vest in the Liquidation Trust for use and/or distributions in accordance with the Plan. The Liquidation Trust may, at the conclusion of the Chapter 11 Cases, distribute to a charitable organization of its choice any de minimis amount of residual Unclaimed Property.

Section 8.12 **No Distribution in Excess of Allowed Amount of Claim**. Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any distribution in excess of the Allowed amount of such Claim, plus post-petition interest thereon to the extent allowed by the Bankruptcy Code and this Plan. Upon a holder of an Allowed Claim recovering the full amount of its Allowed Claim from another source, it thereafter shall no longer have any entitlement to receive distributions under the Plan, subject to Section 13.02 of the Plan.

Section 8.13 **Exemption from Certain Transfer Taxes**. Pursuant to Section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any securities, instruments or documents; (b) the creation or release of any other Lien, mortgage, deed of trust or other security interest; or (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with the Plan or the sale of any assets of the Estates, any deeds, releases, bills of sale or assignments executed in connection with the Plan or the Confirmation Order, shall not be subject

to any stamp tax, transfer tax, intangible tax, recording fee, or similar tax, charge or expense to the fullest extent provided for under Section 1146(a) of the Bankruptcy Code.

## ARTICLE IX

## EXECUTORY CONTRACTS AND LEASES

Section 9.01 **Rejection of Contracts and Leases**. Each executory contract or unexpired lease of the Debtors that has not expired by its own terms prior to the Effective Date, and that has not been assumed or rejected during the Chapter 11 Cases prior to the Effective Date, shall be deemed rejected pursuant to Bankruptcy Code Section 365 as of the Effective Date; provided, however, that, prior to the Confirmation Date, the Plan Proponents may agree with the non-Debtor party to an executory contract or unexpired lease to the assumption and/or assumption and assignment of that particular contract or lease on the Effective Date; provided further, however, that each of such agreed upon assumption or assumption and assignment shall be approved in the Confirmation Order.

Section 9.02 **Bar Date For Rejection Damages.** If the rejection of any executory contract or unexpired lease under the Plan gives rise to a Claim by the non-Debtor party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is an Allowed Claim, shall be classified in Class 4B; provided, however, that the Unsecured Claim, if any, arising from such rejection shall be forever barred and shall not be enforceable against the Estates, the Liquidation Trust, their successors or properties, unless a proof of such Claim is filed and served on the Liquidation Trust within thirty (30) days after the date of notice of the entry of the order of the Bankruptcy Court rejecting the executory contract or unexpired lease, which may include, if applicable, the Confirmation Order.

## ARTICLE X

## DISPUTED, CONTINGENT AND
## UNLIQUIDATED CLAIMS AND INTERESTS

Section 10.01 **Allowance of Certain Lenders Claims**. A Lenders Claim is deemed by the Plan to be an Allowed Claim (and the holder thereof not subject to any Avoidance Actions), excluding all Lenders Claims for which: (i) Wachovia was the record holder (in its individual capacity) on March 8, 2007 or any time thereafter; and (ii) that is not the subject of a Trade Placement occurring before the close of business February 14, 2007 (such excluded claims are herein referred to as "Wachovia Claims"). Wachovia Claims are not deemed by the Plan to be Allowed Claims. For the avoidance of doubt, any and all rights vested in any Entity or Person under the Lenders Collateral Stipulation to interpose objections to Wachovia Claims shall be vested (on a non-exclusive basis) in the Liquidation Trust, and to the extent Paragraph 6 of the Lenders Collateral Stipulation established a deadline for interposing such objections to Wachovia Claims, the deadline shall be extended  through the Claims/Interest Objection Deadline.

Section 10.02 **Objections to Other Claims and Interests**.

(a)     The Claims/Interest Objection Deadline shall be one (1) year after the Effective Date; provided, however, that the last date for filing Avoidance Actions against a holder of a Claim or Interest shall be the date established by Bankruptcy Code Section 546(a) and the last day for asserting any other Estate Cause of Action shall be the last day of the applicable statute of limitations therefor provided under applicable non-bankruptcy law, as such period may have been extended by Bankruptcy Code Section 108 or any other section of the Bankruptcy Code or other applicable law; provided further, however, that no Entity or Person (including the Liquidation Trust, any holder of Claims, or any holder of Interests) may file an objection to any Claim deemed Allowed by the Plan, and any such objection shall be deemed null and void. Notwithstanding any of the foregoing, the Liquidation Trust may request from the Bankruptcy Court one or more extensions of the Claims/Interest Objection Deadline, which extended date shall become the new Claims/Interest Objection Deadline.

