**DEWEY & LEBOEUF LLP**
Harvey Kurzweil
Richard W. Reinthaler
James P. Smith III
William T. Conway III
Jennifer Opheim Whitener
1301 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 259-8000
Facsimile:  (212) 259-6333

*Attorneys for Defendant Wachovia*
*Capital Markets, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| HARBINGER CAPITAL PARTNERS MASTER FUND I, LTD., ET AL., : : : | |
| Plaintiffs, : : | 07-CV-08139 (DC) |
| -*against*- : : | Hon. Denny Chin |
| WACHOVIA CAPITAL MARKETS, LLC D/B/A WACHOVIA SECURITIES, ET AL., : : : | ELECTRONICALLY FILED |
| Defendants. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF WACHOVIA CAPITAL MARKETS, LLC'S MOTION TO DISMISS ON STANDING AND JURISDICTIONAL GROUNDS**

Defendant Wachovia Capital Markets, LLC ("WCM"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its motion, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), for an order dismissing, without prejudice, plaintiffs' claims against WCM for conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") pursuant to 18 U.S.C. §1962(d) on ripeness grounds and their pendent state law claims for fraud, aiding and abetting fraud, negligent misrepresentation and civil conspiracy, for lack of federal subject matter jurisdiction.

## PRELIMINARY STATEMENT

This purported RICO action must be dismissed because the plaintiffs -- purchasers of syndicated loan interests in a failed company now in bankruptcy -- cannot meet the well-established RICO standing requirement of "clear and definite" damages. Because plaintiffs are secured creditors in the bankruptcy proceedings that underlie this litigation, in which counsel for the creditors' committee has represented that they expect substantial recoveries as a result of as-yet-unfiled estate claims, the purported RICO claim on which federal subject matter jurisdiction in this case is predicated is not ripe. Under controlling Second Circuit case law, unless and until the extent of any potential recovery in the bankruptcy proceedings has been established, thereby making any damages plaintiffs may have clear and definite, the RICO claim must fail and the pendent state law claims appended to it should likewise be dismissed.

**STATEMENT OF FACTS**[1]

**A.     Background**

On September 1, 2006, Wachovia Bank, National Association ("Wachovia Bank"), agreed to extend $285 million in credit to Le-Nature's, a privately-held bottled beverage company based in Latrobe, Pennsylvania, through a single credit agreement (the "Credit Facility").  (Compl. ¶¶1, 3.)  Consistent with common banking practice, Wachovia Bank, through its affiliate, defendant WCM (the investment bank subsidiary of Wachovia Corporation), syndicated a substantial portion of the Credit Facility, *i.e.,* it arranged for a number of other financial institutions to take portions of the Credit Facility and assume proportional shares of the obligations, benefits and risks associated therewith.  Wachovia Bank served as administrative agent for the syndicate, while WCM served as lead arranger and sole bookrunner.  (*Id.* ¶3.)  Wachovia Bank retained an interest in the Credit Facility.

In mid-October 2006, it was discovered that Le-Nature's had engaged in a wide-ranging accounting fraud.  (*Id.* ¶¶48-51.)  As a result of this discovery, several unsecured creditors of Le-Nature's filed an involuntary Chapter 7 bankruptcy petition against the company in the United States Bankruptcy Court for the Western District of Pennsylvania on November 1, 2006.  (*Id.* ¶52.)  By the time of the bankruptcy, news of Le-Nature's fraud had been widely reported.  Almost immediately thereafter, a number of the initial lenders sold their interests in the Credit Facility in the secondary market on a distressed basis.  (*Id.* ¶¶163, 166.)  Some of the purchasers of this heavily discounted debt (mainly hedge funds) are plaintiffs in this action who

---

[1] The facts set forth in this section are, unless noted otherwise, those alleged in the complaint, and are taken as true solely for purposes of the instant motion.  A true and correct copy of the complaint ("Compl.") is annexed as Ex. A to the accompanying Affirmation of Harvey Kurzweil, Esq., dated November 13, 2007 ("Kurzweil Aff."), and submitted herewith.

