UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HARBINGER CAPITAL PARTNERS
MASTER FUND I, LTD., *et al.*,

Plaintiffs,

-against-

WACHOVIA CAPITAL MARKETS, LLC
d/b/a WACHOVIA SECURITIES, *et al.*,

Defendants.

No. 07-CV-08139 (DC)

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF RIPENESS

QUINN EMANUEL URQUHART OLIVER &
    HEDGES, LLP
Michael B. Carlinsky
Richard I. Werder
Robert S. Loigman
Adam B. Wolfson
51 Madison Avenue
New York, New York  10010-1601
(212) 849-7000

Attorneys for Plaintiffs

December 4, 2007

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ................................................................................................2

    A.    Background ...................................................................................................2

    B.    The Bankruptcy Proceeding.........................................................................4

    C.    The North Carolina Action ..........................................................................4

    D.    Federal Action Before this Court .................................................................6

ARGUMENT .................................................................................................................6

I.    PLAINTIFFS' RICO CLAIMS ARE RIPE FOR ADJUDICATION ...............................6

    A.    Plaintiffs Have Suffered Actual Injuries.....................................................7

    B.    Plaintiffs' Claims Are Not Rendered Unripe Merely Because the Le
        Nature's Estate May Pursue Its Own Claims...............................................7

    C.    The Cases Cited by Defendants Demonstrate that Plaintiffs' RICO Claims
        *Are* Ripe for Adjudication........................................................................10

        1.    *Bankers Trust* and *Stochastic Decisions* ....................................11

        2.    *First Nationwide Bank* and *Motorola* .........................................13

II.    THE COURT SHOULD RETAIN JURISDICTION OVER PLAINTIFFS'
      STATE LAW CLAIMS EVEN IF THE RICO CLAIMS ARE DISMISSED. .................16

    A.    This Case Is "Related to" the Pending Le Nature's Bankruptcy Proceeding
        Under 28 U.S.C. § 1334(b) .......................................................................17

    B.    Abstention Would Be Inappropriate and Inequitable Here ....................18

    C.    The Court May Retain Supplemental Jurisdiction Over Plaintiffs' State
        Law Claims Pursuant to § 1367(c)............................................................21

III.    IF THE RICO CLAIMS ARE DISMISSED, PLAINTIFFS SHOULD BE
       PERMITTED TO AMEND THE COMPLAINT ........................................................23

CONCLUSION...............................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Home Mortgage Corp. v. UM Sec. Corp.*,
No. 05 Civ. 2279 (RCC),
2007 WL 1074837 (S.D.N.Y. Apr. 9, 2007)................................................................22

*Am. Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp.*,
198 B.R. 55 (Bankr. S.D.N.Y. 1996).........................................................................17

*Ametex Fabrics, Inc. v. Just In Materials, Inc.*,
140 F.3d 101 (2d Cir. 1998)....................................................................................22

*Ashland Oil, Inc. v. Arnett*,
875 F.2d 1271 (7th Cir. 1989)..............................................................................8, 17

*Bank of China v. NBM L.L.C.*,
No. 01 Civ. 0815 D.C., 2001 WL 1360299 (S.D.N.Y. Nov. 5 2001)..................................7, 24

*Banker's Trust Co. v. Rhoades*,
859 F.2d 1096 (2d Cir. 1988)........................................................................ 10-13, 16

*Breeden v. Bennett (In re Bennett Funding Group, Inc.)*,
367 B.R. 302 (Bankr. N.D.N.Y. 2007) .....................................................................16

*In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*,
155 F. Supp. 2d 1069 (S.D. Ind. 2001) ....................................................................14

*Bronx Household of Faith v. Bd. of Educ.*,
492 F.3d 89 (2d Cir. 2007)......................................................................................6

*Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*,
462 F.3d 219 (2d Cir. 2006).....................................................................................8

*Bullmore v. Banc of America Securities LLC*,
485 F. Supp. 2d 464 (S.D.N.Y. 2007)........................................................................9

*Burke v. Dowling*,
944 F. Supp. 1036 (E.D.N.Y 1995) .............................................................12, 13, 14

*Carbonell v. Acrish*,
154 F. Supp. 2d 552 (S.D.N.Y. 2001)........................................................................19

*Celotex v. Edwards*,
514 U.S. 300 (1995)...............................................................................................17

*Deep v. Boies*,
No. 1:05-CV-1187 (FJS/RFT),
2007 WL 169940 (N.D.N.Y. Jan. 17, 2007)................................................................19

*Donovan v. City of Dallas,*
    377 U.S. 408 (1964) ................................................................................5, 20

*Enron Corp. v. Avenue Special Situations Fund II, LP (In re Enron Corp.),*
    333 B.R. 205 (Bankr. S.D.N.Y. 2005) .......................................................18

*First Capital Asset Management, Inc. v. Brickellbush,*
    219 F. Supp. 2d 576 (S.D.N.Y. 2002) .......................................................13

*First Nationwide Bank v. Gelt Funding Corp.,*
    27 F.3d 763 (2d Cir. 1994) ............................................................. 10, 13-16

*Fraternity Fund v. Beacon Hill Asset Management LLC,*
    376 F. Supp. 2d 385 (S.D.N.Y. 2005) .........................................................9

*Goldfine v. Sichenzia,*
    118 F. Supp. 2d 392 (S.D.N.Y. 2000) .......................................................15

*Lerner v. Fleet Bank,*
    318 F.3d 113 (2d Cir. 2003) ......................................................................22

*In re Merrill Lynch Ltd. P'ships Litig.,*
    7 F. Supp. 2d 256 (S.D.N.Y. 1997),
    *aff'd,* 154 F.3d 56 (2d Cir. 1998) .............................................6, 12, 14, 16

*ML Media Partners, LP v. Century/ ML Cable Venture (In re Adelphia Commc'ns Corp.),*
    285 B.R. 127 (Bankr. S.D.N.Y. 2002) .......................................................20

*Monahan v. New York City Dept. of Corrections,*
    214 F.3d 275 (2d Cir. 2000) ......................................................................23

*Motorola Credit Corp. v. Uzan,*
    322 F.3d 130 (2d Cir. 2003) ...........................................................10, 14, 15

*New York City Employees' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Secs. Litig.),*
    293 B.R. 308 (Bankr. S.D.N.Y. 2003) ..................................................17, 18

*Old Republic Ins. Co. v. Hansa World Cargo Serv. Inc.,*
    170 F.R.D. 361 (S.D.N.Y. 1997) ..............................................................16

*Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.),*
    980 F.2d 110 (2d Cir. 1992) ......................................................................17

*Rahl v. Bande,*
    316 B.R. 127 (S.D.N.Y. 2004) ..................................................................20

*Schweitzer v. Dep't of Veterans Affairs,*
    No. 01-6067, 2001 WL 1512421 (2d Cir. Nov. 16, 2001) .......................21, 22

*Steinberg v. Buczynski,*
    40 F.3d 890 (7th Cir. 1993) .........................................................................8

