Exhibit 1

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | ) Case No. 06-25454 (MBM) |
| | ) Chapter 11 |
| LE-NATURE'S, INC., et al.,[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Document No. |
| | ) |
| R. TODD NEILSON, CHAPTER 11 TRUSTEE, | ) |
| Movant, | ) Hearing Date and Time: |
| | ) |
| v. | ) Objection Date: |
| | ) |
| NO RESPONDENT. | ) |

CHAPTER 11 TRUSTEE'S MOTION FOR ORDER AUTHORIZING
(1) PAYMENT OF BROKER'S FEES AND EXPENSES AND VALUATION
PROFESSIONAL, AND (2) DISTRIBUTIONS OF PRO RATA SHARES
FROM SALE AND SETTLEMENT PROCEEDS TO EQUIPMENT LESSORS AND
ESTATE PURSUANT TO BROKER AGREEMENT AND TERM SHEET

R. Todd Nielson, the duly appointed chapter 11 trustee (the "Trustee") in the

above captioned jointly administered bankruptcy cases (the "Cases"), hereby moves this Court

for an Order authorizing the Trustee to (1) pay the fees and expenses of Gordon Brothers

Industrial LLC and Harry Davis & Co. ("GBDJV" or the "Broker") under the Agreement with

the Broker (the "Broker Agreement") in connection with the sale (the "Sale") of the Latrobe

facility and equipment (the Latrobe Plant"), (2) pay the fees of Greystone Private Equity, LLC

("Greystone") and Loeb Equipment & Appraisal Company ("Loeb") (collectively, the "Valuation

Professional"), for their services as the Valuation Professional under the Term Sheet with

"Participating Equipment Lessors" approved by the Court by an Order on April 12, 2007

---

[1] The Debtors are the following entities: Le-Natures, Inc., Le-Nature's Holdings, Inc., and Tea Systems
International, LLC.

[Docket # 1123] and in conjunction with the waiver of the administrative claim of the Rabin Group and (3) distribute the net Sale proceeds and Giant Eagle Inc's ("Giant Eagle") $2 million deposit and $2.25 million settlement payment relating to the Sale to the Participating Equipment Lessors (the "Participating Equipment Lessors" or "Lessors") and the Trustee on behalf of the Le-Nature estate (the "Estate") pursuant to the Term Sheet, the valuations and allocations of the Valuation Professional, the Trustee's Final Master List of equipment ownership claims and disputes, and consensual settlements or other resolutions of equipment ownership disputes, with the payment to the Estate being subject to the secured claims asserted by the lenders (the "Lenders" or "Secured Lenders") under the Amended and Restated Credit Agreement dated as of September 1, 2006 among Le-Nature's as the Borrower and Wachovia Bank, National Association ("Wachovia"), as agent for the Lenders (the "Motion").

In further support of this Motion, the Trustee respectfully states as follows:

### Preliminary Statement[2]

1.      By this Motion, the Trustee seeks to pay the Broker and the Valuation Professional for their services in connection with the Sale of the Latrobe Plant and to distribute and allocate to Lessors and Le-Nature's estate the net Sale proceeds realized from the Sale as provided under the Broker Agreement and the Term Sheet where there are no outstanding equipment ownership disputes identified in the final Master List of equipment prepared by the Trustee under the Term Sheet (the "Final Master List") or identified equipment ownership disputes have been settled or resolved, with a reserve (the "Dispute Reserve") for outstanding

---

[2]      Defined terms not otherwise defined shall have the same meaning as set forth in the factual section of this Motion.

equipment ownership disputes to be held by the Trustee pending settlement or other resolution of disputes relating to the amounts in the Dispute Reserve. The Trustee additionally seeks authority to distribute Sale and Settlement proceeds for outstanding equipment ownership disputes under the Term Sheet after any such remaining disputes are resolved, whether consensually between the parties, by arbitration or other alternative dispute resolution, or order of this Court. The monies the Trustee seeks to distribute include (i) the net Sale proceeds relating to the sale of the Latrobe facility and equipment to Cadbury for $19 million after repayment of the Broker's $8 million cash advance, (ii) the $2 million deposit (with interest) forfeited by Giant Eagle and (iii) Giant Eagle's $2.25 million settlement payment under this Court's August 31, 2007 Order.

2.       Section VI of the Term Sheet provides for distribution of the Sale proceeds as follows: First the Broker's fees and expenses and the Valuation Professional's fees and expenses; Second the Broker's Cash Advance; and Third, after allocation of the Pro Rata Share of the Sale Expenses as provided in the Term Sheet each Lessor and the Trustee will receive it s Pro Rata Share. The proposed Broker commission based on total proceeds relating to the Sale of $23,250,000 is $847,500, 4% of the first $15 million and 3% of $8,250,000, and the requested expenses of the Broker total $14,013.68. The Trustee seeks to pay a $50,000 fee to the Valuation Professional engaged under the Term Sheet for services in valuing the real estate, machinery and equipment, and inventory included in the Sale and providing valuations and allocations for both a turnkey and liquidation sale. This is $12,500 higher than the $37,500 amount under the engagement letter of the Valuation Professional and is proposed based on additional services of approximately two additional weeks more than contemplated under the Valuation Professional's engagement and the agreed withdrawal of the $29,584.51

administrative claim requested by the Rabin Group (on behalf of Greystone and Loeb) and opposed by the Office of the United States Trustee.

