Exhibit 2

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

Civil Action No: 07CVS5097



WACHOVIA BANK, NATIONAL
ASSOCIATION and WACHOVIA
CAPITAL MARKETS, LLC

      **Plaintiffs,**

 v.

HARBINGER CAPITAL PARTNERS
MASTER FUND I, LTD. d/b/a
HARBINGER CAPITAL PARTNERS
MASTER FUND 1 d/b/a HARBINGER
CAPITAL PARTNERS MASTER FUND I;
AURELIUS CAPITAL MASTER, LTD.,
AURELIUS CAPITAL PARTNERS, LP,
LATIGO MASTER FUND, LTD.,
HARBINGER CAPITAL PARTNERS
OFFSHORE MANAGER, L.L.C.,
AURELIUS CAPITAL MANAGEMENT,
LP, AURELIUS CAPITAL GP, LLC,
LATIGO PARTNERS, L.P., TACONIC
OPPORTUNITY FUND L.P., SCHULTZE
MASTER FUND, LTD., UBS WILLOW
FUND, L.L.C., ARROW DISTRESSED
SECURITIES FUND, TACONIC
CAPITAL MANAGEMENT LLC, AND
BOND STREET CAPITAL LLC,

      **Defendants.**

**COMPLAINT**

Plaintiffs allege:

## I. SUMMARY OF ACTION

1.  Plaintiffs Wachovia Bank, National Association ("Wachovia") and Wachovia

Capital Markets, LLC ("WCM") provided banking and related services for over three years to a

company named Le-Nature's, Inc. ("LeNature's") in reliance on audited financial statements and

1

other information indicating that Le-Nature's was a growing, vibrant, and profitable company. In late October 2006, a massive and elaborate fraud perpetrated by Le-Nature's was exposed. Le-Nature's had maintained two sets of financial books, forged documents, and deceived multiple creditors, customers and industry. Wachovia was a victim of this fraud and had outstanding loans of over $17 million to Le-Nature's when Le-Nature's was placed into involuntary bankruptcy. Wachovia's ability to recover its $17 million is now questionable, at best.

2.      In the four months since the Le-Nature's fraud was first exposed, the Defendants have purchased claims purportedly assigned to them from other creditors of Le-Nature's and have stated publicly their intention to file a lawsuit and attempt to hold Wachovia and WCM responsible for losses caused to those creditors by the Le-Nature's fraud – even though neither Wachovia nor WCM are in any respect responsible for those losses. Defendants' assertion of such purportedly assigned causes of action amounts to illegal trafficking in litigation claims and is flatly prohibited by North Carolina law. Wachovia and WCM will be irreparably injured in a manner not fully or adequately compensable in monetary damages should the Defendants be allowed to assert such claims.

3.      Accordingly, in this action, Wachovia and WCM request that this Court enjoin Defendants from prosecuting claims against Wachovia and WCM in violation of established prohibitions against assignment of tort claims, champerty and maintenance. Wachovia also seeks to obtain reimbursement and indemnification from certain of the Defendants for costs and expenses incurred by Wachovia, pursuant to a written indemnification agreement to which such Defendants are parties.

2

## II. BACKGROUND

4.     Wachovia and WCM are the Administrative Agent and Lead Arranger/Sole Bookrunner, respectively, pursuant to the Amended and Restated Credit Agreement (the "Credit Agreement") attached to the Affidavit of Katherine A. Harkness being filed contemporaneously herewith (the "Harkness Affidavit") as Exhibit A and incorporated herein by reference. Pursuant thereto, on September 1, 2006, Wachovia extended credit of $268 million to Le-Nature's. WCM syndicated the Credit Facility (sometimes referred to herein as the "Facility" or the "replacement Facility") established by the Credit Agreement, and Wachovia assigned interests therein to various entities pursuant to §9.6(c) of the Credit Agreement using the form Commitment Transfer Supplement (the "Supplement") that is an exhibit to the Agreement. By virtue of the assignments, the original entities comprising the lending syndicate became parties to the Credit Agreement, as provided therein, and are referred to therein as "Lenders."

5.     A secondary market exists for interests in syndicated loan facilities, such as this one. Some of the original members of the syndicate who acquired their interests under the Credit Agreement directly from Wachovia have reassigned their interests to other entities using the form Supplement. In some instances, those interests have been further reassigned in the same manner.

6.     After the Le-Nature's fraud was exposed and Le-Nature's was placed into bankruptcy, Defendants Harbinger Capital Partners Master Fund I Ltd., Aurelius Capital Master, Ltd., Aurelius Capital Partners, LP, Taconic Opportunity Fund L.P., Schultze Master Fund, Ltd., UBS Willow Fund, L.L.C., Arrow Distressed Securities Fund, and Latigo Master Fund, Ltd. (herein the "Fund Defendants") purchased interests in the Facility in the secondary market and became Lenders under the Credit Agreement by virtue of reassignments from syndicate

members. None of the Fund Defendants were original members of the syndicate — i.e., none acquired their interests directly from Wachovia through the original syndication managed by WCM. Instead, the Fund Defendants purchased their interests for the purpose of pursuing litigation claims, as is more particularly alleged below.

