**DEWEY & LEBOEUF LLP**
Harvey Kurzweil
Richard W. Reinthaler
James P. Smith III
William T. Conway III
Jennifer Opheim Whitener
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333

*Attorneys for Defendant Wachovia*
*Capital Markets, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HARBINGER CAPITAL PARTNERS MASTER :
FUND I, LTD., ET AL.,                :
                                     :
                     Plaintiffs,     :  07-CV-08139 (DC)
                                     :
            -against-                :  Hon. Denny Chin
                                     :
WACHOVIA CAPITAL MARKETS, LLC D/B/A  :  ELECTRONICALLY FILED
WACHOVIA SECURITIES, ET AL.,         :
                                     :
                     Defendants.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**OF WACHOVIA CAPITAL MARKETS, LLC**

## PRELIMINARY STATEMENT

Defendant Wachovia Capital Markets, LLC ("WCM") submitted a nine-page brief explaining succinctly why plaintiffs' purported RICO claims are not ripe. In response, plaintiffs submitted twenty-three pages of argument that mischaracterizes the status of the Le-Nature's Bankruptcy Proceedings, features mass citations of inapposite authority, and introduces an argument that plaintiffs abandoned at the pre-motion conference.[1]

The sole issue presented for this Court to decide is whether this action should be dismissed without prejudice while it is determined whether plaintiffs will recover their purported losses through the Bankruptcy Proceedings -- proceedings in which plaintiffs themselves have filed a brief touting the strong probability that they will enjoy a substantial or even complete recovery from the assertion of litigation claims by or on behalf of the bankruptcy estate. Controlling Second Circuit precedent squarely holds that plaintiffs' purported RICO claims are not ripe and supports dismissal without prejudice, as do considerations of judicial efficiency and sound case management. If plaintiffs' own predictions come to pass and they obtain full recovery through the Bankruptcy Proceedings, this Court will never need to consider a full-blown motion to dismiss and supporting brief (or to oversee discovery and further proceedings if such a motion is unsuccessful). In contrast, should plaintiffs not receive full recovery through the Bankruptcy Proceedings, they can then re-file and seek to assert their RICO claims, at which time their alleged damages, if any, will have become "clear and definite." Plaintiffs have not identified any material injury they will suffer from a dismissal without prejudice and fail to cite any on-point authority -- much less any Second Circuit authority -- to support their position.

---

[1] The Court specifically asked plaintiffs at the pre-motion conference if there was any basis for federal jurisdiction over this action other than the RICO claims. Plaintiffs responded by representing that there was not. Now, in light of the strength of defendants' ripeness argument, plaintiffs have reversed course.

## RIPENESS

Plaintiffs' proofs of claim in the bankruptcy court seek recovery of the funds advanced to Le-Nature's under the Credit Facility by plaintiffs or their predecessors; in other words, the proofs of claim seek to enforce plaintiffs' contractual right to payment from Le-Nature's, as secured by their lien on substantially all of Le-Nature's assets. (*See* Kurzweil Aff., Exs. B & C.)[2] Plaintiffs contend at several points in their brief (*e.g.*, pages 1, 4, & 16) that they expect no further recovery pursuant to the Credit Facility in the Bankruptcy Proceedings, their collateral is exhausted, they have no likely recovery on their contractual claims for repayment from Le-Nature's, and it is uncertain whether third-party claims will be filed by or on behalf of the bankruptcy estate. Plaintiffs' own pleadings and assertions in the bankruptcy court belie each of these contentions.

As noted in WCM's opening brief, plaintiffs have specifically asserted in various filings in the Bankruptcy Proceedings that they expect to receive large recoveries in the bankruptcy, including recovery on secured claims, in an amount not now subject to reasonable estimation. As members of the Ad Hoc Committee of Secured Lenders in the Bankruptcy Proceedings, plaintiffs filed a memorandum on August 16, 2007, with an illustration showing over $250 million in recovery from the assertion of third-party tort actions by the bankruptcy estate -- with priority in distributions afforded to plaintiffs in at least the first $32.5 million recovered (as a result of the use of their collateral). (Kurzweil Aff., Ex. E, at Ex. A p.2.) Counsel for the Chapter 11 Unsecured Creditors Committee represented to the bankruptcy court that the expected recovery to the estate -- and distribution to creditors, including plaintiffs --

