**DLA PIPER US LLP**
1251 Avenue of the Americas
New York, New York 10020-1104

Attorneys for Defendant BDO SEIDMAN, LLP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
HARBINGER CAPITAL PARTNERS           :
MASTER FUND I, LTD., et al.,
                                     :
         Plaintiffs,
                                     :   Index No. 07-CV-08139 (DC)
    -against-
                                     :
WACHOVIA CAPITAL MARKETS, LLC
d/b/a WACHOVIA SECURITIES, et al.,   :

         Defendants.                 :
------------------------------------- X

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT BDO SEIDMAN, LLP'S MOTION TO DISMISS

December 11, 2007

Defendant BDO Seidman, LLP ("BDO") respectfully submits this reply memorandum of law in further support of its motion for an Order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing plaintiffs' complaint.[1]

## I. PLAINTIFFS' RICO CLAIMS ARE BARRED BECAUSE THEY HAVE NOT YET INCURRED RICO DAMAGES, AND MAY NEVER DO SO

### A. Plaintiffs Have Not Exhausted Their Remedies

As set forth in BDO's Memorandum of Law in Support of its Motion to Dismiss, when, as here, RICO plaintiffs are lenders, they must exhaust their available remedies to collect the unpaid loan before they may bring a RICO action. *See Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135-36 (2d Cir. 2003). Plaintiffs themselves are proponents of a reorganization plan in the Le-Nature's bankruptcy that, according to plaintiffs, "provides an opportunity for all creditors – secured and unsecured alike – to recover what was lost in the massive fraud that led to Le-Nature's momentous collapse." (BDO Main Br. at 4)

Recognizing their dilemma, plaintiffs now argue that they are required only to "exhaust traditional, *contractual* remedies" before filing a RICO claim. (Pl. Br. at 1) (emphasis added) Plaintiffs are wrong. The many cases cited in BDO's moving papers contain no such artificial limitation. To the contrary, the Second Circuit specifically has held that "'when a creditor alleges that he has been defrauded RICO injury is speculative when contractual *or other legal remedies remain* which hold out a real possibility that the debt, and therefore the injury, may be

---

[1] To avoid burdening the Court, BDO respectfully incorporates by reference the points made by defendant Wachovia in its reply memorandum on this motion.

eliminated or significantly reduced.'" *Motorola Credit Corp., supra,* 322 F.3d at 136 (emphasis added) (*quoting In Re Merrill Lynch Ltd. Partnerships Litigation,* 154 F.3d 56, 59 (2d Cir. 1998)).

Manifestly, plaintiffs are pursuing their "legal remedy" in the Le-Nature's bankruptcy, a remedy that plaintiffs contend could lead to a recovery of *hundreds* of millions of dollars. (BDO Main Br. at 4) Plaintiffs nevertheless claim that they have "no hope of remedying their losses" because plaintiffs' "collateral already has been liquidated." (Pl. Br. at 1, 13) But plaintiffs' available "remedy" obviously goes beyond merely the collateral on their loan. *Motorola* again makes this plain:

> The "clear and definite" amount of damages suffered by a secured creditor who is fraudulently induced to make a loan and seeks to recover the value of the loan itself, "cannot be established until it is finally determined whether the collateral is insufficient to make the plaintiff whole, and if so, by how much." That is because the RICO damages are netted against recovery obtained from collateral *and other sources*.

322 F.3d at 135 (emphasis added and internal citations omitted) (*quoting First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 768 (2d Cir. 1994)).

Here, plaintiffs seek to recover their alleged loss not only from the collateral, but also the "other source" of the litigation claims to be raised in the Le-Nature's bankruptcy. If plaintiffs are correct that those claims could lead to a recovery of hundreds of millions of dollars, then their RICO damages must be "netted" against that recovery. Accordingly, at this point, the amount of plaintiffs' RICO damages – and even whether there will be any damages at all – is simply unknowable.

2

### B. Plaintiffs Are Free To Try To Allege Direct Claims Against Defendants, Just Not RICO Claims

Plaintiffs assert that their RICO claims are distinct from the claims that will be raised by the trustee on behalf of the Le-Nature's estate. (Pl. Br. at 7-10) Plaintiffs claim that they are therefore "free to pursue state law claims against third parties while an estate, as to which plaintiffs are among the creditors, is simultaneously pursuing its own claims, including claims against the same third parties." (Pl. Br. at 9) This is a pure red herring. BDO agrees that plaintiffs can try to allege "state law" claims against BDO in the proper forum, regardless of the status of the bankruptcy. What plaintiffs cannot do is to bring <u>RICO</u> claims against BDO when those claims are not yet ripe.

Once again, the Second Circuit already has addressed this point. The court in *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096 (2d Cir. 1988) held that as long as a bankruptcy trustee was still pursuing a recovery, a plaintiff's RICO damages were "'speculative'" and "'unprovable'" because if the trustee were successful, the plaintiff "would benefit along with [the debtor's] other creditors and its injury would decrease." 859 F.2d at 1106 (citation omitted); *accord, L'Europeenne de Banque v. La Republica de Venezuela,* 700 F. Supp. 114, 118-19 (S.D.N.Y. 1988) (plaintiffs' RICO claims are unripe when recovery from liquidation proceedings remains possible).

