# Exhibit A, Part III

assets of the Debtors' estates but it is not likely that the Debtors' bottling facility in Latrobe, the principal physical asset, would be liquidated on terms that are better than those under the Plan. Presumably, the trustee in Chapter 7 would proceed to offer for sale the Latrobe facility on the same terms as those under which the Chapter 11 Trustee has been authorized to retain a broker and sell the facility. Assuming no loss of time is occasioned by a conversion to Chapter 7 (which could occur and could reduce the proceeds received from the sale process) the proceeds from the sale of the Latrobe facility would be the same under the Plan and in Chapter 7. Those proceeds would, in Chapter 7, be distributed to the parties either owning the equipment included in the sale such as the equipment lessors or to the creditors holding a lien and security interest in the assets that are part of the sale. All real property and equipment included in the proposed sale of the Latrobe facility that is not owned by an equipment lessor is subject to liens and security interests in favor of the Lenders. Accordingly, absent a successful challenge to these security interests, or equitable subordination of the Lenders' Claims, all proceeds from the sale of the Latrobe facility would be distributed to either equipment lessors or the Lenders.

Other recoveries in Chapter 7 are more speculative. The trustee in Chapter 7 could pursue the same Estate Causes of Action as contemplated under the Plan but would require a source of funding in order for the prosecution of those Causes of Action to be undertaken and to be successful. Under the Plan, a source of funding for the pursuit of the Causes of Action has been agreed to as part of the consensual agreements reached by and among the Proponents. Specifically, the Plan provides for proceeds from the disposition of Estate assets to be made available to the Liquidation Trust with the consent of the Lenders holding liens in such proceeds. Alternatively, if such proceeds are not available or not available in sufficient amounts to provide the anticipated funding required by the Liquidation Trust, the Plan provides for an Exit Facility on the terms set forth in the Exit Facility Agreement attached hereto as Exhibit "J" and would be subject to objection and approval in connection with the confirmation of the Plan. The availability of this funding, either through proceeds of assets sales or the Exit Facility, is part of the compromise reflected in the provisions of the Plan. Such funding would not necessarily be available to the trustee in a Chapter 7 or may not be available to the Chapter 7 trustee on the same terms. Thus, it is not certain whether the trustee in a Chapter 7 could obtain the necessary funding to properly investigate, pursue, litigate and successfully conclude the Causes of Action, and any such funding might only be available at significantly higher cost to the Chapter 7 estate. Therefore, it is likely that any recoveries from the Estates' Causes of Action that would be received in a Chapter 7 would result in distributions to creditors that are materially less than those under the Plan.

In addition, as discussed above, one of the principal features and benefits of the Plan is the compromise and resolution of several complex issues including (a) the Allowed amount and priority of Secured Claims; (b) the extent to which holders of Secured Claims may successfully assert that they hold Liens on Estate Assets or the proceeds thereof, including Estate Causes of Action; and (c) the extent to which Claims held by holders of Senior Subordinated Notes are structurally and/or contractually subordinated the Claims held by Lenders. In the absence of a Plan and in a Chapter 7 liquidation, these issues would not be resolved and would require extensive time-consuming and costly proceedings to litigate. As discussed in greater detail in Section 5.02 above, the issues resolved by these compromises involved complicated legal positions as to which there are genuine, good-faith

disputes. The resolution of these matters by means other than compromise and settlement would require extensive discovery and potentially protracted litigation procedures. The issues include matters requiring factual development and discovery, and full adjudication would require evidentiary hearings, legal briefing, and rulings by the Bankruptcy Court. Given the substantial amounts involved, the complexity of the legal issues and the consequences of any ruling, it is likely that the parties not prevailing in such adjudications would be economically motivated to file and pursue appeals. The costs and expenses to fully resolve these issues in the absence of a compromise would be astronomical.

For the foregoing reasons, the Proponents believe that the level of recovery by a trustee in Chapter 7 would be equal to or substantially less than that under the Plan, and the costs and expenses of pursuing the recoveries and resolving the other issues would be equal to or substantially greater. Therefore, the Proponents believe that the Plan will produce a recovery equal to or greater than what holders of Claims would achieve in a Chapter 7 liquidation.

## ARTICLE XIV
### Feasibility of the Plan

Bankruptcy law provides that a Chapter 11 plan may be confirmed only if the Bankruptcy Court finds that such plan is feasible. The feasibility standard requires that there is a reasonable probability that the Confirmation of the Plan will not likely be followed by liquidation or the need for further financial reorganization of the Debtor or any successor of the Debtor under the Plan, unless liquidation is contemplated under the Plan.

The Plan contemplates and provides for the orderly liquidation of the Estates. The Plan provides for resolution and compromise of issues that otherwise would require litigation and expenditure of available resources and also provides for funding of the Liquidation Trust to allow the pursuit of the Causes of Action described in the Plan. Accordingly, the Proponents believe that the Plan is feasible.

The Plan provides for initial funding of the Liquidation Trust in an amount sufficient to (a) make initial distributions as required by the Plan and (b) establish the Liquidation Trust Reserve in accordance with Section 6.02(g) of the Plan and the Liquidation Trust Agreement. The Liquidation Trust Reserve will be an amount sufficient to satisfy the Liquidation Trust's anticipated future administrative expenses and to permit it to pursue the Estate Causes of Action. The amount of the reserve will be established in accordance with and may be modified from time-to-time by the Liquidation Trust in accordance with the Liquidation Trust Agreement.

