# Exhibit A, Part IV

# EXHIBIT A

## Loan and Security Agreement

### (attached hereto)

DRAFT 6/18/2007

## LOAN AND SECURITY AGREEMENT

THIS LOAN AND SECURITY AGREEMENT ("**Agreement**") is made, executed, delivered and entered into as of May __, 2007, by and between LIQUIDATION TRUST, a Delaware trust ("**Borrower**") and [ ], as agent (in such capacity, the "**Agent**") for the banks, financial institutions and other lenders (the "**Lenders**") which are or may become parties to this Agreement.

### Preliminary Statement

WHEREAS, Borrower is a liquidation trust created pursuant to the terms of the Second Amended Joint Chapter 11 Plan of Liquidation of the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Secured Lenders and the Ad Hoc Committee of Senior Subordinated Noteholders (as may be amended, the "**Plan**") in the chapter 11 bankruptcy cases of Le-Nature's, Inc., Le-Nature's Holdings, Inc. and Tea Systems International, LLC (collectively, the "**Debtors**") for purposes of administering the Debtors' estates after the Plan becomes effective.

WHEREAS, Borrower, Agent and Lenders have entered into this Agreement to evidence and set forth the terms and conditions of the exit facility term loan that Lenders are making available to Borrower, for up to the sum of $15,000,000 as described in the Plan (the "**Loan**").

WHEREAS, Borrower hereby agrees that the Loan available pursuant to the terms of this Agreement shall be used by Borrower in connection with the creation of the Liquidation Trust pursuant to the Plan to fund: (i) certain distributions to be made, pursuant to, and on the effective date of, the Plan; (ii) certain reserves required under the Plan; and (iii) all costs related to establishing and maintaining the Liquidation Trust, liquidation and collection of all Assets (as defined in the Plan) in the Liquidation Trust, and pursuing all Estate Causes of Action (as defined in the Plan).

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, and for other good and valuable consideration, the receipt and adequacy of which are hereby conclusively acknowledged, the parties to this Agreement, intending to be legally bound, agree as follows:

## SECTION 1
## CERTAIN DEFINITIONS

Capitalized terms used in this Agreement or in any Loan Document shall have the meanings set forth herein. Capitalized terms defined in the introductory Preliminary Statement or elsewhere in this Agreement shall have the meanings assigned to them at the place first defined. As used herein, the term "this Agreement" or "Loan Agreement" shall include all exhibits, schedules and addenda attached hereto, all of which shall be deemed incorporated herein and made a part hereof. Capitalized terms not otherwise defined herein shall have the meanings set forth in the Plan. The definitions include the singular and plural forms of the terms defined. Any defined term which relates to a document, instrument or agreement shall include within its definition any amendments, modifications, supplements, renewals, restatements, extensions, or substitutions which may be hereafter executed in accordance with the terms

DRAFT 6/18/2007

hereof. Unless otherwise specified, references to particular section numbers shall mean the respective sections of this Agreement.

## 1.1    Defined Terms

**Additional Consideration.** Means five (5%) percent of the aggregate proceeds (whether from settlement, judgment or other payment), net of any and all professional fees and costs related directly thereto, from any Estate Causes of Action not encumbered by Existing Liens.

**Affiliate.** Any individual, trust, estate, partnership, limited liability company, corporation or any other incorporated or unincorporated organization that directly controls or is controlled by or is under common control with Borrower, a Lender or Agent, as the case may be, or any member, officer, or partner of Borrower, a Lender or Agent, as the case may be, or any relative of any of the foregoing. The term "control" means possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

**Agreement.** This Loan and Security Agreement (including all Exhibits and Schedules and addenda thereto), as it may be amended in writing from time to time.

**Applicable Law.** In respect of any Person, all provisions of constitutions, statutes, rules, ordinances, regulations and orders of governmental bodies or regulatory agencies applicable to such Person, and all orders and decrees of all courts and arbitrators in proceedings or actions to which the Person in question is a party or by which it or its properties are bound.

**Available Funds.** Cash held by the Borrower as of the first day of each month (including but not limited to cash derived from the settlement and/or prosecution of Estate Causes of Action) which: (i) is not encumbered by valid, duly perfected and enforceable Liens as of the Petition Date; (ii) is in excess of the amount required to fund the Liquidation Trust Reserve from time to time as provided in the Plan; and (iii) not necessary to satisfy outstanding approved (or reasonably expected to become approved) obligations of the Liquidation Trust.

**Assets.** Defined in the Plan.

**Backstop Parties.** The Lenders who agreed to fund on a pro-rata basis up to the amounts set forth on Schedule D hereto any amounts of the Loan not otherwise funded by the other members of Class 4A of the Plan--in respect of Class 4A: Harbinger Capital Partners Master Fund I, Ltd., Aurelius Capital Partners, L.P., Latigo Master Fund, Ltd. and UBS Willow Fund, LLC.

**Bankruptcy Code.** Title 11 of the United States Code, 11 U.S.C. §§ 101 – 1130, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

**Bankruptcy Court.** The United States Bankruptcy Court for the Western District of Pennsylvania, or such other court having jurisdiction over the Chapter 11 Cases or any proceeding within, or appeal of an order entered in, the Chapter 11 Cases.

DRAFT 6/18/2007

**Business Day.** Each day which is not a Saturday or Sunday or a legal holiday under the laws of the State of New York, or the United States.

**Cash Collateral.** Defined in the Plan.

**Chapter 11 Cases.** The jointly administered Chapter 11 cases of the Debtors pending before the Bankruptcy Court and bearing case number 06-25454 (MBM).

**Closing Date.** The same day as the Effective Date of the Plan.

**Collateral.** All of the assets and properties of the Borrower and proceeds thereof, including but not limited to, all Estate Causes of Action and Avoidance Actions, including without limitation, any and all those certain Commercial Tort Claims (as defined in the UCC Code) set forth on <u>Schedule A</u> to this Agreement (which Schedule may be updated from time to time by the Borrower) and any and all Causes of Action arising in (i) tort (including but not limited to malpractice; misappropriation; conversion; fraud; negligence; misrepresentation; deceit; concealment; nondisclosure; bad faith; breach of fiduciary duty/special relationship; duress; breach of good faith and fair dealing (to the extent the allegations mirror tort actions); civil conspiracy; embezzlement; lender liability; negligence; negligent, intentional, or fraudulent interference with contract; deepening insolvency; or aiding and abetting any of the foregoing) (or any products or proceeds thereof); or (ii) contract or any other theory, if such Cause of Action is based on facts or circumstances common to any claim or Cause of Action arising in tort, <u>provided however</u>, that such Collateral shall not include (i) any "Lenders Collateral" as such term is defined in the Plan or (ii) any other assets or properties of the Borrower or proceeds thereof that are encumbered by valid, duly perfected and enforceable Liens as of the Petition Date ("<u>Existing Liens</u>").

**Commitment Fee.** Defined in <u>Section 2.4(a)</u> of this Agreement.

**Consent.** Actual consent given by Agent and/or the Lenders from whom such consent is sought; or the passage of seven (7) Business Days from receipt of written notice to a Lender from Agent of a proposed course of action to be followed by Agent without such Lender's giving the Agent written notice of that Lender's objection to such course of action, provided that Agent may rely on such passage of time as consent by such Lender only if such written notice states that consent will be deemed effective if no objection is received within such time period.

**Debtor(s).** Mean, in singular form, Le-Nature's, Le-Nature's Holdings or TSI and, in plural form, all of Le-Nature's, Le-Nature's Holdings and TSI.

**Debtor Relief Laws.** Any applicable liquidation, conservatorship, bankruptcy, moratorium, rearrangement, insolvency, reorganization or similar law, proceeding or device providing for the relief of debtors or insolvent Persons from time to time in effect and generally affecting the rights of creditors.

**Default.** An event or condition the occurrence of which immediately is, or with the lapse of time or the giving or notice or both would become, an Event of Default.