(b)     The Liquidation Trust shall have the primary but not exclusive responsibility for reviewing and objecting to the Allowance of any Claim or Interest filed in the Chapter 11 Cases. All objections shall be litigated to a Final Order; provided, however, that the Liquidation Trust may compromise and settle any objections to Claims or Interests, subject to the provisions of this Article X without further order of the Bankruptcy Court; provided further, however, that distributions may be made to a holder of a Claim or Interest prior to the expiration of the Claims/Interests Objection Deadline if the Liquidation Trust reasonably believes that no basis exists for objection to such holder's Claim or Interest. Notwithstanding the foregoing, nothing in this Plan shall be interpreted to operate as a waiver or release of (x) any right that any Entity or Person may have to object to (a) any Claim or Interest through the Effective Date or (b) any Fee Claim after the Effective Date; or (y) any objection to Claims or Interests pending as of the Effective Date, regardless of whether such objection was brought by the Chapter 11 Trustee or any other Entity or Person.

(c)     Objections to Claims or Interests not otherwise deemed Allowed by the Plan shall not be subject to any defense, including, without limitation, res judicata, estoppel or any other defense because of the confirmation of the Plan. Additionally, the rights of the Liquidation Trust to amend, modify or supplement any objection to a particular Claim or Interest to include relief pursuant to Bankruptcy Code Section 502(d) are hereby preserved until sixty (60) days after the entry of a Final Order against a holder of such Claim or Interest.

Section 10.03 **Estimation of Claims or Interests**.     Through the Claims/Interests Objection Deadline, the Liquidation Trust may request that the Bankruptcy Court enter an Estimation Order fixing the value of, pursuant to Bankruptcy Code Section 502(c), any Disputed Claim or Interest, regardless of whether a Debtor or the Chapter 11 Trustee has previously objected to such Claim or Interest, provided that a Final Order or unstayed order has not previously been entered by the Bankruptcy Court with respect to such Claim or Interest or any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Disputed Claim or Interest at any time during litigation concerning any objection to any Disputed Claim or Interest, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court enters an Estimation Order estimating any Disputed Claim or Interest, the amount of such estimation will constitute either the Allowed amount of such Claim or Interest or a maximum limitation on such Claim or Interest, as determined by the Bankruptcy Court in the absence of a stay of such order pending appeal. If a Claim has been estimated for

an amount less than the Claim amount asserted and the Claim holder has obtained a stay pending appeal, an amount equal to the difference between the estimated Claim and the Disputed Claim shall constitute the remaining Disputed Claim for which the Disputed Claims Reserve shall be maintained in accordance with Section 8.03 of the Plan. If the estimated amount constitutes a maximum limitation on such Claim or Interest, the Liquidation Trust may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim or Interest. All of the aforementioned Claims and Interests objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims or Interests may be estimated and thereafter resolved by any mechanism permitted under the Bankruptcy Code or the Plan.

Section 10.04 **Alleged Equipment Leases**. The Plan incorporates by reference, as if set forth fully herein, the terms and procedures for resolving disputes with Entities or Persons that allegedly leased equipment to the Debtors for use at their facility in Latrobe, Pennsylvania, set forth in "Exhibit A" to the *Order Under Bankruptcy Code Sections 327, 328(a), 363(b) and (f) and 364(b) and (e) Re Trustee's Motion for Order: (A) Authorizing Employment of Gordon Brothers Industrial LLC and Harry Davis & Company, as Trustee's Exclusive Sales Agent and Approving Form of Agreement; (B) Authorizing the Sale of the Latrobe Plant Assets and Other Property in a Turnkey or Auction Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances, and (C) Authorizing Cash Advance and Repayment from Sale Proceeds Pursuant to Agreement,* entered by the Bankruptcy Court on or about April 12, 2007 (Docket Number 1123).