2

purport to have acquired not only interests in the Credit Facility but also any tort claims belonging to the original members of the syndicate, through assignments. (*Id.* ¶¶167, 169.)[2]

### B.      Le-Nature's Bankruptcy Proceedings

Shortly after Le-Nature's was placed into involuntary bankruptcy, the case was converted to a Chapter 11 proceeding (the "Bankruptcy Proceedings") (*id.* ¶52), and all but one of the plaintiffs in this action are members, directly or through affiliates, of the Ad Hoc Committee of Secured Lenders (the "Ad Hoc Committee") therein.[3]  Among other things, the Ad Hoc Committee is seeking to recover in the Bankruptcy Proceedings amounts owed to the plaintiffs in this case.[4]

---

[2] The initial lender plaintiffs herein jointly own less than ten percent of the syndicated debt at issue in this case.  The balance is held by the secondary purchaser plaintiffs, who purchased their interests at a steep discount off the debt's face value. (*See* Fifth Amended Verified Statement, dated June 20, 2007, at ¶4 & Ex. A, a copy of which is annexed as Ex. B to the Kurzweil Aff.; Proof of Claim, filed on March 16, 2007 in the *In re Le-Nature's* bankruptcy proceedings by Wachovia Bank individually and as Administrative Agent, at Schedule I, a copy of which is annexed as Ex. C to the Kurzweil Aff.)  This Court may, of course, take judicial notice of the parties' public filings on a motion to dismiss.  *See, e.g., Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998), *cert denied*, 525 U.S. 1103 (1999).

Prior to plaintiffs' commencement of this action, WCM and Wachovia Bank filed an action in a Superior Court in North Carolina against all of the secondary purchasers that are plaintiffs in this action, alleging that their attempt to acquire personal tort claims through assignment was champertous under North Carolina law.  (Compl. ¶179.)  Wachovia sought and obtained from the North Carolina court a preliminary injunction that enjoined these secondary purchasers from asserting any personal tort claims against Wachovia in any other court.  The preliminary injunction remains in effect. (Compl. ¶182-83.)

[3] Plaintiff Harch CLO II Ltd. ("Harch"), is not a member of the Ad Hoc Committee but is participating in the Bankruptcy Proceedings as an interest holder in the Credit Facility. (*See* Kurzweil Aff., Ex. B, at Ex. A; Kurzweil Aff., Ex. C, at Schedule I, p.2.)

[4] The Ad Hoc Committee and Wachovia Bank have submitted separate competing requests for (a) approval of a Disclosure Statement with respect to a Chapter 11 Plan of Liquidation (principally drafted and proposed jointly by the Ad Hoc Committee and two other creditors' committees), and (b) conversion of the case to a Chapter 7 liquidation, respectively.  In addition, the Bankruptcy Court, *sua sponte*, issued an order to show cause why the case should not be dismissed, which is also currently pending.

Assuming the Court does not dismiss the case, once one of the parties' requests, which are currently *sub judice*, is granted, a Liquidation Trust Trustee or a Chapter 7 Trustee will be appointed to oversee the investigation, prosecution and/or settlement of, *inter alia*, estate claims on behalf of the debtor, and distributions to creditors.

*continued on following page . . .*

Based on statements made on their behalf in a recent filing in the Bankruptcy Proceedings, Le-Nature's creditors, including plaintiffs, believe that estate claims against former Le-Nature's executives and third parties such as the defendants herein have "***perhaps the greatest value***" of all estate assets and have an "***expectation of substantial estate recoveries***" from these claims.[5]  This assessment is apparently shared by the Chapter 11 Unsecured Creditors Committee, whose counsel recently stated at a hearing in the Bankruptcy Proceedings that she expected the litigation of the estate claims against various principals of Le-Nature's and a host of third-parties to generate "***several hundred millions, if not a billion dollars***" for the estate.[6]

In the event that either the Liquidation or Chapter 7 Trustee is able to generate any financial recovery through the litigation of such claims,[7] the plaintiffs in this case, as secured creditors, will be entitled to a share of such recovery to offset any unpaid balance of their claims under the Credit Facility.[8]  Only at the conclusion of any bankruptcy estate litigation will the

---

*continued from preceding page…*

The appointment of a Liquidation Trustee would also have to await approval of the Plan of Liquidation by the estate's constituents and a confirmation hearing.  (*See* Second Amended Disclosure Statement, dated June 18, 2007, at §§4.03, 5.02, 6.03-6.07, 8.01-8.02, a copy of which is annexed at Ex. D to the Kurzweil Aff.)  Subject to certain reservations to deal with administrative expenses and to address objections previously made by Wachovia, the proposed Plan calls for the Liquidation Trust to be funded by virtually all of the proceeds from the liquidation of the estate's assets, including all of the Credit Facility's underlying collateral (which would have otherwise been applied to reduce creditors' losses).