*Stochastic Decisions, Inc. v. DiDomenico,*
    995 F.2d 1158 (2d Cir. 1993) ........................................................10, 11, 12, 13

*The Mediators, Inc. v. Manney (In re The Mediators, Inc.)*,
   105 F.3d 822 (2d Cir. 1996) ........................................................................8

*United States v. Fell*,
   360 F.3d 135 (2d Cir. 2004) ........................................................................6

*United States v. Noland*,
   517 U.S. 535 (1996) ...................................................................................18

*Ventre v. Hilton Hotels Corp.*,
   2000 WL 1011050 (S.D.N.Y. July 20, 2000) .............................................19

*In re WorldCom, Inc. Secs. Litig.*,
   293 B.R. 308 (Bankr. S.D.N.Y. 2003) .......................................................17

## **Statutes**

11 U.S.C. § 510(c) .........................................................................................18

18 U.S.C. § 1962(d) .........................................................................................6

18 U.S.C. § 1964(c) .....................................................................................6, 15

28 U.S.C. § 1331 .............................................................................................19

28 U.S.C. § 1334 .............................................................................................19

28 U.S.C. § 1334(b) ...............................................................................6, 17, 20

28 U.S.C. § 1334(c)(1) ...........................................................................18, 20, 21

28 U.S.C. § 1334(c)(2) .....................................................................................19

28 U.S.C. § 1367 .............................................................................................22

28 U.S.C. § 1367(a) .....................................................................................6, 17

28 U.S.C. § 1367(c) .........................................................................................17

28 U.S.C. § 1367(c)(3) .....................................................................................21

Fed. R. Civ. Proc. 12(b)(1) .............................................................................22

Fed. R. Civ. Proc. 12(b)(6) .............................................................................22

Fed. R. Civ. Proc. 15(a) .................................................................................23

Plaintiffs respectfully submit this memorandum of law in opposition to the motions made by Defendants Wachovia Capital Markets, LLC ("Wachovia") and BDO Seidman, LLP ("BDO") to dismiss, without prejudice, the first and second claims for relief in the Complaint, asserted under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and Plaintiffs' pendent state law claims.

## PRELIMINARY STATEMENT

Plaintiffs own more than $165 million of bank debt issued to Le Nature's, Inc., which was forced into bankruptcy less than two months after Plaintiffs or their predecessors purchased the debt. It is undisputed that all collateral underlying the debt has been liquidated and reduced to cash, and Plaintiffs will recover, if at all, only a token amount as the result of that liquidation. It is equally clear that Plaintiffs have exhausted their contractual remedies under the Credit Facility, with no hope of remedying their losses. Nevertheless, Defendants contend that Plaintiffs' RICO claims are unripe because the Le Nature's estate *could* bring claims against third parties that might lead to some recovery for Plaintiffs as creditors of the estate.

Because Plaintiffs have suffered a clear and definite injury that can no longer be reduced through the liquidation of their collateral or the exercise of their contractual rights, the RICO claims are ripe for adjudication. The cases cited by Defendants do not suggest otherwise. Those cases hold that (i) a plaintiff must exhaust traditional, contractual remedies prior to asserting a RICO claim, and (ii) the fraudulent concealment of assets to hinder collection of debt (such as hiding assets from a bankruptcy estate itself) cannot support a RICO claim if those assets can be recovered and the debt relieved. These issues simply do not exist here. In contrast, Defendants do not cite *any* case in which a bankruptcy estate's potential claims against third parties – which here would have to be funded by Plaintiffs in any event – were held to render unripe direct RICO claims asserted against third parties by the bankrupt company's creditors. Indeed, the case law is

clear that a plaintiff may pursue direct RICO claims against third parties, *even if* an estate of which it is a creditor is asserting its own claims against third parties, including the same defendants.  Thus there is no bar to Plaintiffs' assertion of claims against Defendants now. Plaintiffs' very real injuries surpass the ripeness threshold.  The motions to dismiss, accordingly, should be denied.

In all events, because this Court can exercise both "related to bankruptcy" and supplemental jurisdiction over Plaintiffs' state law claims, it should retain jurisdiction over those claims even if the RICO claims are dismissed without prejudice.  Doing so will allow all Plaintiffs to assert all their claims against all Defendants in one court.

## STATEMENT OF FACTS

### A.    Background

Le Nature's was a massive fraud orchestrated by its executives with the substantial and knowing assistance of its long-time bank and outside auditors.  (Compl. ¶¶ 1, 5-13.)  In 2005, for example, Le Nature's reported net sales of over $275 million when its actual revenues were as little as $32 million.  (*Id.* at ¶ 1.)

On September 1, 2006, Le Nature's took a $285 million loan (the "Credit Facility") administered by Wachovia Bank, N.A., an affiliate of Defendant Wachovia.  (*Id.* ¶ 3.)  Wachovia syndicated the loan to other banks and investors, who became lenders to Le Nature's through the syndication process.  (*Id.*)  As a result, Wachovia Bank reduced its exposure to Le Nature's to only $7 million of the overall loan – less than Wachovia's fee for arranging the new Credit Facility – shifting much of its prior exposure to other, unsuspecting lenders.  (*Id.*)  Each Plaintiff in this action owns a portion of the $285 million Le Nature's bank debt, having either purchased an interest through the syndication process ("Initial Lenders") or later from a holder of the distressed debt ("Secondary Lenders").  (*Id.* ¶ 4.)

Sixty days after completion of the Credit Facility, on November 1, 2006, a group of trade creditors placed the Company in involuntary bankruptcy. (*Id.* ¶ 2.) Having ceased operations, Le Nature's is unable to repay even a tiny fraction of the loan. (*Id.* ¶ 2, 4.)

Wachovia knew of Le Nature's' fraudulent conduct and parlous financial condition long before the completion of the Credit Facility, but chose to press forward with the syndication to advance its own interests. (*Id.* ¶ 5.) Wachovia was Le Nature's' outside banker and principal financial advisor for years. It structured and completed numerous credit facilities and a bond offering for Le Nature's, and worked closely with Le Nature's' management to sell the Company. (*Id.* ¶¶ 55-75.) In furtherance of that relationship, Wachovia Bank fronted interest payments for Le Nature's on past loans without telling other lenders, thus masking Le Nature's' financial infirmities. (*Id.* ¶ 6, 130-33.) To induce lenders to participate in the syndication, Wachovia knowingly published grossly inflated revenue and profit numbers in marketing materials and research reports. (*Id.* ¶ 7, 150-51.) Wachovia told potential investors that Le Nature's was a strong, "outperform" company, and that participation in the Credit Facility was a "no brainer." (*Id.* ¶ 9, 134, 145.) At the same time, Wachovia was dumping its own holdings of Le Nature's bonds (even though as the underwriter it was expected to maintain an inventory to act as a market maker). (*Id.* ¶ 140.)