3.      The calculations and proposed payments to the Broker and Valuation Professional and the initial proposed distributions and allocations to Lessors and the Estate (the "Initial Distributions") and reserves for disputed equipment ownership claims (the "Disputed Equipment Proceeds") are set forth in **Exhibit C** to this Motion.  The Trustee anticipates that settlements may be entered into prior to the hearing on this Motion that resolve some of the outstanding equipment ownership disputes.  An updated Exhibit of the proposed Initial Distributions to Lessors and the Estate and the amounts to be held in the Dispute Reserve will be submitted at or prior to the hearing on the Motion based on any further settlements.

4.      Although the disposition of the $2 million deposit and $2.25 million settlement payment of Giant Eagle are not expressly addressed in the Term Sheet, based on the Court's statements at the September 25, 2007 hearing on the settlement with Giant Eagle the Trustee seeks to distribute the deposit and settlement payment to Lessors in the same manner as the Cadbury Sale proceeds.  The Trustee similarly proposes to pay the Broker commission based on $23,250,000 in proceeds relating to the Sale.

## Jurisdiction

5.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).

6.      Venue of these case and this Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.     The statutory predicates for the relief requested are Sections 363 and 364 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

<u>Facts</u>

**A.     <u>General Background</u>**

8.     On November 1, 2006, four unsecured trade creditors of Le-Nature's filed an involuntary petition against Le-Nature's under chapter 7 of the Bankruptcy Code.  On November 3, 2006, the case was converted to chapter 11 and Salvatore LoBiondo, Jr. ("LoBiondo") of Kroll Zolfo Cooper LLC ("KZC") was appointed responsible officer of Le-Nature's.

9.     On November 6, 2006, two of Le-Nature's subsidiaries, Le-Nature's Holdings, Inc. and Tea Systems International, Inc. (collectively, with Le-Nature's, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The chapter 11 cases of the Debtors are being jointly administered.  On November, 8, 2006, the Bankruptcy Court entered an order appointing LoBiondo as the responsible officer of the Debtors and also entered an interim order approving the Services Agreement by and between the Debtors, KZC and LoBiondo.

10.     On November 15, 2006, the Office of the United States Trustee appointed the Unsecured Creditors Committee (the "Creditors' Committee" or the "Committee").

11.    On December 19, 2006, the Court entered a consensual order that, *inter alia* vacated the order appointing LoBiondo as responsible officer of the Debtors and directed the Office of the U.S. Trustee (the "U.S. Trustee") to appoint a chapter 11 Trustee.

12.    On January 8, 2007, the U.S. Trustee filed its Application for Approval of the Appointment of R. Todd Neilson as the Chapter 11 Trustee and the Court entered its order affirming the appointment of R. Todd Neilson as chapter 11 Trustee (the "Trustee") on January 9, 2007 (Docket No. 542).

**B.    The Sale of the Latrobe Plant and the Term Sheet agreement by and between the Trustee, Participating Equipment Lessors, the Ad Hoc Lenders and Wachovia**

13.    On February 12, 2007, the Trustee filed a motion (the "Broker Motion") seeking *inter alia* (i) authorization to employ Gordon Brothers Industrial LLC and Harry Davis & Company as the Trustee's exclusive sales agent in connection with the sale (the "Sale") of real and personal property (the "Property") relating to the Debtors' Latrobe facility (the "Latrobe Plant") and (ii) approval of an $8 million cash advance by the Broker (the "Advance") in connection with the agreement with the Broker.

14.    On April 12, 2007, this Court entered its Order (the "April 12 Order") granting the Broker Motion and approving the Broker Agreement and the Broker's payment of the Advance subject to a Term Sheet with "Participating Equipment Lessors", the "Ad Hoc Lenders" and Wachovia attached as Exhibit A to the April 12 Order. Under the Term Sheet, Participating Equipment Lessors consented to the sale of their alleged equipment free and clear of any claim or interest and the Trustee, Participating Equipment Lessors, the Ad Hoc Lenders and Wachovia agreed to procedures and mechanisms for (i) allocation and repayment of the

Advance, (ii) allocation of the Sale proceeds and Sale related expenses, and (iii) resolution of ownership disputes and distribution of the net Sale proceeds after repayment of the Advance.

15.　　The Broker Agreement approved by the April 12 Order provides for a commission to the Broker for a turnkey sale equal to 4% of the first $15 million and 3% of the next $10 million and reimbursement of expenses subject to a cap of $195,000. The Broker Agreement additionally provides for reimbursement of the Broker's $8 million Advance from the sale proceeds subject to the allocation formula and procedures set forth in the Term Sheet.

16.　　Under the Term Sheet, after payment of the Broker's fees and expenses and repayment of the Advance as provided in the Term Sheet and Order, each Lessor and the Trustee will have deducted their Pro Rata Share of Sale Expenses as provided in the Term Sheet. Each Lessor and the Trustee are then entitled to distributions of their Pro Rata Share upon either (i) a final agreement approved by the Bankruptcy Court, (ii) the determination of the Arbitrator under the Term Sheet, of (iii) for disputes not subject to alternative dispute resolution, an Order of the Bankruptcy Court authorizing such payment.

17.　　On July 13, 2007, the Trustee filed a motion to sell the Latrobe Plant in a turnkey sale free and clear of liens, claims, interests and encumbrances (the "Sale Motion"). The Sale Motion provided for a Sale of the Property to Giant Eagle for a sale price of $18.9 million with a $2 million holdback and certain potential adjustments in the price subject to overbid at an auction (the "Auction"). The Auction and hearing to consider the approval of the Sale Motion was held on August 9, 2007 at 10:30 a.m. Following bidding at the Auction, Giant Eagle was the successful purchaser at an increased price of $20 million with a $2 million indemnification holdback (the "Indemnification Holdback") and a price adjustment provision for 50% of the cost

of a sewer line removal relocation (the "Sewer Cost Adjustment") and the Court entered an order

(the "Sale Order") authorizing the Sale of the Property to Giant Eagle (See Docket No. 1526).