7.    The Fund Defendants acquired their interests in the replacement Facility pursuant to the Supplements attached to the Harkness Affidavit as Exhibit C and incorporated herein by reference. (If and to the extent that the Fund Defendants acquired additional interests in the Credit Facility, these Defendants signed additional Supplements materially identical to those attached to the Affidavit as Exhibit C.) All of the Defendants take the position that, by virtue of those Supplements, the Fund Defendants have purchased and acquired any tort claims that the syndicate members who acquired their interests in the Credit Facility before the Le-Nature's fraud became public could have asserted against Wachovia and WCM in connection with the origination and syndication of the replacement Facility. The Defendants and/or their agents have made statements in the Bankruptcy Court and to various media outlets expressing their intent to pursue such claims even though the assertion of such claims would violate the prohibitions against champerty, maintenance, and unfair trade practices in North Carolina. Wachovia and WCM will be irreparably injured in a manner not fully or adequately compensable in monetary damages should the Defendants be allowed to assert such claims.

8.    In addition to scheming and planning to assert champertous claims, the Fund Defendants have failed to reimburse and indemnify Wachovia for expenses and costs it has incurred as Administrative Agent in connection with the Le-Nature's bankruptcy proceedings as is required by §8.7 of the Credit Agreement.

4

### III. SPECIFIC RELIEF REQUESTED

9.      Accordingly, for the reasons and based on the allegations more completely set forth below, Wachovia and WCM seek:

a.      Entry of a TRO and Preliminary Injunction providing that Defendants and all of their officers, agents, servants, employees, attorneys, and all persons or entities acting in concert with them (such Defendants and all others being herein referred to as "Enjoined Persons and Entities") are enjoined from asserting, filing, prosecuting, attempting to assign or re-assign, or otherwise pursuing any personal tort claims (all of which, by virtue of the purported purchase of such claims after Le-Nature's fraud was widely known, would be unassignable claims under North Carolina law) against Plaintiffs or any of their agents, employees, officers, directors, or others acting on their behalf (herein "Agents"), or against any of Plaintiffs' direct or indirect parent or subsidiary entities, or any Agents of such entities, that arise from or relate in any respect to credit extended by any entity to Le-Nature's, Inc.

b.      Further appropriate injunctive relief (in connection with the preliminary relief, or otherwise) prohibiting the Enjoined Persons and Entities from asserting, filing, prosecuting, or otherwise pursuing the unassignable claims (herein the "Unassignable Claims") against Wachovia or WCM (or any other Wachovia entity), and further prohibiting the assertion of any claims precluded by the explicit terms of the Credit Agreement (the "Precluded Claims");

c.      In the alternative (or in addition thereto if and to the extent that such relief would not be duplicative of the equitable relief described above) such damages and other

5

relief as may be just and proper to prevent or remedy all damages, harms, and other costs and expenses that have been and will be incurred by Wachovia and WCM in connection with the purported assignment of and assertion or threatened assertion of either the Unassignable Claims or the Precluded Claims, or both (together the "Prohibited Claims");

d.    Appropriate declaratory relief providing that the Unassignable Claims were not and cannot be validly assigned to the Fund Defendants, or to others, and the Prohibited Claims cannot be asserted against Wachovia, WCM, or any of Plaintiffs' direct or indirect parent or subsidiary entities, or any Agents of such entities, under the terms of the Credit Agreement;

e.    Appropriate declaratory relief providing that the Fund Defendants are obligated to reimburse and indemnify Wachovia and WCM for the Fund Defendants' proportionate share of the past and future liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses and disbursements of Wachovia and WCM, as allowed and provided by the Credit Agreement;

f.    Entry of a judgment that Wachovia and WCM have and recover the appropriate proportional share of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses and disbursements from each Fund Defendant, as set forth in the Credit Agreement;

g.    Such other damages as may be proved at trial; and

h.    Such other relief as may be just and proper.

10.    The Unassignable Claims include but are not limited to each and every of the following statutory or common law claims or causes of action, whether under the law of North

Carolina or of any other state: (i) claims for fraudulent and negligent omissions or misrepresentations, or both, (ii) claims alleging constructive fraud, (iii) negligence claims, (iv) breach of fiduciary duty claims, (v) tortious interference claims, (vi) unfair trade practice claims, (vii) conspiracy with respect to or to commit any of the aforelisted claims, or to commit any other wrongful act or omission, and (viii) aiding or abetting with respect to or to commit any of the aforelisted claims, or to commit any other wrongful act or omission.

11.    In this action, Wachovia and WCM in no respect ask the Court to address or otherwise seek any adjudication with respect to (i) any rights that the Le-Nature's bankruptcy Trustee may or may not have to assert claims against any person or entity, or (ii) any rights that the Defendants may have to assert claims against Le-Nature's in its bankruptcy proceedings for repayment of their proportionate share of loans made to Le-Nature's pursuant to the Credit Agreement.

## IV. PARTIES AND JURISDICTION

12.    Wachovia Bank, National Association (referred to above and herein as "Wachovia") is a national banking association with its main office and principal place of business located in Charlotte, Mecklenburg County, North Carolina.

13.    Wachovia Capital Markets, LLC (referred to above and herein as "WCM") is a Delaware limited liability company with its principal place of business in Charlotte, Mecklenburg County, North Carolina.    The members of WCM include a corporation incorporated under the laws of the State of Delaware and individual citizens and residents of North Carolina, Connecticut, and New York.

14.    Defendant Harbinger Capital Partners Master Fund I, Ltd. d/b/a Harbinger Capital Partners Master Fund 1 d/b/a Harbinger Capital Partners Master Fund I is an entity organized in

the Cayman Islands engaged in business in the United States that has acted in connection with the matters at issue herein through its authorized agent Harbinger Capital Partners Offshore Manager, L.L.C.