---

[2] References to the "Kurzweil Aff., Ex. __" are to the exhibits annexed to the Affirmation of Harvey Kurzweil, dated November 13, 2007, and submitted with WCM's opening brief.

from these claims is expected to be "in excess of several hundred millions, if not a billion dollars." (Kurzweil Aff., Ex. F, at 14.) In their August 16 filing, plaintiffs strongly advocated adoption of a reorganization plan to fund assertion of these claims with estate assets (on which plaintiffs have liens), stating that "their expectation of substantial estate recoveries from tort actions has a strong empirical basis" and citing as illustrative $160 million and $500 million recoveries on similar claims in other cases. (Kurzweil Aff., Ex. E, at 6 n.8.) The most recent proposed disclosure statement describing the plan of reorganization, filed jointly on November 27, 2007 by the Ad Hoc Committee and the Unsecured Creditors' Committee, contains a laundry list of claims the estate intends to assert and confirms that the basic structure of the plan for assertion of such claims has not changed materially since August 16.[3] The November 27 disclosure statement also projects $30 million in future proceeds to the estate from the sale of expensive jewelry purchased with Le-Nature's assets -- additional collateral not yet liquidated that plaintiffs curiously fail to mention in their brief. (Supp. Kurzweil Aff., Ex. A., at 19.)

It is equally indisputable that the estate claims against third parties will in fact be asserted. The August 16 memorandum makes this clear. (Kurzweil Aff., Ex. F, at 6.) In addition, the November 27 disclosure statement shows that plaintiffs have committed to make a new $15 million loan to fund assertion of such claims -- an investment inconsistent with any notion that such claims may not be asserted or carry no expectation of recovery. (Supp. Kurzweil Aff., Ex. A, at Ex. J.) In fact, most of the plaintiffs here are hedge funds that bought interests in the Credit Facility in part to invest in the estate claims.

---

[3] *See* Disclosure Statement, dated November 27, 2007, at Art. VI, a copy of which is annexed at Ex. A to the Supplemental Affirmation of Harvey Kurzweil, dated December 11, 2007 ("Supp. Kurzweil Aff."), and submitted herewith.

3

In light of these facts, it would be charitable to characterize plaintiffs' factual position in this Court as disingenuous. They have flatly misrepresented the status of the Bankruptcy Proceedings, ignored their own assertions about the expected recovery in those proceedings, and taken completely inconsistent positions here and in the bankruptcy court.

Plaintiffs intertwine their factual misrepresentations with erroneous legal arguments. Plaintiffs assume that their RICO claims will be ripe when they have exhausted their collateral (which, as explained above, they have not done) even if they may receive future recoveries from the assertion of Le-Nature's estate tort claims. But controlling Second Circuit precedent compels the opposite conclusion. Until the estate claims are prosecuted to finality and the Bankruptcy Proceedings otherwise come to conclusion, plaintiffs' purported RICO claims are not ripe. *See, e.g., Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 137 (2d Cir. 2003) (creditor's RICO claims unripe even when only a "forlorn hope" of recovery through other proceedings); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1106 (2d Cir. 1988) (dismissing RICO claims where there was a possibility of recovery through bankruptcy proceedings); *L'Europeenne de Banque v. La Republica de Venezuela*, 700 F. Supp. 114, 119 (S.D.N.Y. 1988) (same).[4] In their language and their logic, these cases reject plaintiffs' attempt to draw tedious and non-existent distinctions between contractual claims, rights to foreclose on collateral, and expected recovery from the Le-Nature's bankruptcy estate. It would make no sense at all to conclude that a RICO

---

[4] In fact, the *Bankers Trust* decision held that RICO claims were not ripe because of the potential recovery of proceeds from fraudulent conveyance claims -- one of the claims touted in the August 16 bankruptcy memorandum of the Ad Hoc Committee as a source of funds for the plaintiffs here. 859 F.2d at 1106.