Plaintiffs' argument on this point does not grapple with this aspect of the holding of the Second Circuit in *Bankers Trust*, and plaintiffs do not cite *L'Europeenne de Banque* at all.[2]

---

[2] Plaintiffs do attempt to distinguish *Bankers Trust* by claiming that the case involved fraud within the bankruptcy itself. (Pl. Br. at 11-13) This is a classic distinction without a difference. The Second Circuit's holding in *Bankers Trust* was not in any way based on where the fraud occurred. Rather, the court's ruling sprung from the fact that the plaintiffs' damages remained

*(footnote continued to next page)*

3

Plaintiffs do cite Judge Kaplan's opinion in *Bullmore v. Banc of America Securities LLC*, 485 F.Supp.2d 464 (S.D.N.Y. 2007). (Pl. Br. at 9) Comically, however, the *Bullmore* opinion did not even involve a RICO claim. Indeed, plaintiffs have failed to cite a *single* case from within the Second Circuit that found a lender/creditor's RICO claim to be ripe when bankruptcy proceedings remained pending against the debtor.

As plaintiffs must concede, any sums recovered by the trustee will be passed along to plaintiffs (and other creditors). Therefore, until the trustee's ongoing recovery efforts in the bankruptcy proceedings are concluded, plaintiffs' RICO damages are entirely speculative and their RICO claims must be dismissed as unripe under binding Second Circuit precedent.

## II.   THIS COURT SHOULD NOT EXERCISE JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS

Plaintiffs urge that even if their RICO claims are dismissed, this Court should still retain jurisdiction over plaintiffs' seven state law claims – claims which are alleged against four separate defendants and which conceivably could be governed by New York, Pennsylvania, North Carolina, or Delaware law, or a combination of any or all of those four jurisdictions.

Stripped to its essence, plaintiffs' argument is that because defendant Wachovia has obtained an injunction from a North Carolina state court banning certain of the plaintiffs from raising certain claims against Wachovia other than before that court, this Court (which, plaintiffs assert, is not bound by the injunction) is the only forum where all claims against all defendants

---

*(footnote continued from previous page)*
speculative until the bankruptcy trustee had completed its recovery efforts on behalf of creditors.

4

can be heard. (Pl. Br. at 20) Wachovia's reply brief establishes that this assertion is untrue as a factual matter, given that not all of the parties at issue are present here and not all of the claims raised in the North Carolina action could be raised here. Moreover, plaintiffs' memorandum acknowledges that the relevant plaintiffs here have "moved to dissolve" the North Carolina injunction. (Pl. Br. at 20 n.10) Plaintiffs further concede that a North Carolina federal court refused jurisdiction of the case and instead remanded it back to state court. (Pl. Br. at 19 n.9) Thus, there are only two possible outcomes:

> (1) the North Carolina court keeps the injunction in effect, thereby mandating that the affected plaintiffs proceed with certain claims only in North Carolina state court and not before this Court; or
>
> (2) the North Carolina court lifts the injunction, and plaintiffs may assert all of their claims in the appropriate state court(s) against all defendants.

In either scenario, this Court's rejection of jurisdiction will have no effect on whether plaintiffs can bring all of their claims in one forum. Therefore, this Court need not assert jurisdiction over the many state law claims asserted in plaintiffs' eighty-five page complaint.

It bears noting that plaintiffs will not be prejudiced in the least if this case is dismissed. Plaintiffs are free to refile their state law claims in the appropriate state court. Indeed, had plaintiffs been motivated by prosecuting their claims – rather than overreaching to prematurely seek RICO treble damages – they would have filed their action in state court months ago.

### III.   LEAVE TO AMEND SHOULD NOT BE GRANTED

Finally, in the event the Court dismisses the complaint, plaintiffs have requested leave to amend so that they could "specifically identify the amount of their claims." (Pl. Br. at 23) But

5

that is the exact problem with plaintiffs' RICO claims. Although plaintiffs can no doubt state the amount of the money originally loaned to Le-Nature's, they cannot at this time state their damages, because those damages will not be known until the bankruptcy proceedings are concluded.

The Second Circuit already has addressed this issue. In *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158 (2d Cir. 1993), the Court described its earlier decision in *Bankers Trust* as follows:

> The amount of the lost debt in the instant case, as in *Bankers Trust*, remains unprovable. In *Bankers Trust*, <u>the amount of the bank's claim was definite, but the amount of its "lost debt" was nonetheless held to be indeterminate because of the ongoing bankruptcy proceedings.</u> Similarly, although Stochastic has obtained judgments for specific amounts, the amount of its "lost debt" cannot be determined at this time because of the ongoing efforts to collect those judgments.

995 F.2d at 1165 (emphasis added).

Here, too, the "amount" of plaintiffs' loan (or purchased distressed debt) may be definite, but the amount of their "lost debt" is "indeterminate because of the ongoing bankruptcy proceedings." *Id.* No amendment could remedy this defect. Plaintiffs' request to amend should be denied. *See, e.g., Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.").

## CONCLUSION

For the foregoing reasons and those stated in its moving papers, defendant BDO Seidman, LLP respectfully requests that this Court dismiss plaintiffs' complaint in its entirety, and award such other and further relief as the Court deems just and proper in the circumstances.

Dated: New York, New York
December 11, 2007

*Cary B. Samowitz*
Cary B. Samowitz

Palmina M. Fava
Thomas F. O'Neil III
DLA PIPER US LLP
1251 Avenue of the Americas
New York, New York 10020-1104
(212) 335-4500

Attorneys for Defendant
BDO SEIDMAN, LLP

Of counsel:

Michael S. Poulos
R. Matthew Hiller
DLA PIPER US LLP
203 N. LaSalle Street
Suite 1900
Chicago, Illinois 60601-1293
(312) 368-4000