Attached hereto as Exhibit "L" are cash flow projections that include the payments that will be made on the Effective Date of the Plan. The Plan provides for the funding of the Liquidation Trust to allow it to make the payments of approved administrative and priority tax claims in accordance with the treatment of those claims under the Plan. The amount of the Initial Trust Funding will be $15,000,000 or such other amount that is necessary to fund required payments under the Plan and to establish the reserves as agreed to by the Plan Proponents and approved by the Bankruptcy Court in the Confirmation Order. The amount

of the Initial Funding will include a reasonable estimate of the funds that will be initially required by the Liquidation Trust to undertake the investigation and pursuit of Estate Causes of Action. The Plan includes several alternative sources of funding to pay Administrative and Priority Claims and to fund the Liquidation Trust Reserve in the event the proceeds from sales of assets are not available or inadequate. Specifically, the Plan provides for Cash to be vested in the Liquidation Trust on the Effective Date from any available Cash, the liquidation of Lenders Collateral, and/or advances under the Exit Facility to the extent necessary to establish the amount of the Liquidation Trust Reserve. The terms of the Exit Financing Agreement attached hereto as Exhibit "J" require the advances under the Exit Facility, if necessary, to include the funding of the Liquidation Trust Reserve in the amount of $7,500,000 to satisfy anticipated future administrative expenses, including as modified thereafter in accordance with the Liquidation Trust Agreement (but not in excess of $7,500,000). By these provisions, the Plan provides for funding of the Liquidation Trust in amounts needed to permit it to make the payments required to be made under the Plan with respect to administrative and priority claims and to satisfy anticipated future administrative expenses, funds the anticipated costs of pursuing the Estate Causes of Action, and provides for primary and alternative sources of funding sufficient to make the required funds available to the Liquidation Trust. Accordingly, the Proponents believe the Plan is feasible.

Attached hereto as Exhibit "M" are certain spreadsheets entitled "Hypothetical Recoveries/Assumptions – Submitted Only to Describe Applications of Formulas Contained In The Plan." The spreadsheets are intended by the Proponents to provide examples of distributable value to various Classes of Claims, based upon hypothetical aggregate recoveries on Estate Causes of Action and other Assets. The spreadsheets are provided only to illustrate the Plan's distribution scheme, and are not intended by the Proponents as predictions of any particular level of recovery on Estate Causes of Action or other Assets.

## ARTICLE XV
### Risk Factors

**ALL IMPAIRED HOLDERS SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.**

Parties in interest may object to the classification of Claims. Section 1122 of the Bankruptcy Code provides that a plan may place a class or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Proponents believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code. However, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting creditor Claim or Interest holder of the Debtors might challenge the adequacy of this Disclosure Statement or the balloting procedures and results as not being in compliance with the Bankruptcy Code or Bankruptcy

Rules. Even if the Bankruptcy Court determined that the Disclosure Statement and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met, including that the terms of the Plan are fair and equitable to non-accepting Classes. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, a finding by the Bankruptcy Court that the Plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting Classes, and the value of distributions to non-accepting Holders of Claims and Interests within a particular Class under the Plan will not be less than the value of distributions such holders would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. While there can be no assurance that these requirements will be met, the Proponents believe that non-accepting holders within each Class under the Plan will receive distributions at least as great as would be received following a liquidation under Chapter 7 of the Bankruptcy Code when taking into consideration all administrative claims and costs associated with any such Chapter 7 case.

The confirmation and consummation of the Plan are also subject to certain conditions as described in Article VI of the Plan. If the Plan is not confirmed, it is unclear what distributions holders of Claims or Interests ultimately would receive with respect to their Claims or Interests. If an alternative plan could not be agreed to, it is possible that the Debtors would have to liquidate its assets in Chapter 7, in which case it is quite possible that holders of Claims and Interests would receive less favorable treatment than they would receive under the Plan.

The Effective Date of the Plan is also subject to certain conditions and even if the Plan is confirmed, the Plan may not become effective if the conditions to the Effective Date do not occur or are not waived.

A party may object to the amount or classification of a Claim. Any estimates set forth in this Disclosure Statement cannot be relied on by any holder of a Claim or Interest whose Claim or Interest is subject to an objection. Any such Claim or Equity Interest holder may not receive its specified share of the estimated distributions described in this Disclosure Statement.

There can be no assurance that the prosecution of the Causes of Action will be successful, or what amounts will be recoverable from the pursuit of the Causes of Action.

There are tax and security risks associated with the use of a Liquidation Trust. Although the Liquidation Trust is being organized and structured in a manner believed to compliant with applicable tax laws and regulations and to minimize taxes where lawfully permissible, there is no assurance that the taxing authorities will agree with the assumptions being made in this regard as to the structure, organization and status of the Liquidation Trust.

In addition, although the Liquidation Trust is intended to be established in a manner that does not constitute the interests in the Liquidation Trust as securities or require registration under or compliance with security laws and regulations, regulators could disagree with or dispute the applicability of security laws. The potential consequences could include

74

challenges to the validity of the Liquidation Trust or, at a minimum, increased compliance cost and greater expense to the operation of the Liquidation Trust.

There is a risk that the assignment or transfer of the Causes of Action, claims and privileges to the Liquidation Trust as contemplated by the Plan could be subject to challenge that, if successful, could nullify the transfer of the Causes of Action, in whole or in part, and result in the Liquidation Trust being unable to pursue those Causes of Action or assert claims or privileges in connection therewith.