3

DRAFT 6/18/2007

**Default Rate.** The Interest Rate plus 2% percent per annum, from the date imposed or imposable to the date of payment.

**Estate Causes of Action.** Defined in the Plan.

**Event of Default.** Defined in <u>Section 5</u> of this Agreement.

**Exhibits.** Refers to all of the addenda, exhibits or schedules attached to this Agreement or any Loan Document.

**Existing Liens.** Defined in definition of "Collateral" set forth herein.

**Final Order.** Defined in the Plan.

**GAAP.** Generally accepted accounting principles, applied on a consistent basis, set forth in Opinions of the Accounting Principles Board of the American Institute of Certified Public Accountants and/or in statements of the Financial Accounting Standards Board which are applicable in the circumstances as of the date in question; and the requisite that such principles be applied on a consistent basis means that the accounting principles in a current period are comparable in all material respects to those applied in a preceding period, with any exceptions thereto noted.

**Governmental Authority.** Any federal, state, county, municipal or other governmental or quasi-governmental department, commission, board, bureau, authority, court, agency, or instrumentality having jurisdiction over Borrower or the Collateral.

**Indebtedness.** All payment Obligations of Borrower to Agent and/or Lenders under the Loan Documents and, as applied to any other Person at any time, all indebtedness, obligations or other liabilities of such Person for borrowed money or the deferred purchase price of property or evidenced by debt securities and any accrued interest, fees and charges relating thereto.

**Indemnified Lender Parties.** Defined in <u>Section 7.5</u> of this Agreement.

**Interest Rate.** A fixed interest rate to be set on the first day of each month, equal to LIBOR plus three (3%) percent per annum.

**Le-Nature's.** Le-Nature's, Inc., a Delaware corporation.

**Le-Natures' Holdings.** Le-Nature's Holdings, Inc., a Delaware corporation.

**Lender Fees.** Includes Loan Costs, the Commitment Fee and Additional Consideration.

**LIBOR or LIBOR Rate.** (London Interbank Offered Rate). The rate per annum (rounded upward, if necessary, to the nearest 1/32 of one percent) as determined on the basis of the offered rates for deposits in U.S. dollars, for a period of one (1) month duration which appears on the Telerate page 3750 as of 11:00 A.M. London time on the day that is two (2) Business Days preceding the Closing Date; provided, however, if the rate described above does not appear on the Telerate System on any applicable interest determination date, the LIBOR rate

4

shall be the rate (rounded upwards as described above, if necessary), for deposits in dollars for a period substantially equal to the Interest Period on the Reuters Page "LIBO" (or such other page as may replace the LIBO Page on that service for the purpose of displaying such rates), as of 11:00 A.M. (London time), on the day that is two (2) Business Days prior to the Closing Date. If both the Telerate System described above and the offered rates for deposits in U.S. dollars for a period of time of one (1) month duration are not available, four major banks in the London banks will be requested to provide a quotation of its U.S. dollar deposit offered rate. If at least two such quotations are provided, the rate for that date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that date will be determined on the basis of the rates quoted for loans in U.S. dollars to leading European banks for a period of time of one (1) month duration offered by major banks in New York City at approximately 11:00 A.M. New York City time, on the day that is two Business Days preceding the first day of each month. In the event that Lender is unable to obtain any such quotation as provided above, it will be deemed that LIBOR cannot he determined in which event the interest payable on the Loan hereunder shall be equal to the sum of (a) the Prime Rate of [Citibank or Chase Bank] and (b) 525 basis points. In the event that the Board of Governors of the Federal Reserve System shall impose a Reserve Percentage with respect to LIBOR deposits of Lender, then for any period during which such Reserve Percentage shall apply, LIBOR shall be equal to the amount determined above divided by an amount equal to 1 minus the Reserve Percentage. As used herein, "Reserve Percentage" shall mean the rate (expressed as a decimal) at which Lender would be required to maintain reserves under REGULATION D of the Board of Governors of the Federal Reserve System ("Federal Reserve") against Eurodollar Liabilities (as defined by the Federal Reserve) if such Liabilities were outstanding.

**Lien.** A security interest, or mortgage or collaterally assigned interest or pledge, or any interest in tangible or intangible property securing an obligation owed to, or claimed by, a Person other than the owner of such property, whether such interest arises in equity or is based on the common law, statute, or contract.

**Liquidation Trust Reserve.** A reserve established by the Liquidation Trust in the amount of $7,500,000 to satisfy its anticipated future administrative expenses, which reserve amount may be modified from time-to-time by the Liquidation Trust in accordance with the Liquidation Trust Agreement, provided however, that in no event shall the Liquidation Trust Reserve exceed $7,500,000.

**Loan.** Loan has the meaning defined in Section 2.1 hereof.

**Loan Commitment.** Means, in the aggregate, $15,000,000 and with respect to each Lender, the amount of the obligation of the Lender to fund the Loan pursuant to the terms and conditions of this Agreement. The amount of each Lender's respective Loan Commitment is set forth in **Schedule D** to this Agreement and a copy of each Lender's Commitment Letter is attached hereto as **Schedule E**.

**Loan Costs.** All reasonable and actual expenditures and expenses which may be paid or incurred by or on behalf of Agent and/or Lenders in connection with the documentation, negotiation and closing of the Loan, including the documentation and negotiation of this Agreement and any necessary documents required for perfection of the Collateral (collectively,

DRAFT 6/18/2007

the "Perfection Documents"), and all reasonable and actual expenditures and expenses which may be paid or incurred by or on behalf of Agent in connection with the modification, workout, payment, collection or enforcement of the Loan, protection of the Lenders' interests in the Loan, and all rights set forth in this Agreement and any Perfection Documents. Loan Costs include, but shall in no way be limited to, reasonable fees, expenses and disbursements of Agent's and Lenders' counsel and other professionals, all of Agent's and Lenders' out-of-pocket expenses in connection with the negotiation, documentation and closing of this Loan, including the cost of preparing reproducing and binding this Agreement and the Perfection Documents as well as the Agent's counsel and other professionals and all of Agent's out-of-pocket expenses in connection with the modification, workout, payment, collection or enforcement of this Loan. A copy of the Agent's fee schedule is attached hereto as **Schedule B**. All Loan Costs incurred prior to the Effective Date of Plan are fully earned upon the Bankruptcy Court's approval of the Loan. All Loan Costs are to be paid from proceeds of the Loan, are indefeasible when paid and non-refundable under all circumstances.

**Loan Documents.** Collectively, this Agreement, including all addenda hereto, the Note, Financing Statements as provided under the UCC Code, and the other documents, agreements and instruments relating to the Loan, including those listed on **Schedule C** attached to this Agreement, and including any agreements entered into between Borrower and Lender, all as previously amended and/or restated, and as they may be amended or supplemented in writing from time to time.

**Loan Term.** Effective from and after the Closing Date, the period from the Closing Date until the Maturity Date.

**Majority Lenders.** Lenders holding more than fifty (50%) percent of the total outstanding principal amount of the Loan.

**Maturity Date.** The earlier of: (i) the termination of the Liquidation Trust in accordance with the Plan, the Confirmation Order and/or the Liquidation Trust Agreement (including in the event of the indefeasible payment in full, including all accrued interest and fees (including, without limitation, any Additional Consideration that may be due and payable)), (ii) the occurrence of the Termination Date, and (iii) five (5) years from the Closing Date.

**Note(s).** In singular form, a secured Promissory Note in a principal amount of the Loan Commitment for each Lender evidencing the Loan made by such Lender hereunder (and any promissory note of Borrower issued in addition thereto or in substitution therefor that evidences the Loan) dated as of the Closing Date and executed and delivered by Borrower to the order of the Lender, and in plural form, the secured Promissory Notes in the aggregate principal amount of $15,000,000 evidencing the Loan made by all Lenders hereunder dated as of the Closing Date and executed and delivered by Borrower to the respective Lenders to the order of the respective Lenders.