Section 10.05 **Amendments to Claims or Interests**. After the Confirmation Date, a Claim or Interest may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim or Interest solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority.

Section 10.06 **Authority To Settle Disputed Claims or Interests**. From and after the Effective Date, the Liquidation Trust shall be authorized with respect to those Claims or Interests that are not Allowed by Final Order, pursuant to Bankruptcy Rule 9019 and Bankruptcy Code Section 105(a), to compromise and settle Disputed Claims with a Disputed Amount in excess of $25,000.00, upon Bankruptcy Court approval of such settlement. Notwithstanding any prior order of the Bankruptcy Court or the provisions of Bankruptcy Rule 9019, the Liquidation Trust may settle or compromise any Disputed Claim with a Disputed Amount of $25,000.00 or less without approval of the Bankruptcy Court.

Section 10.07 **No Recourse**. Notwithstanding that the Allowed amount of any particular Disputed Claim or number of Disputed Interests is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount or number for which there is insufficient value in the relevant fund or reserve to provide a recovery equal to that received by other holders of Allowed Claims or Interests in the relevant Class, with respect to such Claim or Interest no Claim or Interest holder shall have recourse to the Liquidation Trust, the Estates, the Proponents, any member thereof, any of their professionals, the holder of any other Claim or Interest, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim or Interest under Section 502(j) of the Bankruptcy Code.

THUS, THE BANKRUPTCY COURT'S ENTRY OF AN ESTIMATION ORDER MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS OR INTERESTS, REGARDLESS OF THE AMOUNT OR NUMBER FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS OR INTERESTS.

## ARTICLE XI

## EFFECTS OF CONFIRMATION

Section 11.01 **Retention of Estate Causes of Action/Reservation of Rights**. Except as expressly provided for in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to (i) be res judicata or the basis for estoppel of, (ii) create any other defense to the prosecution to judgment on the merits of, (iii) be a waiver of or (iv) be a relinquishment of any Estate Causes of Action, including Avoidance Actions, left unaltered or unimpaired by the Plan. On and after the Effective Date, the Liquidation Trust shall have, retain, reserve and be entitled to assert, prosecute, settle or abandon all such Estate Causes of Action.

Section 11.02 **Direct Causes of Action**. Nothing in the Plan is intended to, nor shall be interpreted as, impairing, waiving or otherwise affecting in any way Causes of Action that do not belong to the Estates, including assessments of damages. Proceeds recovered through settlement or prosecution of Unsecured Senior Subordinated Notes Direct Causes of Action shall not be subject to Turnover Enforcement. Moreover, it is intended that any and all such rights, claims and defenses with respect to any Cause of Action that does not belong to the Estates are reserved expressly, and nothing herein shall constitute a waiver or release with respect to same.

Section 11.03 **Compromise of Controversies**. Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against the Debtors, arising out of, relating to or in connection with the business or affairs of or transactions with the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness. The provisions of the Plan, including, without limitation, its injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

Section 11.04 **Preservation of Insurance**. Except as necessary to be consistent with the Plan, the Plan shall not diminish or impair the enforceability of insurance policies that may cover Claims against the Debtors, the Estates, or Assets or any other Person or Entity.

Section 11.05 **Term of Injunctions or Stays**. Until the Effective Date, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code Sections 105(a) or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect. After

the Effective Date, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code Sections 105(a) or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect to the extent provided for herein and in the Confirmation Order.

Section 11.06 **Exculpation**. None of the Plan Proponents, the Chapter 11 Trustee, nor any member, director, officer, partner, employee, agent, professional, or representative thereof (but solely in their capacity as such), shall have or incur any liability, in any form, to the Estates or the Liquidation Trust (or, to the extent set forth in Bankruptcy Code Section 1125(e), any other Entity or Person), for any act or omission in connection with or arising out of their involvement in the preparation or filing of the Disclosure Statement or the Plan, or the conduct of the Chapter 11 Cases, including the type or value of distributions, if any, reserved under the Plan for holders of Claims or Interests, the solicitation of votes for acceptance or rejection of the Plan, the pursuit of confirmation and consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for fraud, willful misconduct or gross negligence, and, with respect to gross negligence, shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and applicable law.