[5] *See* Supplemental Response of the Official Committee of Unsecured Creditors, et al., dated Aug. 16, 2007, at 6 & n.8 (emphasis added), a copy of which is annexed as Ex. E to the Kurzweil Aff.

[6] *See* Transcript of Oral Argument in the Bankruptcy Proceedings, dated August 21, 2007, at 14 (emphasis added), a copy of which is annexed as Ex. F to the Kurzweil Aff.  Defendant WCM (and Wachovia Bank, as well) denies any liability for any such claims and intends to defend against them vigorously if asserted.

[7] A list of the potential estate claims and defendants that have been identified by the creditors, including plaintiffs herein, can be found on page 48 of their recently filed Second Amended Disclosure Statement. (Kurzweil Aff., Ex. D, at §6.16.)

[8] *See* Second Amended Joint Chapter 11 Plan of Liquidation, dated June 18, 2007, at §§1.01, 5.01, 5.04-5.08, a copy of which is annexed as Ex. G to the Kurzweil Aff.; Kurzweil Aff., Ex. E, at 5-8 & Ex. A; 11 U.S.C. §§506, 726.

extent, if any, of plaintiffs' distributions from the bankruptcy estate (or subsequent Liquidation Trust) be fixed.[9]

## C.    The Instant Complaint

On September 17, 2007, rather than await the formation of the proposed Liquidation or Chapter 7 Trust in the Bankruptcy Proceedings, its subsequent prosecution of estate claims, and receipt of their share of any resultant recovery, plaintiffs commenced this purported RICO action against, among others, WCM, alleging that WCM somehow acted wrongly when it arranged the Credit Facility.  (Compl. ¶¶32-35.)  As noted above, plaintiffs in this action (many of whom are affiliates of one another) are all parties to the Bankruptcy Proceedings and, except for Harch, are members or affiliates of members of the Ad Hoc Committee.  (*Id.* ¶13) (Kurzweil Aff. Ex. B, at Ex. A.)

Plaintiffs allege that individual defendants Podlucky and Lynn (former principals of Le-Nature's) conducted the affairs of Le-Nature's -- the purported RICO "enterprise" -- through a pattern of racketeering activity that consisted of entering into a series of financings with plaintiffs as part of a scheme to "obtain money or property by means of false pretenses, representations or promises."  (Compl. ¶¶186-189.)  Even though its affiliate, Wachovia Bank, is itself a victim of Le-Nature's fraud, plaintiffs further allege that WCM has been associated with the alleged enterprise and committed racketeering acts to advance its purported scheme.  (*Id.* ¶¶198-205.)  Accordingly, plaintiffs seek to allege a primary violation of RICO against the individual defendants under §1962(c) and a claim for conspiracy to violate RICO against all defendants, including WCM, under §1962(d).  (*Id.* ¶¶184-205.)  As represented by their counsel

---

[9] There also may be other sources for distribution in the Bankruptcy Proceedings.

at the October 31, 2007 pre-motion conference before this Court, plaintiffs do not seek any damages in this action other than interest and principal under the Credit Facility.