BDO was instrumental in the fraud as well. For three years, it issued reports confirming and validating Le Nature's' misstated results despite numerous red flags of fraud and financial manipulation at the Company. (*Id.* ¶ 11.) Further, in 2005, BDO knowingly misclassified more than $200 million in leases as operating (as opposed to capital) obligations, thereby enabling Le Nature's to falsely claim compliance with ratios mandated in its loan agreements. (*Id.* ¶ 10.) Wachovia knew of this mischaracterization, as well, and hired its own accountant to review the leases, but never revealed its knowledge to Plaintiffs or the other lenders. (*Id.* ¶¶ 111, 156-57.)

Through a pattern of racketeering activity and with the active assistance of Wachovia and BDO, the Le Nature's executives fraudulently misled Plaintiffs or their predecessors and successfully generated hundreds of millions of dollars in fraudulent financing.  (*Id.* ¶ 12.)

**B.      The Bankruptcy Proceeding**

Le Nature's is currently in Chapter 11 bankruptcy in the Bankruptcy Court for the Western District of Pennsylvania.  *In re Le Nature's Inc.*, No. 06-25454.  All of Plaintiffs' collateral has been liquidated.  (Chapter 11 Trustee's Motion For Order authorizing (1) payment of broker's fees and expenses and valuation professional, and (2) distributions of pro rata shares from sale and settlement proceeds to equipment lessors and estate pursuant to broker agreement and term sheet ("Trustee's Motion for Distribution"), attached as Ex. 1 to the Affirmation of Robert Loigman, dated December 4, 2007 ("Loigman Aff.").)  The liquidation generated a mere $5,825,736 for the estate.  (*Id.* at Ex. C.)  The Le Nature's estate may, in the future, attempt to assert claims against the entities and individuals – including Defendants herein – whose fraudulent conduct contributed to its bankruptcy.  It is expected that the liquidation proceeds will only partially fund the estate's administrative expenses including, if the creditors elect to bring claims against third parties, the cost of litigating those claims.  (Supplemental Response, dated August 16, 2007, filed on behalf of the "Ad Hoc" Committee of Secured Lenders and other committees and attached to BDO's Samowitz Declaration as Ex. 3, at p. 4, ¶ 7 ("Supplemental Response").)  Far from receiving funds from the liquidation proceeds, bank debt lenders (such as Plaintiffs) will likely be required to provide additional financing if the estate ultimately chooses to pursue recoveries from third parties.  (*Id.*)

**C.      The North Carolina Action**

Anticipating that Le Nature's' fraud and bankruptcy would result in claims brought by Credit Facility lenders, on March 14, 2007, Wachovia and Wachovia Bank filed a preemptive

action in North Carolina state court against the Secondary Lenders. (Complaint in *Wachovia Bank, N.A. v. Harbinger Capital Partners Master Fund I, Ltd., et. al.*, No. 07 CVS 5097, attached as Ex. 2 to the Loigman Aff.) In that action, Wachovia seeks declaratory and injunctive relief on the novel ground that secondary market purchases of distressed debt constitute champerty. (*Id.* ¶ 81-92.) None of the Initial Lenders is a party to the North Carolina suit, nor are BDO or the Le Nature's executives.

At the outset of the action, the North Carolina court issued a preliminary injunction to prevent the assertion of certain claims in multiple jurisdictions, though the court expressed no view on the champerty issues. (P.I. Order at 7, Conclusion of Law No. 1, attached as Ex. 3 to the Loigman Aff.) The injunction prohibits the Secondary Lenders from pursuing any "Personal Tort Claims" against Wachovia "in any court other than this Court." (*Id.* at 9, ¶ 1.) "Personal Tort Claims" are defined as certain claims "arising under the law of North Carolina or of any other state." (*Id.* at 10, ¶ 2.) Currently pending before the North Carolina court is a Motion to Dissolve Preliminary Injunction and Stay Action based, in part, on the holding of *Donovan v. City of Dallas*, 377 U.S. 408, 412-413 (1964), which prohibits state courts from enjoining, either directly or indirectly, the assertion of claims in federal court.[1] Also pending before the North Carolina court is a Motion to Dismiss for Lack of Personal Jurisdiction brought by the defendants there, none of whom is located in North Carolina.

---

[1] The sole basis upon which the North Carolina court issued the preliminary injunction was to prevent a multiplicity of actions by the Secondary Lenders. Because *all* the defendants in that action that own any of the debt are plaintiffs here – together with many Initial Lenders – there is no longer any risk of multiple actions. The North Carolina defendants have moved to dissolve the injunction on that basis. Additionally, as noted above, the North Carolina injunction purports to enjoin the assertion of state law claims in federal court, and thus runs afoul of *Donovan*. The motion to dissolve identifies that infirmity, as well, without prejudice to Plaintiffs' rights to assert that federal question here.

**D.    Federal Action Before this Court**

Because BDO, the Le Nature's executives, and the Initial Lenders are not parties to the

North Carolina Action, it cannot afford complete relief among the parties. Accordingly, and to

avoid a multiplicity of actions and the attendant risk of inconsistent outcomes, Plaintiffs filed this

action, asserting primary violations of the RICO statute against the Le Nature's executives under

§ 1962(c) and a claim for conspiracy to violate RICO against all Defendants under § 1962(d). In

addition, Plaintiffs asserted various state law claims over which this Court has both "related to"

jurisdiction pursuant to 28 U.S.C. § 1334(b), and supplemental jurisdiction pursuant to 28 U.S.C.

1367(a).

The Court has permitted Defendants to file this motion to dismiss limited to the issue of

the ripeness of Plaintiffs' RICO claims.

## ARGUMENT

**I.    PLAINTIFFS' RICO CLAIMS ARE RIPE FOR ADJUDICATION**

As the Second Circuit has explained, the ripeness doctrine exists to "prevent 'judicial

interference' until the effects of a defendant's actions are 'felt in a concrete way' by the

plaintiffs." *Bronx Household of Faith v. Bd. of Educ.*, 492 F.3d 89, 111 (2d Cir. 2007). "At the

core of the ripeness doctrine is the necessity of ensur[ing] that a dispute has generated injury

significant enough to satisfy the case or controversy requirement of Article III." *United States v.*

*Fell*, 360 F.3d 135, 139 (2d Cir. 2004).

A plaintiff may bring a RICO action when it can sufficiently allege that the defendants

engaged in a RICO violation and, as a result, the plaintiff sustained an injury. *In re Merrill*

*Lynch Ltd. P'ships Litig.*, 7 F. Supp. 2d 256, 264 (S.D.N.Y. 1997), *aff'd*, 154 F.3d 56 (2d Cir.

1998). Here, Defendants do not dispute that Plaintiffs have sufficiently alleged a RICO

violation. Instead, they dispute only that Plaintiffs can adequately allege injury. As shown below, Plaintiffs have done so. Accordingly, this action is ripe for adjudication.