**C.    Court Finding that Giant Eagle Did Not Act as a Good Faith Purchaser and Amendment of Sale Order and Trustee's Settlement with Giant Eagle and Cadbury**

18.    Shortly after the Court entered the Sale Order, a reporter alleged that, prior

to the Auction, Giant Eagle sent a letter to another potential bidder, Cadbury Schweppes Bottling

Group, Inc. ('Cadbury"), threatening to pull Cadbury's products from Giant Eagle's shelves if

Cadbury continued to participate in the bid process. Following investigation by the Trustee, the

Trustee concluded that Giant Eagle was not entitled to a finding that it was a good faith

purchaser of the Property. As such the Trustee moved to amend the Sale Order (the

"Reconsideration Motion") and substitute Cadbury as the buyer of the Latrobe Plant. Giant

Eagle disputed the Trustee's contention that it was not a good faith purchaser.

19.    After a lengthy argument on the Reconsideration Motion, on August 31,

2007, the Court entered the Order Granting the Reconsideration Motion (the "Sale Amendment

Order"). (See Docket No. 1576). The Sale Amendment Order provided, *inter alia*, that (i) Giant

Eagle did not act as a good faith purchaser; (ii) Cadbury was substituted as the buyer for the

Property at its back-up bid of $19 million with the $2 million Holdback and Sewer Cost

Adjustment; (iii) Giant Eagle forfeited its $2 million deposit and accrued interest thereon (the

"Deposit") , (iv) Giant Eagle was obligated to reimburse the Trustee for any and all fees and

expenses incurred by the Trustee and his professionals in connection with the investigation of

Giant Eagle's conduct and the Reconsideration Motion and any appeal thereof, and (v) the

Trustee reserved all rights to pursue additional claims against Giant Eagle related to the Auction and Sale (the "Reservation of Rights Provision").

20.    Following entry of the Sale Amendment Order, the Trustee entered into extensive arms length negotiations resulting in a proposed settlement (the "Settlement") of the Trustee with Giant Eagle and Cadbury with respect to the Sale and the Trustee's claims against Giant Eagle. The Settlement provided, *inter alia,* (i) the Sale Amendment Order remained in full force and effect other than the Reservation of Rights provision; (ii) Cadbury agreed to close the Sale at a purchase price of $19 million with the elimination of the Indemnification Holdback and no indemnification obligations and the elimination of the Sewer Cost Adjustment; (iii) the Trustee would not oppose a sale of the Property by Cadbury to Giant Eagle provided that neither Giant Eagle or any designee shall be entitled to assert any claims against the Trustee or the Debtors' estates with respect to the Property; and (iv) Giant Eagle will pay $2.25 million to the Trustee, on behalf of the estates, in settlement of the Trustee's and the estates' claims against Giant Eagle on account of Giant Eagle's actions with respect to the Auction.

21.    On or about September 12, 2007, the Trustee filed an Emergency Motion to approve the Settlement (the "Settlement Motion") which was scheduled for hearing on September 25, 2007. Merrill Lynch Capital ("MLC") filed an objection to the Settlement Motion joined by two other alleged lessors based on the fact that the Settlement Motion did not set forth how the Deposit and the additional $2.25 million payment of Giant Eagle (the "Settlement Amount") were being distributed. The objection of MLC was resolved just prior to the September 25, 2007 hearing based on an agreement whereby the Deposit would be distributed as part of the Sale proceeds with the Settlement Amount being paid to the Debtors' estates free of

any claims of Participating Equipment Lessors or the Secured Lenders (including both the Ad Hoc Lenders and Wachovia).

22.    Notwithstanding the proposed resolution between the Trustee and MLC regarding the Settlement Amount (which the Ad Hoc Lenders and Wachovia also agreed to), the Court stated at the September 25, 2007 hearing that both the Deposit and Settlement Amount related to the Sale of the Property and should be treated as proceeds of the Sale. The Court approved the Settlement Motion in an Order entered on September 26, 2007 (Docket No. 1623).

**D.    <u>Valuations of the Equipment and Real Estate Included in the Sale For Allocation of the Sale Price, Identification of Equipment Ownership Claims and Disputes and Resolution of Equipment Ownership Disputes</u>**

23.    Pursuant to the Term Sheet, the Trustee and Participating Equipment Lessors engaged Greystone and Loeb as the Valuation Professional. A true and correct copy of the engagement letter of the Valuation Professional is attached hereto as **Exhibit A**. It was contemplated that the valuations of the real estate, machinery and equipment, and inventory included in the Sale which involved two parcels of real property and over 1600 separately listed items of machinery and equipment, would involve approximately 3 weeks work and time. However due to a number of requests and inquiries involving corrections, consideration of information provided by the parties and additional explanation and information, the services of the Valuation Professional required over an additional two weeks time over approximately an additional 6 week period. There is also a separate outstanding motion for allowance and payment of an administrative claim of the Rabin Group, involving time and expenses incurred by Greystone and Loeb in seeking to be employed as broker. The Rabin Group seeks allowance and payment of an administrative claim based on the reduction of the commission of the Broker as a

result of the competing bid of the Rabin Group. This has been opposed by the Office of the United State Trustee which contends that a competing bidder is not entitled to an administrative claim.