15.    Defendant Harbinger Capital Partners Offshore Manager, L.L.C. is a limited liability company organized and existing pursuant to the laws of the state of Delaware.

16.    Defendant Aurelius Capital Master, Ltd. is an entity organized in the Cayman Islands engaged in business in the United States that has acted in connection with the matters at issue herein through its authorized agent Aurelius Capital Management, LP.

17.    Defendant Aurelius Capital Management, LP is a limited partnership organized and existing pursuant to the laws of the State of Delaware.

18.    Defendant Aurelius Capital Partners, LP is a limited partnership organized and existing pursuant to the laws of the state of Delaware that has acted in connection with the matters at issue herein through its authorized agent Aurelius Capital GP, LLC.

19.    Defendant Aurelius Capital GP, LLC is a limited liability company organized and existing pursuant to the laws of the State of Delaware.

20.    Defendant Latigo Master Fund, Ltd. is an entity organized in the Cayman Islands engaged in business in the United States that has acted in connection with the matters at issue herein through its authorized agent Latigo Partners, L.P.

21.    Defendant Latigo Partners, L.P. is a limited partnership organized and existing pursuant to the laws of the State of Delaware.

22.    Defendant Taconic Opportunity Fund L.P. is a limited partnership organized and existing pursuant to the laws of the State of Delaware.

23.    Defendant Schultze Master Fund, Ltd., is an entity organized in the Cayman Islands engaged in business in the United States that has acted in connection with the matters at issue herein through its authorized agent George Schultze.

24.    Defendant UBS Willow Fund, L.L.C., is a limited liability company organized and existing pursuant to the laws of the State of Delaware.

25.    Defendant Arrow Distressed Securities Fund is an entity organized in Canada and engaged in business in the United States that has acted in connection with the matters at issue herein through its authorized agent George Schultze.

26.    Defendant Taconic Capital Management LLC, is a limited liability company organized and existing pursuant to the laws of the State of Delaware.

27.    Defendant Bond Street Capital LLC, is a limited liability company organized and existing pursuant to the laws of the State of Delaware.

28.    Each of the defendants has engaged in business in North Carolina through dealings with the Charlotte office of Wachovia, as Administrative Agent for the lending syndicate, and otherwise.

## V. FURTHER ALLEGATIONS

A.    <u>Funding of the Credit Facility</u>

29.    The Facility referenced in Section II above and documented by the Credit Agreement attached to the Harkness Affidavit as Exhibit A closed on or about September 1, 2006.

30.    The purpose of the Facility was to refinance the Le-Nature's then-existing Term B and Revolving loans (the "Prior Le-Nature's Facility") as of September 1, 2006. (The prior Credit Agreement of Le-Nature's is referred to as the "Prior Credit Agreement.") Le-Nature's

was in default under the Prior Le-Nature's Facility because preferred shareholders in Le-Nature's had filed a lawsuit in May of 2006 seeking appointment of a custodian or receiver for Le-Nature's, and Le-Nature's had failed timely to report this request.

31.    In the initial funding of the Credit Facility on or about September 1, 2006, pursuant to §2.1 of the Credit Agreement, Wachovia made available to Le-Nature's a letter of credit of $3 million. In addition, pursuant to §2.2 of the Credit Agreement, Wachovia made a "Term B" loan to Le-Nature's in the amount of $265 million (the "Term B Loan"). Le-Nature's subsequently drew on the revolving line of credit under §2.1 of the Credit Agreement (the "Revolver"). (For example, the commitments utilized under the Revolver totaled $13 million, including the $3 million letter of credit facility, on November 1, 2006.)

B.    Initial Syndication of the Credit Facility/the Credit Agreement

32.    As is alleged in Section II above, WCM syndicated the Facility, and Wachovia assigned interests in the loans to the original members of the syndicate as contemplated in the Credit Agreement and by use of the form Supplement that is an exhibit thereto. In various capacities, however, Wachovia retained on its own books and did not syndicate a portion of the Facility. Prior to the Le-Nature's bankruptcy, Wachovia continued to maintain and/or had acquired interests in the Le-Nature's loans in various capacities, such that Wachovia's total credit exposure to Le-Nature's at the time of the bankruptcy was approximately $17 million.

33.    In the process of syndicating the replacement Facility, WCM employees made direct contact with entities identified as prospective members of a lending syndicate. WCM employees disclosed the nature of the Le-Nature's default under the Prior Credit Agreement to the prospective members of the replacement Facility syndicate and made available to such prospective members the written summary attached to the Harkness Affidavit as Exhibit B.

34.    All of the original members of the replacement Facility syndicate had been members of the syndicate for the Prior Le-Nature's Facility. As such, the original members had been provided with extensive information by Le-Nature's (directly or through Wachovia as Administrative Agent) — including audited Le-Nature's financial statements for the year ending December 31, 2005 (as well as audited statements for prior years), interim Le-Nature's financial statements for the first and second quarters of 2006, and other information concerning the business and finances of Le-Nature's.

35.    Under the terms of the Credit Agreement and of the Prior Credit Agreement, Wachovia and WCM accepted no responsibility for the information furnished by Le-Nature's, and both Agreements specifically provide (in §8.3 of each) that neither Wachovia nor WCM had or would have any responsibility for the accuracy of such information.

36.    In addition, each member of the syndicate for the Prior Le-Nature's Facility, and each member of the syndicate for the replacement Facility (*i.e.,* each Lender, including the Fund Defendants), was obligated under the respective Credit Agreements to conduct such other independent investigation into the business and financial condition of Le-Nature's as such member(s) might desire.