Plaintiffs' attempts to distinguish *Bankers Trust* on pages 11-13 of their brief should not be well taken. As demonstrated by the variety of cases from this Circuit where the ripeness requirement has been applied, it does not matter what the underlying fraud is, it is the potential for recovery that is important. Moreover, to the extent plaintiffs suggest that the court in *Bankers Trust* required exhaustion of bankruptcy remedies only because of the nature of the basis for the RICO claims, *L'Europeenne* (which plaintiffs completely ignore) demonstrates the fallacy of their argument.

claimant's damages had become clear and definite after the claimant had foreclosed on its collateral even if the claimant expected a full recovery from the bankruptcy estate in the future. Here, as in *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) and *American Home Mortgage Corp. v. UM Securities Corp.*, No. 05 Civ. 2279(RCC), 2007 WL 1074837, at *3-4 (S.D.N.Y. Apr. 9, 2007), any "amounts payable on the [Le-Nature's] debt [to plaintiffs]" that remain "unknown and unknowable" render plaintiffs' claims unripe.[5] Plaintiffs' attempts to distinguish the controlling cases (at pages 10 – 16 of their brief) ignore this fundamental legal point -- and are riddled with factual misstatements concerning the status of the Le-Nature's bankruptcy in any event.

Perhaps recognizing that their position cannot be sustained, plaintiffs attempt to divert attention from governing precedent and open their legal argument by relying on cases in which neither RICO claims nor RICO ripeness arguments were asserted.[6] On page 6 of their brief, plaintiffs cite *Bronx Household of Faith* (a First Amendment free speech case) and *United States v. Fell* (a case concerning the constitutionality of the Federal Death Penalty Act) for the proposition that sufficient injury to satisfy the Article III case or controversy doctrine provides sufficient proof of ripeness. Neither case has any relevance here because the RICO statute -- as plaintiffs acknowledge at pages 21-22 of their brief -- "imposes standing requirements exceeding the requirement for constitutional standing under Article III."

---

[5] This is not a situation where only pennies are at issue in the bankruptcy proceeding, or where some loss is certain. As noted above, counsel for the Unsecured Creditors' Committee has represented that recovery may be as much as a billion dollars, and the filings by the Ad Hoc Committee project recovery in the hundreds of millions, with priority funding to the plaintiffs here on account of their liens.

[6] Plaintiffs' contention that defendants do not dispute that plaintiffs have "sufficiently alleged a RICO violation," is wrong (*see* WCM Br. at 6 n.10) and ignores the Court's instructions regarding the parameters of this motion.

Plaintiffs next cite *In re Merrill Lynch Ltd. Partnerships Litigation*, 154 F.3d 56 (2d Cir. 1998) and *Bank of China v. NBM L.L.C.*, No. 01 CIV 0815 DC, 2001 WL 1360299 (S.D.N.Y. Nov. 5, 2001), but both of these cases are factually inapposite. As the Second Circuit explained in *Motorola*, the plaintiffs in *Merrill Lynch* were -- unlike the plaintiffs in this case -- unsecured and without other contractual remedies, so that case in no respect "impairs the rule enunciated in *First Nationwide*." 322 F.2d at 136-37. In fact, the plaintiffs in *Merrill Lynch* were not creditors at all -- they were investors in partnerships. Moreover, there is language in *Merrill Lynch* that affirmatively supports WCM's position: "[W]hen a creditor alleges he has been defrauded RICO injury is speculative when contractual or other legal remedies remain which hold out a real possibility that the debt, and therefore the injury, may be eliminated or significantly reduced." 154 F.3d at 59. Furthermore, in *Bank of China*, the plaintiffs' losses had become clear and definite, and the plaintiffs explicitly alleged as much. 2001 WL 1360299, at *1. Here, under *First Nationwide, Motorola, Bankers Trust*, and the other precedent cited by WCM, plaintiffs have not and cannot make such allegations.[7]

Plaintiffs veer further astray in the analysis at pages 8 and 9 of their brief, citing more cases that have no relevance whatsoever. The primary issue in *The Mediators* and *Steinberg* was whether a cause of action belongs to the estate or to a creditor individually.[8] No RICO claim was asserted in either case. In *Ashland Oil, Inc. v. Arnett*, the issue before the

---

[7] In light of the true status of the Bankruptcy Proceedings, it would be futile to allow plaintiffs to amend their complaint at this time, as they suggest. Plaintiffs simply cannot now truthfully allege that their alleged eventual losses, if any, are known or knowable.

[8] *See In re The Mediators, Inc.*, 105 F.3d 822, 825 (2d Cir. 1997) ("We emphasize at the outset that the issue before us is whether a creditors' committee standing in the shoes of the debtor may bring a claim against parties alleged to have aided and abetted the debtor's breach of fiduciary duties."); *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994) ("When a third party has injured not the bankrupt corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot bring suit against the third party. He has no interest in the suit.").