The Plan includes provisions that nothing in its provisions or the establishment of the Liquidation Trust and the transfer of Causes of Action to the Liquidation Trust in intended to create or give rise to any claim or preclusion or estoppel in defense of any Causes of Action. Nevertheless, there is a risk that despite such intention and such provisions, there could be a determination that some act or event occurring in connection with the Plan, its implementation and the establishment and operation of the Liquidation Trust will be deemed to create such defenses.

There is a risk that the term of the Liquidation Trust will be in adequate to complete the full pursuit and resolution of the Causes of Action.

The Plan and provisions regarding the establishment and operation of the Liquidation Trust require the selection of Liquidation Trustee that is an independent and disinterested Person unanimously designated by the Proponents. There is a risk, despite every effort to select a Person who is qualified to perform the tasks of the Liquidation Trustee, that the Person selected will be less effective than what might have been achieved by continued proceeding in the Chapter 11 Cases.

## ARTICLE XVI
### Certain Federal Income Tax Consequences

Creditors and Interest holders concerned with how the Plan may affect their tax liability should consult with their own accountant, attorney and/or advisor. The following disclosure of possible of tax consequences is intended solely for the purpose of alerting readers to possible tax issues the Plan may present to the Debtors, Creditors and Interest Holders. The Proponents cannot and do not represent that the tax consequences identified below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules that make it difficult to state completely and accurately all of the tax implications. Pursuant to Section 1125(a) of the Bankruptcy Code, a disclosure statement is to include a discussion of the potential material federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims and interest in the case.

The Plan does not contemplate or provide for any continuing operations or income-producing activity by the Debtors. The Debtors may not recognize income as a result of a discharge of debt pursuant to the Plan because Section 108 of the Internal Revenue Code provides that the taxpayers in bankruptcy proceedings do not recognize income from the

discharge of debt. However, a taxpayer in a bankruptcy is required to reduce its "tax attributes" by the amount of debt discharged. Tax attributes are reduced in the following order: (i) net operating losses; (ii) general business credits; (iii) capital loss carryforwards; (iv) basis in assets; and (v) foreign tax credits.

Under the provisions of the Plan, the Liquidation Trust will be responsible for filing all federal, state, and local tax returns for the Liquidation Trust. The Liquidation Trust will provide reports to holders of beneficial interests in the Liquidation Trust, as the Liquidation Trust Oversight Board deems appropriate.

The Plan sets forth a description of the federal income tax treatment of the Liquidation Trust and Assets that should be reviewed by all creditors and parties voting on the Plan. For federal income tax purposes, it is intended that the Liquidation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury regulations and that such trust be owned by its beneficiaries (i.e., holders of Allowed Claims in Class 4A, Class 4B, Class 4C, Class 5, and Class 6). Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution from the Estates of an undivided interest in each of the assets of the Liquidation Trust and then contributed such interests to the Liquidation Trust. For all federal income tax purposes, all parties shall treat the transfer of Assets to the Liquidation Trust for the benefit of the holders of Allowed Claims in Class 4A, Class 4B, Class 4C, Class 5, and Class 6, as (a) a transfer of the assets of the Liquidation Trust directly to the holders of Allowed Claims in Class 4A, Class 4B, Class 4C, Class 5, and Class 6, followed by (b) the transfer by such holders to the Liquidation Trust of the Assets of the Liquidation Trust in exchange for the beneficial interests in the Liquidation Trust. Accordingly, the holders of such Allowed Claims in Class 4A, Class 4B, Class 4C, Class 5, and Class 6 shall be treated for federal income tax purposes as the grantors and owners of their respective share of the Assets of the Liquidation Trust.

The Liquidation Trust will file returns for the Liquidation Trust as a grantor trust pursuant to Treasury regulation Section 1.671-4(a). The Liquidation Trust will annually send to each holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their federal income tax returns. The Liquidation Trust's taxable income, gain, loss, deduction, or credit will be allocated to holders of Allowed Claims in Class 4A, Class 4B, Class 4C, Class 5, and Class 6 in accordance with their relative beneficial interests in the Liquidation Trust. Creditors should be aware that the Plan provides that to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest. The Plan provides that any federal, state or local withholding taxes or other amounts required to be withheld under applicable law will be deducted from distributions hereunder.

## ARTICLE XVII
### Alternatives to the Plan

The Proponents believe that the Plan provides Creditors and Holders of Interests with the greatest possible value and earliest possible returns that can be realized on their respective Claims and Interests. The Debtor also believes that the Plan is fair and reasonable in its treatment of all constituencies. The alternatives to Confirmation of the Plan are (i) confirmation of an alternative Plan submitted by a party in interest in the Chapter 11 Cases; (ii) liquidation of the Assets, if necessary, and distribution under Chapter 7 of the Bankruptcy Code; and (iii) dismissal of the Chapter 11 Cases. As discussed below, the Proponents believe that the alternatives will be less beneficial to Creditors and Holders of Interests than if the Plan is consummated.

a.     **Alternative Plan**. If the Plan is not confirmed, a party in interest in the Chapter 11 Cases will have an opportunity to file another Plan, but it does not appear that alternative plans are likely to succeed. The Proponents believe that no other Plan would provide Creditors and Holders of Interests with a greater value or earlier recovery than they would be entitled to receive under the Plan. The Proponents have been engaged in extensive negotiations with numerous parties having an interest in the Chapter 11 Cases, and the Plan is predicated on the resolution of several complex issues that might not be resolved or might be resolved differently under an alternative plan. The Proponents have no reason to believe that any further negotiations regarding a plan of reorganization with any of these parties would lead to any alternative plan of reorganization that would provide greater recoveries that could be confirmed within a reasonable period of time and without protracted litigation and additional administrative expense.

b.     **Chapter 7 Liquidation**. A Chapter 7 liquidation of the Debtors' Assets and liabilities could be carried out with the anticipated results described above. For the reasons set forth above, the Proponents believe that the Distributions to Creditors under the Plan will be greater and earlier than the distributions that might result after conversion of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code.

c.     **Dismissal**. Upon dismissal of the Chapter 11 Cases, the protections of the Bankruptcy Code would disappear, thereby resulting in costly, uncontrolled and protracted litigation in various jurisdictions among and between the Creditors. Therefore, the Proponents believe that dismissal of the Chapter 11 Cases is not a viable alternative to confirmation of the Plan.