**Obligations.** All amounts due or becoming due to Lenders in respect of the Loan issued pursuant hereto, and all amounts due or becoming due to Lender under any of the Loan Documents, now existing or hereafter created or arising, joint or several, direct or indirect, arising out of contract or tort or under law, and whether created directly or acquired or accruing

6

DRAFT 6/18/2007

by assignment, assumption or otherwise, and including principal, interest, Additional Consideration that may be due and payable, Commitment Fees, Loan Costs, Lender Fees, reasonable attorneys' and paralegals' fees and expenses and other fees or expenses incurred by Lenders or advanced by Lenders to or on behalf of Borrower or pursuant to this Agreement or any of the Perfection Documents, and amounts payable to or for the benefit of Lenders under any subrogation rights, indemnities or guaranties in connection with the Loan.

**Person.** An individual, partnership, corporation, joint venture, limited liability company, trust, trustee, association, joint stock company, estate, unincorporated organization, real estate investment trust, syndication, other entity, or a government or agency or political subdivision thereof.

**Schedules.** Refers to any schedules attached to this Agreement or any Loan Document.

**Security.** Shall have the same meaning as in Section 2(1) of the Securities Act of 1933, as amended.

**Super-Majority Lenders.** Lenders holding more than two-thirds (2/3) of the total outstanding principal amount of the Loan.

**Termination Date.** Defined in <u>Section 2.1(c)</u> of this Agreement.

**TSI.** Tea Systems International, LLC, a Delaware limited liability company.

**UCC Code.** The Uniform Commercial Code as adopted and in effect in the State of New York (with respect to Collateral located in or subject to the Code in that State), and, with respect to Collateral located in any other State, or for filings made in the State in which Borrower was incorporated or formed, the Uniform Commercial Code as adopted and in effect in that State, as amended from time to time.

## SECTION 2
## THE LOAN

2.1    **Loan.**

(a)    Subject to the terms and conditions of this Agreement, on the Closing Date, each Lender agrees to make an advance to the Borrower in the amount of each Lender's Loan Commitment (the "<u>Loan</u>"). From and after the funding of the Loan, Borrower shall have no right to request, and Lender shall have no obligation to make to, or for the benefit of, Borrower, any additional loans, advances or financial accommodations hereunder.

(b)    The Borrower may utilize the proceeds from the Loan in its sole discretion so long as there is no Cash Collateral available to the Borrower in furtherance of maximizing the value of, and recovery from, the Assets of the Liquidation Trust, including the prosecution of the Estate Causes of Action and for the purpose set forth in the Recital paragraphs set forth herein.

(c)    On the Maturity Date, all Obligations immediately shall become due and payable without notice or demand, provided however, that the Additional Consideration shall

7

DRAFT 6/18/2007

remain payable until the Liquidation Trust has completed pursuit of all Estate Causes of Action and the Liquidation Trust has been terminated in accordance with the Plan and applicable law. Notwithstanding the preceding sentence (and without limiting any additional rights and remedies of Agent and Lenders hereunder), the entire outstanding principal amount of the Loan, together with all accrued and unpaid interest thereon and all other outstanding Obligations (excluding only any Additional Consideration which may subsequently become due and payable), may, at the option of the Agent as directed by the Majority Lenders, become immediately due and payable in accordance with **Article 6** hereof and applicable law.

## 2.2    Interest Rate.

(a)    Except as modified in Sections 2.2(c) and 2.2(d) below, interest shall, from and after the Closing Date, accrue on the principal amount of the Loan at the Interest Rate. Changes in the Interest Rate based on changes in the LIBOR Rate shall be effective as of the first day of each calendar month after such change is announced or becomes effective. All accrued interest shall be due on the first of each month (the "**Interest Due Date**"), provided however, that such interest shall be payable only to the extent that the Borrower is in possession of Available Funds. In the event the Borrower does not hold Available Funds on the Interest Due Date, interest shall accrue on all accrued but unpaid interest until such time as all accrued interest is paid in full. All accrued but unpaid interest shall be paid on the earlier of: (i) the date Available Funds first become available to the Borrower (which payment shall only be made to the extent of such Available Funds and such payment shall be applied to the Loan as set forth in **Section 2.3(a)** below); (ii) the Maturity Date, or (iii) the Termination Date.

(b)    Interest charges shall be computed on the unpaid balance of the Loan for each day the Loan is outstanding at the Interest Rate on the basis of actual days elapsed over a 365-day or 366-day (as the case may be) year.

(c)    Immediately upon the occurrence and during the continuance of an Event of Default and after the Maturity Date (if the Loan is not paid in full on or before the Maturity Date), the Loan shall accrue interest at the Default Rate.

(d)    Notwithstanding the foregoing, in no event shall interest payable hereunder exceed the maximum rate permitted under any applicable law or regulation, and if any provision of this Agreement or Loan Document is in contravention of any such law or regulation, such provision shall be deemed amended to provide for interest at said maximum rate and any excess amount shall be applied to the outstanding principal amount of the Loan or, at Agent's option exercisable in its sole discretion, shall be refunded by Agent to Borrower.

## 2.3    Payments and Prepayments.

(a)    Payments made in respect of the Loan (in good, collected funds in legal tender of the United States of America) shall be applied by Agent as a permanent pro rata reduction of the outstanding amounts due in respect of the Loan in the following order: (a) to the payment of Loan Costs or expenses incurred by Agent and/or Lenders pursuant to this Agreement or any Loan Document in respect of the Loan, as quantified by Agent and/or

Lenders, including reasonable costs and expenses incurred in creating, maintaining, perfecting, protecting or enforcing Lender's Liens in and to the Collateral and in collecting any amounts due to Lender in connection with the Loan; (b) to the payment of any accrued, unpaid interest on the Loan at the Interest Rate or Default Rate, as applicable; (c) to the reduction of the principal balance of the Loan; and (d) to any other monetary Obligations remaining due and unpaid to Lender, including but not limited to Additional Consideration.

(b)    Borrower agrees to pay or cause to be paid to Agent for ratable benefit to the Lenders all principal and interest due in connection with all Obligations as required by this Agreement. Borrower shall make or cause to be made payments on the Loan in the manner and at times as provided in this Agreement. The entire Loan shall be payable in full by no later than the Maturity Date together with any accrued interest thereon and any other amounts due thereunder.

(c)    Except as otherwise provided herein, Borrower shall only be obligated to pay any Obligations due hereunder to the extent that it holds Available Funds.  Borrower acknowledges and agrees that within five (5) Business Days of the date on which it is in receipt of such Available Funds it shall indefeasibly pay them to the Agent for the benefit of the Lenders for application pursuant to **Section 2.3(a)** of this Agreement until all Obligations hereunder are paid in full, provided however, that the obligation to pay the Additional Consideration shall survive any such prepayment.

(d)    Borrower may, without fee or premium, prepay the Loan in whole or in part at any time, together with (i) accrued but unpaid interest at the applicable Interest Rate or Default Rate on the principal amount being prepaid to the date of such prepayment, and (ii) in the case of the prepayment of the Loan in full, all other Obligations payable hereunder, provided however, that the obligation to pay the Additional Consideration shall survive any such prepayment.

(e)    Subject to the continuing Obligation to pay Additional Consideration, there shall be no distributions or payments to the beneficiaries of the Liquidation Trust from Assets of the Liquidation Trust until all Obligations hereunder are paid in full indefeasibly to the Lenders; provided however, that the Borrower may make distributions to the holders of "Lenders Secured Claims" (as defined in the Plan) solely from the proceeds of the liquidation of "Lenders Collateral" (as defined in the Plan) notwithstanding this provision. Notwithstanding anything contained herein to the contrary, Additional Consideration must be indefeasibly paid to the Lenders as it becomes due and payable before the Borrower may make any distributions or payments to the beneficiaries of the Liquidation Trust.