Section 11.07 **Injunction**. Confirmation of this Plan shall have the effect of, among other things, permanently enjoining (x) all Entities or Persons that have held, hold or may hold or have asserted, assert or may assert Claims against or Interests in the Estates with respect to any such Claim or Interest, and (y) respecting (f)(i) and (f)(ii) of this Section 11.07, the Estates and the Liquidation Trust, from and after the Effective Date, from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan): (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Estates or the Liquidation Trust or any of their property; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Estates or the Liquidation Trust or any of their property; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Estates or the Liquidation Trust or any of their property; (d) asserting any right of setoff, directly or indirectly, against any obligation due the Estates or the Liquidation Trust or any of their property, except as contemplated or allowed by the Plan; (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (f) prosecuting or otherwise asserting (i) any form of objection to any Claim that is Allowed by the Plan or (ii) asserting Avoidance Actions against any holder of a Lender Claim that is Allowed by the Plan. Additionally, unless otherwise explicitly stated in the Plan, the injunction contemplated by this Section shall prohibit the assertion against the Liquidation Trust of all Claims or Interests, if any, related to the Debtors. The foregoing is not intended to enjoin Entities or Persons from pursuing direct Causes of Action against any Entity or Person, other than contesting Claims Allowed by the Plan and from the assertion of Avoidance Actions against holders of Allowed Lenders Claims.

Section 11.08 **No Releases for Specified Parties**. None of the waiver, claims Allowance, exculpation, or injunction provisions in the Plan shall benefit or otherwise protect

(without limitation) the following: (a) Wachovia Claims;  (b) any Claims or Interests asserted by any Insider, BDO Seidman, E&Y, or any Other Debtor Pre-Petition Professional; or (c) any Insider, Wachovia, BDO Seidman, E&Y, or any Other Debtor Pre-Petition Professional from any liability they may have to the Debtors, the Estates, the Liquidation Trust, or to any other Entity or Person.  None of the waiver, exculpation, or injunction provisions in the Plan shall be deemed to be valid or enforceable to the extent that they benefit or otherwise protect (without limitation) the following: (x) Wachovia Claims;  (y) any Claims or Interests asserted by any Insider, BDO Seidman, E&Y, or any Other Debtor Pre-Petition Professional; or (z) any Insider, Wachovia, BDO Seidman, E&Y, or any Other Debtor Pre-Petition Professional from any liability they may have to the Estates, the Liquidation Trust, or to any other Entity or Person.

## ARTICLE XII

## RETENTION OF JURISDICTION

Section 12.01 **Retention of Exclusive Jurisdiction by the Bankruptcy Court**. Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan to the fullest extent legally permissible, including, without limitation, for the following purposes:

(a)  to the extent not otherwise determined by the Plan, to (i) determine the allowance, classification, or priority of Claims upon objection by any Entity or Person entitled to file an objection, or (ii) the validity, extent, priority and nonavoidability of consensual and nonconsensual Liens and other encumbrances against Assets, Estate Causes of Action, or property of the Estates or the Liquidation Trust;

(b)  to issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Entity or Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Cases on or before the Effective Date with respect to any Entity or Person;

(c)  to protect the Assets or property of the Estates and/or the Liquidation Trust, including Estate Causes of Action, from claims against, or interference with, such Assets or property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning Liens, security interests or encumbrances on any Assets of the Estates;

(d)  to determine any and all applications for allowance of Fee Claims;

(e)  to determine any Priority Tax Claims, Priority Non-Tax Claims, Administrative Claims or any other request for payment of Claims, including both fees and expenses, entitled to priority under Bankruptcy Code Section 507(a) of the Bankruptcy Code;

(f)     to resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of distributions hereunder, including any matters arising in connection with Section 7.05 of the Plan;

(g)     to determine any and all motions related to the rejection, assumption or assignment of executory contracts or unexpired leases, or to determine any motion to reject an executory contract or unexpired lease pursuant to Article IX of the Plan;

(h)     except as otherwise provided herein, to determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in and prior to the closing of the Chapter 11 Cases, including any remands;