In addition to the RICO claim, the initial lender plaintiffs also attempt to assert against WCM pendent state law claims for fraud, aiding and abetting fraud, negligent misrepresentation and civil conspiracy (*id.* ¶¶206-36, 273-83), federal subject matter jurisdiction over which is purportedly predicated on 28 U.S.C. §1367.[10]

## ARGUMENT

Plaintiffs predicate federal court jurisdiction on the RICO statute -- a statute the courts in this Circuit have repeatedly cautioned is subject to widespread misuse. *See Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394-95, 397 (S.D.N.Y. 2000) ("This Court looks with particular scrutiny at Civil RICO claims to ensure that the Statute is used for the purposes intended by Congress."). In order to assert a RICO claim, a plaintiff must satisfy RICO's statutory standing requirements, which are "(1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation." *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990)); 18 U.S.C. §1964(c). The RICO statutory standing requirements are independent requirements that must be satisfied in addition to the requirements for Article III justiciability. *See American Home Mortgage Corp. v. UM Sec. Corp.*, No. 05 Civ. 2279(RCC), 2007 WL

---

[10] Given the uncertainty of plaintiffs' recovery under the Credit Facility, in order to promote judicial economy, WCM requested leave to file a motion to dismiss limited, in the first instance, to the fully dispositive issue of the ripeness of plaintiffs' RICO claims and, concomitantly, this Court's jurisdiction over their remaining state law claims. This Court granted WCM leave to submit this narrowly targeted motion without prejudice to its right to submit a subsequent motion to dismiss on any other grounds in the event that (a) this motion is denied, or (b) this action is subsequently re-filed by plaintiffs after a without-prejudice dismissal. In addition to the ripeness argument, WCM believes that plaintiffs' RICO conspiracy and common law claims are subject to dismissal for a variety of substantive reasons.

1074837, at *3 (S.D.N.Y. Apr. 9, 2007) ("In general, RICO standing is a more rigorous matter than standing under Article III." (internal quotations omitted)).

With respect to the injury element, it is well settled in this Circuit that "a cause of action does not accrue under RICO until the amount of damages becomes clear and definite." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994), *cert. denied,* 513 U.S. 1079 (1995) (reasoning that "the fraud defendant is not liable for all losses *that may occur*, but only for those *actually suffered*" (emphasis added)); *see also Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1103 (2d Cir. 1988) ("[C]ongress tied the right to sue for damages under §1964(c), not to the time of the defendant's RICO violation, but to the time when plaintiff suffers injury to 'his business or property' from the violation"). To this end, courts in this Circuit have consistently held that "a creditor claiming that its ability to collect its debt has been impaired or frustrated by a RICO violation lacks standing to sue under RICO for the amount of the debt as long as the extent of the loss remains uncertain, *as for example where collection efforts continue*." *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 219 F. Supp. 2d 576, 578 (S.D.N.Y. 2002) (emphasis added).[11] Dispositively, as the Second Circuit and this Court have held, this same conclusion holds true, *a fortiori*, in cases where creditors of a bankrupt company bring RICO claims prior to a determination of whether they will be able to recover all or some of their "lost-debt" damages through the debtor's pending bankruptcy proceedings. *See Bankers Trust,* 859 F.2d at 1106 (dismissing creditors' RICO claims as unripe because of the possibility

---

[11] *See also, e.g., Motorola,* 322 F.3d at 135-37 (dismissing plaintiffs' RICO claims as unripe because of the possibility of recovery from debtor through, *inter alia*, ongoing arbitration proceedings); *Stochastic Decisions, Inc. v. DiDomenico,* 995 F.2d 1158, 1165-66 (2d Cir. 1993) (dismissing RICO claims as unripe because plaintiff was a judgment creditor to a bankrupt company whose collection efforts were still ongoing); *cf. Goldfine*, 118 F. Supp. 2d at 398-99 ("Plaintiffs cannot claim that their loans are uncollectible *before* making any effort to collect them through the traditional legal means available to them." (internal quotations omitted)).

of recovery from debtor through ongoing bankruptcy proceedings); *L'Europeenne de Banque v. La Republica de Venezuela,* 700 F. Supp. 114, 119 (S.D.N.Y. 1988) (same).