### A.    Plaintiffs Have Suffered Actual Injuries

Plaintiffs own over $165 million of debt issued pursuant to the Credit Facility. (Compl. ¶ 4.) There is no chance Le Nature's will repay the loan – it has ceased operations and its operating assets have all been liquidated. (Trustee's Motion for Distribution, attached as Ex. 1 to the Loigman Aff.) Nor is there any chance that Plaintiffs' loss will be abated pursuant to the Credit, Security or Pledge Agreements (collectively, the "loan documents"), or through any other contract remedy. The liquidation of Le Nature's' assets, including all collateral on the bank debt, has netted less than $6 million. (*Id.* at Ex. C.) The entire proceeds, and more, will likely be needed to fund the estate's potential claims against third parties, and will not be distributed to the creditors. (Supplemental Response, at p. 4, ¶ 7.) Plaintiffs have therefore suffered injuries to the extent of the principal and interest remaining on the loans. (Compl. ¶ 4.) Claims for such clear and definite injuries are ripe for adjudication. *Bank of China v. NBM L.L.C.,* No. 01 Civ. 0815 DC, 2001 WL 1360299, at *1 (S.D.N.Y. Nov. 5, 2001) (Chin, J.).

### B.    Plaintiffs' Claims Are Not Rendered Unripe Merely Because the Le Nature's Estate May Pursue Its Own Claims

The bankruptcy estate has not asserted claims against the Defendants. The estate (or some successor thereto, such as a litigation trust) *may* seek to recover from third parties (including, potentially, Defendants herein) for their role in contributing to Le Nature's' collapse. If the estate is ultimately successful, the net proceeds will go to the estate. Creditors, including Plaintiffs, would benefit derivatively. It does not follow, however, that Plaintiffs are barred from seeking to recover for their own injuries in this action merely because they might also recover damages through the bankruptcy estate. The possibility of a derivative recovery, if the estate

chooses to pursue claims, does not render unripe direct claims for injuries that already have been suffered.

It is well-established that if a third party defrauds a corporation's creditors, the creditors may bring their own action against the third party. *See, e.g., The Mediators, Inc. v. Manney (In re The Mediators, Inc.)*, 105 F.3d 822, 825 (2d Cir. 1996); *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1993). Creditors are not precluded from bringing such claims – on ripeness grounds or otherwise – simply because the estate may pursue its own, distinct claims arising from the same events. Indeed, creditors commonly assert claims, including RICO claims, against third parties *when they can still recover through the bankrupt's estate*, and courts regularly allow such claims.

In *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271 (7th Cir. 1989), for example, the plaintiff-lenders asserted RICO claims against the defendant officers, alleging that the defendants' racketeering activity had rendered the corporation unable to repay its debts. The complaint alleged that the defendants, "in league with [the corporation's] accountant . . . induced . . . the plaintiffs to extend or expand [the corporation's] credit by mailing them a false financial statement showing [the corporation] to be in sound financial condition, when in fact it was not." *Id.* at 1272. The defendants argued that the plaintiffs could not seek a remedy directly against them. *Id.* at 1280. The Seventh Circuit disagreed, holding that the plaintiffs had suffered a direct injury in addition to any injury suffered as creditors of the estate. Thus, the court permitted the plaintiffs to pursue their RICO claims against the officers immediately, notwithstanding the potential recovery from the bankruptcy estate.[2] *See id.*

---

[2]  The issue before the *Ashland* court was standing, not ripeness. But those two justiciability doctrines substantially overlap, "most notably in the shared requirement that the [plaintiff's] injury be imminent rather than conjectural or hypothetical." *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225 (2d Cir. 2006). Significantly, in *Ashland* the existence of

Plaintiffs are similarly free to pursue state law claims against third parties while an estate, as to which plaintiffs are among the creditors, is simultaneously pursuing its own claims, including claims against the same third parties. For example, in *Bullmore v. Banc of America Securities LLC*, 485 F. Supp. 2d 464 (S.D.N.Y. 2007), the liquidators of two hedge funds sued a broker-dealer alleging that it aided and abetted the investment manager's inflation of the funds' net asset value. The defendants argued that the case should be dismissed for lack of standing because, in another case also before Judge Kaplan, *Fraternity Fund v. Beacon Hill Asset Management LLC*, 376 F. Supp. 2d 385 (S.D.N.Y. 2005), the individual investors had asserted direct claims against the broker-dealer on a similar theory. *Bullmore*, 485 F. Supp. 2d at 469. They argued that the fund could not have standing if the shareholders also had standing. Judge Kaplan rejected the defendants' argument, ruling that concurrent actions against the defendants by the investors and the liquidators were permissible. *Id.*; *see also Fraternity Fund*, 376 F. Supp. 2d at 409.

It is commonplace and common sense that defrauded victims that are creditors of an estate may maintain direct claims against third parties before the debtor's bankruptcy is concluded, even when the estate is pursuing its own claims, including claims against the same parties.[3] The claims are distinct, as are the theories of liability. Here, for example, the estate

---

the ongoing bankruptcy proceeding did not affect the conclusion that the plaintiffs had sustained a concrete cognizable injury.

[3]  In recent years, for example, class action suits asserting direct claims have been brought against third parties in connection with, and during the pendency of, nearly every major bankruptcy. *See, e.g.*, Enron (complaint filed as *Newby v. Enron Corp.*, No. H-01-3624 (S.D. Tex.)); WorldCom (complaint filed as *New York City Employees' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.*), No. 02 Civ. 3288 (DLC) (S.D.N.Y.)); Adelphia (complaint filed as *In re Adelphia Comm'ns Corp. Secs. & Derivatives Litig.*, No. 03 MDL 1529 (LMM) (S.D.N.Y.)).

will not allege that it was defrauded into lending more than $165 million to Le Nature's as Plaintiffs or their predecessors were.

It would be both unfair and wasteful to preclude a creditor from filing its direct claims against a third party until the conclusion of the bankruptcy estate's litigation efforts. Bankruptcy-related proceedings may, and often do, last years, especially when brought by a litigation trust. The logic of Defendants' argument is that a creditor could not pursue a RICO claim against any tortfeasor until the later of (i) the conclusion of any litigation by the estate, or (ii) the running of the statutes of limitation on *all* claims the estate could possibly assert against *any* third party. To prevent the limitations periods from running on a plaintiff's state law claims, moreover, the plaintiff would be forced to bring those claims while reserving its federal claims for a later, separate trial. In the interim, evidence would inevitably be lost and memories would fade. If, as a practical matter, the plaintiff could still proceed with its federal claims following all litigation by the bankruptcy estate, the federal jury would hear claims based on the same facts and same evidence as were presented years earlier to the state jury.

### C.    The Cases Cited by Defendants Demonstrate that Plaintiffs' RICO Claims *Are* Ripe for Adjudication

The cases cited by Defendants set forth the threshold for establishing the ripeness of RICO claims. Specifically, *Banker's Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988), and *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158 (2d Cir. 1993), involved RICO claims stemming from the defendants' attempts to frustrate the collection of debts by hiding assets. Because collection efforts were not yet completed – either successfully or unsuccessfully – it could not be determined whether the plaintiffs suffered any injury at all. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994), *Motorola Credit Corp. v. Uzan*, 322 F.3d 130 (2d Cir. 2003), and similar cases held that a RICO action could not be maintained

until the plaintiff had exhausted its traditional, contractual remedies that might prevent any injury from occurring. These cases did not hold, as Defendants attempt to argue, that a plaintiff's claim is unripe simply because the plaintiff may recover from a bankruptcy estate that is simultaneously pursuing tort-based claims against third parties.