24.    A summary of the final allocation percentages of the Valuation Professional for a turnkey sale based on fair market value in place valuations of the real estate, machinery and equipment and inventory included in the Sale with adjustments based on a total turnkey valuation of $28.5 million is attached hereto as **Exhibit B**. The summary sets forth the percentages allocated to real estate, machinery and equipment and inventory of 20.17%, 79.26% and .57% respectively for a turnkey sale. Attached hereto as **Exhibit C** are a Turnkey Sale Proceeds Allocation which sets forth the net sale proceeds allocable to machinery and equipment under the Term Sheet and an Equipment Net Sale Proceeds Allocation which sets forth the percentages allocated to equipment claimed by each of the Lessors based on the allocations and valuations of the Valuation Professional with the disputed and undisputed amounts set forth separately.

25.    The Trustee believes there are no disputes as to the distribution of the undisputed amounts on **Exhibit C** which incorporates certain settlements or resolutions of ownership disputes reached after the Final Master List was disseminated to the parties under the Term Sheet, including (a) an agreement between Merrill Lynch and TCF Equipment Finance ("TCF") with respect to equipment items 96 and 98 on the Final Master List to split the proceeds 50/50, (b) an agreement of the Trustee to withdraw his dispute to equipment item 36 on the Final Master List claimed by Merrill Lynch based on further review of information and documents and discussion with the Ad Hoc Lenders, Wachovia, and Merrill Lynch and (c) the agreement by and

between the Trustee, the Ad Hoc Lenders, Wachovia and TCF to a 50/50 split between TCF and the Estate (subject to the lien asserted by the Secured Lenders) with respect to items 96 and 98 of the Final Master List approved by the Court in an Order filed on October 30, 2007 [Docket No. 1675].

26.     Following substantial investigation by the Trustee and his professionals and comments by the Participating Equipment Lessors, Wachovia, and the Ad Hoc Lenders, on July 26, 2007 the Trustee disseminated the Final Master List under the Term Sheet listing all of the machinery and equipment included in the Sale and identifying any ownership disputes relating thereto. The Final Master List included over 1600 separate equipment items, some of which were multiple pieces.

27.     Ownership of the bulk of the equipment included in the Sale has been resolved and it is undisputed that the real estate included in the Sale is Estate property. Settlement discussions have ensued with respect to items of equipment where ownership disputes are still outstanding and certain Lessors have elected to opt out of the binding arbitration procedures under the Term Sheet. The Trustee anticipates that settlements may be entered into prior to the hearing on this Motion that resolve some of the outstanding equipment ownership disputes. An updated Exhibit of the proposed Initial Distributions to Lessors and the Estate and the amounts to be held in the Dispute Reserve will be submitted at or prior to the hearing on the Motion based on any further settlements

**Relief Requested**

28.    By this Motion, the Trustee seeks approval to (i) pay the Broker a commission of $847,500 based on total proceeds relating to the Sale of $23,250,000 and to pay expenses of the Broker totaling $14,013.68, (ii) pay the Valuation Professional $50,000 in consideration of the services provided by the Valuation Professional and the waiver of the $29,584.51 administrative claim of the Rabin Group, and (iii) distribute and allocate the net proceeds from the Sale including the Settlement with Giant Eagle and Cadbury to Lessors and the Trustee on behalf of the Estate as set forth on **Exhibit C** and based on any further resolutions or settlements of outstanding ownership disputes, with Disputed Equipment Proceeds to be held by the Trustee in a segregated account pending settlement or other resolution of outstanding equipment ownership disputes relating thereto.  The distribution and allocation of proceeds to the Estate will be free of any claims of the Lessors, but subject to the liens asserted by the Secured Lenders and cash collateral orders of the Court relating thereto

29.    The Trustee additionally requests an Order providing: (1) outstanding equipment ownership disputes set forth in the Final Master List under the Term Sheet may be resolved by (a) the submission of a stipulation and order to this Court by an among the parties disputing ownership in the Final Master List, (b) agreement between the parties without further order of the Court where the outstanding ownership disputes identified in the Final Master List are just between Participating Equipment Lessors and no dispute has been asserted by the Trustee, the Ad Hoc Lenders, or Wachovia, or (c) determination of an Arbitrator, if such Arbitrator has been selected under the Term Sheet, and (2) the Trustee is authorized to distribute

and allocate the Disputed Equipment Proceeds based on further resolutions of the outstanding ownership disputes as provided herein

### Notice

30.    Notice of this Motion has been given to: (i) ) the Office of the United States Trustee; (ii) counsel to Wachovia Bank, N.A.; (iii) counsel to the Ad Hoc Lenders; (iv) counsel to the Ad Hoc Noteholders' Committee; (v) counsel to the Committee; (vi) any party (or its counsel) known to the Trustee that asserts an interest in the Sale proceeds; and (vii) those parties that have requested notice of pleadings in these chapter 11 cases pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

### No Prior Request

31.    No previous request for the relief sought in this Motion has been made to this or any other Court.

**WHEREFORE**, the Trustee respectfully requests that the Court enter its Order authorizing the payment of the Broker and Valuation Professional and distribution and allocation of monies relating to the Sale in the form attached hereto and grant such other and further relief as is just and proper.

Respectfully submitted,

Dated:    November 5, 2007        PACHULSKI STANG ZIEHL & JONES LLP

/s/ Bruce Grohsgal
Richard M. Pachulski (CA Bar No. 90073)
Debra Grassgreen (CA Bar No. 169978)
Bruce Grohsgal (PA Bar No. 42775)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: rpachulski@pszjlaw.com
         dgrassgreen@pszjlaw.com
         bgrohsgal@pszjlaw.com

Counsel for the Chapter 11 Trustee

# EXHIBIT A

 

June 6, 2007

Mr. R. Todd Neilson
LECG
2049 Century Park East – Suite 2300
Los Angeles, CA 90067

Mr. Stanley E. Goldich
Pachulski, Stang, Ziehl, Young, Jones & Weintraub
10100 Santa Monica Blvd. – 11th Floor
Los Angeles, CA 90067-4100

RE: Appraisal Engagement – Le Nature's, Inc./Case No. 06-25454

Gentlemen:

Thank you for allowing Greystone Private Equity, LLC and Loeb Equipment & Appraisal Company (together the "Valuation Professional") the opportunity of submitting the following appraisal engagement letter. The Trustee appointed to administer the above referenced chapter 11 matter, the Participating Equipment Lessors, the Ad Hoc Lenders and Wachovia (together "The Client") has requested that the Valuation Professional provide a letter of engagement for the purpose of establishing the terms under which the assets described herein will be appraised. Defined terms shall have the same meaning as set forth in the Court order attached hereto as Exhibit A.