37.    The Credit Agreement specifically confirms that no syndicate member, including the Fund Defendants, relied upon Wachovia or WCM in any respect in deciding to extend credit to Le-Nature's, and further confirms that each of these entities conducted their own investigation and due diligence in making such decision:

> Each Lender expressly acknowledges that neither the Administrative Agent nor any of their officers, directors, employees, agents, attorneys-in-fact or affiliates has made any representation or warranty to it and that no act by the Administrative Agent hereinafter taken, including any review of the affairs of the Credit Parties, shall be deemed to constitute any representation or warranty by the Administrative Agent to any Lender.    Each Lender represents to the

11

Administrative Agent that it has, independently and without reliance upon the Administrative Agent or any other Lender, and based on such documents and information as it has deemed appropriate, made its own appraisal of and investigation into the business, operations, property, financial and other condition and creditworthiness of the Credit Parties and made its own decision to make its Loans hereunder and enter into this Credit Agreement. Each Lender also represents that it will, independently and without reliance upon the Administrative Agent or any other Lender, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit analysis, appraisals and decisions in taking or not taking action under this Credit Agreement, and to make such investigation as it deems necessary to inform itself as to the business, operations, property, financial and other condition and creditworthiness of the Credit Parties. Except for notices, reports and other documents expressly required to be furnished to the Lenders by the Administrative Agent hereunder, the Administrative Agent shall not have any duty or responsibility to provide any Lender with any credit or other information concerning the business, operations, property, condition (financial or otherwise), prospects or creditworthiness of the Credit Parties which may come into the possession of the Administrative Agent or any or its officers, directors, employees, agents, attorneys-in-fact or affiliates.

CA §8.6. Section 8.10 of the Credit Agreement specifies that WCM enjoys the benefit of this provision and other provisions in the Agreement concerning the rights, protections, exculpations, and indemnifications granted to Wachovia.

38.    As Administrative Agent, Wachovia processed the Supplements by which interests in the replacement Facility were transferred when such Supplements were furnished to it and made appropriate book entries to reflect the (re)composition of the syndicate and the respective interests in the Facility as such composition and interests changed from time to time.

39.    By executing a Supplement in the form that is an exhibit to the Credit Agreement, each Lender (including both original members of the syndicate and entities that subsequently joined the syndicate, including the Fund Defendants) became a party to the Credit Agreement. In particular, each Supplement specifically provides that:

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and

Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below (i) all of the Assignor's rights and obligations in its capacity as a Lender under the Credit Agreement and any other documents or instruments delivered pursuant thereto to the extent related to the amount and percentage interest identified below of all of such outstanding rights and obligations of the Assignor under the respective facilities identified below (including without limitation any letters of credit, guarantees, and swingline loans included in such facilities) and (ii) to the extent permitted to be assigned under applicable law, all claims, suits, causes of action and any other right of the Assignor (in its capacity as a Lender) against any Person, whether known or unknown, arising under or in connection with the Credit Agreement, any other documents or instruments delivered pursuant thereto or the loan transactions governed thereby or in any way based on or related to any of the foregoing, including, but not limited to, contract claims, tort claims, malpractice claims, statutory claims and all other claims at law or in equity related to the rights and obligations sold and assigned pursuant to clause (i) above (the rights and obligations sold and assigned by the Assignor to the Assignee pursuant to clauses (i) and (ii) above being referred to herein collectively as the "Assigned Interest"). Each such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Commitment Transfer Supplement, without representation or warranty by the Assignor.

40.    Further, each Lender (including each of the Fund Defendants, when they eventually became members of the syndicate) specifically represented and warranted to Wachovia, in writing, that it had performed its own due diligence and made an independent evaluation of the creditworthiness of Le-Nature's and was not relying on Wachovia for information, credit analysis, or in any other respect.   In this regard, each such Supplement provides that:

The Assignee (a) represents and warrants that . . .(iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement as a Lender thereunder and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it is sophisticated with respect to decisions to acquire assets of the type represented by the Assigned Interest and either it, or the person exercising discretion in making its decision to acquire the Assigned Interest, is experienced in acquiring assets of such type, (v) it has received a copy of the Credit Agreement, and has received or has been accorded the opportunity to receive copies of the most recent financial statements delivered pursuant to Section 5.1 thereof, as applicable, and such other documents and information as it deems appropriate to make its own credit analysis and decision to enter into this Commitment Transfer Supplement and to purchase the Assigned Interest, (vi) it

13

has, independently and without reliance upon the Administrative Agent or any other Lender and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Commitment Transfer Supplement and to purchase the Assigned interest, and . . . (b) agrees that (i) it will, independently and without reliance on the Administrative Agent, the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

41.    The Credit Agreement provides that each Lender (including each of the Fund Defendants, when they eventually became members of the syndicate) is obligated to indemnify Wachovia with respect to all expenses that Wachovia has incurred as Administrative Agent (and from any claims asserted against Wachovia, subject to certain limitations) as follows:

> The Lenders agree to indemnify the Administrative Agent in its capacity hereunder (to the extent not reimbursed by the Credit Parties and without limiting the obligation of the Credit Parties to do so), ratably according to their respective Commitment Percentages in effect on the date on which indemnification is sought under this Section, from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind whatsoever which may at any time (including, without limitation, at any time following the payment of the Notes) be imposed on, incurred by or asserted against the Administrative Agent in any way relating to or arising out of any Credit Document or any documents contemplated by or referred to herein or therein or the transactions contemplated hereby or thereby or any action taken or omitted by the Administrative Agent under or in connection with any of the foregoing; provided, however, that no Lender shall be liable for the payment of any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements to the extent resulting from the Administrative Agent's gross negligence or willful misconduct, as determined by a court of competent jurisdiction pursuant to a final, non-appealable judgment.