6

Seventh Circuit at the section to which plaintiffs point was whether the "plaintiffs have shown injury distinct from that of other creditors" so as to have standing to proceed -- or whether only the bankruptcy trustee had standing. 875 F.2d 1271, 1279-80 (7th Cir. 1989). The issue of RICO ripeness was not before the court, nor did the Seventh Circuit even discuss the line of Second Circuit cases that control here. *Bullmore* and *Fraternity Fund*, cited on page 9 of plaintiffs' brief, are also cases addressing, *inter alia*, whether the entity itself or an individual shareholder or creditor has standing to sue -- and no RICO claim or issue of RICO ripeness was presented in either case.

In sum, plaintiffs have no ripe RICO claims to assert, so there is no need for the Court to address at this time whether plaintiffs can ever state a RICO claim or otherwise devote its attention to this lawsuit.[9] Courts in this Circuit have explicitly recognized that the RICO ripeness rules may result in state law claims being resolved in other courts before purported RICO claims arising out of the same factual circumstances. *See, e.g., Bankers Trust,* 859 F.2d at 1106; *American Home Mortgage,* 2007 WL 1074837, at *5. WCM respectfully suggests that where and when those state law claims are asserted is of no consequence here. Plaintiffs certainly should not be allowed to use an unripe RICO claim simply to secure this Court as a forum for a state law dispute that could and should be adjudicated elsewhere.[10]

---

[9] Plaintiffs' "fairness" arguments are irrelevant. RICO ripeness is not a discretionary doctrine, and Second Circuit precedent is clear that plaintiffs' claims are not ripe.

[10] Plaintiffs' assertion that the pendency of the North Carolina action furnishes a basis for this Court to proceed badly confuses the issues. The claims of many of the plaintiffs here could be asserted as counterclaims in North Carolina, and the plaintiffs who are original holders (and who are therefore not defendants in North Carolina) can assert their claims in other appropriate forums of their choosing. (The plaintiffs here who are defendants in North Carolina are enjoined from asserting claims anywhere other than North Carolina, which is the subject of a pending contempt motion in the North Carolina court.) Plaintiffs' argument that this is the sole forum where all claims can be resolved is also specious. Not all the holders of interests in the Credit Facility are parties here, nor is Wachovia Bank, National Association, which is a plaintiff in North Carolina. The claims asserted by WCM and Wachovia Bank in

*continued on following page . . .*

## SECTION 1334

Having abandoned §1334 as a basis for jurisdiction at the pre-motion conference, plaintiffs attempt to revive it now in the face of a ripeness argument to which they have no substantive response. But, as shown below, they were right to abandon the argument in the first place.

Plaintiffs contend that this case is "related to" the bankruptcy principally because their recovery here could affect the amounts available for distribution to other estate creditors. (Pls.' Br. at 17-18.) Plaintiffs have the analysis backwards. They will be damaged only to the extent that they fail to obtain full payment of the debts owed to them by Le-Nature's through the Bankruptcy Proceedings; if they do obtain full payment through the Bankruptcy Proceedings, they will have no damages and no basis for assertion of individual claims. Thus, the outcome of the bankruptcy affects the claims that plaintiffs attempt to assert here, but the converse is not true. Under these circumstances, there is no "related to" jurisdiction under 28 U.S.C. §1334. *See Transamerica Fin. Life Ins. Co. v. Merrill Lynch & Co.*, 302 B.R. 620, 625-26 (N.D. Iowa 2003) (no §1334 jurisdiction because Enron investor claims against banks and underwriters were not "related to" Enron bankruptcy even though investors had filed proofs of claim in bankruptcy); *In re Alpha Steel Co.*, 142 B.R. 465, 469-70 (M.D. Ala. 1992) (no §1334 jurisdiction over fraud claims when recovery in bankruptcy would determine amount of damages).

Plaintiffs also contend that §1334 affords this Court jurisdiction because this case will result in findings about the conduct and actions of a creditor relevant under 11 U.S.C.

---

*continued from preceding page...*
North Carolina will never become compulsory counterclaims here. *See* Fed. R. Civ. P. 13 ("But the pleader need not state the [counter]claim if . . . at the time the action was commenced the claim was the subject of another pending action.").