## ARTICLE XVIII
### Recommendations

It is the position of the Proponents that the Plan is substantially preferable to any other plan, to liquidation under Chapter 7 of the Bankruptcy Code or to a dismissal of these Chapter 11 Cases. Conversion of this Chapter 11 Cases to a Chapter 7 proceeding would result in substantial delays in the distribution of proceeds available under such an alternative,

and significantly increase administrative costs, including trustee's fees, expenses and commissions, and, therefore, would materially reduce Creditor recovery.

The Proponents recommend that you vote in favor of the Plan

**ARTICLE XIX**
**Conclusion**

It is important that you exercise your right to vote on the Plan. It is the Proponents' belief and recommendation that the Plan fairly and equitably provides for the treatment of all Claims against and Interests in the Debtors.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

Dated: November 27, 2007

OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

s/ David K. Rudov
RUDOV & STEIN, P.C.
David K. Rudov
100 First Avenue, Suite 500
Pittsburgh, PA 15222
(412) 281-7300

-and-

LOWENSTEIN SANDLER PC
Kenneth A, Rosen
John K. Sherwood
Sharon L. Levine
65 Livingston Avenue
Roseland, NJ 07068
(973) 597-2500

AD HOC COMMITTEE OF
SECURED LENDERS

s/ James G. McLean
MANION MCDONOUGH & LUCAS P.C.

James G. McLean
600 Grand Street, Suite 1414
Pittsburgh, PA 15219
(412) 232-0200

-and-

BROWN RUDNICK BERLACK
ISRAELS LLP
Edward S. Weisfelner
Robert J. Stark
7 Times Square
New York, NY 10036
(212) 209-4800

**AD HOC NOTEHOLDERS' COMMITTEE**

s/ Joel Walker
**DUANE MORRIS LLP**
Joel Walker
Jeffrey Spear
600 Grant Street, Suite 5010
Pittsburgh, PA 15219-2811
(412) 497-1000

-and-

s/ Matthew Williams
**KRAMER LEVIN NAFTALIS
& FRANKEL LLP**
Thomas Moers Mayer
Matthew J. Williams
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

### Amendment to Commitment Letter

November 26, 2007

John K. Sherwood, Esq.
Sharon L. Levine, Esq.
Thomas Pitta, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ  07068

Robert J. Stark, Esq.
Brown Rudnick Berlack Israels LLP
7 Times Square
New York, NY 10036

Thomas Moers Mayer, Esq.
Matthew J. Williams
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

Re:     **In re Le-Natures, Inc., et al.: Exit Facility Term Loan; Lender Commitments**

Dear Gentlemen and Lady:

  Reference is made to that certain letter agreement dated as of June 21, 2007 (together with the exhibits thereto, the "<u>Commitment Letter</u>"), by which the undersigned Lenders (as defined in the Commitment Letter), subject to the terms and conditions of the Commitment Letter, committed, severally and not jointly, to provide to, or cause to be provided to, the Liquidation Trust (as defined in that certain *Second Amended Joint Plan of Liquidation of the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Secured Lenders, and the Ad Hoc Committee. of Senior Subordinated Noteholders,* dated June 18, 2007, filed in the Chapter 11 cases of LeNature's, Inc., Le-Nature's Holdings, Inc. and Tea Systems International, LLC) a first-priority, senior secured exit facility term loan for up to the sum of $15,000,000 (the "<u>Loan</u>"), under the terms and conditions set forth in the Loan and Security Agreement among the Liquidation Trust and the to-be-named Loan agent annexed to the Commitment Letter as Exhibit A.

  The Commitment Letter is hereby amended as follows:

1.    **Amendment to Commitment Letter.** The references to "September 30, 2007" in Paragraphs 4 and 5 of the Commitment Letter are hereby deleted and "February 15, 2008" is substituted in lieu thereof.

2.    **Commitment Letter in Full Force and Effect as Amended.** Except as specifically amended hereby, the terms and conditions of the Commitment Letter shall remain in full force and effect and the Commitment Letter is hereby ratified and confirmed as so amended. This Amendment shall not constitute a novation, satisfaction and accord, cure, release and/or satisfaction of the terms and conditions of the Commitment Letter, but shall constitute an amendment thereof. The parties hereto agree to be bound by the terms and conditions of the Commitment Letter as amended by this Amendment, as though such terms and conditions were set forth herein and therein in full. Each reference in the Commitment Letter to "hereby," "hereunder," "hereof," "herein" or words of similar import shall mean and be a reference to the Commitment Letter as amended by this Amendment, and each reference herein or in any other document or instrument to the Commitment Letter shall mean and be a reference to the Commitment Letter as amended and modified by this Amendment.