2.4    **Lenders' Fees and Expenses.**

(a)    **Commitment Fee.**  In consideration of the Agent's and Lenders' agreements hereunder, the Borrower agrees to pay to the Agent for the benefit of the Lenders a commitment fee of $200,000, which fee shall be fully earned and nonrefundable upon the Bankruptcy Court's approval of this Agreement, and shall be payable in cash on the Closing Date from the proceeds of the Loan.

9

DRAFT 6/18/2007

(b)     **Additional Consideration.** The Borrower agrees to pay the Agent for the ratable benefit of the Lenders, the Additional Consideration promptly after it is earned as a result of the successful prosecution or settlement of the Estate Causes of Action subject to the Borrower's receipt of good funds in accordance with **Section 2.3** above, which Additional Consideration shall be indefeasibly payable upon the Borrower's receipt of proceeds from any Estate Causes of Action. For the avoidance of doubt, the Borrower shall not wait until all Estate Causes of Action are resolved prior to the payment of Additional Consideration, but instead, Borrower shall be obligated to make interim distributions of Additional Consideration to the extent the Borrower receives any proceeds from Estate Causes of Action not encumbered by Existing Liens. The Obligation to pay the Additional Consideration shall remain payable until the Liquidation Trust has completed pursuit of all Estate Causes of Action and the Liquidation Trust has been terminated in accordance with the Plan and applicable law.

(c)     **Lender Expenses.** Subject to the terms and conditions of this Agreement, the Borrower agrees to reimburse Agent and Lenders for all Loan Costs.

## SECTION 3
## COLLATERAL

3.1     **Grant of Security Interest.** To secure the prompt and complete payment and performance by Borrower of all of its Obligations for value received, Borrower unconditionally and irrevocably assigns, pledges and grants to Agent, for the ratable benefit of Lenders, and hereby confirms the granting to Agent for the ratable benefit of Lenders a valid, first priority security interest in and to the Collateral not subject to the Existing Liens, whether now owned or existing or hereafter acquired, reacquired or arising, and regardless of where located. Borrower acknowledges and confirms that Agent has been granted and continues to hold, continuing security interests and Liens in, to and upon, and rights of set-off with respect to, the Collateral. The above-described Liens and security interests shall not be rendered void by the fact that no Obligations exist as of any particular date, but shall continue in full force and effect until all Obligations have been fully and finally paid, performed and satisfied.

3.2     **Financing Statements.** Borrower hereby authorizes Agent or Agent's counsel or Lenders' counsel to file with the appropriate state authorities financing statements (including amendments and continuation statements) provided for by the UCC Code together with any and all other instruments or documents and take such other action as may be required to perfect and to continue the perfection of Agent's security interest in the Collateral. At any time and from time to time, upon request by Agent, Borrower shall duly execute, acknowledge, and deliver to Agent any assignment, financing statement, instrument, document or other agreement, and take any other action that Agent may reasonably request, to create, preserve, continue, perfect or ratify the security granted in this Agreement, or that Agent may deem reasonably necessary to protect, exercise or enforce its rights with respect to the Collateral, or that may otherwise be necessary to effect for Agent the benefit of the security intended to be granted herein. All documents to be executed and/or delivered to Agent shall be in form and substance reasonably satisfactory to Agent.

3.3     **Security Agreement.** This Agreement shall be deemed a security agreement as defined in the UCC Code, and the remedies for any violation of the terms and

10

DRAFT 6/18/2007

conditions of the agreements herein contained shall be cumulative and be as prescribed (a) herein or in any Loan Document, or (b) by law, or (c) as to such part of the Collateral which is also reflected in any filed assignment or financing statement, by the specific provisions of the UCC Code or other applicable law now or hereafter enacted, all at the Agent and/or Lenders' election, as may be exercised on one or more occasions.

## SECTION 4
## CONDITIONS PRECEDENT TO CLOSING

The obligation of Lenders to fund the Loan shall be subject to the satisfaction of each of the following conditions precedent, in addition to all of the conditions precedent set forth elsewhere in the Loan Documents:

**4.1    Confirmation Order.**  The Confirmation Order, in form reasonably acceptable to the Lenders identified on **Schedule D** hereto, becomes a Final Order by August 31, 2007 (which date may be extended by the Lenders as provided in Section 5.6(c)), which Confirmation Order shall provide that:

(a)    The terms of this Agreement are approved;

(b)    Borrower is authorized to enter into this Agreement and obtain financing on the terms and conditions set forth herein and authorizing and approving all Liens and security interests granted herein and authorizing and approving all Liens and security interests granted herein;

(c)    Liquidation Trust shall not be dissolved or terminated so long as this Agreement is of force and effect;

(d)    All tax payments and withholding taxes required of Borrower by applicable law shall be timely paid or deposited;

(e)    Liquidation Trustee shall diligently pursue the Estate Causes of Action; and

(f)    Liquidation Trust shall post on a website available to all parties in interest quarterly reports regarding the status of the Estate Causes of Action as well as to the receipts and disbursement of funds, assets and liabilities, professional fees and other expenses incurred, material litigation and other events, and distributions made.

**4.2    Effective Date of Plan.**  All conditions precedent to the Effective Date of the Plan, except for the funding of the Loan, are satisfied.

**4.3    Liquidation Trust Agreement.**  The Liquidation Trust Agreement, in form and substance reasonably acceptable to the Majority Lenders, shall have been executed by the parties thereto.

11

DRAFT 6/18/2007

    **4.4    Funding.**  The Lenders shall have agreed to the terms herein and each Lender shall have funded to the extent initially required and up to each Lenders' maximum Loan Commitment for distribution to the Borrower as provided in **Section 2.1** of this Agreement.

    **4.5    Closing Deliveries.**  Agent shall have received, in form and substance satisfactory to the Agent, all documents, instruments and information reasonably required by the Agent and each agreement required to be delivered shall be in full force and effect unless otherwise agreed in writing by the Majority Lenders.

    **4.6    Security Interest.**  Agent shall have received satisfactory evidence that the security interest and lien granted to Agent for the ratable benefit of Lenders pursuant to this Agreement or the other Loan Documents have been duly perfected and constitute a first priority lien on the Collateral.

## SECTION 5
## EVENTS OF DEFAULT

    An "**Event of Default**" shall exist immediately upon Borrower's receipt of notice from the Agent or any Lender of the occurrence of any of the following:

    **5.1    Payments.**  Borrower shall fail to make any principal payment on the Loan in accordance with **Section 2.1** of this Agreement or Borrower shall be in receipt of Available Funds and shall fail to pay any interest on the Loan or any other amount in accordance with **Section 2.3(c)**, including, without limitation, the Lender Fees payable hereunder in accordance with **Section 2.4** of this Agreement or the payment of Additional Consideration in accordance with this Agreement, within three (3) Business Days after such interest or other amount becomes payable as provided in **Section 2** of this Agreement.

    **5.2    Liquidation Trustee.**  The Borrower permits the termination or replacement of the Liquidation Trustee in violation of the terms of the Liquidation Trust Agreement.

    **5.3    Liens.**  Borrower permits the granting to, or acquisition by, any party or entity of a claim or Lien in relation to the assets or interests of the Borrower that is senior to or pari passu to the claims and interests of the Lenders.

    **5.4    Subordinated Indebtedness.**  Borrower incurs subordinated indebtedness without first providing thirty (30) days written notice to Agent and permitting Lenders to provide similar loans, advances or financial accommodations on similar or more favorable terms.

    **5.5    Settlements/Allocations.**  The Borrower enters into any settlement, including the settlement of any Estate Cause of Action or Avoidance Action where the amount at issue exceeds $500,000 without the consent of the Super-Majority Lenders and/or if the Borrower effects, without the consent of the Super-Majority Lenders, an allocation of proceeds in excess of $500,000 from any Estate Causes of Action or Avoidance Actions. Notwithstanding anything contained herein to the contrary, upon the indefeasible payment in full of all Obligations due hereunder (excluding only any Additional Consideration which may subsequently become due and payable), this **Section 5.5** shall no longer be of force and effect.