(i)     to enter a Final Order closing the Chapter 11 Cases;

(j)     to modify the Plan under Bankruptcy Code Section 1127, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(k)     to issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity or Person, to the full extent authorized by the Bankruptcy Code;

(l)     to determine any tax liability pursuant to Bankruptcy Code Section 505;

(m)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(n)     to resolve any disputes concerning whether an Entity or Person had sufficient notice of the Chapter 11 Cases, the applicable Claims bar date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose;

(o)     to resolve any dispute or matter arising under or in connection with any order of the Bankruptcy Court entered in the Chapter 11 Cases;

(p)     to authorize, as may be necessary or appropriate, sales of assets as necessary or desirable and resolve objections, if any, to such sales;

(q)     to resolve any disputes concerning any injunction, exculpation or other waiver or protection provided in the Plan;

(r)     to approve, if necessary, any distributions, or objections thereto, under the Plan;

(s)     to approve, as may be necessary or appropriate, any Claims settlement entered into or offset exercised by the Liquidation Trust;

(t)     to resolve any dispute or matter arising under or in connection with the Liquidation Trust;

(u)    to order the production of documents, disclosures, or information, or to appear for deposition demanded pursuant to Bankruptcy Rule 2004;

(v)    to determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code; and

(w)    to adjudicate matters arising under Section 10.04 of the Plan.

Section 12.02 **Retention of Non-Exclusive Jurisdiction by the Bankruptcy Court**. Notwithstanding anything else in the Plan, the Bankruptcy Court shall retain non-exclusive jurisdiction over all Estate Causes of Action prosecuted by the Liquidation Trust.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

Section 13.01 **Amendments**.

(a)    **Pre-Confirmation Amendments**.  The Proponents may modify the Plan at any time prior to the entry of the Confirmation Order, provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements.

(b)    **Postconfirmation/Preconsummation    Amendment    Not    Requiring Resolicitation**.  After the entry of the Confirmation Order and before substantial consummation of the Plan, the Proponents may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that: (i) the Proponents obtain approval of the Bankruptcy Court for such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment or distributions of any Class of Allowed Claims or Interests under the Plan.

(c)    **Postconfirmation/Preconsummation Amendment Requiring Resolicitation**. After the Confirmation Date and before substantial consummation of the Plan, the Proponents may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or distributions of a Class of Claims or Interests, provided that: (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Proponents obtain Bankruptcy Court approval for such modification, after notice and a hearing; (iii) the Plan as modified complies with the Bankruptcy Code and Bankruptcy Rules; and (iv) the Proponents comply with Bankruptcy Code Section 1125 with respect to the Plan as modified.

Section 13.02 **Subrogation**.    Notwithstanding anything set forth in the Senior Subordinated Notes Indenture, after aggregate distributions on account of Lenders Claims exceed $278 million plus accrued interest (to the extent provided for in the definition of Tier Two Trust Beneficial Interests) and costs (to the extent provided for in Section 8.01(b) of the Plan),[7] until

---

[7]    As such amounts shall be Ratably reduced to the extent Disputed Claims referenced in Section 10.01 of the Plan are equitably subordinated, reduced, Disallowed, invalidated or expunged by Final Order.

holders of Class 4C Claims are paid in full, Senior Subordinated Noteholders shall subrogate to all Lenders Claims, but only to the extent Turnover Enforcement has paid a portion of distributions on Lenders Claims. No other rights of subrogation respecting Lenders Claims are provided herein. Nothing herein shall otherwise affect any rights that parties-in-interest may have to the subrogation of Claims, from any source.

Section 13.03 **Severability**. If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision and make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Section 13.04 **Successors and Assigns**. The rights, benefits and obligations of any Entity or Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Entity or Person.

Section 13.05 **Governing Law**. Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to conflicts of law principles which would apply the law of a jurisdiction other than the State of Delaware.

Section 13.06 **Effectuating Documents and Further Transactions**. The Liquidation Trust shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan.

Section 13.07 Intentionally omitted.

Section 13.08 **Confirmation Order and Plan Control**. To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, or any other agreement entered into by the Liquidation Trust, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order controls the Plan, the Disclosure Statement and any such agreements.