Based on this precedent, plaintiffs' alleged RICO damages cannot satisfy this Circuit's "clear and definite" standing requirement given the ongoing nature of the Bankruptcy Proceedings, where plaintiffs have not come close to exhausting their legal remedies. As explained above, plaintiffs are active participants in the Bankruptcy Proceedings and, in this connection, are awaiting the forthcoming prosecution of, and possible distribution of proceeds from, estate claims that they have represented to the Bankruptcy Court they anticipate generating "substantial estate recoveries." (Kurzweil Aff., Ex. E, at 6 n.8.) Thus, according to plaintiffs, until these estate claims are prosecuted to finality and the Bankruptcy Proceedings otherwise come to conclusion, there remains a strong possibility that plaintiffs will be able to recover in the Bankruptcy Proceedings under the Credit Facility. *See Motorola,* 322 F.3d at 137 (finding creditor's RICO claims to be unripe even where there was only a "forlorn hope" of recovering bad debt through other pending proceedings). As long as this possibility exists, plaintiffs' asserted RICO damages, which seek payment of debts under the Credit Facility, will be unclear, indefinite and speculative. *See Bankers Trust,* 859 F.2d at 1106 (finding plaintiffs' RICO damages to be "unrecoverable, at least at this time, because their accrual is speculative and their amount and nature unprovable" (internal quotations omitted)).

Accordingly, under these circumstances, plaintiffs' RICO claims must be dismissed as unripe until such time as it can be determined whether and to what extent they will

be able to recover under the Credit Facility through the Bankruptcy Proceedings.  *See id.*;
*L'Europeenne de Banque,* 700 F. Supp. at 119.[12]

Finally, as the Second Circuit has observed, "[i]n general, where the federal
claims are dismissed before trial, [pendent] state claims should be dismissed as well."  *New York
Mercantile Exch. Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 118-19 (2d Cir. 2007)
(internal quotations omitted)); *see Giordano v. City of New York*, 274 F.3d 740, 754-55 (2d Cir.
2001) (concluding that it was error for district court to exercise supplemental jurisdiction over
state law claims, where federal disability claims were dismissed).  Here, as set forth above,
plaintiffs have not stated, and cannot state, any viable cause of action under RICO, thus
mandating dismissal of plaintiffs' federal claims.  Because there are no sustaining federal claims,
and, thus, no independent basis for federal jurisdiction, this Court should decline to exercise
supplemental jurisdiction over the remaining state law claims.[13]

---

[12] Plaintiffs' failure to allege whether or to what extent the collateral securing their interest in the Credit
Facility is insufficient to make them whole provides an additional basis for dismissal on ripeness grounds.
*Motorola*, 322 F.3d at 135 (noting that the "'clear and definite' amount of damages suffered by a secured
creditor . . . cannot be established until it is finally determined whether the collateral is insufficient to
make the plaintiff whole, and if so, by how much" (internal quotations omitted)).  This, along with the
fact that plaintiffs are simultaneously seeking to recover through the pending Bankruptcy Proceedings, is
one of several bases for distinguishing this case from this Court's decision in *Bank of China v. NBM
L.L.C*, No. 01 CIV 0815 DC, 2001 WL 1360299 (S.D.N.Y. Nov. 5, 2001).

[13] In their complaint, plaintiffs also allege that the Court has subject matter jurisdiction pursuant to 28
U.S.C. §1334(b) by virtue of the existence of the Bankruptcy Proceedings, notwithstanding the fact that
WCM is not a party to those proceedings and that plaintiffs are asserting in this action direct creditor
claims on their own behalf as opposed to estate claims.  (Compl. ¶40.)  Given that plaintiffs' counsel did
not identify bankruptcy jurisdiction when asked by the Court during the October 31, 2007 pre-motion
conference whether there were any grounds for federal subject matter jurisdiction other than the purported
RICO claim, it is apparent that plaintiffs have abandoned this assertion.

## CONCLUSION

For the foregoing reasons, WCM respectfully requests that this Court enter an order dismissing the complaint as to WCM in its entirety without prejudice.

Dated: November 13, 2007                              Respectfully submitted,

**DEWEY & LEBOEUF LLP**

By: /s/ Harvey Kurzweil_____
     Harvey Kurzweil
     Richard W. Reinthaler
     James P. Smith III
     William T. Conway III
     Jennifer Opheim Whitener

1301 Avenue of the Americas
New York, New York 10019
(212) 259-8000

*Attorneys for Defendant Wachovia*
*Capital Markets, LLC*

Of Counsel:

**ROBINSON, BRADSHAW & HINSON, P.A.**
Robert W. Fuller (*pro hac vice*)
Katherine G. Maynard (*pro hac vice*)
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
(704) 377-2536