### 1. *Bankers Trust* and *Stochastic Decisions*

In both *Bankers Trust* and *Stochastic Decisions*, the RICO violation involved an attempt by the defendants to hide assets that should have been used to satisfy their debts. *Bankers Trust*, 859 F.2d at 1099; *Stochastic Decisions*, 995 F.2d at 1162-63. The courts required that the plaintiffs pursue those assets and held that until the plaintiffs could demonstrate that the defendants' acts of racketeering had "successfully frustrated" their ability to satisfy their debts from those assets, their injuries were speculative. *Stochastic Decisions*, 995 F.2d at 1166 (discussing *Bankers Trust*).

In *Bankers Trust*, the defendants fraudulently concealed the debtor's largest asset by transferring it to a third party before filing for Chapter 11. 859 F.2d at 1098. Relying on the defendants' misrepresentations, Bankers Trust agreed to a plan of reorganization under which it would receive only 17.5 percent of its allowed claim. Ultimately, that plan relieved the debtor of $4.3 million of debt. Following the reorganization, Bankers Trust discovered that the asset had been returned to the debtor's control and was worth "well over $10 million." *Id.* at 1099.

Upon finding that the debtor obtained its reorganization fraudulently, the court reinstated the bankruptcy proceeding and the trustee instituted an action to recover the fraudulently transferred asset. *Id.* at 1099, 1106. Two months later, Bankers Trust sued for its lost debt under the RICO statute, alleging that the fraudulent transfer, in conjunction with the defendants' other acts, constituted a pattern of racketeering. *Id.* at 1099. The alleged fraud, however, occurred in the bankruptcy proceeding itself. *Id.* at 1106. The asserted injury was the debt the plaintiff lost

under the fraudulent plan of reorganization. After the bankruptcy proceeding was reinstated, the plaintiff was no longer bound by that plan. *See id.* at 1099. If, in the reinstated bankruptcy proceeding, the trustee recovered the fraudulently transferred assets, a new plan of reorganization could be negotiated and the injurious effects of the defendants' fraud entirely undone. Thus, until the bankruptcy proceeding was concluded, it was impossible to tell whether the defendants' fraud in the bankruptcy proceeding would cause the plaintiff any injury. *Id.* at 1106; *see also In re Merrill Lynch*, 7 F. Supp. 2d at 263 (explaining that the *Bankers Trust* court "held that because plaintiff could receive full payment on its loan in the reinstated bankruptcy proceeding, plaintiff had not yet suffered a RICO injury and its RICO injury was not ripe."); *Burke v. Dowling*, 944 F. Supp. 1036, 1051 (E.D.N.Y 1995) (same).

In *Stochastic Decisions*, the plaintiff – a judgment creditor that previously was awarded judgments for unpaid debts – brought a RICO action against the judgment debtor and third parties alleging a conspiracy to prevent the creditor from collecting its judgments by concealing assets. 995 F.2d at 1163. After the RICO claim was filed, one judgment was paid in full. *Id.* at 1162, 1165-66. The district court found that the plaintiff had made no effort to enforce the second judgment, but nonetheless awarded equitable relief to ensure its payment. *Id.* The district court further awarded the plaintiff RICO damages for its legal fees expended in attempting to collect the first judgment, but refused to award treble damages for the judgments themselves. *Id.* at 1164. Relying on *Bankers Trust*, the Second Circuit held that it was premature to construe the judgments as "injuries" because it was "likely" they would be "fully satisfied" by the ongoing collection efforts. *Id.* at 1166. Only "[i]n the event . . . that Stochastic

should ultimately fail to collect the judgment, [may it] then have a RICO claim as the basis for a separate action."[4]  *Id.*

Bankers Trust and Stochastic Decisions do not bar Plaintiffs' claims here; Defendants defrauded Plaintiffs (and others) by inducing them to lend money to an insolvent company, not by hindering collection efforts (in the bankruptcy proceedings or otherwise) after the fraud was revealed. In *Bankers Trust* and *Stochastic Decisions*, it was the collection process itself, and not the underlying liabilities, that gave rise to RICO damages. In those cases, the RICO injuries could not be assessed because the collection efforts were incomplete and thus the effects of the interfering conduct (if any) were not yet clear. Here, by contrast, further collection efforts cannot mitigate Plaintiffs' losses because their collateral already has been liquidated, yielding a meager two percent of the bank debt.

## 2.     *First Nationwide Bank* **and** *Motorola*

The remaining cases cited by Defendants hold that a plaintiff's injury is speculative if the plaintiff has failed to foreclose on collateral specified in a loan agreement, or otherwise failed to pursue contractual remedies. In *First Nationwide Bank*, the plaintiff bank claimed that the defendants fraudulently misrepresented the value of the collateral securing certain loans, and brought a RICO action before attempting to foreclose on the collateral. The claimed injury was

---

[4]   *First Capital Asset Management, Inc. v. Brickellbush*, 219 F. Supp. 2d 576 (S.D.N.Y. 2002), and *Burke* are similarly inapposite. Like *Stochastic Decisions*, *First Capital* involved a RICO claim by judgment creditors against defendants who allegedly hindered the creditors' collection efforts through a pattern of racketeering activity. 218 F. Supp. 2d 369, 377 (S.D.N.Y. 2002) (earlier decision setting forth facts). The district court ruled that the RICO claim was unripe because the creditors' collection efforts remained ongoing in state court and it was not clear whether those judgments would be satisfied. 219 F. Supp. 2d at 580. In *Burke*, relying on *Bankers Trust* and *Stochastic Decisions*, the district court held that the plaintiffs' RICO claims were unripe because the debtor still had assets and the plaintiffs' complaint "[gave] no indication that [plaintiffs] ever even demanded payment of their debts from [the debtor], much less sought to obtain a judgment or enforce it." 944 F. Supp. at 1051.

that the loans were under-secured. 27 F.3d at 765. The Second Circuit disagreed. It held that the bank did not suffer an injury merely by assuming additional risk; rather, until the bank foreclosed on the collateral, it was impossible to determine whether it had suffered any loss at all: "We hold that to the extent FNB's complaint is predicated on loans that have not been foreclosed, its claims are not ripe for adjudication because it is uncertain whether FNB will sustain any injury cognizable under RICO." *Id.* at 767. The court explained that "[a] plaintiff who claims that a debt is uncollectible because of the defendant's conduct can only pursue the RICO treble damages remedy after his contractual rights to payment have been frustrated," and that when bargained-for remedies remain, the plaintiff has not yet suffered an injury. *Id.* at 768-769.