This letter identifies (i) the scope of the engagement; (ii) the corresponding terms and conditions relating thereto; (iii) the valuation process to be undertaken; and (iv) the assets that will be the subject of the appraisal. Please read it carefully to make sure that the scope of the valuation has been properly defined.

**Scope of Engagement:**

    (a) appraisal of all machinery, equipment and rolling stock located at the Latrobe, PA facilities;

    (b) appraisal of certain inventory located at Latrobe, PA facilities; and

    (c) appraisal of certain parcels of real property located in Latrobe, PA.

    (d) The appraisal will not include a valuation of any intellectual property, patents or trademarks.

**Corresponding Terms & Conditions:**    The Valuation Professional will adhere to the Terms and Conditions outlining the Valuation Professional services and made part of a Court order and Term Sheet attached hereto as Exhibit "A" and incorporated herein by this reference. Although all of the Terms and Conditions will be complied with, the most significant terms bearing noting as follows:

Engagement Letter for Le Nature's, Inc.
June 6, 2007
Page 2

With respect to the process and timetable, please note that the Term Sheet provides the following:

1. The parties may submit documentation or materials to support the valuation of their equipment, vehicles and real estate (the "Valuation Materials") and "The Valuation Professional may place whatever weight it deems appropriate on the Valuation Materials submitted by each Lessor, the Ad Hoc Lenders, Wachovia and the Trustee".

2. "The Valuation Professional shall on no less than two weeks notice, notify all of such parties of the date by which the Valuation Materials, if at all, must be submitted."

3. "After reviewing the Valuation Materials, the Valuation Professional will allocate to each piece of equipment, each vehicle and each parcel of real estate its pro rata allocation of the aggregate sale proceeds" (the "Pro Rata Share").

The Valuation Professional's calculation of the Pro Rata Share is binding on all parties.

<u>Valuation Process To Be Undertaken:</u>    The Valuation Process to be undertaken by the Valuation Professional is attached hereto as Exhibit "B" and incorporated herein by this reference.

<u>Assets To Be Valued:</u>

    (a) a complete listing of the machinery and equipment assets located at the Latrobe PA facilities has or will be supplied by The Client;
    (b) a complete listing of the inventory assets located at the Latrobe PA facilities has or will be supplied by The Client; and
    (c) the parcels of real property to be valued include (i) 11 Lloyd Avenue, Latrobe, County of Westmoreland, PA. (14 parcels); and (ii) 257 Cherry Hill Drive, Unity Township, County of Westmoreland, PA. (2 parcels).

<u>Appraisal Fee:</u>

A fee of $25,000 will be charged for the valuation of all equipment assets. A fee of $12,500 will be charged to value the real estate.

Payment of the appraisal fee is not contingent upon the results of the valuation.

Engagement Letter for Le Nature's, Inc.
June 6, 2007
Page 3

Please submit all fee and expense payments to:

Greystone Private Equity, LLC
Attn: Alison Watkins
44 Broadway, Ste. 624
White Plains, NY 10601

**Expense Reimbursement:**    Expenses will be absorbed by the Valuation Professional. Expert testimony and any other services outside the scope of this engagement will be negotiated and addressed separately.

**Application For Payment:**    The Valuation Professional will file an application with the Court seeking a hearing and approval of the fees contained herein.

**Information Requests:**

The Valuation Professional will furnish certain requests for information to The Client and/or to parties knowledgeable about the assets being appraised.  The Valuation Professional has assumed that it will receive the full and complete cooperation of these parties and that the information requested will be submitted to the Valuation Professional on a timely basis.

**Timing:**

A final valuation report will be available five weeks after the mutual execution and delivery of this Engagement Letter.

**Confidentiality:**

The Valuation Professional will execute a nondisclosure letter and agrees to be bound by all terms therein. A copy of the non disclosure agreement is attached hereto as Exhibit "C" and incorporated herein by this reference. This requirement will survive the termination of this Letter Agreement. Reliant, Greystone's wholly owned property market and analysis group will also be bound by the terms of the non disclosure letter.

**Acknowledgement of the Engagement:**

The Valuation Professional intends that the appraisal shall be relied upon solely by the Client and solely for the use stated in the final appraisal report, which will indicate a purpose of the

Engagement Letter for Le Nature's, Inc.
June 6, 2007
Page 4

valuation. The maximum liability of the Valuation Professional for the breach of any obligation in connection with the engagement or the Report, and for any and all damages of any type or nature (whether in contract or in tort, and whether compensatory, consequential or punitive in nature) sustained or claimed by The Client(s) or any other person or entity in connection with this engagement or the Report, shall be limited to the fee actually received by the Valuation Professional under the engagement letter. In no event or circumstance shall the Valuation Professional have any liability to The Client(s) or any other person or entity in excess of the fee actually paid to and received by the Valuation Professional under the engagement letter.

If the foregoing terms are acceptable, please sign and date the engagement letter and return it to us via facsimile. Any signed document transmitted by facsimile shall be considered an original document and shall have the binding and legal effect of an original document. The signature of any party on a faxed document shall be considered an original signature. Please sign and return the original document to our offices for filing purposes.