CA §8.7. Section 8.10 extends the benefit of these provisions to WCM.

42.    The Credit Agreement specifically provides in §§ 8.1, 8.10, & 9.17 that Wachovia and WCM have no fiduciary obligations to the members of the syndicate and remain free to act

in their individual capacities with respect to Le-Nature's and take whatever actions are appropriate in such individual capacities.

43.    The Credit Agreement further provides that the rights and obligations of all parties thereto, including the parties in this action, shall be governed by North Carolina law:

> This Agreement and the other Credit Documents and the rights and obligations of the parties under this Agreement and the other Credit Documents shall be governed by, and construed and interpreted in accordance with, the law of the State of North Carolina.

CA § 9.13.  In addition, paragraph 3 of the Standard Terms and Conditions of the Supplement (executed by each Fund Defendant) provides that it shall be governed by and construed in accordance with North Carolina law.

C.    Fraud and Bankruptcy of Le-Nature's

44.    As is alleged above, pursuant to the Prior Credit Agreement and the Credit Agreement, Le-Nature's furnished Wachovia and the other Lenders with financial statements, including the June 30, 2006 interim statements of Le-Nature's. These statements presented Le-Nature's as a company with over $300 million in sales and approximately $120 million in earnings before interest, taxes, depreciation and amortization ("EBITDA"). Wachovia and WCM believed, based on interactions with Le-Nature's officers, visits to the Le-Nature's facilities, and other inquiries, that these interim and audited statements accurately portrayed Le-Nature's as a vibrant and growing company.

45.    In late October of 2006, a company providing lease financing to Le-Nature's (an AIG entity, herein "AIG") discovered that Le-Nature's had forged a letter in order to misappropriate for its own use millions of dollars advanced by AIG to an equipment manufacturer in Germany.  This discovery led to the appointment of a custodian (the "Custodian") for Le-Nature's by the Delaware Court of Chancery in the lawsuit instituted by Le-

Nature's preferred shareholders (which had given rise to the default under the Prior Credit Agreement).

46.     An investigation by the Custodian (in late October of 2006) revealed that Le-Nature's had maintained a duplicate and completely false and fabricated set of books and had grossly misrepresented the financial condition of Le-Nature's to Wachovia, the Lenders, a number of other lenders/creditors, and the general public. Through a complicated scheme to hide its true financial condition, Le-Nature's had duped numerous sophisticated companies for a period of months or years.

47.     On November 1, 2006, other creditors of Le-Nature's filed an involuntary bankruptcy petition against Le-Nature's in the United States Bankruptcy Court for the Western District of Pennsylvania.

D.     The Defendants

48.     After news of the Le-Nature's fraud became public and Le-Nature's was placed in involuntary bankruptcy, many of the syndicate members sold their interests in the Facility by assignments pursuant to the form Supplement.  In some instances, the interests were further assigned and reassigned in the secondary market.

49.     The direct and indirect assignees who acquired their interests from the original members of the syndicate (and their assignees) after the Le-Nature's fraud became public included the Fund Defendants, who collectively have purchased the majority of the interests in the Credit Facility that exchanged hands after Le-Nature's was placed into bankruptcy.

50.     The Fund Defendants purchased all of their interests under the Credit Facility at a substantial discount to face value after it was widely known that Le-Nature's had been engaged in wholesale fraud, and after Le-Nature's was placed into bankruptcy.  Upon information and

belief, the Fund Defendants are continuing to purchase additional interests in the Credit Facility as of the date of the filing of this Complaint.

51.     Several of the Fund Defendants acted through various partners or agents in executing Supplements and in the other actions and events alleged herein. As is shown on the signature lines on the Supplements attached as Exhibit C to the Harkness Affidavit, the agents included Harbinger Capital Partners Offshore Manager, L.L.C., Aurelius Capital Management, LP, Aurelius Capital GP, LLC, Taconic Capital Management LLC, Bond Street Capital LLC, and Latigo Partners, L.P. (herein the "Agent Defendants") (herein the "Agent Defendants").

52.     By their actions as alleged herein, the Defendants in this action are making a business of speculating in litigation claims.

53.     The Fund Defendants acquired their interests in the replacement Facility in order to attempt to assert claims against Wachovia and WCM in connection with the origination and syndication of the replacement Facility. The Fund Defendants take the position that they may bring such claims by virtue of the purported direct or indirect assignment of such claims from the members of the syndicate who acquired their interests therein before the fraud at Le-Nature's became publicly known (herein referred to as "Potential Claims"). (The Supplement executed by each Fund Defendant provides for the assignment of certain claims and causes of action "to the extent permitted by applicable law.")

54.     The Defendants have demonstrated and voiced their intention to assert the Potential Claims against Wachovia and WCM by:

a.     Flatly stating that to be their intention in open court in the Le-Nature's bankruptcy proceedings, as is evidenced by the transcripts attached to the Harkness Affidavit as Exhibit D and incorporated herein by reference;

17

b.    Issuing a bankruptcy subpoena to Wachovia and WCM for the purpose of obtaining documents relating to the actions of Wachovia and WCM in originating and syndicating the replacement Facility;

c.    Statements of their counsel, in the news article attached to the Harkness Affidavit as Exhibit G, that Wachovia should have known that Le-Nature's overstated its revenue ("One would think given the various hats that Wachovia wore, they would have been blinded by the red flags that would have been popping up all over the place.");

d.    Attempting to subvert and control the bankruptcy discovery process for their own purposes, as is explained in a pleading filed by the Le-Nature's Bankruptcy Trustee on February 23, 2007 (attached to the Harkness Affidavit as Exhibit F and incorporated herein by reference); and

e.    Explicitly informing Wachovia and WCM not to destroy or discard any relevant documents.