8

§510(c). This contention makes no sense at all. Defendant WCM is not a creditor in the Bankruptcy Proceedings, and Wachovia Bank -- the WCM affiliate whose bankruptcy claims plaintiffs suggest could be equitably subordinated in the Bankruptcy Proceedings if plaintiffs are successful here -- is not a defendant here. In other words, there will be no adjudication in this case against any Wachovia entity that has submitted a claim in the Bankruptcy Proceedings. Plaintiffs have offered no authority suggesting that collateral estoppel, the lynchpin of their argument, is properly invoked in this situation.

Moreover, if there were §1334 jurisdiction here, the proper course of action would be for this court to abstain under §1334(c)(1) (relating to permissive abstention) and/or §1334(c)(2) (relating to mandatory abstention).[11] District courts have abstained in virtually all cases similar to this one, where there are no claims asserted by or against the debtor, the issues are purely state law issues that can easily and more appropriately be adjudicated elsewhere, and the claims have no real relationship to the bankruptcy case. *See, e.g., Transamerica*, 302 B.R. at 628-29; *In re Masterwear Corp.*, 241 B.R. 511, 520-21 (Bankr. S.D.N.Y. 1999).[12] In fact, given the pending North Carolina action, which has been ongoing since March 2007 and is actively proceeding towards trial,[13] in which the purported claims of many of the plaintiffs here can be

---

[11] As plaintiffs point out, another federal district court has already rejected plaintiffs' bankruptcy jurisdiction argument in remanding the North Carolina action after many of the plaintiffs in this action attempted to remove the North Carolina action to federal court. (*See* Remand Order, dated Mar. 23, 2007, annexed as Ex. B to the Supp. Kurzweil Aff.)

[12] Litigation of plaintiffs' claims in the Southern District of New York will not aid the administration of a bankruptcy proceeding venued in the Western District of Pennsylvania. As such, there will be no difference in the administration of the estate if the claims are litigated in a state court (if that is where plaintiffs elect to re-file their state law claims) outside Pennsylvania as opposed to this Court.

[13] *See* North Carolina Action Docket, annexed as Ex. C to the Supp. Kurzweil Aff.

asserted, abstention is mandatory with respect to all state law claims that any of the North Carolina defendants may attempt to assert here in the future. *See* 28 U.S.C. §1334(c)(2).[14]

## SECTION 1367

"In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 255 (S.D.N.Y. 2005) (dismissing plaintiffs' state law claims after granting summary judgment on plaintiffs' RICO claims); *see also New York Mercantile Exch. Inc. v. IntercontinentalExchange, Inc*, 497 F.3d 109, 118-19 (2d Cir. 2007) (district court did not abuse its discretion in dismissing supplemental state law claims when resolving them "would entail resolving additional issues of fact").

Plaintiffs have not cited any case indicating that it would be proper for this Court to retain jurisdiction over state law claims even after the federal RICO claims are dismissed at this early stage of the proceedings, and their arguments for retention of jurisdiction are convoluted, at best. They contend that retention of jurisdiction will avoid duplicative proceedings, but the only duplicative proceeding is *this action*. If plaintiffs desire the efficiencies of a single action, they are free to attempt to assert all of their purported claims in the North Carolina action filed in March 2007, including their federal RICO claims if and when they become ripe. *See Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) (state courts have concurrent federal RICO jurisdiction).

## CONCLUSION

For the foregoing reasons and the reasons set forth in its opening brief, WCM respectfully requests that this action be dismissed, without prejudice.

---

[14] A decision by this Court to abstain under §1334(c) is not subject to appeal. *See* 28 U.S.C. §1334(d).

10

Dated: December 11, 2007                    Respectfully submitted,

                                            **DEWEY & LEBOEUF LLP**

                                            By: /s/ Harvey Kurzweil
                                                Harvey Kurzweil
                                                Richard W. Reinthaler
                                                James P. Smith III
                                                William T. Conway III
                                                Jennifer Opheim Whitener

                                            1301 Avenue of the Americas
                                            New York, New York 10019
                                            (212) 259-8000

                                            *Attorneys for Defendant Wachovia*
                                            *Capital Markets, LLC*

Of Counsel:

**ROBINSON, BRADSHAW & HINSON, P.A.**
Robert W. Fuller (*pro hac vice*)
Katherine G. Maynard (*pro hac vice*)
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
(704) 377-2536