2

If the foregoing is in accordance with your understanding of our agreement, please sign this letter in the space indicated below and return it to counsel to Lenders, the contact information for which is set forth below.

Very truly yours,

HARBINGER CAPITAL PARTNERS MASTER
FUND I, LTD.

By: Harbinger Capital Partners Offshore Manager,
L.L.C., as Investment Manager

By: _____
     William R. Lucas, Jr.
     Executive Vice President


AURELIUS CAPITAL PARTNERS, LP, which
may assign its Loan participation
to other affiliated funds or managed accounts

By: Aurelius Capital GP, LLC, its General Partner


By: _____
   Name: Mark D. Brodsky
   Title: Chairman


LATIGO MASTER FUND, LTD.


By: Latigo Partners, L.P., its Investment Manager


By: _____
   Name:
   Title:

3

If the foregoing is in accordance with your understanding of our agreement, please sign this letter in the space indicated below and return it to counsel to Lenders, the contact information for which is set forth below.

Very truly yours,

HARBINGER CAPITAL PARTNERS MASTER
FUND I, LTD.

By: Harbinger Capital Partners Offshore Manager,
L.L.C., as Investment Manager

By:_____
    Philip A. Falcone
    Senior Managing Director


AURELIUS CAPITAL PARTNERS, LP, which
may assign its Loan participation
to other affiliated funds or managed accounts

By: Aurelius Capital GP, LLC, its General Partner

By:_____
    Name: Mark D. Brodsky
    Title: Chairman


LATIGO MASTER FUND, LTD.


By: Latigo Partners, L.P., its Investment Manager


By:_____
    Name:
    Title:

3

If the foregoing is in accordance with your understanding of our agreement, please sign this letter in the space indicated below and return it to counsel to Lenders, the contact information for which is set forth below.

Very truly yours,

HARBINGER CAPITAL PARTNERS MASTER FUND I, LTD.

By: Harbinger Capital Partners Offshore Manager, L.L.C., as Investment Manager

By: _____
    Philip A. Falcone
    Senior Managing Director


AURELIUS CAPITAL PARTNERS, LP, which may assign its Loan participation to other affiliated funds or managed accounts

By: Aurelius Capital GP, LLC, its General Partner


By: _____
    Name: Mark D. Brodsky
    Title: Chairman


LATIGO MASTER FUND, LTD.


By: Latigo Partners, L.P., its Investment Manager


By: _____
    Name: Stephen Blauner
    Title: Authorized Signatory

3

UBS WILLOW FUND, LLC

By:
     Name: SAM KIM
     Title: AUTHORIZED SIGNATORY

BEAR STEARNS INVESTMENT PRODUCTS INC.

By:_____
     Name:
     Title:

KING STREET CAPITAL, L.P.

By:_____
     Name:
     Title:

GK DEBT OPPORTUNITY FUND, LTD.

By:_____
     Name:
     Title:

HAMBLIN WATSA INVESTMENT COUNSEL, LTD.

By:_____
     Name:
     Title:

SCOGGIN WORLD WIDE FUND LTD.

By:_____
     Name:
     Title:

4

UBS WILLOW FUND, LLC

By:_____
    Name:
    Title:

BEAR STEARNS INVESTMENT PRODUCTS
INC.

By:_____
    Name:
    Title: **JOHN McDERMOTT**
           **Vice President**

KING STREET CAPITAL, L.P.

By:_____
    Name:
    Title:

GK DEBT OPPORTUNITY FUND, LTD.

By:_____
    Name:
    Title:

HAMBLIN WATSA INVESTMENT COUNSEL,
LTD.

By:_____
    Name:
    Title:

SCOGGIN WORLD WIDE FUND LTD.

By:_____
    Name:
    Title:

4

UBS WILLOW FUND, LLC

By:_____
   Name:
   Title:

BEAR STEARNS INVESTMENT PRODUCTS
INC.

By:_____
   Name:
   Title:

KING STREET CAPITAL, L.P.
By: King Street Capital Management, L.L.C.,
Its Investment Manager

By:_____
   Name:  Bruce S. Darringer
   Title: Chief Operating Officer

GK DEBT OPPORTUNITY FUND, LTD.

By:_____
   Name:
   Title:

HAMBLIN WATSA INVESTMENT COUNSEL,
LTD.

By:_____
   Name:
   Title:

SCOGGIN WORLD WIDE FUND LTD.

By:_____

4

UBS WILLOW FUND, LLC

By:_____
    Name:
    Title:

BEAR STEARNS INVESTMENT PRODUCTS INC.

By:_____
    Name:
    Title:

KING STREET CAPITAL, L.P.

By:_____
    Name:
    Title:

*ONEX DEBT OPPORTUNITY FUND, LTD, f/k/a*
GK DEBT OPPORTUNITY FUND, LTD.
*By: Onex Credit Partners, LLC, its Investment Manager*

By:_____
    Name: *Michael J. Gelblat*
    Title: *Managing Member*

HAMBLIN WATSA INVESTMENT COUNSEL, LTD.

By:_____
    Name:
    Title:

SCOGGIN WORLD WIDE FUND LTD.

By:_____
    Name:
    Title:

4

UBS WILLOW FUND, LLC


By:_____
    Name:
    Title:

BEAR STEARNS INVESTMENT PRODUCTS INC.


By:_____
    Name:
    Title:

KING STREET CAPITAL, L.P.


By:_____
    Name:
    Title:


GK DEBT OPPORTUNITY FUND, LTD.


By:_____
    Name:
    Title:

HAMBLIN WATSA INVESTMENT COUNSEL, LTD.