DRAFT 6/18/2007

    **5.6**   **Loan Modifications.** Borrower amends, modifies, supplements or waives any of the terms and conditions of this Agreement without the consent of:

    (a)   All affected Lenders to effectuate the:

        (i)   Forgiveness of any outstanding Obligations;

        (ii)   Modification of the Interest Rate or Default Rate, as applicable;

        (iii)   Extension of the Maturity Date;

        (iv)   Release of all or substantially all of the Collateral; or

        (v)   Modification of the Lenders' first priority Lien position with respect to their security interests in the Collateral.

    (b)   Super-Majority Lenders to effectuate a waiver of any Event of Default as set forth in **Section 6.2** below.

    (c)   Majority in amount of Lenders set forth in Schedule D attached hereto that funded the Loan for Class 4A of the Plan and majority in amount of Lenders set forth in Schedule D attached hereto that funded the Loan for Class 4C of the Plan to effectuate a waiver of any conditions precedent to the funding of this Loan set forth in **Section 4** hereof.

    (d)   Majority Lenders to effectuate any other amendment, modification or waiver of the terms and conditions set forth in this Agreement not specifically identified in subsections (a) or (b) above.

**SECTION 6**
**REMEDIES**

    **6.1**   **Remedies Upon Default.** Upon the occurrence and during the continuance of an Event of Default, Agent, at the direction of the Majority Lenders may take any one or more of the following actions, all upon notice to Borrower:

    (a)   **Cash Sweep.** Make immediate demand for immediate payment to Agent for the ratable benefit of the Lenders of any cash presently held by Borrower, including funds held in the Liquidation Trust Reserve except the portion of the Liquidation Trust Reserve funded from Cash Collateral, as a permanent reduction of the amounts owed by the Borrower under this Agreement, which funds should be applied as set forth in **Section 2.3(a)** of this Agreement.

    (b)   **Acceleration.** Without demand or notice of any nature whatsoever, and at the direction of the Majority Lenders, declare the unpaid balance of the Indebtedness under the Loan Documents, or any part thereof, immediately due and payable, whereupon the same shall be due and payable.

DRAFT 6/18/2007

(c)    **Exercise of Other Rights.**  Exercise any and all rights and remedies of a secured party afforded the UCC Code, any Applicable Laws or by the other Loan Documents as Agent or the Majority Lenders shall deem appropriate, at law, in equity or otherwise, including the right to bring suit or other proceeding, either for specific performance of any covenant or condition contained in the Loan Documents or in aid of the exercise of any right or remedy granted to Lender in the Loan Documents, provided however, that neither Agent nor Lenders may foreclose on Lender's security interest in all or any part of the Collateral by any available judicial or other procedures under law.  Notwithstanding the acceleration of the Loan or the exercise of any other right or remedy of the Lenders in connection with this Loan or the Loan Documents, the Borrower shall continue to be obligated to pay Additional Consideration as provided in this Agreement.

**6.2    Waivers.**  The Super-Majority Lenders may waive any existing Event of Default.  No waiver by the Super-Majority Lenders of any Event of Default shall be deemed to be a waiver of any other or subsequent Event of Default.  No delay or omission by Agent in exercising any right or remedy under the Loan Documents shall impair such right or remedy or be construed as a waiver thereof or an acquiescence therein, nor shall any single or partial exercise of any such right or remedy preclude other or further exercise thereof, or the exercise of any other right or remedy under the Loan Documents or otherwise.  Borrower's liability shall not be affected by any renewal or extension in the time of payment of the Loan, or by any release or change in any security for the payment or performance of the Loan, regardless of the number of such renewals, extensions, releases or changes.  Borrower also hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien created by any of the Loan Documents or to any action brought to enforce any other obligation secured by the Loan Documents.

**6.3    Cumulative Rights.**  All rights and remedies available to Agent or Majority Lenders under the Loan Documents shall be cumulative and in addition to all other rights and remedies granted to Lenders at law or in equity, whether or not the Indebtedness under the Loan Documents is due and payable and whether or not Agent or Majority Lenders shall have instituted any suit for collection or other action in connection with the Loan Documents.

**SECTION 7**
**CERTAIN RIGHTS OF LENDERS**

**7.1    Protection of Collateral.**  The Agent may at any time and from time to time take such actions as it deems necessary or appropriate to protect Lenders' lien and security interest in and to preserve the Collateral, and to establish, maintain and protect the enforceability of Lenders' rights with respect thereto, all at the expense of Borrower.  Borrower agrees to cooperate fully with all of the Agent's efforts to preserve the Collateral and Lenders' lien and security interest therein.

**7.2    Assignments and Participations.**

(a)    Each Lender may assign and delegate to one or more assignees (each an "Assignee") all, or any ratable part of all, of the Obligations, and the other rights and obligations of the respective Lender hereunder and under the other Loan Documents; provided, however,

14

that the Majority Lenders consent to the assignment, which consent shall not be unreasonably withheld or delayed and which consent shall be deemed given unless the Majority Lenders object to the assignment within three (3) business days of receipt of notice of such assignment, provided, further, that Borrower may continue to deal solely and directly with Lender in connection with the interest so assigned to an Assignee until (i) written notice of such assignment, together with payment instructions, addresses and related information with respect to the Assignee, shall have been given to Borrower by Agent. Notwithstanding anything contained herein to the contrary, (x) Lenders shall not assign or delegate all, or any ratable part of all, of the Obligations due hereunder in an amount less than $250,000, provided however, Lenders may assign or delegate the entirety of their ratable part of all of the Obligations due hereunder, (y) after accounting for any assignments made hereunder, Lenders shall continue to hold either $0 or at least $250,000 of the funded Loan Commitment (subject to pro rata reduction as a result of indefeasible payment of the outstanding principal amount due in respect to the Loan), and (z) assignment shall not be permitted to any Insider, Wachovia, BDO Seidman, E&Y, any Other Debtor Pre-Petition Professional, any Entity or Person acting in concert with or acting as an agent for any of the aforementioned Entities or Persons, or any Entity or Person named as a defendant in any Estate Causes of Action.

(b)    From and after the date that Lender has assigned any portion of the Obligations and other rights and obligations of Lender hereunder and under the other Loan Documents, (i) the Assignee thereunder shall be a party hereto and, to the extent that rights and obligations hereunder have been assigned to it, shall have the rights and obligations of a Lender under the Loan Documents, and (ii) the Lender shall, to the extent that rights and obligations hereunder and under the other Loan Documents have been assigned by it, relinquish its rights and be released from its obligations under this Agreement (and in the case of an assignment covering all or the remaining portion of an assigning Lender's rights and obligations under this Agreement and the other Loan Documents, Lender shall cease to be a party hereto and thereto), and such assignment shall effect a novation between Borrowers and the Assignee.

(c)    Immediately upon such assignment, this Agreement shall be deemed to be amended to the extent, but only to the extent, necessary to reflect the addition of the Assignee.

(d)    Lender may at any time, sell to one or more commercial banks, financial institutions, or other Persons whether or not Affiliates of Lender (a "Participant") participating interests in the Obligations, the Loan Commitment, and the other rights and interests of Lender (the "Originating Lender") hereunder and under the other Loan Documents; provided, however, that (i) the Originating Lender shall remain a "Lender" for all purposes of this Agreement and the other Loan Documents and the Participant receiving the participating interest in the Obligations, the Loan Commitment and the other rights and interests of the Originating Lender hereunder shall not constitute a "Lender" hereunder or under the Loan Documents and the Originating Lender's obligations under this Agreement shall remain unchanged, (ii) the Originating Lender shall remain solely responsible for the performance of such obligations, (iii) Borrowers shall continue to deal solely and directly with the Originating Lender in connection with the Originating Lender's rights and obligations under this Agreement and the other Loan Documents; and (iv) all amounts payable by Borrowers hereunder shall be determined as if Lender had not sold such participation; except that, if amounts outstanding under this Agreement are due and unpaid, or shall have been declared or shall have become due

15

DRAFT 6/18/2007

and payable upon the occurrence of an Event of Default, each Participant shall be deemed to have the right of set-off in respect of its participating interest in amounts owing under this Agreement to the same extent as if the amount of its participating interest were owing directly to it as a Lender under this Agreement. The rights of any Participant only shall be derivative through the Originating Lender with whom such Participant participates and no Participant shall have any rights under this Agreement or the other Loan Documents or any direct rights as to the Lender, Borrowers, the Collateral, or otherwise in respect of the Obligations. Notwithstanding anything contained herein to the contrary, the Participant may vote its participating interest on any matters requiring the consent of all Lenders affected by such matter subject to consent of the Agent. Notwithstanding anything contained herein to the contrary, participation shall not be permitted for any Insider, Wachovia, BDO Seidman, E&Y, any Other Debtor Pre-Petition Professional, any Entity or Person acting in concert with or acting as an agent for any of the aforementioned Entities or Persons, or any Entity or Person named as a defendant in any Estate Causes of Action.