Section 13.09 **Payment of Statutory Fees**. All fees payable pursuant to section 1930 of title 28 of the United States Code as Administrative Claims under the Plan, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash on the Effective Date, or as

soon as reasonably practicable thereafter, and the Liquidation Trust shall thereafter be liable for the payment of additional fees under Section 1930 of title 28 of the United States Code other than with respect to the consolidated Chapter 11 Case which will continue after the Effective Date.

Section 13.10 **Withdrawal of Plan**. The Proponents reserve the right, in the exercise of their reasonable discretion, to revoke and withdraw or to modify the Plan at any time prior to the Confirmation Date or, if the Proponents are for any reason unable to consummate the Plan after the Confirmation Date, at any time up to the Effective Date. If the Proponents revoke or withdraw the Plan, (a) nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims by or against the Estates or to prejudice in any manner the rights of the Estates or any Entity or Person in any further proceeding involving the Debtors and (b) the result shall be the same as if the Confirmation Order were not entered, the Plan was not filed and the Effective Date did not occur.

Section 13.11 **Payment Dates**. Whenever any payment to be made under the Plan is due on a day other than a Business Day, such payment will instead be made, without interest, on the next Business Day or as soon thereafter as practicable.

Section 13.12 **Notices**. Any notice, request or demand given or made under this Plan or under the Bankruptcy Code or the Bankruptcy Rules shall be in writing and shall be hand delivered or sent by a reputable overnight courier service, and shall be deemed given when received at the following addresses whether hand delivered or sent by overnight courier service:

**If to the Official Creditors' Committee**

**RUDOV & STEIN, P.C.**
David K. Rudov
100 First Avenue, Suite 500
Pittsburgh, PA  15222
(412) 281-7300

-and-

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen
John K. Sherwood
Sharon L. Levine
65 Livingston Avenue
Roseland, NJ  07068
(973) 597-2500

**If to the Ad Hoc Lenders' Committee**

**MANION MCDONOUGH & LUCAS P.C.**
James G. McLean
600 Grand Street, Suite 1414
Pittsburgh, PA  15219
(412) 232-0200

-and-

**BROWN RUDNICK BERLACK ISRAELS LLP**
Edward S. Weisfelner
Robert J. Stark
Daniel J. Saval
7 Times Square
New York, NY 10036
(212) 209-4800

**If to the Ad Hoc Noteholders' Committee**

**DUANE MORRIS LLP**
Joel Walker
Jeffrey Spear
600 Grant Street, Suite 5010
Pittsburgh, PA 15219-2811
(412) 497-1000

-and-

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
Thomas Moers Mayer
Matthew J. Williams
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

# ARTICLE XIV

## CONFIRMATION REQUEST

The Proponents request confirmation of the Plan under Bankruptcy Code Section 1129.

Dated: June 18, 2007

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

_s/ David K. Rudov_ _____
**RUDOV & STEIN, P.C.**
David K. Rudov
100 First Avenue, Suite 500
Pittsburgh, PA  15222
(412) 281-7300

-and-

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen
John K. Sherwood
Sharon L. Levine
65 Livingston Avenue
Roseland, NJ  07068
(973) 597-2500

**AD HOC COMMITTEE OF
SECURED LENDERS**

_s/ James G. McLean_ _____
MANION MCDONOUGH & LUCAS P.C.
James G. McLean
600 Grant Street, Suite 1414
Pittsburgh, PA  15219
(412) 232-0200

-and-

**BROWN RUDNICK BERLACK ISRAELS LLP**
Edward S. Weisfelner
Robert J. Stark
Daniel J. Saval
7 Times Square
New York, NY 10036

- 51 -

(212) 209-4800

**AD HOC COMMITTEE OF SENIOR
SUBORDINATED NOTEHOLDERS**


  s/ Joel Walker
**DUANE MORRIS LLP**
Joel Walker
Jeffrey Spear
600 Grant Street, Suite 5010
Pittsburgh, PA 15219-2811
(412) 497-1000

      -and-

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
Thomas Moers Mayer
Matthew J. Williams
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100