As the Southern District observed in *In re Merrill Lynch*, 7 F. Supp. 2d at 263, *First Nationwide* is "limited to actions involving debt instruments which contain bargained-for remedies after default which the debtor is expected to pursue." *See also Burke*, 944 F. Supp. at 1052 ("Until these plaintiffs can demonstrate that the *orthodox methods of recovery* have failed them, and that defendants' acts of racketeering have in fact caused them a loss, they should not be entitled to treble damages under RICO.") (emphasis added); *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1092 (S.D. Ind. 2001) (in *First Nationwide*, "the Second Circuit upheld the dismissal of RICO claims because the plaintiff had not yet incurred an *actual injury.*") (emphasis added).

Similarly, in *Motorola*, lenders brought RICO claims against borrowers and others, alleging that they were defrauded when the borrowers defaulted on their loans and then participated in a scheme to devalue the underlying collateral. 322 F.3d 130 (2d Cir. 2003). Before the plaintiffs filed their RICO claim, Swiss arbitration proceedings were initiated. *Id.* at 133. The RICO claims were not ripe because the "damages sought [were] in respect of a loss

that would be abated to the extent that: Plaintiffs realize value on the collateral; Plaintiffs recover

in the Swiss arbitrations; or the size of the debt on the underlying contracts, or the obligation to

pay it, is affected by any ruling on Telsim's defenses in the Swiss arbitration." *Id.* at 136. Thus,

not only did numerous contingencies exist that might have abated the plaintiffs' loss, but the

plaintiffs' very *right to payment* remained under scrutiny in a foreign proceeding.[5] *Id.*

It makes sense that a lender's RICO claim against a borrower is not considered ripe until

the lender has exhausted its contractual remedies. In loan agreements, the possibility of default

is anticipated and the parties bargain for specific ways to make the lender whole should a default

occur. Here, for example, the parties agreed that if the loan were not repaid, the lender would

obtain specified rights in collateral. Generally, such rights are sufficiently valuable that their

transfer to the lender makes the lender whole. Accordingly, a lender is not "injured" merely

because the loan is not repaid; so long as the lender obtains the collateral as promised and the

value of the collateral is at least equal to the remaining debt, the terms of the contract have been

satisfied and the lender has not been injured. But once a plaintiff can show that its bargained-for

methods of recovery have failed and that the defendant's acts of racketeering caused a loss, a

RICO injury has been sufficiently alleged.

Defendants also seek to impose a new standard for ripeness in contending that damages

must be *precisely* calculable for a claim to be ripe. Defendants' argument is contrary to

established law. "18 U.S.C. § 1964(c) provides a remedy for '[a]ny person injured in his

business or property.' . . . A plain interpretation of this language suggests that the plaintiff need

---

[5] In *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392 (S.D.N.Y. 2000), the plaintiffs asserted RICO claims on the basis of unpaid loans. Relying on *First Nationwide*, the district court held that the RICO claims were unripe because "each and every loan was secured by a mortgage and note," but the plaintiffs "made no effort to enforce those rights prior to instituting this action." *Id.* at 397.

only be injured, not that the amount of damages be certain." *In re Merrill Lynch*, 7 F. Supp. 2d

at 264; *see also Breeden v. Bennett* (*In re Bennett Funding Group, Inc.*), 367 B.R. 302, 328

(Bankr. N.D.N.Y. 2007) (even under *First Nationwide*, a plaintiff's RICO claim accrues when

the plaintiff is injured; certainty as to the amount of damages is not relevant to accrual of injury);

*Old Republic Ins. Co. v. Hansa World Cargo Serv. Inc.*, 170 F.R.D. 361, 378 (S.D.N.Y. 1997)

(stating that even under *Bankers Trust*, "a RICO injury need not be precisely calculable in order

to be sufficiently definite and nonspeculative for a civil RICO cause of action to accrue."). In

RICO actions, as in other cases, plaintiffs simply are not required to specify damages to the

penny at the outset of the action.

*          *          *

Defendants' argument is grounded in the misconception that "until these estate causes of

action are prosecuted to finality and the Bankruptcy Proceedings otherwise come to conclusion,

there remains a strong possibility that plaintiffs will be able to recover in the Bankruptcy

Proceedings *under the Credit Facility*." (Wach. Br. at 8) (emphasis added). But there will be no

further recovery under the Credit Facility – the collateral identified in the loan documents, as

well as Le Nature's' other assets, have all been liquidated. Plaintiffs have not received any of

the proceeds, nor could the proceeds possibly fund more than a token amount of their losses.

Thus, the very cases Defendants cite demonstrate that Plaintiffs have suffered an injury, making

their RICO claims ripe for adjudication. Regardless of whether the bankruptcy estate pursues its

own claims against third parties, Plaintiffs' injuries are now concrete and definite.

## II.    THE COURT SHOULD RETAIN JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS EVEN IF THE RICO CLAIMS ARE DISMISSED.

It is beyond dispute that Plaintiffs' state law claims are ripe and Defendants do not argue

otherwise. Accordingly, this Court should retain jurisdiction over Plaintiffs' state law claims

pursuant to 28 U.S.C. §§ 1334(b) ("related to" bankruptcy jurisdiction) or 1367(a) and (c)

(supplemental jurisdiction).

A.    **This Case Is "Related to" the Pending Le Nature's Bankruptcy Proceeding
      Under 28 U.S.C. § 1334(b)**

28 U.S.C. § 1334(b) grants district courts "original but not exclusive jurisdiction over all

civil proceedings . . . related to cases under title 11."[6]  A case is "related to" a pending

bankruptcy proceeding if "its outcome might have any 'conceivable effect' on the bankruptcy

estate."  *Publicker Indus., Inc. v. United States* (*In re Cuyahoga Equip. Corp.*), 980 F.2d 110,

114 (2d Cir. 1992); *see also Celotex v. Edwards*, 514 U.S. 300, 308 n. 6 (1995).  ("[A]n action is

related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or

freedom of action (either positively or negatively), and which in any way impacts upon the

handling of the estate.").  Any "potential alteration of liabilities of the estate and change in the

amount available for distribution to other creditors is sufficient to find that litigation among non-

debtors is 'related to' the bankruptcy proceeding."  *New York City Employees' Ret. Sys. v.

Ebbers* (*In re WorldCom, Inc. Secs. Litig.*), 293 B.R. 308, 320 (Bankr. S.D.N.Y. 2003) (citing *In

re Cuyahoga*, 980 F.2d at 114; *Am. Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp.*, 198 B.R.

55, 58 (Bankr. S.D.N.Y. 1996)).