Please do not hesitate to contact us should you have any additional questions or requirements and we look forward to working with you on this project and in the future.

Very Truly Yours,


_____          _____
Adam M. Reich                            Howard Newman
Co-CEO                                   Vice President
Greystone Private Equity, LLC                Loeb    Equipment    &    Appraisal
Company


Accepted By:

**Trustee**

Dated:_____          R. TODD NEILSON, Trustee appointed to administer the chapter
                         11 estate of Le Nature's, Inc., Case No. 06-25454

                         BY_____


**///signatures continued///**

Engagement Letter for Le Nature's, Inc.
June 6, 2007
Page 5

**Participating Equipment Lessors**

Dated:_____    AT&T CAPITAL SERVICES

BY_____

Dated:_____    CITICAPITAL COMMERCIAL LEASING CORPORATION

BY_____

Dated:_____    PEOPLE'S CAPITAL

BY_____

Dated:_____    M&I MARSHALL ILSLEY BANK

BY_____

Dated:_____    FIRST MERIT BANK, N.A.

BY_____

Dated:_____    FARM CREDIT LEASING

BY_____

Dated:_____    GENERAL ELECTRIC CAPITAL CORPORATION

BY_____

Dated:_____    LASALLE NATIONAL LEASING CORPORATION

BY_____

Dated:_____    MAINSAIL FUNDING LLC

BY_____

Engagement Letter for Le Nature's, Inc.
June 6, 2007
Page 6

Dated:_____     MERRILL LYNCH CAPITAL, a division of Merrill Lynch Business
                    Financial Services, Inc.

                    BY_____

Dated:_____     RBS ASSET FINANCE/dba iCX CORPORATION

                    BY_____

Dated:_____     TCF EQUIPMENT FINANCE, INC.

                    BY_____

Dated:_____     THE HUNTINGTON NATIONAL BANK

                    BY_____

Dated:_____     WELLS FARGO EQUIPMENT FINANCE, INC.

                    BY_____

Dated:_____     NATIONAL CITY COMMERCIAL CAPITAL COMPANY, LLC,
                    SUCCESSOR BY MERGER WITH NATIONAL CITY VENDOR
                    FINANCE, LLC F/K/A CHARTER ONE VENDOR
FINANCE, LLC

                    BY_____

EXHIBIT B

57430 - Le Nature - PA - 8 17 Submitted Report
Allocation of ME - RE - Inv

# 8.15 ALLOCATION

| | FMV-IP | | Reduction | | | FLV | |
|---|---|---|---|---|---|---|---|
| | Revised 8.15 | | | | | Revised 8.15 | |
| | Value | % of total | Reduction | Final Allocation | % of total | Value | % of total |
| Real Estate | $6,200,000 | 20.17% | $451,831 | $5,748,169 | 20.17% | $3,630,000 | 15.84% |
| M and E | $24,365,221 | 79.26% | $1,775,637 | $22,589,584 | 79.26% | $19,214,910 | 83.84% |
| Inventory | $175,000 | 0.57% | $12,753 | $162,247 | 0.57% | $75,000 | 0.33% |
| | $30,740,221 | 100.00% | $2,240,221 | $28,500,000 | 100.00% | $22,919,910 | 100.00% |

|  |  |  |
|---|---|---|
| difference | $ | 28,500,000 |
| % reduction | $ | 2,240,221 |
| | | 7.2875891% |
| | | 92.71241% |

Printed 11/2/2007 @ 12:33 AM

Step One - Allocation between Real Estate, Machinery and Inventory

| | % of total | $ 20,000,000.00 | $ 18,000,000.00 |
|---|---|---|---|
| Real Estate | 20.17% | $ 4,033,803.14 | $ 3,630,422.83 |
| M and E | 79.26% | $ 15,852,339.51 | $ 14,287,105.66 |
| Inventory | 0.67% | $ 113,867.35 | $ 102,471.51 |
| | 100.00% | $ 20,000,000 | $ 18,000,000 |