55.    The Defendants speculate in claims, including the Potential Claims, not for any legitimate business purposes, but for the purpose of furthering their business of uncovering claims and earning returns from pursuing those claims.

56.    The Defendants are strangers to any tort claims against Wachovia or WCM relating to the origination or syndication of the replacement Facility.

57.    The Defendants thus engaged in, and have become, promoters of litigation for the returns potentially to be earned thereon, and not because such Defendants are the real parties in interest thereto.

58.    The Defendants are engaged in a scheme to pursue litigation for their own benefit and not for the benefit of any legitimate litigant or the public. Their acquisition of the Potential Claims for the purpose of asserting them against Wachovia and WCM was for the purpose of mining lawsuits, promoting them, and profiting therefrom.

59.    Neither Wachovia nor WCM bears responsibility for the losses incurred by Lenders who advanced funds to Le-Nature's.

60.    The "trading" of syndication interests in loans (such as the revolver and Term B loans of Le-Nature's) has become a significant business for Wachovia, WCM, and other banks, financial institutions, and funds. The Loan Syndications Trading Association, or LSTA, maintains a website (www.lsta.org) that reports the pricing and trading of loans.

61.    If the Supplements validly assigned tort claims against entities like WCM and Wachovia, then the trading of syndication interests would include (and in certain instances entirely consist of) the buying and selling of potential tort claims in violation of the laws and public policies of North Carolina.

62.    Neither Wachovia nor WCM has breached any of the express provisions of the Credit Agreement (or of the Prior Credit Agreement). In fact, WCM is not a signatory to either Credit Agreement. Thus, there are no breach of contract claims that the Fund Defendants could contemplate asserting against Wachovia or WCM.

63.    Any purported buying and selling of tort claims against Wachovia or WCM in the present context, including the Potential Claims, constitutes and promotes champerty and maintenance, contravenes the public policy of North Carolina and is flatly prohibited by North Carolina Supreme Court precedent.

19

64.     The Defendants may have executed supplemental assignments on the forms attached to the Harkness Affidavit as Exhibit H and incorporated herein by reference and/or entered into other side agreements with respect to the purported assignment of the Potential Claims. It is common practice in the "distressed debt" trading market for such supplemental assignments or side agreements to be executed. Neither Wachovia nor WCM were or are parties to any such supplemental assignments or side agreements with Defendants, and neither have been provided copies thereof. Any attempt by Defendants to displace applicable North Carolina law in such supplemental assignments or side agreements is ineffectual and void.

65.     Even though the Fund Defendants are Lenders and members of the syndicate for the replacement Facility, they have (i) failed and refused upon request to reimburse and indemnify Wachovia for costs and expenses it has incurred as Administrative Agent in connection with the Le-Nature's bankruptcy proceedings, and (ii) publicly denied that Wachovia is in fact the Administrative Agent. Instead, Defendants have taken the position, contrary to the express provisions of the Credit Agreement, that Wachovia has no authority to act as Administrative Agent for the replacement Facility.

66.     Given Defendants' numerous explicit and implicit threats to assert the Potential Claims against Wachovia and WCM, their attempts to use the Le-Nature's bankruptcy proceedings to pursue discovery from Wachovia and WCM, their counsel's explicit instruction to Wachovia and WCM not to destroy or discard any documents, the refusal of the Fund Defendants to reimburse Wachovia for costs and expenses it has incurred as is required by the Credit Agreement, the denial by Defendants that Wachovia is in fact the Administrative Agent, and the other actions of Defendants as alleged hereinabove, there is a ripe and existing controversy presented for resolution in this action.

67.    All preconditions and conditions, if any, for the filing of this action have been satisfied. None of the claims are barred by any applicable statute of repose or other similar provision.

68.    The Fund Defendants have materially breached their obligations under the Credit Agreement and are barred from claiming the benefits and protections thereof.

E.    Irreparable Injury

69.    Defendants' assertion of the Potential Claims against Wachovia or WCM would violate North Carolina's prohibition against trafficking in litigation claims, constitute champerty and maintenance, violate G.S. §75-1.1, and obligate Wachovia and WCM to defend claims that should never have been brought.

70.    Every entity doing business in North Carolina has a right not be subjected to the assertion of such champertous, wrongful claims.

71.    Should Defendants institute a lawsuit outside North Carolina, it is possible that a foreign state's court will refuse to enforce North Carolina's prohibitions against champerty, maintenance, and trafficking in litigation claims.

72.    Defendants have asserted their positions, as summarized in Subsection D above, publicly in an attempt to undercut Wachovia's authority as Administrative Agent and further their own goals of asserting Potential Claims against Wachovia and inciting litigation against Wachovia.

73.    Upon information and belief, Defendants have already and will continue to contact media outlets in an attempt to generate as much adverse publicity and irreparable damage to Wachovia as possible in order to gain leverage in their assertion of the Potential Claims. Any assertion of the Potential Claims will create adverse publicity that will damage Wachovia and

WCM in immeasurable respects that cannot be compensated by monetary damages. It would be impossible fully to quantify, or even reasonably to estimate in a complete manner, the costs and losses to Wachovia and WCM as a result of adverse publicity, damage to business and business reputation, distraction of employee time and attention, and diversion from profitable and attractive business opportunities.