By:_____
    Name:
    Title:

SCOGGIN WORLD WIDE FUND LTD.

By:_____ *A. Dev Chody* _____
    Name:
    Title:

715-8000

The foregoing is agreed to and accepted:

The Official Committee of Unsecured Creditors

By:  Lowenstein Sandler PC


By: _____
       John K. Sherwood, Esq.
       Sharon L. Levine, Esq.
       Thomas Pitta, Esq.


The *Ad Hoc* Committee of Secured Lenders

By: Brown Rudnick Berlack Israels LLP

By: _____
       Robert J. Stark, Esq.


The *Ad Hoc* Committee of Senior Subordinated
   Noteholders

By: Kramer Levin Naftalis & Frankel LLP

By: _____
       Thomas Moers Mayer, Esq.
       Matthew J. Williams, Esq.


#8173042.v1

5

The foregoing is agreed to and accepted:

The Official Committee of Unsecured Creditors

By:  Lowenstein Sandler PC


By: _____
    John K. Sherwood, Esq.
    Sharon L. Levine, Esq.
    Thomas Pitta, Esq.


The *Ad Hoc* Committee of Secured Lenders

By: Brown Rudnick Berlack Israels LLP

By: _____
    Robert J. Stark, Esq.


The *Ad Hoc* Committee of Senior Subordinated
 Noteholders

By: Kramer Levin Naftalis & Frankel LLP

By: _____
    Thomas Moers Mayer, Esq.
    Matthew J. Williams, Esq.


#8173042.v1

5

The foregoing is agreed to and accepted:

The Official Committee of Unsecured Creditors

By:   Lowenstein Sandler PC


By: _____
    John K. Sherwood, Esq.
    Sharon L. Levine, Esq.
    Thomas Pitta, Esq.


The *Ad Hoc* Committee of Secured Lenders

By: Brown Rudnick Berlack Israels LLP

By: _____
    Robert J. Stark, Esq.


The *Ad Hoc* Committee of Senior Subordinated
  Noteholders

By: Kramer Levin Naftalis & Frankel LLP

By: _____
    Thomas Moers Mayer, Esq.
    Matthew J. Williams, Esq.


# 8173042 v1

5

**Commitment Letter**

June 21, 2007

John K. Sherwood, Esq.
Sharon L. Levine, Esq.
Thomas Pitta, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ 07068

Robert J. Stark, Esq.
Brown Rudnick Berlack Israels LLP
7 Times Square
New York, NY 10036

Thomas Moers Mayer, Esq.
Matthew J. Williams
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

Re:    In re Le-Natures, Inc., et al.: Exit Facility Term Loan; Lender Commitments

Dear Gentlemen and Lady:

      We are pleased to advise you, in your capacity as counsel to the three proponents (collectively, the "Plan Proponents") of that certain *Second Amended Joint Plan of Liquidation of the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Secured Lenders, and the Ad Hoc Committee of Senior Subordinated Noteholders*, dated June 18, 2007 (as may be amended, modified or supplemented from time to time, the "Plan"), filed in the Chapter 11 cases of LeNature's, Inc., Le-Nature's Holdings, Inc. and Tea Systems International, LLC (each a "Debtor" and collectively, the "Debtors"), of the commitment of the Lenders (as defined below), subject to the terms and conditions hereof, severally and not jointly, to provide to, or cause to be provided to, the Liquidation Trust (as defined in the Plan) a first-priority, senior secured exit facility term loan (the "Exit Facility") for up to the sum of $15,000,000 (the "Loan"), under the terms and conditions set forth in the Loan and Security Agreement (the "Loan and Security Agreement") among the Liquidation Trust and the to-be-named Loan agent (the "Agent") annexed to this letter as **EXHIBIT A** (this letter, together with **EXHIBIT A**, the "Commitment Letter").

Capitalized terms used herein but not defined herein shall have the meanings ascribed to them in the Loan and Security Agreement. The term "Lenders" shall include the entities listed on **SCHEDULE 1** attached hereto, which term, for purposes of this Commitment Letter, shall be defined to include, at the applicable signatory Lender's option, all funds or entities in which any such Lender holds a beneficial interest or serves as investment manager or advisor or in a similar capacity.

1.    **Terms.**    The Loan and Security Agreement contains the terms and conditions regarding the Exit Facility. Any substantive changes to the Loan and Security Agreement made prior to the execution thereof by the Lenders must be reasonably satisfactory in form and substance to the Lenders, their counsel and you prior to proceeding with the closing of the proposed Loan.

2.    **Conditions.**    The commitment of the Lenders hereunder is conditioned upon: (a) the prior satisfaction of the conditions precedent set forth in the Loan and Security Agreement; (b) the Confirmation Order (as defined in the Plan) being in a form acceptable to each of the Lenders, authorizing the Liquidation Trustee to execute the Loan and Security Agreement and undertaking the obligations contained therein, and becoming a Final Order; and (c) the absence of: (x) any variances between the final terms of the Loan and Security Agreement as executed and the Loan and Security Agreement attached hereto as **Exhibit A** that are materially adverse to the interest of the Lenders, unless consented to by each of the Lenders; (y) any material misstatements in or omissions of material fact from the materials (other than the projections and other forward-looking statements) that have previously been prepared and furnished by the Debtors or the Chapter 11 Trustee to the Lenders; and (z) any material disruption or material adverse change in financial, banking, or capital markets or in the Chapter 11 cases since the date hereof, which, in each such case and in the reasonable judgment of the Lenders, make it impracticable or inadvisable to proceed with the transactions contemplated hereby.