(e) In connection with any such assignment or participation or proposed assignment or participation, Lender may disclose all documents and information which it now or hereafter may have relating to the Obligors or the Obligors' business.

7.3 **Successors.** This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties.

7.4 **No Liability of Lender.** Neither the acceptance of this Agreement by Agent or Lenders, nor the exercise of any rights hereunder by Agent or Lenders, shall be construed in any way as an assumption by Agent or Lenders of any Obligations, responsibilities or duties of Borrower arising in connection with any other business of Borrower or otherwise bind Agent or Lenders to the performance of any Obligations with respect to the Collateral; it being expressly understood that Agent or Lenders shall not be obligated to perform, observe or discharge any obligation, responsibility, duty, or liability of Borrower, including, but not limited to, appearing in or defending any action, expending any money or incurring any expense in connection therewith. Without limitation of the foregoing, neither this Agreement nor any action or actions on the part of Agent or Lenders taken hereunder, shall constitute an assumption by Agent or Lenders of any Obligations of Borrower with respect to the Collateral, or any documents or instruments executed in connection therewith, and Borrower shall continue to be liable for all of the Obligations thereunder or with respect thereto.

7.5 **Indemnification of Lender.** Borrower shall indemnify Agent and each Lender and hold Agent and each Lender, and each of their respective subsidiaries, affiliates, officers, directors, agents, employees, representatives, consultants, contractors, servants, and attorneys, as well as the heirs, personal representatives, successors or assigns of any or all of them (hereafter collectively the "Indemnified Lender Parties") harmless from and against any and all liabilities, Indebtedness, losses, damages, penalties, actions, suits, claims, costs, expenses, and disbursements of any kind or nature whatsoever which may be imposed on, incurred by or asserted against any Indemnified Lender Party, in any way relating to or arising out of (a) this Agreement and the other Loan Documents and/or (b) any of the transactions contemplated herein, therein or thereby. Without limiting the generality of the foregoing, this indemnity shall include all liabilities, Indebtedness, losses, damages, penalties, actions,

16

DRAFT 6/18/2007

judgments, suits, claims, costs, expenses, and disbursements asserted against or incurred by any Indemnified Lender Party by reason of (i) any breach of any covenant obligation or agreement or the incorrectness or inaccuracy of any representation and warranty of Borrower contained in this Agreement or any of the Loan Documents (including without limitation any certification of Borrower delivered to Agent) and (ii) any and all taxes, including real estate, personal property, sales, mortgage, excise, intangible or transfer taxes, and any and all fees or charges, which may at any time arise or become due prior to the payment, performance and discharge in full of the Obligations. Such indemnification shall not give Borrower any right to participate in the selection of counsel for each Lender or the conduct or settlement of any dispute or proceeding for which indemnification may be claimed; provided, however, that Borrower shall not be required to protect and indemnify Agent or a specific Lender to the extent the liability, obligation, loss, damage, penalty, action, judgment, suit, claim, cost, expense or disbursement for which indemnification or protection would otherwise be required are finally adjudicated to have been the result of the Agent or the specific Lender having acted in a grossly negligent manner, in actual bad faith, or in willful misconduct. The provisions of this Section shall survive the full payment, performance and discharge of the Obligations and the termination of this Agreement, and shall continue thereafter in full force and effect.

### SECTION 8
### TERM OF AGREEMENT

This Agreement shall continue in full force and effect until the Maturity Date and shall continue thereafter only to the extent of the provisions that specifically survive such termination (e.g. payment of Additional Consideration, indemnity rights and the repayment in full of all Obligations). The Liens and the security interests granted hereby and the duties and liabilities of Borrower hereunder and all the terms, conditions and provisions hereof relating thereto shall continue to be fully operative until all of the Obligations have been satisfied in full. Upon the indefeasible payment in full of all Obligations: (a) this Agreement and the Loan Documents shall be terminated except to the extent of those provisions that specifically survive such termination (e.g., payment of Additional Consideration, indemnity rights), (b) Borrower shall no longer have the right to borrow from the Agent pursuant to this Agreement, and (c) the Liens securing the obligations set forth in this Agreement shall automatically terminate and be released, and Agent shall, if requested execute any documents to effectuate such release. Borrower expressly agrees that if Borrower makes a payment to the Agent for the ratable benefit of Lenders, which payment or any part thereof is subsequently invalidated, declared to be fraudulent or preferential, or otherwise required to be repaid to a trustee, receiver or any other party under any Debtor Relief Laws, state or federal law, common law or equitable cause, then to the extent of such repayment, the Obligations or any part thereof intended to be satisfied and the Liens provided for hereunder securing the same shall be revived and continued in full force and effect as if said payment had not been made.

DRAFT 6/18/2007

## SECTION 9
## THE AGENT

### 9.1    Appointment of The Agent.

(a)    Each Lender appoints and designates [   ] as the "Agent" hereunder and under the Loan Documents.

(b)    Each Lender authorizes the Agent:

(i)    To execute those of the Loan Documents and all other instruments relating thereto to which the Agent is a party.

(ii)    To take such action on behalf of the Lenders and to exercise all such powers as are expressly delegated to the Agent hereunder and in the Loan Documents and all related documents, together with such other powers as are reasonably incident thereto.

### 9.2    Responsibilities of The Agent.    The Agent shall have principal responsibilities for and primary authority for the administration of the credit facilities contemplated by this Agreement.

(a)    Agent shall not have any duties or responsibilities to, or any fiduciary relationship with, any Lender except for those expressly set forth in this Agreement.

(b)    Neither Agent nor any of its Affiliates shall be responsible to any Lender for any of the following:

(i)    Any recitals, statements, representations or warranties made by Borrower or any other Person.

(ii)    Any appraisals or other assessments of the assets of Borrower or of any other Person responsible for or on account of the Obligations.

(iii)    The value, validity, effectiveness, genuineness, enforceability, or sufficiency of this Agreement, the Loan Documents or any other document referred to or provided for therein.

(iv)    Any failure by Borrower or any other Person (other than the subject Agent) to perform its obligations under the Loan Documents.

(c)    The Agent may employ attorneys, accountants, and other professionals and agents and attorneys-in-fact and shall not be responsible for the negligence or misconduct of any such attorneys, accountants, and other professionals or agents or attorneys-in-fact selected by the Agent with reasonable care. No such attorney, accountant, other professional, agent, or attorney-in-fact shall be responsible for any action taken or omitted to be taken by any other such Person.

DRAFT 6/18/2007

(d)    Neither Agent, nor any of its directors, officers, or employees shall be responsible for any action taken or omitted to be taken or omitted to be taken by any other of them in connection herewith in reliance upon advice of their respective counsel nor, in any other event except for any action taken or omitted to be taken as to which a final judicial determination has been or is made (in a proceeding in which such Person has had an opportunity to be heard) that such Person had acted in a grossly negligent manner, in actual bad faith, or in willful misconduct.

(e)    Agent shall have no responsibility in any event for more funds than the Agent actually receives and collects.