This case has much more than a "conceivable effect" on the bankruptcy.  First, any

recovery by Plaintiffs here will reduce the ultimate amount they can recover from the bankruptcy

estate.  *See Ashland*, 875 F.2d at 1280 n.9.  A recovery would therefore "change [] the amount

---

[6]   Wachovia incorrectly asserts that Plaintiffs have "abandoned" 28 U.S.C. § 1334(b) as a basis
for federal jurisdiction, based on its contention that Plaintiffs' counsel did not advise this Court
of "related to" jurisdiction at the October 31, 2007 conference.  (Wach. Br. at 9 n.12.)  Plaintiffs'
counsel correctly stated that the RICO claims are the only asserted claims arising under federal
law.  Counsel was not asked about alternative jurisdictional bases, nor was that an issue at the
pre-motion conference.  In any event, 28 U.S.C. § 1334(b) is specifically identified as a basis for
jurisdiction in the complaint.  (Compl. ¶ 40.)

available for distribution to other creditors." *See In re WorldCom, Inc.* at 323. That alone is sufficient to establish "related to" jurisdiction. *See id.*

Second, 11 U.S.C. § 510(c) permits a bankruptcy court to equitably subordinate a creditor's claim if the creditor has (1) engaged in some type of inequitable conduct, such as fraud, that has (2) caused an injury to the creditors of the bankrupt debtor, and (3) equitable subordination is not inconsistent with the provisions of the Bankruptcy Act. *See United States v. Noland*, 517 U.S. 535, 538 (1996); *Enron Corp. v. Avenue Special Situations Fund II, LP (In re Enron Corp.)*, 333 B.R. 205, 217 (Bankr. S.D.N.Y. 2005). Should Plaintiffs prevail in this action, these elements will be satisfied, and the bankruptcy court may therefore equitably subordinate any claims by Wachovia and its affiliate, Wachovia Bank, in the bankruptcy.

## B.    Abstention Would Be Inappropriate and Inequitable Here

Even though "related to" jurisdiction clearly exists, BDO urges this Court to invoke 28 U.S.C. § 1334(c)(1) – which permits a district court to abstain from exercising "related to" jurisdiction "in the interest of justice, or in the interest of comity with State courts or respect for state law" – because "plaintiffs' claims are exclusively filed under state law."[7]    (BDO Br. at 6-7 (citing *Deep v. Boies*, No. 1:05-CV-1187 (FJS/RFT), 2007 WL 169940, at *3 (N.D.N.Y. Jan. 17, 2007)).

BDO's assertion that *Deep* stands for the proposition that a "court abstains from exercising jurisdiction when only state law claims are presented and there is no other basis for

---

[7]   Wachovia erroneously asserts that this Court may not exercise "related to" jurisdiction over Plaintiff's state law claims, but takes no position whether the Court should abstain under section 1334(c)(1) if "related to" jurisdiction is found to exist. (Wach. Br. at 9, n.13.) Neither party argues that the factors for mandatory abstention under 28 U.S.C. § 1334(c)(2) have been met, and they should not be permitted to do so in their reply brief. "It is well-settled that arguments raised in reply papers are not a basis for granting relief." *Ventre v. Hilton Hotels Corp.*, 2000 WL 1011050, at *4 n.2 (S.D.N.Y. July 20, 2000); *see also Carbonell v. Acrish*, 154 F. Supp. 2d 552, 561 & n.10 (S.D.N.Y. 2001) (collecting cases).

federal jurisdiction" is necessarily incorrect.  (BDO Br. at 6-7.)  "Related to" jurisdiction applies
*only* to claims filed under state law; any claim filed under federal law is clearly within a federal
court's original jurisdiction under 28 U.S.C. § 1331.  In *Deep*, the court abstained from
exercising jurisdiction primarily because the plaintiff could easily file its state law claims in state
court.  *Deep*, 2007 WL 169940, at *3.  The court noted that the plaintiff's state law claims had
no basis in federal jurisdiction other than section 1334 because it could not abstain if other bases
for federal jurisdiction existed.[8]

Principles of comity are also irrelevant because there is no ongoing state proceeding
involving the same parties and issues.[9]  Nor should respect for state law factor into any
abstention decision:  Plaintiffs' fraud claims do not present novel or complex questions of state
law that would more appropriately be resolved by state courts.  *See Rahl v. Bande*, 316 B.R. 127,
135 (S.D.N.Y. 2004) ("[T]he existence of state law claims does not automatically dictate remand
or abstention [under section 1334(c)(1)] especially where, as is the case here, the state law claims
are not particularly novel or complex."); *ML Media Partners, LP v. Century/ML Cable Venture*

---

[8]  The *Deep* plaintiff initially asserted diversity jurisdiction but subsequently conceded that
parties were not diverse.  *Deep*, 2007 WL 169940, at *1.

[9]  Comity in favor of the North Carolina action is unwarranted as that action is distinct from the
case before this Court.  The present action involves state and federal fraud claims on behalf of
the Initial and Secondary Lenders against Wachovia, BDO, and the Le Nature's executives, but
the only claims before the North Carolina court are Wachovia's preemptive champerty claims
and Wachovia Bank's indemnity claim, both of which are asserted solely against the Secondary
Lenders.  Aside from Wachovia and the Secondary Lenders, none of the other parties herein is,
or has any reason to be, involved in the North Carolina action.

Defendants may point out in their reply brief that the United States District Court for the
Western District of North Carolina abstained from exercising "related to" jurisdiction over the
action brought by Wachovia and remanded the action to North Carolina state court.  As noted,
the claims in that case are very different from those presented to this Court; they are preemptive
champerty claims asserted against a subset of the bank debt lenders.  Moreover, the federal court
in North Carolina was able to remand the case to the state court where the action originated; that
option is not available to this Court.

(*In re Adelphia Commc'ns Corp.*), 285 B.R. 127, 146 (Bankr. S.D.N.Y. 2002) (finding jurisdiction pursuant to 1334(b) where there is "no material difference . . . in the ability of the state and federal courts to decide [the] issues").

The remaining factor, the "interest of justice," strongly favors retention of the state law claims. Wachovia filed an unprecedented preemptive champerty action against the Secondary Lenders in North Carolina in a transparent attempt to forum shop. The North Carolina court preliminarily enjoined the Secondary Lenders from, *inter alia*, filing state law claims against Wachovia even in federal court. To that extent, the injunction violates *Donovan v. City of Dallas*, 377 U.S. 408 (1964), in which the Supreme Court held that state courts are not empowered, either directly or indirectly, "to restrain federal-court proceedings in *in personam* actions." *Id.* at 412-413.[10]

Because the injunction (as it currently stands) effectively bars the assertion of certain claims in state court, but cannot constitutionally prohibit the assertion of claims in federal court, Plaintiffs' claims can all be litigated together only in federal court. If this Court were to abstain from exercising jurisdiction over Plaintiffs' state claims, piecemeal litigation is inevitable. All Plaintiffs will pursue their state law claims against BDO and the Le Nature's executives in New York. The Initial Lenders will also pursue their state law claims against Wachovia in New York. But, in light of the injunction, the Secondary Lenders could be forced to assert their state law claims against Wachovia in North Carolina. Avoiding such inefficiency surely falls within the "interest of justice" consideration. *See* 28 U.S.C. § 1334(c)(1).

---

[10]    The Secondary Lenders did not initially assert state law claims against Wachovia out of deference to the North Carolina court's injunction. They have moved to dissolve that injunction because, *inter alia*, it violates *Donovan* to the extent it bars assertion of claims in federal court. *See*, *supra*, note 1. The Secondary Lenders reserve the right to assert state law claims against Wachovia in an amended pleading in this action.