| Alleged Lender / Lessor | (%) | | (%) | | $20 Million allocation by FMV-IP | $18 Million allocation by FMV-IP |
|---|---|---|---|---|---|---|
| 1 | 2.0316% | 495,000 | 2.3419% | 450,000 | $ 322,053.64 | $ 289,848.27 |
| 2 | 1.4231% | 346,750 | 1.6914% | 325,000 | $ 225,600.20 | $ 203,040.18 |
| 3 | 3.5742% | 870,850 | 4.0203% | 772,500 | $ 586,586.69 | $ 509,928.02 |
| 4 | 0.4759% | 115,950 | 0.4762% | 91,500 | $ 75,438.62 | $ 67,894.76 |
| 7 | 0.0108% | 2,640 | 0.0125% | 2,400 | $ 1,717.62 | $ 1,545.86 |
| 8 | 4.1541% | 1,012,160 | 3.7887% | 728,000 | $ 658,524.87 | $ 592,672.38 |
| 10 | 8.2193% | 2,002,650 | 8.1968% | 1,575,000 | $ 1,302,950.94 | $ 1,172,655.85 |
| 11 | 2.3345% | 568,805 | 2.3263% | 447,000 | $ 370,072.16 | $ 333,064.94 |
| 12 | 19.2630% | 4,693,480 | 21.2023% | 4,074,000 | $ 3,053,641.03 | $ 2,748,276.92 |
| 13 | 3.2444% | 790,500 | 2.3419% | 450,000 | $ 514,309.90 | $ 462,878.91 |
| 14 | 0.0023% | 550 | 0.0026% | 500 | $ 357.84 | $ 322.05 |
| 15 | 0.8861% | 215,900 | 0.8847% | 170,000 | $ 140,467.44 | $ 128,420.69 |
| 17 | 5.4945% | 1,338,750 | 3.9813% | 765,000 | $ 871,008.70 | $ 783,907.83 |
| 19 | 2.1880% | 533,100 | 2.4981% | 480,000 | $ 346,842.01 | $ 312,157.81 |
| 20 | 0.6255% | 152,400 | 0.6245% | 120,000 | $ 99,153.48 | $ 89,238.14 |
| 3 & 11 & 15 | 0.1129% | 27,500 | 0.1301% | 25,000 | $ 17,891.87 | $ 16,102.68 |
| 3 & 12 | 0.4309% | 105,000 | 0.5204% | 100,000 | $ 68,314.41 | $ 61,482.97 |
| 3 & 11 | 0.0359% | 8,750 | 0.0260% | 5,000 | $ 5,692.87 | $ 5,123.58 |
| 3 & 6 | 1.3544% | 330,000 | 1.5613% | 300,000 | $ 214,702.43 | $ 193,232.18 |
| 12 & 20 | 0.9122% | 222,250 | 0.9108% | 175,000 | $ 144,598.83 | $ 130,138.95 |
| n/a | 43.2265% | 10,532,236 | 42.4619% | 8,159,010 | $ 6,852,413.98 | $ 6,167,172.58 |
| | 100.0000% | 24,365,221 | 100.0000% | 19,214,910 | $ 15,852,339.51 | $ 14,287,105.66 |
| | | | | | 0.00 | 0.00 |
| | | | | | 0.00 | 0.00 |

EXHIBIT C

## Le-Nature's, Inc.
### Turnkey Sale Proceeds Allocation

**Net Sale Proceeds Calculation:**

| | |
|---|---:|
| Gross sale price of Cadbury Schweppes | $19,000,000 |
| Giant Eagle deposit | 2,000,000 |
| Interest earned on Giant Eagle deposit | 23,596 |
| Giant Eagle settlement payment | 2,250,000 |
| Taxes and settlement charges and adjustments | (128,307) |
| Net sale proceeds | $23,145,289 |

**Lessor Distribution and Disputed Ownership Calculations:**

| | |
|---|---:|
| Net sale proceeds | $23,145,289 |
| Broker's fees and expenses *(1)* | (861,514) |
| Estimated sale related expenses *(2)* | (3,395,000) |
| Subtotal | 18,888,775 |
| Machinery & equipment value allocation *(3)* | 79.26170% |
| M&E net value | 14,971,564 |
| Valuation professional fees related to M&E *(4)* | (25,000) |
| Net sales proceeds allocated to M&E | 14,946,564 |
| Lessor M&E value allocation *(5)* | 41.43541% |
| Distribution to lessors | $6,193,171 |
| Value allocation of M&E subject to disputed ownership *(6)* | 14.90221% |
| Ownership dispute reserve | $2,227,368 |

**Estate Distribution Calculation:**

| | |
|---|---:|
| Net sale proceeds | $23,145,289 |
| Broker's fees and expenses | (861,514) |
| Distribution to lessors | (6,193,171) |
| Ownership dispute reserve | (2,227,368) |
| Valuation professional fees | (37,500) |
| Repayment of advance to broker | (8,000,000) |
| Net sales proceeds to estate | $5,825,736 |

**Notes:**

*(1)* The broker commission to Gordon Brothers/Harry Davis & Co. is equal to 4% of the first $15 million, 3% of the next $10 million, and 2% over $25 million. The commission is based on gross proceeds of $23.25 million ($19 million Cadbury sale price plus $4.25 million Giant Eagle deposit and settlement payment). The broker's expense reimbursement is $14,014.

*(2)* Pursuant to the Term Sheet with Participating Equipment Lessors, allocated pro-rata to the each Participating Equipment Lessor's pro-rata share of equipment are expenses equal to the greater of (a) $3 million and (b) actual sale related operating expenses (not to exceed $1,775,500) plus sale related professional fees (not to exceed $1,922,500). Actual sale related operating expenses are projected to be approximately $1,472,500 and sale related professional fees are projected to be in excess of $1,922,500.

*(3)* According to the valuation by Greystone Private Equity, LLC and Loeb Equipment & Appraisal Company ("Valuation Professional"), the 'in-place' value of the machinery and equipment is equal to approximately 79.26% of the total 'in-place' value of all assets, the real estate is equal to approximately 20.17% of the total asset value, and the inventory is equal to approximately 0.57% of the total asset value.

*(4)* According to the Term Sheet with Participating Equipment Lessors, allocated pro-rata to each Participating Equipment Lessor's pro-rata share of equipment are the fees of the Valuation Professional incurred on the valuation of the equipment. The Valuation Professional's total budget was equal to $37,500, of which $25,000 was allocable to the valuation of the machinery and equipment.

*(5)* The value allocation of the equipment claimed by Participating Equipment Lessors, for which there are no ownership disputes, is the "in-place" value as a percentage of the total "in-place" value of equipment provided by the Valuation Professional.

*(6)* The value allocation of the equipment, for which there are outstanding ownership disputes, is the "in-place" value as a percentage of the total "in-place" value of equipment provided by the Valuation Professional. A number of these disputed equipment items are the subject of pending settlement negotiations, which may shortly be resolved.