74.    Should Defendants be allowed to assert the Potential Claims, Wachovia and WCM will suffer further additional injury and damages that cannot properly or completely be measured in dollars or compensated adequately by a monetary award. In particular, were Wachovia and WCM to wait for Defendants to file suit before seeking a temporary restraining order and preliminary injunction, Wachovia and WCM would be irreparably injured by being forced to defend champertous claims and in the other respects alleged hereinabove.

COUNT I

*(claim by Wachovia against the Fund Defendants for indemnification)*

75.    Wachovia and WCM incorporate by reference and reallege all of the foregoing allegations.

76.    Wachovia has expended over $1 million in its role Administrative Agent under the Credit Agreement.

77.    On or about December 6, 2006, in the memo attached to the Harkness Affidavit as Exhibit I (and incorporated herein by reference), Wachovia demanded that all members of the syndicate pay to Wachovia all of their proportional share of such expenditures as is required by the Credit Agreement. Wachovia repeated that demand thereafter and provided a schedule showing the amounts not paid. The Fund Defendants have failed and refused to make such payments, as required by the Credit Agreement.

22

78.    Pursuant to the Credit Agreement, Wachovia is entitled to indemnification and reimbursement of such amounts from the Fund Defendants for the reasons more particularly alleged above.

79.    The Fund Defendants have breached the Credit Agreement by failing and refusing to indemnify Wachovia, upon demand.

80.    As a result of such breach, Wachovia is entitled to have and recover from the Fund Defendants the amounts currently due and owing as well as their pro rata portions of all future liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses and disbursements Wachovia incurs, as is set forth in Section 8.7 of the Credit Agreement, plus its attorneys' fees and other costs incurred in filing and prosecuting this action.

## COUNT II

*(claims by Wachovia and WCM for champerty and maintenance)*

81.    Wachovia and WCM incorporate by reference and reallege all of the foregoing allegations.

82.    The Supplements attached as Exhibit C to the Harkness Affidavit assign to the Fund Defendants "*to the extent permitted to be assigned under applicable law*, all claims, suits, causes of action and any other right of the Assignor (in its capacity as a Lender) against any Person, whether known or unknown, arising under or in connection with the Credit Agreement, any other documents or instruments delivered pursuant thereto or the loan transactions governed thereby or in any way based on or related to any of the foregoing, including, but not limited to, contract claims, tort claims, malpractice claims, statutory claims and all other claims at law or in equity related to the [rights and obligations assigned by Assignor in its capacity as a Lender under the Credit Agreement]."

23

83.    The Supplements and the Credit Agreement are explicitly governed by North Carolina law. Any attempt by the Defendants, through additional side agreements with assignors or otherwise, to specify the application of any other state's law would be contrary to North Carolina public policy and is ineffective and void.

84.    Defendants have taken and asserted the position, incorrectly, that the Supplements attached as Exhibit C to the Harkness Affidavit (and any other Supplements not so attached, and any supplemental or ancillary assignments) transfer and assign to the Fund Defendants any and all tort and other claims (defined above as "Potential Claims") that members who joined the syndicate before Le-Nature's fraud became public may have had against Wachovia and WCM.

85.    Defendants also take the position, correctly, that the Supplements attached as Exhibit C to the Harkness Affidavit transfer and assign to them the right to obtain their pro rata repayment of the loans that were originally made to Le-Nature's pursuant to the Credit Agreement.

86.    Under governing North Carolina law, the Potential Claims cannot be assigned if and to the extent that such Potential Claims are alleged statutory and common law claims for fraudulent and negligent omissions and misrepresentations, constructive fraud, negligence, breach of fiduciary duty, tortious interference, conspiracy with respect to or to commit any wrongful act or omission, and aiding/abetting any wrongful act or omission, and other similar tort claims (sometimes referred to in certain court decisions as "personal tort claims"). The Potential Claims that cannot be assigned under governing law are defined herein as "Unassignable Claims."

87.    The prohibition on assignment of Unassignable Claims under North Carolina is intended to relieve potential defendants of the burden of defending champertous claims, *ab*

24

*initio.* Thus, the threat of the filing of a champertous claim itself gives rise to legally cognizable and irreparable harm, as does the actual filing of such a claim.

88.    Wachovia and WCM will be irrevocably and irreparably injured, in a way that cannot fully be measured or compensated by monetary damages, should the Defendants assert or attempt to assert any of the Unassignable Claims against Wachovia or WCM. Such immeasurable damages will include but will not be limited to (i) damage to the image and reputation of Wachovia and WCM by virtue of adverse publicity associated with the assertion of Prohibited Claims, and (ii) the costs and losses (such as distraction away from more profitable business initiatives and unnecessary usurpation of employee time and effort) inherent in defending litigation that should never have been instituted.

89.    Any assertion of Uassignable Claims by a Fund Defendant must be accomplished through its agent. The assertion of any such claims by the Agent Defendants on behalf of their respective principals would be champertous. Further, the participation by the Agent Defendants in the attempted assignment of such claims and the threats to assert the same have been champertous. Thus the Agent Defendants are joined in this Count because they are jointly and severally liable for champerty and maintenance, and so that the Court will have before it all parties necessary to grant complete relief hereunder.