3.    **Reimbursement.**    The Liquidation Trust shall reimburse the Agent and the Lenders for all Loan Costs as provided in the Loan and Security Agreement.

4.    **Acceptance of Commitment.**    This Commitment Letter sets forth the commitment of the Lenders with respect to the proposed Exit Facility and shall be considered withdrawn by the Lenders if the Lenders have not received a copy of this Commitment Letter signed by the Plan Proponents by June 24, 2007. If, for any reason, the Lenders or the Liquidation Trustee have been unable to close the transaction contemplated by this Commitment Letter upon the earlier of: (i) September 30, 2007 or (ii) midnight on the Effective Date of the Plan (or such later date as the parties may mutually agree), the commitment and obligations of the Lenders hereunder shall be considered terminated.

5.    **Closing.**    The Lenders shall be obligated to establish the Exit Facility and fund the Loan if all conditions precedent thereto are satisfied (as set forth in this

2

Commitment Letter) upon the earlier of: (i) September 30, 2007 or (ii) midnight on the Effective Date of the Plan (or such later date as the parties may mutually agree).

6.     **Nontransferability of Commitment.**  The identity of the Liquidation Trust is of material importance to the Agent and the Lenders.  Consequently, this commitment may not be assigned or transferred by the Debtors or the Liquidation Trust.  The Agent and the Lenders may assign their obligations (a) under this commitment to any affiliate of the Agent or of any of the Lenders or (b) as otherwise permitted under the Loan and Security Agreement.

7.     **Waiver of Jury Trial.**  Each party to this Commitment Letter makes each of the following waivers knowingly, voluntarily, and intentionally, and the Plan Proponents, the Chapter 11 Trustee, and all parties-in-interest are noticed hereby that the Lenders, in providing this Commitment Letter, and the Plan Proponents in accepting this letter, each understand such waivers and are each relying on such waivers.

ANY RIGHT TO A JURY IN ANY TRIAL OF ANY CASE OR CONTROVERSY IN WHICH THE PLAN PROPONENTS, THE AGENT, OR THE LENDERS IS OR BECOMES A PARTY (WHETHER SUCH CASE OR CONTROVERSY IS INITIATED BY OR AGAINST THE PLAN PROPONENTS, THE AGENT, AND/OR THE LENDERS OR IN WHICH THE PLAN PROPONENTS, THE AGENT AND/OR THE LENDERS IS JOINED AS A PARTY LITIGANT), WHICH CASE OR CONTROVERSY ARISES OUT OF OR IS IN RESPECT OF, THIS COMMITMENT LETTER AND THE TRANSACTIONS CONTEMPLATED HEREBY, IS WAIVED.

ANY LEGAL ACTION ARISING OUT OF THIS COMMITMENT LETTER OR THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE BROUGHT IN ANY STATE OR FEDERAL COURT SITTING IN NEW YORK. TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, ANY RIGHT THAT ANY PARTY-IN-INTERST MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON-CONVENIENS OR TO OBJECT TO VENUE TO EXTEND ANY PROCEEDINGS PROVIDED IN ACCORDANCE WITH THIS SECTION 7 IS WAIVED.

8.     This Commitment Letter shall be governed by the laws of the State of New York applicable to contracts made and to be performed therein.  This Commitment Letter is for the benefit of the parties hereto and is not intended to, nor shall it be deemed to be for the benefit any third party.

3

If the foregoing is in accordance with your understanding of our agreement, please sign this letter in the space indicated below and return it to counsel to Lenders, the contact information for which is set forth below.

Very truly yours,

HARBINGER CAPITAL PARTNERS MASTER FUND I, LTD.

By: Harbinger Capital Partners Offshore Manager, L.L.C., as Investment Manager

By: _____

    Philip A. Falcone
    Senior Managing Director


AURELIUS CAPITAL PARTNERS, LP, which
may assign its Loan participation
to other affiliated funds or managed accounts

By: Aurelius Capital GP, LLC, its General Partner


By: _____
    Name: Mark D. Brodsky
    Title: Chairman


LATIGO MASTER FUND, LTD.


By: Latigo Partners, L.P., its Investment Manager


By: _____
    Name:
    Title:

4

If the foregoing is in accordance with your understanding of our agreement, please sign this letter in the space indicated below and return it to counsel to Lenders, the contact information for which is set forth below.

Very truly yours,

HARBINGER CAPITAL PARTNERS MASTER FUND I, LTD.

By: Harbinger Capital Partners Offshore Manager, L.L.C., as Investment Manager

By:_____
    Philip A. Falcone
    Senior Managing Director


AURELIUS CAPITAL PARTNERS, LP, which may assign its Loan participation
to other affiliated funds or managed accounts

By: Aurelius Capital GP, LLC, its General Partner

By:_____
    Name: Mark D. Brodsky
    Title: Chairman


LATIGO MASTER FUND, LTD.

By: Latigo Partners, L.P., its Investment Manager

By:_____
    Name:
    Title:

4

If the foregoing is in accordance with your understanding of our agreement, please sign this letter in the space indicated below and return it to counsel to Lenders, the contact information for which is set forth below.

Very truly yours,

HARBINGER CAPITAL PARTNERS MASTER FUND I, LTD.