9.3    **Concerning Distributions By the Agent.**

(a)    Agent, in Agent's reasonable discretion based upon Agent's determination of the likelihood that additional payments will be received, expenses incurred, and/or claims made by third parties to all or a portion of such proceeds, may (unless the Majority Lenders direct to the contrary) delay the distribution of any payment received on account of the Obligations.

(b)    Agent may disburse funds prior to determining that the sums the Agent expects to receive have been finally and unconditionally paid to the Agent. If and to the extent that the Agent does disburse funds and it later becomes apparent that the Agent did not then receive a payment in an amount equal to the sum paid out, then any Lender to whom the Agent made the funds available, on demand from the Agent, shall refund to the Agent the sum paid to that Person.

(c)    If, in the reasonable opinion of the Agent, after receiving the advice of outside counsel, the distribution of any amount received by the Agent might involve the Agent in liability, or might be prohibited hereby, or might be questioned by any Person, then the Agent may refrain from making distribution until the Agent's right to make distribution has been adjudicated by a court of competent jurisdiction.

(d)    The proceeds of any Lender's exercise of any right of, or in the nature of, set-off shall be shared pro rata with the other Lenders.

(e)    In the event that a court of competent jurisdiction shall finally adjudge that any amount received and distributed by the Agent is required to be repaid or disgorged, then each Lender to which any such distribution shall have been made shall repay, to the Agent, that Lender's Pro-Rata share of the amount so adjudged or determined to be repaid or disgorged.

9.4    **Reliance by Agent.**    The Agent shall be entitled to rely upon any certificate, notice or other document (including any cable, telegram, telex, or facsimile) reasonably believed by the Agent to be genuine and correct and to have been signed or sent by or on behalf of the proper Person or Persons, and upon advice and statements of attorneys, accountants and other experts selected by the Agent. As to any matters not expressly provided for in this Agreement, any Loan Document, or in any other document referred to therein, the Agent shall in all events be fully protected in acting, or in refraining from acting, in accordance with the

DRAFT 6/18/2007

applicable Consent required by this Agreement. Instructions given with the requisite Consent shall be binding on all Lenders.

   **9.5     Non-Reliance on the Agent and Other Lenders.**

         (a)     Each Lender represents to all other Lenders and to the Agent that such Lender:

               (i)     Independently and without reliance on any representation or act by the Agent or by any other Lender, and based on such documents and information as that Lender has deemed appropriate, has made such Lender's own appraisal of the financial condition and affairs of the Borrower and decision to enter into this Agreement;

               (ii)     Has relied upon that Lender's review of the Loan Documents by that Lender and by counsel to that Lender as that Lender deemed appropriate under the circumstances.

         (b)     Each Lender agrees that such Lender, independently and without reliance upon the Agent or any other Lender, and based upon such documents and information as such Lender shall deem appropriate at the time, will continue to make such Lender's own appraisals of the financial condition and affairs of the Borrower when determining whether to take or not to take any discretionary action under this Agreement.

         (c)     Except as otherwise provided herein, Agent in the discharge of the Agent's duties hereunder, shall not:

               (i)     Be required to make inquiry of, or to inspect the properties or books of, any Person.

               (ii)     Have any responsibility for the accuracy or completeness of any financial examination, review, inventory, analysis, appraisal, and other information concerning, relating to, or in respect of Borrower and prepared by or at the request of, or furnished to any of, the Lenders by or on behalf of the Agent.

         (d)     Except for notices, reports, and other documents and information expressly required to be furnished to the Lenders by the Agent hereunder, the Agent shall not have any affirmative duty or responsibility to provide any Lender with any credit or other information concerning any Person, which information may come into the possession of Agent or any Affiliate of the Agent.

         (e)     Each Lender, at such Lender's request, shall have reasonable access to all nonprivileged documents in the possession of the Agent, which documents relate to the Agent's performance of its duties hereunder.

   **9.6     Indemnification.**  Without limiting the liabilities of the Borrower under this Agreement or any of the other Loan Documents, each Lender shall indemnify the Agent, pro-rata, for any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever (including reasonable

DRAFT 6/18/2007

attorneys' fees and expenses and other out-of-pocket expenditures) which may at any time be imposed on, incurred by, or asserted against the Agent and in any way relating to or arising out of this Agreement or any other Loan Document or any documents contemplated by or referred to therein or the transactions contemplated thereby or the enforcement of any of terms hereof or thereof or of any such other documents, provided, however, no Lender shall be liable for any of the foregoing to the extent that any of the foregoing arises from any action taken or omitted to be taken by the Agent as to which a final judicial determination has been or is made (in a proceeding in which the Agent has had an opportunity to be heard) that the Agent had acted in a grossly negligent manner, in actual bad faith, or in willful misconduct.

**9.7    Resignation or Termination of Agent.**

(a)    Agent may resign at any time by giving thirty (30) days prior written notice thereof to the Lenders. Agent may be terminated by the Majority Lenders for any or no cause. Upon receipt of any such notice of resignation or termination, the Majority Lenders shall have the right to appoint a successor to Agent.  If a successor Agent shall not have been so appointed and accepted such appointment within 20 days after the giving of notice by the resigning Agent, then the resigning Agent may appoint a successor Agent, which shall be a financial institution having a combined capital and surplus in excess of $50,000,000.00.

(b)    Upon the acceptance of any appointment as an Agent hereunder by a successor Agent, such successor shall thereupon succeed to, and become vested with, all the rights, powers, privileges, and duties of the (resigning) Agent so replaced, and the (resigning) Agent shall be discharged from the (resigning) Agent's duties and obligations hereunder, other than on account of any responsibility for any action taken or omitted to be taken by the (resigning) Agent as to which a final judicial determination has been or is made (in a proceeding in which the (resigning) Person has had an opportunity to be heard) that such Person had acted in a grossly negligent manner or in bad faith or willful misconduct

(c)    After any retiring Agent's resignation, the provisions of this Agreement and of all other Loan Documents shall continue in effect for the retiring Agent's benefit in respect of any actions taken or omitted to be taken by it in good faith while it was acting as an Agent in the absence of gross negligence or willful misconduct.

**SECTION 10**
**MISCELLANEOUS**

**10.1    Notice.** Any notice or other communication required or permitted to be given shall be in writing addressed to the respective party as set forth in **Schedule F** and may be personally served, sent by electronic mail, telecopied or sent by overnight courier, next business day delivery guaranteed, or by U.S. Certified or Registered Mail, Return Receipt Requested, and shall be deemed given:  (a) if served in person, when served; (b) if by electronic mail or telecopied, on the date of transmission if before 3:00 p.m. (eastern time) on a Business Day, otherwise on the next Business Day; provided that a hard copy of such notice is also sent pursuant to (c) or (d) below and provided further that the transmission is shown as complete by electronic verification; (c) if by overnight courier, next Business Day delivery guaranteed, on the

DRAFT 6/18/2007

next Business Day on which delivery is guaranteed after delivery to the courier; or (d) if by U.S. Mail, certified or registered mail, return receipt requested on the fourth (4th) day after deposit in the mail, postage prepaid, in a manner that permits the U.S. Postal Service to track the communication.

**10.2    Survival.**  All agreements made by Borrower herein, in the other Loan Documents or in any other agreement, document, instrument or certificate delivered by or on behalf of Borrower under or pursuant to the Loan Documents shall be considered to have been relied upon by Agent and shall survive the delivery to Agent of such Loan Documents and the extension of the Loan (and each part thereof), regardless of any investigation made by or on behalf of Agent and/or Lenders.  All indemnities made by Borrower in favor of Agent and/or Lenders shall survive termination of this Agreement and payment of all Obligations.