Indeed, forcing piecemeal litigation would be worse than inefficient – it would be *unfair*. As the parties with affirmative claims, Plaintiffs in this action are entitled to select an appropriate forum in which to pursue their claims. Plaintiffs should be permitted to litigate where the bank debt interests were transferred, and where most of the Plaintiffs are physically located. Moreover, Plaintiffs should not be forced to artificially divide their claims into separate, parallel actions. A single action against multiple defendants can have a direct, substantive impact on the trier-of-fact's consideration of the case. Separate actions, conversely, run the risk of incomplete presentations and inconsistent results.

Accordingly, this Court should not abstain from exercising "related to" jurisdiction over Plaintiffs' state law causes of action.

### C.   The Court May Retain Supplemental Jurisdiction Over Plaintiffs' State Law Claims Pursuant to § 1367(c)

28 U.S.C. § 1367(c)(3) permits this Court to "retain jurisdiction over [] claim[s] supported only by supplemental jurisdiction [even] if it has dismissed all claims over which it had original jurisdiction." *Schweitzer v. Dep't of Veterans Affairs*, No. 01-6067, 2001 WL 1512421, at *2 (2d Cir. Nov. 16, 2001).

As reflected in *Lerner v. Fleet Bank*, this Court has original jurisdiction over Plaintiffs' RICO claims. 318 F.3d 113, 119-20 (2d Cir. 2003). In *Lerner*, the district court found that the plaintiffs lacked RICO standing, dismissed the RICO claims for lack of jurisdiction under Fed. R. Civ. Pro. 12(b)(1), and declined to retain supplemental jurisdiction over the state claims. The Second Circuit affirmed, but it did so under Rule 12(b)(6) rather than under Rule 12(b)(1). *Id.* at 130. It noted that the RICO statute imposes standing requirements exceeding the requirement for

constitutional standing under Article III.[11] *Id.* at 116-17. The court stated that although a district court may dismiss a plaintiff's RICO claim for failure to state a claim under Rule 12(b)(6) if the plaintiff cannot meet the RICO statute's standing requirements, the court may dismiss the case for lack of jurisdiction under Rule 12(b)(1) only if the plaintiff lacks *constitutional* standing. *Id.* at 129-30. Accordingly, the dismissal of the plaintiffs' RICO claims for lack of jurisdiction was improper and, therefore, the district court had original jurisdiction over the suit. *Id.* at 130.

Here, if this Court finds that Plaintiffs' RICO injury is unripe, it would only be because the Court understands there to be a ripeness burden that applies uniquely to RICO claims. If so, the Court may dismiss Plaintiffs' RICO causes of action for failure to state a claim, but not for lack of jurisdiction. *See Lerner*, 318 F.3d at 130. It is thus within the Court's power to retain jurisdiction over Plaintiffs state causes of action. *See* 28 U.S.C. § 1367; *Schweitzer*, 2001 WL 1512421, at *2.

In deciding whether to exercise supplemental jurisdiction, a court is permitted to "weigh and balance several factors, including considerations of judicial economy, convenience, and fairness to the litigants." *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 105-06 (2d Cir. 1998) (internal quotation marks and citation omitted). Here, each weighs in favor of retaining jurisdiction. Retention of jurisdiction serves the interest of judicial economy. As explained above, piecemeal litigation of Plaintiffs' claims and duplicate trials of state and federal claims based on the same evidence can be avoided only if this Court retains jurisdiction over Plaintiffs' state claims. New York is also the most convenient forum. Wachovia and BDO conduct substantial operations in New York. (Compl. ¶¶ 32, 33.) Defendants Podlucky and

---

[11]  Wachovia concedes this point. (Wach. Br. at 6) ("The RICO statutory standing requirements are independent requirements that must be satisfied in addition to the requirements for Article III justiciability. *See Am. Home Mortgage Corp. v. UM Sec. Corp.*, No. 05 Civ. 2279 (RCC), 2007 WL 1074837, at *3 (S.D.N.Y. Apr. 9, 2007).").

Lynn reside in Pennsylvania but have had significant contacts with New York and, thus, are subject to jurisdiction here. (Compl. ¶¶ 34, 35.) Finally, the "fairness to the litigants" factor also favors retaining jurisdiction. Plaintiffs should not be forced to separate their claims and file in two jurisdictions, when the most efficient course is clearly to have all claims litigated in a single forum. Indeed, this course is most fair and expeditious for *all* parties concerned, including Defendants.

Accordingly, this Court should retain supplemental jurisdiction over Plaintiffs' state law claims.

### III.    IF THE RICO CLAIMS ARE DISMISSED, PLAINTIFFS SHOULD BE PERMITTED TO AMEND THE COMPLAINT

For the reasons set forth above, the Court should not dismiss any of the claims asserted in the Complaint. Should the Court determine that the RICO claims are unripe, however, Plaintiffs should be permitted to amend the Complaint to remedy that deficiency. Under Rule 15(a), leave to amend a party's pleading "shall be freely given when justice so requires." "[A]bsent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." *Monahan v. New York City Dept. of Corrections,* 214 F.3d 275, 283 (2d Cir. 2000).

Defendants contend that amendment cannot cure failure to allege a ripe claim. That is incorrect. While there is no requirement that a complaint specify the exact amount of unpaid obligations suffered as damages, Plaintiffs could, for example, specifically identify the amount of their claims, including the unpaid obligations at the outset of the bankruptcy and the minimal impact of the sale of collateral. Such clear and definite allegations of damages would, to the extent necessary, clarify the amount of RICO damages and thereby further establish that Plaintiffs' RICO claims are ripe for adjudication. *See Bank of China,* 2001 WL 1360299, at *1.

# CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss should be denied.

Dated:   New York, New York
         December 4, 2007

Respectfully submitted,

QUINN EMANUEL URQUHART OLIVER &
    HEDGES, LLP

By: _____
    Michael B. Carlinsky
    Richard I. Werder
    Robert S. Loigman
    Adam B. Wolfson

51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
(212) 849-7000

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I, Robert S. Loigman, a member of the Bar of this Court, hereby certify that on December 4, 2007, I caused the foregoing Memorandum of Law to be served by either email and/or first class mail on:

Harvey Kurzweil
Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 259-8000
Email: hkurzweil@dl.com
*Attorneys for Defendant Wachovia Capital Markets, LLC*

Cary B. Samowitz
DLA Piper U.S. LLP
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 335-4500
Email: cary.samowitz@dlapiper.com
*Attorneys for Defendant BDO Seidman, LLP*

Robert O. Lampl, Esq.
960 Penn Avenue
Suite 1200
Pittsburgh, PA 15222
Tel: (412) 392-0330
Email: rlampl@lampllaw.com
*Attorney for Defendant Gregory J. Podlucky*

Robert B. Lynn
3187 Route 711 South
Ligonier, PA 15658
*Pro Se Defendant*

Robert S. Loigman