# Le-Nature's, Inc.
## Machinery & Equipment Net Sales Proceeds Allocation

| | Value Allocation | Distribution |
|---|---|---|
| **Lessors (Undisputed Ownership):** | | |
| AT&T Capital Services | 4.154118% | $620,898 |
| Citicapital Commerical Corp. | 3.244379% | 484,923 |
| General Electric Capital Corporation | 0.002257% | 337 |
| ICX Corporation | 0.061563% | 9,202 |
| LaSalle National Leasing Corporation | 5.494512% | 821,241 |
| Merrill Lynch Capital | 19.016778% | 2,842,355 |
| Merrill Lynch Capital / TCF Leasing, Inc. | 0.912161% | 136,337 |
| National City Vendor Finance | 8.219297% | 1,228,503 |
| TCF Leasing, Inc. | 0.312741% | 46,744 |
| Technology Investment Partners, Inc. (MB Financial) | 0.010835% | 1,619 |
| Wells Fargo Equipment Finance, Inc. | 0.006772% | 1,012 |
| Subtotals | 41.435413% | $6,193,171 |
| | | |
| **Lessors (Disputed Ownership Reserve):** | | |
| Farm Credit Leasing Services Corporation | 2.187955% | $327,024 |
| ICX Corporation | 3.389462% | 506,608 |
| ICX Corporation / First Merit Bank | 1.354390% | 202,435 |
| ICX Corporation / Merrill Lynch Capital | 0.430942% | 64,411 |
| ICX Corporation / Wells Fargo Equipment Finance, Inc. | 0.035912% | 5,368 |
| ICX Corporation / Wells Fargo Equipment Finance, Inc. / M&I Bank | 0.112866% | 16,870 |
| M&I Bank | 0.886099% | 132,441 |
| Mainsail Funding LLC | 1.423135% | 212,710 |
| Merrill Lynch Capital | 0.246253% | 36,806 |
| Peoples Capital | 2.031584% | 303,652 |
| The Huntington National Bank | 0.475883% | 71,128 |
| Wells Fargo Equipment Finance, Inc. | 2.327724% | 347,915 |
| Subtotals | 14.902205% | $2,227,368 |
| | | |
| **Bankruptcy Estate** | 43.662383% | $6,526,025 |
| | | |
| **Totals** | 100.00000% | $14,946,564 |

*Note: The value allocation is the "in place" value of the equipment owned by a particular party as a percentage of the total "in place" value of all equipment sold in the turnkey sale, pursuant to the valuation by Greystone Private Equity, LLC and Loeb Equipment & Appraisal Company.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                     )       Bankruptcy No. 06-25454-MBM
                       )       Chapter 11
LE-NATURE'S, INC., *et al.*,     )       (Jointly Administered)
                       )
         Debtors.          )

### DECLARATION OF GORDON BROTHERS INDUSTRIAL, LLC, AND HARRY DAVIS & COMPANY OF EXPENSES IN CONNECTION WITH THE TURNKEY SALE OF THE DEBTOR'S LATROBE PLANT ASSETS AND OTHER PROPERTY

The joint venture of Gordon Brothers Industrial, LLC, and Harry Davis & Company (collectively, the "Broker" or the "JV") submits the following Declaration of Expenses in Connection with the Turnkey Sale of the Latrobe Plant Assets and Other Property of the Debtor as follows:

1. By Order dated April 10, 2007 (the "Approval Order"), the Broker was appointed as the exclusive agent to market and sell the Debtor's Latrobe Plant assets and other property pursuant to the terms of a written agreement between the R. Todd Neilson, the duly appointed chapter 11 Trustee of the Debtor, which agreement in amended form was filed concurrently with the Court at the time of the filing of the Approval Order as proposed and was approved by the Court subject to the terms of the Approval Order and Term Sheet that was attached to the Approval Order.

2. The Agreement provides in Paragraph 10 that:

> The JV shall be entitled to reimbursement from the proceeds of the sale of the Assets for is reasonable direct out-of-pocket expenses for: (i) advertising and promotion for the sale of the Assets, including, without limitation, printing and mailing; and (ii) preparation and selling costs, including, without limitation, labor, travel, lodging and meals for JV personnel (the "Sale Expenses").

1

3.     The Sale Expenses incurred by the Broker in connection with the turnkey sale of the Latrobe plant assets and other property total $14,013.68, as more particularly set forth on the expense statement that has been furnished to the Trustee, a copy of which is attached as Exhibit A.

JOINT VENTURE OF GORDON BROTHERS
INDUSTRIAL, LLC, AND HARRY DAVIS &
COMPANY

By:_____
STANFORD G. DAVIS

Sworn to and subscribed before me this
3 day of October , 2007.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Joann Guerin, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires Aug. 6, 2008
Member, Pennsylvania Association Of Notaries

2

 

Over a Century of Solutions

October 3, 2007

R. Todd Nielson, Trustee
c/o Thomas Jeremiassen, CPA, CIRA
2049 Century Park East, Suite 2300
Los Angeles, CA 90067

## EXPENSE STATEMENT
### LeNature's – Latrobe, PA

**Marketing Expenses**

Wall Street Journal - Display Ads      April 18, 19, 21, 24, 2007 ..................................... $4,604.00

Stagnito "Daily Brief"      April 20 - May 20, 2007 ..................................... 2,500.00
Online Newsletter Banner ad

Direct Mail Notice including      July 23, 2007 ..................................... 2,450.00
Equipment and Real Estate
Summary sheet with color photos,
including printing and mailing

**Total Marketing Expenses**.............................................................................. **$9,554.00**

**Travel**

Mileage Pgh - Latrobe - Pgh (66 trips @ 85 miles @ 48.5 cents/mile) ........................... $2,720.85
Travel Expenses (Robert Maroney) March 24............................................................. 1,738.83

**Total Travel Expenses** ........................................................................................... **$4,459.68**

**Total Expense Statement** ...................................................................................... **$14,013.68**

**EXHIBIT A**