90.    As is alleged above, the Defendants have engaged in champerty and maintenance, and caused legally cognizable harm (including irreparable injury) to Wachovia and WCM, by entering into the bargains reflected in the Supplements attached as Exhibit C to the Harkness Affidavit and then threatening to assert uassignable tort claims against Wachovia and WCM pursuant thereto.

91.    The assertion of the Unassignable Claims pursuant to the Supplements attached to the Harkness Affidavit as Exhibit C would constitute further champerty and maintenance and would cause further legally cognizable harm (including irreparable injury) to Wachovia and WCM, as is more specifically alleged above.

92.    As a result of the Defendants' champerty and maintenance, Wachovia and WCM are entitled to entry of temporary, preliminary and permanent injunctive relief as is set forth in Section III above.  In the alternative (or in addition thereto if and to the extent that such relief would not be duplicative of the equitable relief described above) Wachovia and WCM are entitled to have and recover such damages and other relief as may be just and proper, as is set forth in Section III above.

**COUNT III**

*(claims by Wachovia and WCM for declaratory and injunctive relief)*

93.    Wachovia and WCM incorporate by reference and reallege all of the foregoing allegations.

94.    Pursuant to G.S. §1-253 *et seq.*, Wachovia and WCM, for the reasons and based on the allegations more particularly set forth above, are entitled to entry of a declaratory judgment that the Unassignable Claims have not been and cannot be assigned to the Fund Defendants by the Supplements attached as Exhibit C to the Harkness Affidavit, or otherwise.

95.    Section 8.3 of the Credit Agreement precludes the assertion of any claims against Wachovia or WCM other than express breach of contract claims when Wachovia is shown to have acted in grossly negligent or willful manner.  The provisions of the Credit Agreement itself preclude the assertion of implied contractual claims, claims for punitive or exemplary damages,

and claims for alleged fiduciary breaches. The Potential Claims that are precluded by the provisions of the Credit Agreement are defined herein and above as the "Precluded Claims."

96.     Pursuant to G.S. §1-253 *et seq.*, Wachovia and WCM, for the reasons and based on the allegations more particularly set forth above, are also entitled to entry of a declaratory judgment that the Precluded Claims cannot be asserted by or for the Fund Defendants against Wachovia or WCM.

97.     The Credit Agreement obligates the Fund Defendants to indemnify Wachovia and WCM ratably, according to their respective Commitment Percentages (as defined in the Agreement) in effect on the date on which indemnification is sought, from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind whatsoever which may at any time be imposed on, incurred by or asserted against [Wachovia and WCM] in any way relating to or arising out of any Credit Document or any documents contemplated by or referred to in the Credit Agreement, or the transactions contemplated by such Agreement, or any action taken or omitted by Wachovia or WCM under or in connection with any of the foregoing.

98.     Pursuant to G.S. §1-253 *et seq.*, Wachovia and WCM, for the reasons and based on the allegations more particularly set forth above, are also entitled to entry of a declaratory judgment that the Fund Defendants are obligated to provide indemnification with respect to all such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses and disbursements.

99.     In addition, Wachovia and WCM are entitled to entry of temporary, preliminary and permanent injunctive relief, and such awards of damages as may be appropriate, as is set forth in Section III above.

## COUNT IV

### *(claim by Wachovia and WCM for unfair trade practices)*

100.  Wachovia and WCM incorporate by reference and reallege all of the foregoing allegations.

101.  The prohibition on assignment of Unassignable Claims under North Carolina is intended to relieve potential defendants of the burden of defending champertous claims, *ab initio*. Thus, the threat of the filing of a champertous claim itself gives rise to legally cognizable harm, as does the actual filing of such a claim.

102.  As is more specifically alleged hereinabove, the Defendants have engaged in champerty and in maintenance, each of which constitutes a violation of G.S. §75-1.1.

103.  Defendants' acts constituting champerty and maintenance have occurred in and affect commerce.

104.  Wachovia has suffered and continues to suffer legally cognizable harm (including irreparable injury) by reason of the Defendants' wrongful conduct.

105.  Wachovia will suffer additional legally cognizable harm, including irreparable injury, should Defendants be allowed to assert the Unassignable Claims against Wachovia.

106.  Pursuant to G.S. §75-16, Wachovia is entitled to have and recover such injunctive relief, damages, costs and fees as have been caused or are attributable to the Defendants' violations of G.S. §75-1.1.

**WHEREFORE**, Wachovia and WCM pray that this Court:

1.  As is more specifically set forth in Section III above, enter a declaratory judgment that the Unassignable Claims and the Precluded Claims cannot be asserted by the Defendants against Wachovia or WCM and an injunction prohibiting the assertion of such Claims;

2.    As is more specifically set forth in Section III above, enter a temporary restraining order and a preliminary injunction barring assertion of the Unassignable Claims;

3.    Enter judgment declaring that Wachovia and WCM are entitled to indemnification from the Fund Defendants, as is alleged above;

4.    Award Wachovia damages and such other relief as may be appropriate as requested in Count I, plus interest; and

5.    Award Wachovia and WCM such damages and other relief as may be appropriate pursuant to the remaining Counts, plus interest; and

6.    Award Wachovia and WCM such other relief, damages, attorneys' fees, and costs as may be just and proper.

This 14th day of March, 2007.

Martin L. Brackett, Jr. (State Bar. No. 446)
mbrackett@rbh.com

Robert W. Fuller (State Bar No. 10887)
rfuller@rbh.com

Katherine G. Maynard (State Bar No. 26837)
kmaynard@rbh.com

*Counsel for Wachovia Bank, National Association and Wachovia Capital Markets, LLC*

ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000