By: Harbinger Capital Partners Offshore Manager, L.L.C., as Investment Manager

By: _____
    Philip A. Falcone
    Senior Managing Director

AURELIUS CAPITAL PARTNERS, LP, which may assign its Loan participation to other affiliated funds or managed accounts

By: Aurelius Capital GP, LLC, its General Partner

By: _____
    Name: Mark D. Brodsky
    Title: Chairman

LATIGO MASTER FUND, LTD.

By: Latigo Partners, L.P., its Investment Manager

By: _____
    Name: *PAUL MILLER*
    Title: *AUTHORIZED SIGNATORY*

4

UBS WILLOW FUND, LLC

By:

Name: Sam Kim
Title: AUTHORIZED SIGNATORY

BEAR STEARNS INVESTMENT PRODUCTS INC.

By:
   Name:
   Title:

KING STREET CAPITAL, L.P.

By:
   Name:
   Title:

GK DEBT OPPORTUNITY FUND, LTD.

By:
   Name:
   Title:

HAMBLIN WATSA INVESTMENT COUNSEL, LTD.

By:
   Name:
   Title:

SCOGGIN WORLD WIDE FUND LTD.

By:
   Name:
   Title:

5

UBS WILLOW FUND, LLC

By: _____
    Name:
    Title:

BEAR STEARNS INVESTMENT PRODUCTS INC.

By: _____
    Name:     Jon Weiss
    Title:     Authorized Signatory

KING STREET CAPITAL, L.P.

By: _____
    Name:
    Title:

GK DEBT OPPORTUNITY FUND, LTD.

By: _____
    Name:
    Title:

SCOGGIN WORLD WIDE FUND LTD.

By: _____
    Name:
    Title:

The foregoing is agreed to and accepted:

The Official Committee of Unsecured Creditors

By:   Lowenstein Sandler PC

5

UBS WILLOW FUND, LLC

By:_____
    Name:
    Title:

BEAR STEARNS INVESTMENT PRODUCTS INC.

By:_____
    Name:
    Title:

KING STREET CAPITAL, L.P.
By: King Street Capital Management, L.L.C.,
Its Investment Manager

By:_____
    Name: Bruce S. Darringer
    Title: Chief Operating Officer

GK DEBT OPPORTUNITY FUND, LTD.

By:_____
    Name:
    Title:

SCOGGIN WORLD WIDE FUND LTD.

By:_____
    Name:
    Title:

The foregoing is agreed to and accepted:

5

UBS WILLOW FUND, LLC

By:_____
    Name:
    Title:

BEAR STEARNS INVESTMENT PRODUCTS INC.

By:_____
    Name:
    Title:

KING STREET CAPITAL, L.P.

By:_____
    Name:
    Title:

GK DEBT OPPORTUNITY FUND, LTD.
By GK Capital, LLC

By:_____
    Name: Stuart R. Kovensky
    Title: Managing Member

SCOGGIN WORLD WIDE FUND LTD.

By:_____
    Name:
    Title:

The foregoing is agreed to and accepted:

The Official Committee of Unsecured Creditors

By:   Lowenstein Sandler PC

5

UBS WILLOW FUND, LLC

By: _____
    Name:
    Title:

BEAR STEARNS INVESTMENT PRODUCTS INC.

By: _____
    Name:
    Title:

KING STREET CAPITAL, L.P.

By: _____
    Name:
    Title:

GK DEBT OPPORTUNITY FUND, LTD.

By: _____
    Name:
    Title:

SCOGGIN WORLD WIDE FUND, LTD.
By: Old Bellows Partners LP, its Investment Manager
By: Old Bellows Associates LLC, its General Partner

By: _____
    Name:
    Title:

The foregoing is agreed to and accepted:

5

06-22-2007  11:26     From-                                                    T-126  P.001/001  F-762

The foregoing is agreed to and accepted:

The Official Committee of Unsecured Creditors

By:   Lowenstein Sandler PC

By: _____
       John K. Sherwood, Esq.
       Sharon L. Levine, Esq.
       Thomas Pitta, Esq.


The *Ad Hoc* Committee of Secured Lenders

By: Brown Rudnick Berlack Israels LLP

By: _____
       Robert J. Stark, Esq.


The *Ad Hoc* Committee of Senior Subordinated
   Noteholders

By: Kramer Levin Naftalis & Frankel LLP

By: _____
       Thomas Moers Mayer, Esq.
       Matthew J. Williams, Esq.

6

The foregoing is agreed to and accepted:

The Official Committee of Unsecured Creditors

By:   Lowenstein Sandler PC


By: _____
     John K. Sherwood, Esq.
     Sharon L. Levine, Esq.
     Thomas Pitta, Esq.


The *Ad Hoc* Committee of Secured Lenders

By: Brown Rudnick Berlack Israels LLP

By: _____
     Robert J. Stark, Esq.


The *Ad Hoc* Committee of Senior Subordinated
  Noteholders

By: Kramer Levin Naftalis & Frankel LLP

By: _____
     Thomas Moers Mayer, Esq.
     Matthew J. Williams, Esq.

6

The foregoing is agreed to and accepted:

The Official Committee of Unsecured Creditors

By:   Lowenstein Sandler PC


By: _____
    John K. Sherwood, Esq.
    Sharon L. Levine, Esq.
    Thomas Pitta, Esq.


The *Ad Hoc* Committee of Secured Lenders

By: Brown Rudnick Berlack Israels LLP

By: _____
    Robert J. Stark, Esq.


The *Ad Hoc* Committee of Senior Subordinated
  Noteholders

By: Kramer Levin Naftalis & Frankel LLP

By: _____
    Thomas Moers Mayer, Esq.
    Matthew J. Williams, Esq.