**10.3    GOVERNING LAW; CONSENTS TO JURISDICTION.**  THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS (EXCEPT AS MAY BE EXPRESSLY PROVIDED THEREIN TO THE CONTRARY) SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO ITS CHOICE OF LAWS PRINCIPLES. BORROWER CONSENTS TO PERSONAL JURISDICTION BEFORE THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN NEW YORK COUNTY, NEW YORK, AND THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK.  BORROWER WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE IN VENUE IN NEW YORK COUNTY, NEW YORK OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE OBLIGATIONS CREATED HEREUNDER OR ANY OF THE LOAN DOCUMENTS AND FURTHER WAIVES ANY CLAIM THAT NEW YORK COUNTY, NEW YORK IS NOT A CONVENIENT FORUM FOR ANY SUCH SUIT, ACTION OR PROCEEDING. SERVICE OF PROCESS ON BORROWER IN ANY ACTION ARISING OUT OF OR RELATING TO ANY OF THE LOAN DOCUMENTS SHALL BE EFFECTIVE IF MAILED TO BORROWER AT THE ADDRESS LISTED FOR BORROWER IN **SCHEDULE F.**

**10.4    Invalid Provisions.**  If any provision of this Agreement or any of the other Loan Documents is held to be illegal, invalid or unenforceable under present or future laws effective during the term thereof, such provision shall be fully severable, and this Agreement and the other Loan Documents shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof or thereof, and the remaining provisions hereof or thereof shall remain in full force and effect.

**10.5    Counterparts; Effectiveness.**  This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signature thereto and hereto were on the same instrument.  This Agreement shall become effective upon the Lender's receipt of one or more counterparts hereof signed by Borrower and Lender.  The parties agree that any copy of this Agreement or any Loan Documents signed by the parties who are signatories, and transmitted by telecopier or otherwise for delivery to the Lender, shall be admissible in evidence as the original itself in any judicial, bankruptcy or administrative proceeding, whether or not the original is in existence.

22

10.6    **Lender Not Fiduciary.** The relationship between Borrower and Agent and Borrower and Lender is solely that of debtor and creditor, and neither Agent nor Lenders have any fiduciary or other special relationship with Borrower, and no term or provision of any of the Loan Documents shall be construed so as to deem the relationship between Borrower and Agent and Borrower and Lenders to be other than that of debtor and creditor.

10.7    **Entire Agreement.** This Agreement, including the Exhibits, Schedules, and addenda, and the other Loan Documents and agreements referred to herein embody the entire agreement between the parties hereto with respect to the Loan, supersedes all prior agreements and understandings between the parties whether written or oral relating to the Loan provided for hereunder, and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no oral agreements between Lender and Borrower. This Agreement may be modified or changed only in a writing executed by Agent (acting at the direction of the Majority Lenders) and Borrower.

10.8    **Headings.** Section headings have been inserted in this Agreement as a matter of convenience of reference only; such section headings are not a part of this Agreement and shall not be used in the interpretation of this Agreement.

10.9    **Costs.** In any action between the parties, the prevailing party shall be entitled to reasonable attorneys' and paralegals' fees and costs, including those in pretrial, trial, appellate and bankruptcy proceedings.

10.10    **Accounting Principles.** Where the character or amount of any asset or liability or item of income or expense is required to be determined or any consolidation or other accounting computation is required to be made for the purposes of this Agreement, the same shall be determined or made in accordance with GAAP consistently applied at the time in effect, to the extent applicable, except where such principles are inconsistent with the requirements of this Agreement, in which event the provisions of this Agreement and not GAAP shall apply.

10.11    **Time.** Time is of the essence as to all Obligations of Borrower pursuant to this Agreement.

10.12    **Incorporation.** This Agreement, together with all addenda, Exhibits and Schedules hereto, constitute one document and agreement which is referred to herein by the use of the defined term "Agreement." Such addenda, Exhibits and Schedules are incorporated herein as if fully set out in this Agreement. The definitions contained in any part of this Agreement shall apply to all parts of this Agreement.

10.13    **Jury Trial Waiver.** BORROWER, AGENT AND EACH LENDER HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS.    BORROWER, AGENT AND EACH LENDER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS RELIED ON THE WAIVER IN ENTERING INTO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS AND THAT EACH WILL CONTINUE TO RELY ON THE WAIVER IN THEIR RELATED

DRAFT 6/18/2007

FUTURE DEALINGS.  BORROWER, AGENT AND EACH LENDER WARRANT AND REPRESENT THAT EACH HAS HAD THE OPPORTUNITY OF REVIEWING THIS JURY WAIVER WITH LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement or have caused the same to be executed by their duly authorized representatives, and delivered, as of the date set forth above.

BORROWER:

LIQUIDATION TRUST

By: _____
    Name
    Title: Liquation Trustee

AGENT:

[ AGENT ]

By: _____
    Name
    Title:

24

DRAFT 6/18/2007

LENDERS:

HARBINGER CAPITAL PARTNERS MASTER FUND I, LTD.

By: _____
      Name:
      Title:

AURELIUS CAPITAL PARTNERS, L.P.

By: _____
      Name:
      Title:

LATIGO MASTER FUND, LTD.

By: _____
      Name:
      Title:

UBS WILLOW FUND, LLC

By: _____
      Name:
      Title:

BEAR, STEARNS & CO., INC.

By: _____
      Name:
      Title:

KING STREET CAPITAL MANAGEMENT, L.L.C.

By: _____
      Name:
      Title:

25

DRAFT 6/18/2007

GK DEBT OPPORTUNITY FUND, LTD.

By: _____
     Name:
     Title:

HAMBLIN WATSA INVESTMENT COUNSEL, LTD.

By: _____
     Name:
     Title:

SCOGGIN WORLD WIDE FUND LTD.

By: _____
     Name:
     Title:

DRAFT 6/18/2007

**Schedule A**

**<u>Commercial Tort Claims</u>**

[list of identified claims to be inserted]

DRAFT 6/18/2007

**Schedule B**

**Agent's Fee Schedule**

28

DRAFT 6/18/2007

**Schedule C**

**Loan Documents**

DRAFT 6/18/2007

## Schedule D

## Loan Commitment Schedule

For Class 4A:

| | |
|---|---|
| Harbinger Capital Partners Master Fund I, Ltd. | up to $7.3 million, |
| Aurelius Capital Partners, L.P. | up to $1.6 million, |
| Latigo Master Fund, Ltd. | up to $1.7 million, |
| UBS Willow Fund, LLC | up to $1.4 million, |

Sub-total: $12 Million

For Class 4CB:

| | |
|---|---|
| King Street Capital Management, L.L.C. | up to $1.242 million, |
| Hamblin Watsa Investment Counsel, Ltd. | up to $621 thousand, |
| Bear, Stearns & Co., Inc. | up to $585 thousand, |
| GK Debt Opportunity Fund, Ltd. | up to $345 thousand, |
| Scoggin World Wide Fund Ltd. | up to $207 thousand, |

Sub-total: $ 3 Million

Total:    $15 Million

30

DRAFT 6/18/2007

**Schedule E**

**Commitment Letter**

(attached hereto)

DRAFT 6/18/2007

Schedule F

<u>Notices</u>

Notices shall be provided as follows:

If to the Agent:                [tbd]

With a copy to:                 [tbd]

If to the Lenders:              [tbd]

With a copy to:                 BROWN RUDNICK BERLACK ISRAELS LLP
                                Robert J. Stark, Esq.
                                7 Times Square
                                New York, NY 10036
                                Tel: (212) 209-4800
                                Fax: (212) 209-4801
                                email: rstark@brownrudnick.com

If to the Borrower:             [tbd]

With a copy to:                 [tbd]

32

## SCHEDULE 1:

### Exit Facility Commitments

Harbinger Capital Partners
        Master Fund I, Ltd.    $7.3 million,
Aurelius Capital Partners, L.P.    $1.6 million,
Latigo Master Fund, Ltd.    $1.7 million,
UBS Willow Fund, LLC    $1.4 million,
King Street Capital
        Management, L.L.C.    $1.607 million,
Bear, Stearns & Co., Inc.    $658 thousand,
GK Debt Opportunity Fund, Ltd.    $459 thousand,
Scoggin World Wide Fund Ltd.    $276 thousand,

Total:    $15 Million

# 1502852 v1

8